David R. Ongaro (State Bar No. 154698)
dongaro@ongaropc.com
Glen Turner (State Bar No. 212417)
gturner@ongaropc.com
ONGARO PC
1604 Union St.
San Francisco, CA  94123
Telephone: (415) 433-3900
Facsimile:  (415) 433-3950

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jose Torres, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SEATGEEK, INC., a Delaware corporation headquartered in New York; and DOES 1 through 25, inclusive.<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**1. VIOLATIONS OF THE CALIFORNIA TRAP AND TRACE LAW (CAL. PENAL CODE § 638.51)** |

# JURISDICTION

1. This matter charges Defendant Seatgeek, Inc. ("Seatgeek" or "Defendant") with violation of the California Trap and Trace Law, Section 638.51 of the California Penal Code. Seatgeek violated Section 638.51 by installing multiple "tracers" or "pixels" on its website to capture the phone number, email, routing, addressing and other signaling and site usage information of website visitors. By identifying the source of incoming electronic and wire communications to its website (the "Website"), Seatgeek violated the Trap and Trace device, and without obtaining consent either from Plaintiff or from Class Members.

2. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are well over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a State within the United States (California) and at least one defendant is the citizen of a different State or subject of a foreign state (Delaware).

3. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant has purposefully directed its activities to the Northern District of California by regularly engaging with individuals in California through its interactive website. Defendant maintains a regular web page to sell event tickets to San Francisco residents and other persons who would like to attend events in San Francisco, as well as one for Los Angeles residents and other persons who would like to attend events in Los Angeles, and another for San Diego residents and other persons who would like to attend events in San Diego. As of July 1, 2025, Seatgeek's Los Angeles concert page (https://seatgeek.com/cities/la) advertised 2895 concerts, sporting events and shows in Los Angeles. As of July 1, 2025, Seatgeek's San Francisco concert page ((https://seatgeek.com/cities/sf) advertised 2001 concerts, sporting events and shows in San Francisco. As of July 1, 2025, Seatgeek's San Diego concert page (https://seatgeek.com/cities/san-diego)

advertised 826 concerts, sporting events and shows in San Diego.

4. Further, on information and belief, in approximately 2013 Seatgeek acquired Palo Alto-based Fansnap, an online aggregator of ticket information and incorporated its capabilities into the current Seatgeek operation.

5. Displaying event pages for specific locales *in California* is not the only fashion in which Seatgeek's website is clearly tailored to reach out to California residents. For example, Seatgeek users automatically agree to Seatgeek's terms of use by either signing up with Seatgeek or purchasing event tickets through Seatgeek.[1] Those terms of use specifically target California residents with a paragraph indicating that California residents waive any rights they may have under a specific California statute, Section 1542 of the Civil Code. This provision obviously and specifically targets California and its residents.

6. For these and other reasons, Defendant's illegal conduct is directed at and harms California residents, including Plaintiff, and if not for Defendant's contact with the forum, including with TikTok and other California entities, Plaintiff would not have suffered harm.

7. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 because Defendant (1) is authorized to conduct business in this District and, as noted above, has intentionally availed itself of the laws and markets within this District; (2) does substantial business within this District; and (3) is subject to personal jurisdiction in this District because it has purposefully availed itself of the laws and markets within this District and has purposefully directed its activities toward this District.

**PARTIES**

8. Plaintiff Jose Torres ("Plaintiff" or "Mr. Torres") is, and at all times relevant to the events alleged herein was, a citizen of California residing in California.

---
[1] Plaintiff did not undertake either of these actions.

9. Defendant Seatgeek, Inc. ("Defendant" or "Seatgeek") is a Delaware corporation that owns, operates, and/or controls https://seatgeek.com (the "Website"), an online platform that sells event tickets, including to events in California, to users nationwide, including California users.

10. Defendant Seatgeek, along with its affiliates and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 25, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

11. Plaintiff is informed and believes that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants, and that each of the acts and/or omissions complained of herein was ratified by each of the other Defendants.

## FACTUAL ALLEGATIONS

12. Seatgeek, Inc. is the proprietor of https://seatgeek.com, an online platform that sells event tickets, including to events in San Francisco and other cities in California, to users nationwide, including California users.

13. SeatGeek has implemented various trackers including the TikTok Pixel and Meta Pixel on its platform ("the Trackers"). SeatGeek uses the Trackers to collect the website users' IP addresses, unique identifiers and browsing information, and surreptitiously shares this information with TikTok and Meta (also referred to as Facebook) without prior consent or a court order.

14. By installing these Trackers, SeatGeek can track users and interactions on

its platform and deliver more effective targeted ads, thus increasing ad revenue. This data can allow it to place targeted advertisements, increasing brand awareness and sales. SeatGeek uses the trackers to obtain and analyze users' data for its own profit.

**The TikTok Pixel**

15. SeatGeek shares information with TikTok. The TikTok Pixel is a code snippet implemented by site owners including Seatgeek onto their websites, including the Website. The TikTok Pixel enables Seatgeek to track users' interactions with the Website. Seatgeek maintains control over the data collected and reported by the TikTok Pixel through TikTok Events Manager. By utilizing this tool, website owners can specify the "Events" they want to track and report to TikTok. "Events" refer to specific actions and interactions taken by website visitors to achieve business objectives, such as adding items to a cart, filling out forms, or making purchases.

16. Additionally, the TikTok pixel collects and reports supplementary metadata to TikTok, which includes timestamp (when an event on the Website took place), IP address (used to determine the geographic location of an event), unique identifiers (cookies that are assigned to a user's device or browser session that distinguish one user from another) and device details (make, model and operating system of devices accessing the Website), along with browser information.

17. The Tiktok Pixel collects information like this automatically on everyone who visits the Website, including Plaintiff, regardless of whether the Website user has a TikTok account. Collecting this information is the sole purpose of the TikTok Software.

18. Defendant installed the TikTok Software on its Website software in order to identify website visitors who would otherwise be anonymous. Plaintiff visited Defendant's website after the TikTok Software was installed.

19. The TikTok Software acts via a deanonymization process known as "fingerprinting." Put simply, the TikTok Software collects as much data as it can

about an otherwise anonymous visitor to the Website and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of individuals in California, the rest of the United States and abroad. This allows TikTok to associate the information it obtained through the Pixel with personally identifying information.

20. The TikTok Software begins to collect information the moment a user lands on the Website, regardless of whether the user eventually encounters and/or interacts with the Website's Privacy Notice. TikTok's "AutoAdvanced Matching" technology scans every website for information, such as name, date of birth, and address. This information is sent simultaneously to TikTok, so that TikTok can isolate with certainty the individual to be targeted.

21. As explained on TikTok's "Business Help Center" (https://ads.tiktok.com/help/article/tiktok-pixel):

> The pixel collects information available via standard web browsers, like Chrome. This includes:
> - **Ad/Event information:** Information about the ad a person on TikTok has clicked on or an event that was initiated.
> - **Timestamp:** Used to determine when website actions took place, like when a page was viewed or when a product was purchased.
> - **IP Address:** Used to determine the geographic location of an event.
> - **User Agent:** Used to determine the device make, model, operating system, and browser information.
> - **Cookies:** Used to help with the measurement, optimization, and targeting of user campaigns. First-party cookies are optional, but third-party cookies are on by default with the TikTok Pixel. Performance is boosted when first- and third-party cookies are paired with Advanced matching.
> - **Metadata & Button Clicks:** Includes descriptive page metadata,

structured microdata, page performance data, and button clicks. Tiktok uses this information to provide recommendations to businesses using the TikTok Pixel on how to enhance their pixel event setup and also to offer automated solutions. This information can also be used to personalize ad campaigns for TikTok users and improve TikTok's ad delivery systems.

22. In addition, in order to accurately associate events collected by the pixel to a specific user, TikTok offers the "AutoAdvanced Matching" feature. This feature works by automatically collecting form data, such as email addresses, phone numbers, and other identifiers in hashed form. This data is then used to enhance the accuracy of matching users to their TikTok profiles, improving the targeting of ads. **When a website asks the user to submit information such as an email or phone number, this data is simultaneously sent to TikTok. This allows TikTok to accurately identify the individual.** The "Automatic Advanced Matching" feature is not enabled by default, and website owners are encouraged to activate it and agree to share their users' phone numbers and email addresses.

**Manage configurations**
These are recommended settings that can help you make the most of your pixel.

**Increase audience size and attributed conversions**
Automatic Advanced Matching (AAM) is used with your pixel to automatically scan customer info on your website to match web events to TikTok users. This helps attribute more conversions to your ads and improve ad targeting. Learn more

For industries such as financial services or healthcare, it's recommended you also use Manual Advanced Matching (MAM). Learn more

🔘 Enable Automatic Advanced Matching   Recommended

The customer info you allow to be sent:

☑ Email
☑ Phone number

This info will be hashed to better protect user privacy before sharing with TikTok. If you operate within a more regulated or sensitive industry like financial services or health care, consider using MAM instead of AAM.

23. Auto Advanced Matching was turned on for pages on the Website during the time period pertinent to this matter.

**The Meta (Facebook) Pixel**

24. Seatgeek also employs the Meta Pixel, formerly known as the Facebook pixel, a snippet of JavaScript code that loads a small library of functions Seatgeek can use to track Facebook ad-driven visitor activity on the Website. It relies on Facebook cookies, which enable Facebook to "match" Seatgeek's website visitors to their respective Facebook user accounts.

25. SeatGeek shares each user's Facebook ID ("FID") and IP address, as well as browsing habits and interactions, with Facebook. An FID **uniquely identifies** an individual's Facebook user account. **Anyone who possesses an FID can use this identifier to quickly and easily locate, access, and view, the corresponding Facebook profile.** Simply put, anyone who knows how to use Facebook can use the information that the company is disclosing and identify any Facebook user. In addition, the Meta Pixel allows Seatgeek to track the number of times users "convert," i.e., take actions Seatgeek considers valuable, allowing Seatgeek to measure advertising effectiveness.

26. Once users are "matched" by Pixel functions, Meta can tally their actions on the Website in the Facebook Ads Manager, allowing Seatgeek to use the data to analyze the Website's conversion flows and optimize its ad campaigns. By default,

the Meta Pixel tracks URLs visited, domains visited, the devices the Website's visitors use, and browser data such as the IP address, browser information, page location, document, FID, Pixel ID, Facebook Cookie, buttons clicked, pages visited, and optional custom data. It also allows Seatgeek to define custom audiences, allows the targeting of visitors most likely to "convert," and sets up "Advantage+ catalog advertising campaigns," allowing Seatgeek to display to website users its most relevant offerings based on their interests, intent and actions.

27. Using this tool, SeatGeek shares its users' online activity with Meta, including their FIDs, User Agent, IP addresses, and other metadata, despite users having not consented to the sharing of this information.

28. Defendant installed the Meta Pixel on its Website in order to identify website visitors who would otherwise be anonymous. Plaintiff visited Defendant's website after the Meta Pixel was installed.

**Other Exposures of Private Data**

29. When users click on the Sign Up button to register to the Website, they automatically agree to the Website's terms of use and privacy policy.

30. SeatGeek's privacy notice indicates that it retains companies to help handle mail and email, market its products and services, handle purchases of tickets to certain events, analyze user behavior, process credit card transactions, and provide customer service. It also indicates that these companies have access to personal information to perform their functions.

31. Even though those companies agree not to use the information for any purposes other than to perform functions for Seatgeek, this practice multiplies the number of persons who, at least temporarily, have access to the personal information of Website users.

32. The Website instantly sends communications to TikTok and Meta whenever any user lands on the website, including Plaintiff, and every time a user clicks on a page.

**These Tracers are Trap and Trace Devices**

33. CIPA defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." (Cal. Penal Code § 638.50(c).)

34. The TikTok Software and the Meta Pixel are processes to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing, addressing, and signaling information generated by users, who are never informed that the website is collaborating with TikTok and Meta to obtain their phone number and other identifying information.

35. Each of these trackers is "reasonably likely" to identify the source of incoming electronic impulses. In fact, they are specifically designed to meet this objective as well as other objectives pertaining to the sharing of information individual to each Website user.

36. The California Invasion of Privacy Act ("CIPA"), California Penal Code § 630 *et. seq.*, imposes civil liability and provides for statutory damages for the installation of trap and trace software without a court order. (*Id.* §§ 637.2, 638.51; *see, e.g., Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) (holding that TikTok Software was properly alleged to be a trap and trace device because it communicates over the internet and the statutory definition of a trap and trace device expressly covers "wire communication" and "electronic communication" and is not limited to telephone lines).)

37. Defendant did not obtain Class Members' express or implied consent to be subjected to data sharing with TikTok, Meta and Pixel for the purposes of de-anonymization and information sharing.

///

## CLASS ALLEGATIONS

38. Plaintiff brings this action individually and on behalf of all others similarly situation (the "Class") defined as follows:

**All persons within California whose identifying information was sent to TikTok and Meta as a result of visiting the Website within the limitations period, and who did not register with Seatgeek and/or purchase tickets from Seatgeek.**

39. NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be at least in the tens of thousands and likely more. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

40. COMMONALITY: Common questions of fact and law exist as to all Class Members and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

    a.    Whether Defendant installed any or all of the Trackers on the Website;

    b.    Whether the TikTok Software is a trap and trace process as defined by California law;

    c.    Whether Plaintiff and Class Members are entitled to statutory damages; and

    d.    Whether Class Members are entitled to injunctive relief.

41. TYPICALITY: As a person who visited Defendant's Website and whose personal information was fingerprinted and de-anonymized by the TikTok and Meta pixels, Plaintiff is asserting claims that are typical of the Class.

42. ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in class

action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper can be excluded.

43. SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of each Class Member is impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system would be unduly burdened should individual litigation of numerous cases addressing identical issues proceed.

## FIRST CAUSE OF ACTION

**Violations of California Trap and Trace Law Cal. Penal Code § 638.51**

**(the "California Trap and Trace Law")**

44. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

45. The California Trap and Trace Law provides that "a person may not install or use…a trap and trace device without first obtaining a court order…." Cal. Penal Code § 638.51(a).

46. A "trap and trace device" is defined as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." *Id.* § 638.50(c).

47. Defendant used trap and trace processes by deploying the Trackers on its Website because the Trackers are designed to capture the phone number, email, routing, addressing and other signaling information of website visitors. As such, the Trackers are designed precisely to identify the source of the incoming electronic and wire communications to the Website in violation of the California Trap and Trace Law. Defendant also did not obtain consent from Plaintiff or any of the Class Members before using trap and trace technology to identify visitors of its Website.

48. CIPA imposes civil liability including statutory damages for violations of the California Trap and Trace Law. (Cal. Penal Code § 637.2; *see also C2 Educ. Sys. Inc.*, 2024 WL 3561367.)

## PRAYER

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel;

2. An order declaring Defendant's conduct violates CIPA;

3. An order of judgment in favor of Plaintiff and the Class against Defendant on the cause of action asserted herein;

4. An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;

5. Statutory damages pursuant to CIPA;

6. Prejudgment interest;

7. Reasonable attorneys' fees and costs; and

8. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

Dated: August 21, 2025         **ONGARO PC**

By: _____
DAVID R. ONGARO
GLEN TURNER
Attorneys for Plaintiff Jose Torres

## **DEMAND FOR JURY TRIAL**

Plaintiff Jose Torres hereby demands a trial by jury.

Dated: August 21, 2025          **ONGARO PC**

By: _____
DAVID R. ONGARO
GLEN TURNER
Attorneys for Plaintiff Jose Torres

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is 1604 Union Street, San Francisco, CA 94123.

On <u>August 21, 2025</u>, I served a true copy of the following document described as**:**

on the interested parties in this action as follows:

**BY E-FILING:** By electronically serving the document(s) listed above via CM/ECF on the recipients designed on the Transaction Receipt located on the CM/ECF website.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 21, 2025, in San Francisco, California.

*/s/ Emily Groleski*
Emily Groleski