Heather J. Silver (SBN 285509)
Blake M. Bailus (SBN 360713)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Heather.Silver@gtlaw.com
Blake.Bailus@gtlaw.com

Attorneys for Defendant
SeatGeek, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE TORRES, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>SEATGEEK, INC., a Delaware corporation headquartered in New York; and DOES 1 through 25, inclusive,<br><br>        Defendants. | Case No. 3:25-CV-07118-LB<br><br>Assigned to Hon. Laurel Beeler<br><br>**DEFENDANT SEATGEEK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Concurrently filed with Request for Judicial Notice; Declaration of Heather J. Silver; and [Proposed] Orders]<br><br>Action filed:  August 22, 2025<br><br>Date:      February 19, 2026<br>Time:     9:30 a.m.<br>Place:    Courtroom B, 15th Floor |

## NOTICE OF MOTION AND MOTION TO DISMISS:

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on February 19, 2026 at 9:30 a.m., or as soon thereafter as the matter may be heard, before the Honorable Laurel Beeler, United States Magistrate Judge for the Northern District of California, located at the Phillip Burton Federal Building and United States Courthouse, 450 Golden Gate Avenue, Courtroom B, 15th Floor, San Francisco, California 94102, Defendant SeatGeek, Inc. ("SeatGeek") will, and hereby does, move the Court for an order dismissing the Complaint filed by Plaintiff Jose Torres ("Plaintiff") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff has not pled a concrete harm under Article III, and because Plaintiff fails to state a claim upon which relief may be granted. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Heather J. Silver and Request for Judicial Notice, and all pleadings, arguments, and matters before the Court.

## STATEMENT OF RELIEF SOUGHT

SeatGeek seeks an order dismissing Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction because Plaintiff fails to allege an Article III injury. The threshold jurisdictional defect requires dismissal of the Complaint. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."). Should the Court reach the merits of Plaintiff's claim, however, SeatGeek seeks dismissal under Fed. R. Civ. P. 12(b)(6) because Plaintiff fails to allege sufficient facts to state a plausible claim for violation of Section 638.51 of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.*, because that statute does not prohibit the use of the web-based technology allegedly used by SeatGeek on its website to collect from Plaintiff the information at issue in the Complaint.

Dated: December 17, 2025

REENBERG TRAURIG, LLP

By  */s/ Heather J. Silver*
Heather J. Silver
Attorneys for Defendant
SeatGeek, Inc.

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................... 1

I.    INTRODUCTION ........................................................................................................................ 1

II.   STATEMENT OF THE ISSUES TO BE DECIDED ................................................................. 4

III.  STATEMENT OF RELEVANT FACTS .................................................................................... 4

IV.   PLAINTIFF HAS NOT ALLEGED AN INJURY-IN-FACT ................................................... 5

      A.    Standards for Motions to Dismiss Pursuant to Rule 12(b)(1)...................................... 5
      B.    Constitutional Requirements for Standing .................................................................... 5
      C.    Plaintiff Alleges No Concrete Harm. ............................................................................ 6

V.    PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 638.51 ............................... 11

      A.    Standards for Motions to Dismiss Pursuant to Rule 12(b)(6)..................................... 11
      B.    Plaintiff Fails to Allege Conduct Within the Limitations Period. ............................... 11
      C.    Section 638.51 Applies Only to Tracking Technology for Telephones, Not Websites. ... 12

            1.    The Origin of Section 638.51 is Rooted Firmly in Telephone Surveillance.............. 13
            2.    Unlike CIPA, the California Consumer Privacy Act was Enacted to Govern the Internet..................................................................................................... 14
            3.    The Legislative History and Framework of Section 638.51 Show the Statute Applies Only to Telephone Tracking. ................................................ 15
            4.    The Rule of Lenity Precludes Plaintiff's Expansive Interpretation of CIPA............. 16

      D.    Section 638.51 Does Not Bar a Website's Collection of Visitors' Information. ................. 18

VI.   CONCLUSION ......................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................. 11

*Beltran v. Drs. Med. Ctr. of Modesto*,
    No. 23-cv-1670, 2025 WL 1635467 (E.D. Cal. June 9, 2025) ................................ 10

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ........................................................ 3, 11, 12

*Brown v. Google LLC*,
    685 F. Supp. 3d 909 (N.D. Cal. 2023) ...................................................................... 5

*Carolus v. Nexstar Media Inc.*,
    No. 24-cv-7790, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) ................................. 8

*Cellular Tel. Digital Analyzer*,
    885 F. Supp. 197 (C.D. Cal. 1995) ......................................................................... 16

*Columbia Pictures Indus. v. Bunnell*,
    No. 06-cv-1093, 2007 WL 2080419 (C.D. Cal. May 29, 2007) .............................. 18

*Doe v. Eating Recovery Center LLC*,
    No. 23-cv-5561, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ............ 3, 10, 12, 13, 17, 18

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
    895 F.3d 1166 (9th Cir. 2018) .................................................................................. 5

*Findley v. Am. Home Mortg. Corp.*,
    No. 10-cv-2885, 2010 WL 5169046 (E.D. Cal. Dec. 14, 2010) ............................. 12

*In re First T.D. & Inv., Inc.*,
    253 F.3d 520 (9th Cir. 2001) .................................................................................. 12

*Gabrielli v. Insider, Inc.*,
    No. 24-cv-1566, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ................................. 9

*Gutierrez v. Converse Inc.*,
    No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025) ........................................ 17

*Heiting v. FKA Distrib. Co.*,
    No. 24-cv-7314, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025) ................................... 9

*Hughes v. Vivint, Inc.*,
    No. 24-cv-3081, 2024 WL 5179916 (C.D. Cal. July 12, 2024) ............................ 9, 10

*I.C. v. Zynga, Inc.*,
    600 F. Supp. 3d 1034 (N.D. Cal. 2022) .................................................................. 10

*In re Innovatio IP Ventures, LLC Patent Litig.*,
  886 F. Supp. 2d 888 (N.D. Ill. 2012) ................................................................. 18

*Khamooshi v. Politico LLC*,
  786 F. Supp. 3d 1174 (N.D. Cal. 2025) ................................................................ 8

*Khamooshi v. Politico LLC*,
  No. 24-cv-7836, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ...................... 3, 8, 11

*Kishnani v. Royal Caribbean Cruises Ltd.*,
  No. 25-cv-1473, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ................... 6, 9, 10

*Lien v. Talkdesk, Inc.*,
  No. 24-cv-6467, 2025 WL 551664 (N.D. Cal. Feb. 19, 2025) .......................... 10

*Lightoller v. JetBlue Airways Corp.*,
  No. 23-cv-361, 2023 WL 3963823 (S.D. Cal. June 12, 2023) .......................... 10

*Macy v. CSA-18 Special Districts Pub. Works*,
  No. 24-cv-902, 2024 WL 4406936 (C.D. Cal. Aug. 15, 2024) .......................... 12

*Magney v. Cnty. of Humboldt*,
  No. 17-cv-2389, 2018 WL 1156817 (N.D. Cal. Mar. 5, 2018) .......................... 12

*Mikulsky v. Noom, Inc.*,
  682 F. Supp. 3d 855 (S.D. Cal. 2023) .......................................................... 7

*Mitchener v. CuriosityStream, Inc.*,
  No. 25-cv-1471, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) .......................... 9

*O'Donnell v. U.S. Bancorp Equipment Finance, Inc.*,
  No. 10-cv-0941, 2010 WL 2198203 (N.D. Cal. May 28, 2010) ......................... 12

*Park v. Thompson*,
  851 F.3d 910 (9th Cir. 2017) ...................................................................... 11

*Phillips v. U.S. Customs & Border Prot.*,
  74 F.4th 986 (9th Cir. 2023) ...................................................................... 7

*Popa v. Microsoft Corp.*,
  153 F.4th 784 (9th Cir. 2025) ........................................................ 1, 3, 6, 7, 8, 10

*Price v. Converse, Inc.*,
  No. 24-cv-8091, 2025 U.S. Dist. LEXIS 198738 (C.D. Cal. Sep. 30, 2025) ................ 7

*Rodriguez v. Holder, Jr.*,
  619 F.3d 1077 (9th Cir. 2010) ..................................................................... 16

*Saeedy v. Microsoft Corp.*,
  No. 23-cv-1104, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ....................... 10

*Scott v. Breeland*,
  792 F.2d 925 (9th Cir. 1986) ........................................................................ 5

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ................................................................................ 5, 6

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*,
  830 F. App'x 821 (9th Cir. 2020) ................................................................... 5

*In re Transcon Lines*,
    58 F.3d 1432 (9th Cir. 1995) ................................................................................ 18

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ...................................................................................... 3, 6

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ............................................................................... 5

*Wooten v. BioLife Plasma Services L.P.*,
    No. 25-cv-99, 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) ................................ 8, 10

*Xu v. Reuters News & Media Inc.*,
    No. 24-cv-2466, 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) ................................... 9

*In re Zynga Priv. Litig.*,
    750 F.3d 1098, 1104, 1104-05, 1108 (9th Cir. 2014) .............................................. 10

**State Cases**

*Aviles v. Liveramp, Inc.*,
    No. 24STCV19869, 2025 WL 487196 (Super. Ct. Jan. 28, 2025) ......................... 4, 19

*Casillas v. Trans. Optical, Inc.*,
    No. 23STCV30742, 2024 WL 4873370 (Super. Ct. Sep. 9, 2024) ....................... 15, 18

*Harrott v. Cnty. of Kings*,
    25 Cal. 4th 1138 (2001) ..................................................................................... 12

*Licea v. Hickory Farms LLC*,
    No. 23STCV26148, 2024 WL 1698147 (Super. Ct. Mar. 13, 2024) .......................... 18

*Mendoza v. Fonseca McElroy Grinding Co., Inc.*,
    11 Cal.5th 1118 (2021) ...................................................................................... 12

*Pac. Palisades Bowl Mobile Ests., LLC v. City of L.A.*,
    55 Cal. 4th 783 (2012) ....................................................................................... 17

*People v. Reynoza*,
    15 Cal. 5th 982 (2024) ....................................................................................... 12

*People v. Williams*,
    17 Cal. 5th 99 (2024) ......................................................................................... 16

*Ramos v. Garcia*,
    248 Cal. App. 4th 778 (2016) .............................................................................. 12

*Rodriguez v. Sparc Grp., LLC*,
    No. 24STCV26946, 2025 Cal. Super. LEXIS 41697 (Super. Ct. Jul. 9, 2025) ............ 19

*Sanchez v. Cars.com Inc.*,
    No. 24STCV13201, 2025 WL 487194 (Super. Ct. Jan. 27, 2025) ............................ 16

*Scharon v. Paramount Global*,
    No. 25STCV10585, 2025 WL 2996812 (Super. Ct. Oct. 03, 2025) .......... 15, 16, 18, 19

*Texas Com. Bank v. Garamendi*,
    28 Cal. App. 4th 1234 (1994) .............................................................................. 12

*Troyk v. Farmers Grp., Inc.*,
    171 Cal. App. 4th 1305 (2009) ............................................................ 17

**Federal Statutes**

18 U.S.C. § 3121–3127 ........................................................................ 13

18 U.S.C. § 3121(a) ............................................................................. 13

18 U.S.C. § 3123 .................................................................................. 13

18 U.S.C. § 3123(b)(1)(A) ................................................................... 13

**State Statutes**

Cal. Civ. Code § 1798.140(v)(1) ......................................................... 14

Cal. Civ. Code § 1798.100 ..................................................................... 1

Cal. Civ. Code § 1798.120 ..................................................................... 2

Cal. Civ. Code § 1798.120(a)(1) ......................................................... 14

Cal. Civ. Code § 1798.140(e) .............................................................. 14

Cal. Civ. Code § 1798.149(k) .............................................................. 14

Cal. Civ. Code § 1798.175 ................................................................... 17

Cal. Civ. Code § 1798.100 ................................................................... 17

Cal. Pen. Code § 638.2(d) ............................................................. 13, 16

Cal. Pen. Code § 638.50(c) .................................................................... 6

Cal. Pen. Code § 638.51 .......... 1, 2, 3, 4, 6, 8, 9, 10, 11, 13, 15, 16, 17, 18, 19

Cal. Pen. Code § 638.51(a) .................................................................. 13

Cal. Pen. Code § 638.52 ...................................................................... 13

Cal. Pen. Code § 638.52(b) .................................................................... 3

Cal. Pen. Code § 638.52(d) .................................................................... 3

Cal. Pen. Code § 638.54 ...................................................................... 15

Cal. Pen. Code § 638.55 ...................................................................... 15

**Rules**

Fed. R. Civ. P. 8 .......................................................................... 3, 11, 12

Fed. R. Civ. P. 11 ................................................................................... 2

Fed. R. Civ. P. 12(b)(1) .......................................................................... 5

Fed. R. Civ. P. 12(b)(6) ........................................................................ 11

## I.    INTRODUCTION

Plaintiff Jose Torres ("Plaintiff") seeks to recover a windfall in statutory damages under the California Invasion of Privacy Act ("CIPA") based simply on having visited Defendant SeatGeek's ("SeatGeek") website, www.seatgeek.com ("Website"), at a time when the Website allegedly used tracking technologies developed by third parties, TikTok and Meta. Plaintiff does not claim he provided his personal information or took any action on the site during his visit, such as purchasing live event tickets or signing up for an account. In fact, his allegations expressly *deny* that he undertook either action. Compl. ¶ 5 n.1. Yet Plaintiff claims that SeatGeek used TikTok's and Meta's tracking scripts to collect visitors' IP address and "other metadata," such as URLs of pages visited, a "timestamp" of when a page was viewed, "button clicks," and "browser information." *Id.* ¶¶ 21, 26, 27. He alleges no harm (because none exists).

Indeed, despite the Legislature's and courts' direction otherwise, Plaintiff persists in claiming that the use of the third-party scripts contravenes the prohibition against "trap and trace" devices in Section 638.51 of CIPA. *Id.* ¶ 48. He further insists that this purported violation automatically satisfies his burden to show the injury necessary for standing to pursue his claim. *Id.* Recent binding Ninth Circuit precedent—confirming and aligning with the weight of district court authority—holds that it does not. *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) (affirming dismissal on standing grounds under analogous privacy statute). There must be "more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury." *Id.* at 794.

Further undermining Plaintiff's lawsuit is that the Legislature has acknowledged, in its own words, that this action is one of "thousands" that "distorts CIPA's original legislative intent" by alleging "typical online business activities, like web analytics or online advertising," constitute a criminal trap and trace device under CIPA.[1] Yet CIPA was "enacted in 1967, long before the internet was even developed." RJN, Ex. 9 at 8. In contrast, just seven years ago, the California Legislature enacted the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.100 *et seq.*—the "strongest privacy law in the nation" reflecting "the Legislature['s] unanimou[s] deci[sion] that consumers benefit most when these types of online business activities [are] regulated by" an "omnibus privacy law which is the guiding statute for online privacy protections

---

[1]    Request for Judicial Notice ("RJN"), Ex. 9 at 5, 8, 18 (Assem. Comm. on Public Safety Bill Analysis, Senate Bill 690, 2025-2026 Reg. Sess. ("SB 690"), 7/1/2025). "In the last 18 months, trial lawyers have sued over 1,500 businesses using [CIPA]" to argue "typical business activities. . . necessitat[e] 'opt-in' consent . . . ." RJN, Ex. 7 at 9 (Sen. Comm. on Public Safety Bill Analysis, SB 690, 4/25/2025).

including data protections." *Id*., Ex. 9 at 5, 8.

Relevant here, the CCPA *allows* businesses to use the very online tracking technology on which Plaintiff bases his claim *without prior affirmative consent* from website visitors for targeted advertising, so long as they offer visitors the ability to opt *out* of (*i.e.*, turn off) such tracking. *See* Cal. Civ. Code § 1798.120. Given the CCPA's comprehensive regulation of these online activities, the Legislature has recently recognized as "*abusive*" online-tracking-based CIPA lawsuits like this one, where "plaintiffs simply visit[] a website" to "see if there are any [trackers] on the website" and "no corresponding opt-in consent mechanism . . . ." RJN, Ex. 9 at 6 (emphasis added). These claims attempt to seek statutory damages even where a business, like SeatGeek, is in "*compliance with* [the] CCPA's opt-out regime," and they "do nothing to help consumer privacy." *Id.* (emphasis added).

In response to the barrage of lawsuits, the California Senate introduced SB 690 earlier this year to clarify that CIPA, a "50-year-old criminal eavesdropping statute, *does not apply to modern, online business activities that are already intentionally, purposefully, and extensively regulated by the CCPA*." *Id.* (emphasis added). Although SB 690, which unanimously passed the Senate, is being held in committee until next year, its robust legislative history aimed at eliminating CIPA claims against website operators proves why Plaintiff's claim fails. In defending a website operator against the same CIPA claim earlier this year that Plaintiff now brings against SeatGeek, Plaintiff's attorneys who filed this suit and purported to certify its merit under Rule 11 put it simply: "Plaintiff's improper application of CIPA cannot be squared with [the CCPA]" because "[t]he CCPA explicitly authorizes the conduct Plaintiff seeks to criminalize." RJN, Ex. 12 (*PRN* Mot. at 3).[2] We agree.

---

[2]     In agreement with the Legislature's recent pronouncement that CIPA does not apply to the web tracking at issue here, Plaintiff's counsel of record, Ongaro, PC ("Ongaro")—the attorneys that initiated Plaintiff's case—vehemently defended a website operator against CIPA § 638.51 claims earlier this year predicated on the *same* conduct Plaintiff accuses SeatGeek of now. *See Mitchener v. PRN Health Services, LLC* ("*PRN*"), Case No 5:25-cv-00013-EKL (N.D. Cal.). In a motion to dismiss, Ongaro argued that the same "proposed interpretation of Section 638.51" now advanced in Plaintiff's Complaint "intrudes upon the scope of the CCPA," which expressly "regulates the collection of 'personal information' of website visitors by businesses including that shared with cookies and pixels *like the TikTok Cookie*." RJN, Ex. 12 (*PRN* Motion to Dismiss at 3, 16 ("*PRN* Mot.") (ECF No. 11) (emphasis added)). After the undersigned counsel sent Ongaro a letter informing them of the problems with their abrupt role reversal, as well as Ongaro's irreconcilable conflict of interest based on their use of tracking technologies on the firm's website, Ongaro claimed that they intend to withdraw from the case once replacement counsel was found. *See* Declaration of Heather J. Silver ("Silver Decl.") ¶¶ 2, 4, Ex. A; RJN, Ex. 10 (showing Ongaro's continued use of Google Analytics). Additionally, the client-solicitation website for potential plaintiffs (including, in all likelihood, Plaintiff) with claims against SeatGeek is operated by Don Bivens, PLLC ("Bivens")—the firm that referred Plaintiff's case to both Ongaro and newly added co-counsel, Adam J. Zapala of Cotchett, Pitre & McCarthy, LLP ("Cotchett") and Katrina Carroll of Carroll Shamberg LLC—and that website uses the *same* TikTok and Meta scripts that Plaintiff claims is a violation of § 638.51. Silver Decl. ¶¶ 3, 5; RJN, Ex. 11. Cotchett's website uses Google Analytics and Google's DoubleClick tracking technologies, as well. RJN, Ex. 13.

In sum, Plaintiff lacks standing and fails to state a claim:

**_First_**, Plaintiff cannot establish an Article III injury necessary to maintain suit in federal court. A bare procedural violation of CIPA without any accompanying harm, as Plaintiff alleges here, is insufficient. *See TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). As the Ninth Circuit squarely instructed in *Popa* when evaluating whether a plaintiff had standing based on the collection of the similarly generic and purely technical website identifiers (plus much more than Plaintiff alleges here), the "tracking" of such information is not "remotely similar" to the "kind of harm" required to establish standing. 153 F.4th at 786, 791. As in *Popa*, Plaintiff "identifies 'no embarrassing, invasive, or otherwise private information collected.'" *Khamooshi v. Politico LLC*, No. 24-cv-7836, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) ("*Khamooshi II*") (quoting *Popa*, 153 F.4th at 791).

**_Second_**, Plaintiff fails to satisfy Rule 8 because he does not plead his visit to the Website occurred within the last year, and thus does not allege his claim is timely, having arisen within CIPA's one-year limitations period. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 134-35 (N.D. Cal. 2020).

**_Third_**, Section 638.51 does not apply to web-based tracking scripts. *See* RJN, Ex. 12 (*PRN* Mot. at 20) (the "only reasonable interpretation" of CIPA § 638.51 is that "technology on a website that collects and shares [a] visitor's 'information' (*such as the TikTok cookie*) is not a 'trap and trace device'") (emphasis added). Indeed, the framework of the statute confirms that a "trap and trace device" refers only to devices "attached" to a "telephone line," not website code. Cal. Penal Code § 638.52(b), (d). Put another way, this suit is nothing more than a "thinly veiled attempt to bypass the CCPA—the robust privacy regime that heavily regulates how companies may collect customer data." *Id.* The legislative record in fact confirms that CIPA's trap and trace statute was enacted to govern "telephone surveillance" only. RJN, Ex. 5 at 1 (Assem. Comm. on Approps. Bill Analysis, Assembly Bill 929, 2015-2016 Reg. Sess. ("AB 929"), 4/29/2015).[3] Finally, since CIPA is a criminal statute, the Court must "narrowly construe" it and adopt an interpretation "that does not encompass the conduct

---

[3]     Most of Plaintiff's attorneys, including (i) Ongaro, the firm that filed Plaintiff's Complaint and certified it under Rule 11, (ii) Cotchett, his newly appearing co-counsel, and (iii) Bivens, the firm that referred Plaintiff's case to Ongaro and Cotchett, are, in Plaintiff's view, apparently in violation of the same statute asserted here: Their websites embed third-party online tracking technologies (Google Analytics, Google's DoubleClick, and even the two scripts at issue here, the TikTok and Meta pixels) that collect visitors' website information—including their browser and device identifiers (and even their *search terms*)—without obtaining visitors' opt-in consent. RJN, Exs. 10, 11, 13. This only confirms the absurdity of Plaintiff's reading of CIPA, which, under the legal theory he promotes, his own attorneys violate.

at issue in this case." *Doe v. Eating Recovery Center LLC*, No. 23-cv-5561, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025).

**Fourth**, the prohibition on trap and trace devices does not apply to information about the user's device and software and IP address-based "geolocation data"—even where the alleged collection is done by third-party software installed on users' devices, as Plaintiff contends, because that information is necessarily transmitted by visitors to a website in order to access the website. *Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196, at *1-2, *3 (Super. Ct. Jan. 28, 2025); *see also* RJN, Ex. 12 (*PRN* Mot. at 2, 3) (acknowledging that public policy dictates against liability because "every internet connection involves the connecting computer transmitting its unique identifying IP address to the [website's] server").

For these reasons, the Court should grant the motion and dismiss the Complaint with prejudice.

## II.    STATEMENT OF THE ISSUES TO BE DECIDED

1. Does Plaintiff sufficiently plead an injury-in-fact to establish Article III standing?

2. Does Plaintiff plausibly state a claim for the use of a trap and trace device in violation of CIPA § 638.51?

## III.    STATEMENT OF RELEVANT FACTS

SeatGeek is a high-growth global ticketing leader. Its technology platform allows users to buy and sell tickets for a range of events, including live sports, concerts, and theater events. Compl. ¶ 9. Plaintiff is a citizen of California who claims to have visited the Website on an undisclosed date "after" purported tracking scripts provided by TikTok and Meta were installed. *Id.* ¶¶ 8, 18, 28. Plaintiff does not allege that he did anything on the Website, nor does he allege why he visited. *Id.* While he alleges that visitors can "sign[ ] up" for an account with SeatGeek and "purchas[e] event tickets" through the Website, he personally "did not undertake either of these actions." *Id.* ¶ 5 & n.1.

Plaintiff's claim arises from SeatGeek's alleged use of tracking scripts or "code" supplied by TikTok and Meta on the Website. Compl. ¶¶ 15, 24. According to Plaintiff, "SeatGeek uses the [TikTok and Meta] Trackers to collect [visitors'] IP addresses, unique identifiers and browsing information, and surreptitiously shares this information with TikTok and Meta (also referred to as Facebook)" without obtaining "prior consent" from visitors. *Id.* ¶ 13. By installing the scripts, SeatGeek allegedly "can track users and interactions on its platform and deliver more effective targeted ads" through a "process known as 'fingerprinting.'" *Id.* ¶¶ 14, 19.

Plaintiff alleges TikTok can "fingerprint[ ]" or "deanonymiz[e]" visitors with its "Auto Advanced Matching" feature "by automatically collecting form data, such as email addresses, phone numbers, and other identifiers in hashed form" and, similarly, Meta can "match" visitors "to their respective Facebook user accounts" by collecting visitors' "Facebook ID" ("FID"), but Plaintiff does not allege that he was ever identified by TikTok or Meta. Compl. ¶¶ 19, 20, 22, 24, 25. Nor does Plaintiff allege facts suggesting he could have been identified; he does not allege that he entered form data (name, email, etc.) during his Website visit or that he had an account with Facebook (or with TikTok, for that matter) at the time of his visit. Unsurprisingly, then, Plaintiff does not allege that he was exposed to targeted ads following his Website visit.

True that upon Plaintiff's visit, his IP address was necessarily transmitted to SeatGeek. Plaintiff could not have visited the Website without transmitting to it the information that he alleges was collected with TikTok's and Meta's scripts. When "a user visits a website, the user's browser sends a 'GET' request to the website" that "contains . . . the URL of the specific webpage the user is trying to access," "the user's IP address," information that "identifies the user's device platform and browser," and the "URL of the page on which the user clicked a link to access a new page . . . ." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 919-20 (N.D. Cal. 2023). The collection of such information is far from nefarious, but rather how web browsing works.

## IV. PLAINTIFF HAS NOT ALLEGED AN INJURY-IN-FACT

### A. Standards for Motions to Dismiss Pursuant to Rule 12(b)(1)

Plaintiff, as "the party seeking to invoke the jurisdiction" of an Article III federal court, bears "the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). As part of meeting that burden, Plaintiff must establish that he suffered a "concrete, particularized and actual or imminent 'injury-in-fact.'" *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018) ("a plaintiff seeking damages for the violation of a statutory right must not only plausibly allege the violation but must also plausibly allege a 'concrete' injury causally connected to the violation") (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). A defendant's Rule 12(b)(1) jurisdictional attack can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). On a facial attack, a court accepts as true only the "well-pleaded factual allegations." *Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, 830 F. App'x 821, 822 (9th Cir. 2020).

### B. Constitutional Requirements for Standing

To establish "the irreducible constitutional minimum" of standing, a plaintiff must have "(1) suffered an

injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id*. at 338 n.6 (quotation marks and citation omitted).

Under Article III, an "injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 594 U.S. at 427. "Traditional tangible harms," such as physical and monetary harms, qualify as "concrete" injuries. *Id*. at 425. So do certain "intangible harms" that have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*. But courts may not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id*. To that end, in *TransUnion*, the Supreme Court "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 426. Rather, "*TransUnion* requires a court to assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system," and a plaintiff must "demonstrate more than just a statutory violation when evaluating whether [he] has alleged a concrete injury." *Popa*, 153 F.4th at 791, 793.

### C. Plaintiff Alleges No Concrete Harm.

As courts have long recognized, and as the Ninth Circuit recently confirmed in *Popa*, none of the data allegedly collected from Plaintiff—information about his page views on the Website and benign identifiers like the device he viewed it on—is the type of "sensitive" information required to have the concrete injury necessary for standing. 153 F.4th at 791. Rather, Plaintiff's claim is based solely on purported trap and trace devices (TikTok's and Meta's scripts) which, "by definition," record data only "*about* [a] communication," *i.e.*, "metadata" like an IP address, "but '*not the content of the communication*'" itself. *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-1473, 2025 WL 1745726, at *4, *5 (N.D. Cal. June 24, 2025) (emphasis in original) (quoting Cal. Penal Code § 638.50(c) (dismissing § 638.51 claim for lack of standing). Because Plaintiff lacks a privacy interest in such metadata that is not "content," its collection cannot give rise to the concrete harm necessary to confer standing. *Id*. As the Ninth Circuit most recently ruled in *Popa*, absent the collection of "sensitive" information, the mere "tracking of [website] interactions," like what Plaintiff alleges here, is not an

"infringement of [a plaintiff's] privacy interest" sufficient to support standing. 153 F.4th at 791.

In *Popa*, the Ninth Circuit confirmed that an Article III injury does not arise from an alleged statutory violation alone: There is no "per se rule" that "greenlight[s]" standing any time privacy statutes are violated. *Id.* at 794. Moreover, *Popa* applied this rationale to reject standing for a claimed violation of a privacy statute involving far more invasive allegations than Plaintiff's here: Microsoft's software allegedly captured "over 30 different categories" of data, including every "URL," "click," "keystroke," and "movement," to "recreate [Popa's] entire visit." *Id.* at 786–87. The Ninth Circuit examined the "specific pieces of information" collected from Popa—*i.e.*, her "click[s] [for] certain products" and "brows[ing] for pet supplies"—and concluded that Popa "identifie[d] no embarrassing, invasive, or otherwise private information" collected from her (even if the software might be capable in the abstract of collecting that type of information). *Id.* at 786, 791. In the absence of allegations that any "sensitive" information was actually acquired from Popa, the "monitoring of Popa's interactions" was not "remotely similar" to the common-law privacy "benchmark[s]"—invariably requiring "highly offensive" intrusions—that her alleged harm must resemble to satisfy standing. *Id.* at 791.[4]

Following *Popa*, district courts have routinely dismissed "trap and trace" allegations based on a website's use of third-party software to capture visitors' IP addresses and other metadata—*i.e.*, exactly what Plaintiff alleges happened here. For instance, *Price v. Converse, Inc.* dealt with the alleged use of the same TikTok script Plaintiff alleges here to acquire device, browser, and "geographic" information which TikTok allegedly "match[ed] . . . with existing data [it] ha[d] acquired and accumulated about hundreds of millions of Americans" to "deanonymize" plaintiff. No. 24-cv-8091, 2025 U.S. Dist. LEXIS 198738, at *2, *5-6 (C.D. Cal. Sep. 30, 2025). The court found these allegations "insufficient to establish a 'concrete injury'" for standing. *Id.* at *6 (citation omitted). "Plaintiff d[id] not plead the TikTok Software 'caused h[im] to experience any kind

---

[4] Similar to *Popa*, Plaintiff alleges that TikTok's and Meta's scripts have the *capability* to record visitors' "email or phone number" and the actions they take on the Website such as the "buttons clicked," Compl. ¶¶ 22, 26, but he does not claim that he provided this information during his visit, *id.* ¶¶ 18, 28. His speculation about the possible acquisition of such data is irrelevant to *his* standing. *See Popa*, 153 F.4th at 791 & n.5 ("To the extent [the] [ ] software could be offensive (*e.g.*, involving "sensitive medical or financial" data), Popa did not "link[ ] these potential, generalized harms to the operation of [the software] *vis-à-vis* Popa."). And far more personal and substantive information than a phone number, name, or email implicates no privacy harm nor standing. *See Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 995-96 (9th Cir. 2023) (the "unlawful collection and retention" of "names, birthdays, social security numbers, occupations, addresses, social media profiles, and political views" does not "give[ ] rise to a concrete injury" (citation omitted); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (Plaintiffs lack standing under CIPA where "the 'personal information' [visitors] inputted" is "basic contact information" (*e.g.*, "email address or phone number")).).

of harm . . . remotely similar to the highly offensive interferences or disclosures that were actionable at common law,'" as Article III requires. *Id.* (quoting *Popa*, 153 F.4th at 791, 792).

Similarly, in *Khamooshi II*, this District relied on *Popa* to dismiss § 638.51 claims founded on the alleged use of advertising trackers to capture plaintiff's IP addresses, browsing activity, geolocation information, and other "device fingerprints" because those allegations "identified 'no embarrassing, invasive, or otherwise private information'" that could confer standing. 2025 WL 2822879, at *2, *3 (quoting *Popa*, 153 F.4th at 791). The data allegedly tracked in *Khamooshi II* and *Price*—covering virtually the same data in Plaintiff's Complaint— was far less prolific than in *Popa* where the information collected "also included the device type, browser type, and metadata akin to fingerprinting" and was *still* insufficient to confer standing. *Id.* at *3.

Most recently, *Wooten v. BioLife Plasma Services L.P.* assessed § 638.51 claims involving more personalized data than the information allegedly acquired from Plaintiff here and dismissed them under *Popa*. *See* No. 25-cv-99, 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025). Plaintiffs alleged the defendant plasma donation centers—which require donors to create an account on their website—used "trackers" supplied by third-parties Snap and Salesforce to capture their website activity when signing up for an account, including their email addresses, IP addresses, and information related to "the fact that [they] visited the website." *Id.* at *1. The email and IP address collection allegedly enabled Snap and Salesforce to "link users' identities across multiple websites" through "ID bridging," a process by which the third parties can "follow [users] all over the internet and feed them advertisements." *Id.* The court held the "one-time collection and dissemination of plaintiffs' IP and email addresses" did not "sufficiently impact[ ] plaintiffs' privacy interests to give rise to a concrete injury." *Id.* at *3. "[T]here is no legally protected privacy interest in an IP address" or "in such relatively quotidian private information as an email address," and plaintiffs did not allege "the third-party trackers collected any other 'embarrassing, invasive, or otherwise private information'" from them. *Id.* (quoting *Popa*, 153 F.4th at 791). As in *Price*, *Khamooshi II*, and *Wooten*, Plaintiff's standing here is not a close call— SeatGeek's use of ubiquitous online scripts to collect IP addresses and other "quotidian" metadata comes nowhere near the "highly offensive" conduct that Article III requires. *Id.*; *see Popa*, 153 F.4th at 791.

Even before *Popa*, federal courts regularly dismissed § 638.51 cases because the acquisition of the type of information the Complaint alleges was collected inflicted no "concrete" privacy injury. *E.g.*, *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1177, 1179-83 (N.D. Cal. 2025) ("*Khamooshi I*"); *Carolus v. Nexstar*

*Media Inc.*, No. 24-cv-7790, 2025 WL 1338193, at \*1-2 (N.D. Cal. Apr. 9, 2025) (same; no concrete injury where "tracking cookies" intercepted IP addresses, browser and device data, and other "identifying" metadata); *see Kishnani*, 2025 WL 1745726, at \*4 (no standing for TikTok's alleged acquisition of "geographic," "device[,] and browser" data); *Hughes v. Vivint, Inc.*, No. 24-cv-3081, 2024 WL 5179916, at \*3-5 (C.D. Cal. July 12, 2024) (same); *Heiting v. FKA Distrib. Co.*, No. 24-cv-7314, 2025 WL 736594, at \*3 (C.D. Cal. Feb. 3, 2025) (same); *Mitchener v. CuriosityStream, Inc.*, No. 25-cv-1471, 2025 WL 2272413, at \*5 (N.D. Cal. Aug. 6, 2025) (same).[5] *Popa* and its progeny confirm these courts were all correct.

For example, *Hughes* and *Mitchener*—which, like *Price*, involved allegations about TikTok's script akin to those in the Complaint—essentially foreshadowed *Popa*'s now-binding direction that no standing can exist here. In *Hughes*, TikTok allegedly "fingerprint[ed]" visitors by gathering their "device," "browser," "geographic, and url [sic]" data. 2024 WL 5179916, at \*1. Plaintiff lacked standing because he did "not allege any of the basic facts concerning her interaction with [defendant's] [w]ebsite," and she never alleged that "she entered her email address or phone number" on the website so that TikTok "could capture her personalized information." *Id.* at \*4, \*5. Plaintiff's claimed harm that TikTok could use her anonymous data to identify her, therefore, was "unsupported by the facts of the Complaint." *Id.* Likewise, on these same allegations, *Mitchener* held that, although plaintiff alleged "Defendants *could* gain 'additional information about [a] visitor such as name, date of birth, and address,' . . . he fails to convert that hypothetical into concrete harm to *him*." 2025 WL 2272413, at \*5 (emphasis in original). But "even if [these] allegations were sufficiently concrete," plaintiff *still* lacked an Article III harm since the "mere 'collection of basic contact information by . . . software . . . are not concrete harms.'" *Id.* at \*4 (citation omitted). The purported capture of mere "metadata" "crystalize[d] the futility of Plaintiff's suit" since he had "no expectation of privacy as to that type of data (e.g., his IP address or general geographic location)." *Id.* at \*6.

Put simply, Plaintiff's claim was ripe for dismissal for lack of standing well before *Popa*, and the Ninth Circuit's recent decision removed any remaining doubt. Like in the many Article III dismissals of § 638.51 claims issued both before and after *Popa*, Plaintiff alleges only "futil[e]" metadata was tracked, *id.*, and Plaintiff offers no facts to support standing based on the interception of "form data" (*e.g.*, a name or email) or "Events"

---

[5] *See also Gabrielli v. Insider, Inc.*, No. 24-cv-1566, 2025 WL 522515, at \*5 (S.D.N.Y. Feb. 18, 2025) (dismissing substantially the same allegations as in *Khamooshi I*); *Xu v. Reuters News & Media Inc.*, No. 24-cv-2466, 2025 WL 488501, at \*3-5 (S.D.N.Y. Feb. 13, 2025) (same).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

(*e.g.*, "adding items to a cart") that other visitors *besides* Plaintiff may have provided to "sign[ ] up" or "purchas[e] tickets" on the Website. Compl. ¶¶ 5, 15. Not only does Plaintiff disclaim "undertak[ing] . . . these actions," *id*. ¶ 5 n.1, he "fails to allege that []he has a TikTok [or Facebook] account that would allow [the] collection of h[is] anonymous information from visiting the Website to be associated with" him. *Hughes*, 2024 WL 5179916, at *5.[6] Nor does Plaintiff allege he suffered "any *actual* injury," such as receiving "targeted advertising" after visiting the Website. *Wooten*, 2025 WL 2979619, at *4 (emphasis in original).

Finally, no amendment can cure Plaintiff's lack of standing. Plaintiff concedes he did not share personal information with SeatGeek by signing up or purchasing tickets on the Website. Compl. ¶ 5 & n.1. Even if Plaintiff could allege facts suggesting TikTok or Meta captured this "record information" from him (he cannot, *see id*.), he would still allege no harm sufficient to invoke Article III. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1104, 1104-05, 1108 (9th Cir. 2014) (no "expectation of privacy" in "record information" like "the Facebook webpage the user was viewing" or a user's "name, address, and subscriber name or identity"); *see Kishnani*, 2025 WL 1745726, at *4 (no standing for § 638.51 claim based on the "collection of basic contact information"); *Wooten*, 2025 WL 2979619, at *3-4 (same for IP addresses and email addresses); *see also Lien v. Talkdesk, Inc.*, No. 24-cv-6467, 2025 WL 551664, at *1 (N.D. Cal. Feb. 19, 2025) ("The information allegedly intercepted"—"phone numbers and questions [plaintiffs] asked about store hours, events, and products"—is "not private or personal enough to confer standing" for CIPA claims.); *Lightoller v. JetBlue Airways Corp.*, No. 23-cv-361, 2023 WL 3963823, at *1 (S.D. Cal. June 12, 2023) (no standing for CIPA claims based on tracking website interactions to "obtain information on flight pricing").

---

[6]     Further cementing the absence of an alleged harm, Plaintiff does not claim he had a TikTok or Meta account at the time of his Website visit. *See Hughes*, 2024 WL 5179916, at *5; *see also Doe*, 2025 WL 2971090, at *2 ("Event data . . . can be matched with [a] visitor's Meta account only if the visitor is logged into their Meta account at the time" they visit the website). Assuming *arguendo* Plaintiff plausibly alleged the tracking of identifiers (*e.g.*, a FID) linked to a TikTok or Meta account, such data—even if tracked in combination with mundane browsing activity—does not rise to a concrete harm. *See Popa*, 153 F.4th at 791 (The capture of Popa's web browsing behavior is "quite different from the hypotheticals set out in the Restatement," such as "'taking intimate pictures [of a neighbor] with a telescopic lens.'") (citation omitted); *Doe*, 2025 WL 2971090, at *3 n.3 ("[S]tanding in privacy cases based on browsing activity depends on whether the activity is private or personal enough," *e.g.*, no standing if "plaintiff was shopping for a football jersey" *versus* standing if plaintiff was "shopping for eating disorder services."); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049–50 (N.D. Cal. 2022) (disclosure of "email address, phone number, or Facebook [ ] username" bestowed no standing); *Saeedy v. Microsoft Corp.*, No. 23-cv-1104, 2023 WL 8828852, at *6-7 (W.D. Wash. Dec. 21, 2023) (no "protected privacy interest" sufficient for standing in plaintiffs' browsing activities, search terms, URLs, and unique user IDs and cookies); *see also Beltran v. Drs. Med. Ctr. of Modesto*, No. 23-cv-1670, 2025 WL 1635467, at *2-3, *7-8 (E.D. Cal. June 9, 2025) (use of the Meta Pixel to collect IP addresses, FIDs, and search terms "related to health conditions" did not invade plaintiff's privacy, even though they alleged they were "signed into [their] Facebook profile[s]" at the time of their website visits).

For all these reasons, Plaintiff does not, and cannot, allege facts showing an Article III injury, and because "further amendment would be futile," his claim must be dismissed without leave to amend. *See Khamooshi II*, 2025 WL 2822879, at *4. The Court's analysis should end here.

## V.    PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 638.51

Separate from the lack of standing, Plaintiff fails to state a claim under § 638.51 for three reasons. *First*, Plaintiff fails to allege he visited the Website within the statute of limitations, as Rule 8 requires. *Second*, scripts deployed on a website are not trap and trace devices, as shown by CIPA's text and legislative history. *Third*, CIPA cannot prohibit a website's use of tracking scripts, even if provided to the website by a third party, to collect and share information that is necessarily transmitted to it by its visitors, as is true for all of the information Plaintiff alleges was collected here.

### A.    Standards for Motions to Dismiss Pursuant to Rule 12(b)(6)

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Courts must generally accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *See Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### B.    Plaintiff Fails to Allege Conduct Within the Limitations Period.

Plaintiff fails to plausibly allege his claim is timely. "Under [] CIPA, the applicable statute of limitations is one year." *Brodsky*, 445 F. Supp. 3d at 134. Courts "dismiss claims under Rule 8 when plaintiffs fail to allege approximately when the actionable misconduct occurred." *Id*. at 135 (collecting cases). All Plaintiff alleges is he visited the Website "after the TikTok Software" and "the Meta Pixel w[ere] installed," but he alleges no other temporal information about any of these events. Compl. ¶¶ 18, 28. These allegations fail to apprise SeatGeek of whether the alleged visit occurred within one year prior to the filing of this action and thus "fail[] to satisfy Rule 8's requirement to 'contain sufficient allegations of underlying facts to give fair notice and to enable the

opposing party to defend itself effectively.'" *Brodsky*, 445 F. Supp. 3d at 135 (citation omitted). In sum, "[b]ecause [Plaintiff] do[es] not allege the dates of the alleged illegal conduct, [he] ha[s] failed to establish that [his] claims were brought within the statute of limitations," and his claim must be dismissed. *Findley v. Am. Home Mortg. Corp.*, No. 10-cv-2885, 2010 WL 5169046, at *3 (E.D. Cal. Dec. 14, 2010).[7]

### C. Section 638.51 Applies Only to Tracking Technology for Telephones, Not Websites.

When interpreting a California statute, a federal court must apply California's principles of statutory construction. *See In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001). As stated by California's Supreme Court, a court's fundamental task in statutory interpretation "is to determine the legislative intent and effectuate the law's purpose, giving the statutory language its plain and commonsense meaning." *Mendoza v. Fonseca McElroy Grinding Co., Inc.*, 11 Cal.5th 1118, 1125 (2021). A statute's "plain meaning," however, should be rejected if it would "result in absurd consequences the Legislature did not intend." *Id.* (citation omitted). Furthermore, a "statute should not be read in isolation." *Ramos v. Garcia*, 248 Cal. App. 4th 778, 785 (2016). Legislation "should be construed to harmonize its various elements without doing violence to its language or spirit. Potentially conflicting provisions should be reconciled in order to carry out the overriding legislative purpose whenever possible," and a "construction which makes sense of an apparent inconsistency is to be preferred to one which renders statutory language useless or meaningless." *Texas Com. Bank v. Garamendi*, 28 Cal. App. 4th 1234, 1243 (1994).

Further, "CIPA is a criminal statute." *Doe*, 2025 WL 2971090, at *1. Any "ambiguity in [the] criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation." *People v. Reynoza*, 15 Cal. 5th 982, 1012 (2024) (quotation marks and citations omitted). The rule of lenity applies to CIPA "even when the statute is being invoked in a civil action." *Doe*, 2025 WL 2971090, at *1 (citing *Harrott v. Cnty. of Kings*, 25 Cal. 4th 1138, 1154 (2001)).

---

[7]     *See also Magney v. Cnty. of Humboldt*, No. 17-cv-2389, 2018 WL 1156817, at *4 (N.D. Cal. Mar. 5, 2018) (claims held untimely where "Plaintiff's complaint fails to allege that any specific act or conduct occurred within the statute of limitations period"); *O'Donnell v. U.S. Bancorp Equipment Finance, Inc.*, No. 10-cv-0941, 2010 WL 2198203, at *3 (N.D. Cal. May 28, 2010) ("O'Donnell has nonetheless failed to satisfy the pleading requirements of [Rule] 8 because she has not alleged any dates in her complaint."); *Macy v. CSA-18 Special Districts Pub. Works*, No. 24-cv-902, 2024 WL 4406936, at *5 (C.D. Cal. Aug. 15, 2024) ("The FAC thus violates Rule 8" because "Plaintiff fails to provide specific dates . . . for the facts alleged.").

**1. The Origin of Section 638.51 is Rooted Firmly in Telephone Surveillance.**

The California Legislature passed CIPA in 1967 "to address the increasing use of wiretapping to eavesdrop on private phone conversations." *Doe*, 2025 WL 2971090, at *3. In 2015, California enacted AB 929 to add to CIPA several provisions pertaining to pen registers and trap and trace devices. The bill's author explained it "authoriz[es] state and local law enforcement officers to use . . . trap and trace devices" to "record what numbers have called a specific telephone line, i.e. all incoming phone numbers." RJN, Ex. 2 at 10. Consistent with legislators' uniform focus on telephones, the Legislative Counsel's Digest at the beginning of AB 929 explained that the "bill would clarify that any location information obtained" by a pen register "is limited to the information that can be determined from *the telephone number*." *Id*., Ex. 1 at 1 (emphasis added).

The provisions of CIPA enacted by AB 929—patterned on various versions of the federal Pen Register Act, 18 U.S.C. §§ 3121–3127—include § 638.51, the prohibition on the use of a pen register or a trap and trace device "without first obtaining a court order pursuant to [§] 638.52[.]" *Compare* Cal. Penal Code § 638.51(a) *with* 18 U.S.C. § 3121(a). Section 638.52, California's authorization provision, in turn, corresponds nearly *verbatim* with 18 U.S.C. § 3123 as that federal statute was written prior to its amendment in 2001. *Compare* Cal. Penal Code § 638.52 *with* Pub. L. 99-508 § 301(a) (Oct. 21, 1986). When AB 929 was enacted in 2015, however, the Pen Register Act had already been amended to extend beyond telephone lines to any "*other facility*" to which a pen register or trap and trace may be attached or "*applied*." 18 U.S.C. § 3123(b)(1)(A) (emphasis added). Yet, when enacting AB 929, the California Legislature elected to adopt the pre-amendment language—even though that language had already been held to be limited to telephone lines. In other words, the Legislature adopted language it knew had been held to apply only to telephone lines and refused to adopt newer, broader language that would have extended the scope of the prohibition on trap and trace devices to "other facilit[ies]." Cal. Penal Code § 638.2(d).

For this reason, courts have interpreted the language in both California's and the federal statute as applying only to telephones and not to the internet since both statutes limit authorization to only those devices attached to a telephone line. *See infra* § V(A)(3).[8]

---

[8] The definition of a trap and trace device "does not extend to software embedded on a website," and "since [§ 638.51] was enacted in 2015, any argument that the internet and websites were left out because the Legislature was somehow not aware of them at the time of passage cannot fly." RJN, Ex. 12 (*PRN* Mot. at 3).

### 2. Unlike CIPA, the California Consumer Privacy Act was Enacted to Govern the Internet.

A few years after enactment of AB 929, in 2018, California's legislature enacted the CCPA to provide consumers with "an effective way to control their personal information." 2018 Cal. Legis. Serv. ch. 55 § 2(i). The CCPA defines "personal information" as that which can identify, relate to, describe, or be linked—directly or indirectly—to a "particular consumer or household." Cal. Civ. Code 1798.140(v)(1). The definition includes, among other things, IP addresses, "online identifier[s]," and "[i]nternet or other electronic network activity information," including browsing history, search history, and "information regarding a consumer's interaction with an internet website application." *Id.* Because the data alleged in the Complaint (IP addresses and other metadata) falls within this definition, Compl. ¶¶ 21, 25, 27, SeatGeek's collection, use, and disclosure of that information is regulated by the CCPA.

Key here, the CCPA regulates the conditions under which businesses are authorized to disclose "personal information" to third parties via online tracking technology for the purposes of "cross-context behavioral advertising." Cal. Civ. Code § 1798.149(k). Namely, businesses must provide a mechanism to opt out of the "sale" or "sharing" of "the consumer's personal information," *id.* § 1798.120(a)(1), and the CCPA permits the disclosure of personal information via online tracking technologies—without even providing an opt-out mechanism—for "analytic services," *id.* § 1798.140(e). Nowhere does the CCPA prohibit the disclosure of IP addresses and other browser, device, and online session information to third parties without affirmative ***opt-in*** consent, which Plaintiff's claim suggests under CIPA.

This year, spurred by the recent "barrage of CIPA lawsuits" aimed at the use of such "common digital tools," California's Senate unanimously passed SB 690 to "clarify"—not change—what AB 929 and the legislative record have already made clear: AB 929 "was not intended to apply to online activity[.]" RJN, Ex. 8 at 10, Ex. 9 at 7. SB 690 exempts from CIPA activity that is done for a "commercial business purpose," which would include cookie/pixel tracking for analytics or for targeted advertising. *Id.*, Ex. 8 at 1. The goal of this amendment is to make clear that online tracking governed by the CCPA—which does not itself have a private right of action for most violations—is not and has never been actionable under CIPA. *Id.*[9]

---

[9] SB 690 is before the Assembly and has been designated a "two-year" bill; this means the bill will be further deliberated and, if passed by the Legislature, become law in 2026.

**3.    The Legislative History and Framework of Section 638.51 Show the Statute Applies Only to Telephone Tracking.**

Both the legislative history surrounding CIPA's trap and trace statute as well as the design and structure of the statute show that § 638.51 applies only to tracking technology on telephone lines, not website scripts that collect the information that visitors' devices automatically send to a website to access it.

*First*, California's legislature enacted AB 929, the origin of § 638.51, to create a comprehensive framework governing how law enforcement officials could obtain orders "to use pen registers and trap and trace devices *in telephone surveillance* . . . ." RJN, Ex. 5 at 1 (emphasis added). The legislative purpose of AB 929 was "to authorize law enforcement to seek orders for telephone surveillance," and the statute was never intended to, and does not, "address the privacy rights of Internet users." *Casillas v. Trans. Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *2 (Super. Ct. Sep. 9, 2024); *see Scharon v. Paramount Global*, No. 25STCV10585, 2025 WL 2996812, at *2 (Super. Ct. Oct. 03, 2025) (The legislative intent behind AB 929 was "to govern installation of pen registers and trap and trace devices on telephones," and "not on other devices that might access the internet."). Indeed, the Legislative Counsel's Digest for AB 929 provides that this "bill would clarify that any location information obtained by a pen register or tra[p] and trace device is limited to the information that can be determined from the *telephone number*." RJN, Ex. 1 at 1 (emphasis added). Before AB 929, California law did not address law enforcement's use of these routine telephonic tools; the Legislature enacted the bill solely to close that narrow gap.[10] Expanding its reach to businesses on the internet thus defies both the stated legislative intent and common sense.

*Second*, and further reinforcing the Legislature's singular focus on telephone surveillance, the statutory scheme of § 638.51 confirms it applies only to technology used on telephone lines, not website code. Section 638.51 prohibits the use of a pen register or a trap and trace device "without first obtaining a court

---

[10]    *See* RJN, Ex. 3 at 3 (Assem. Floor Bill Analysis, AB 929, 7/6/2015) ("AB 929 would authorize state and local *law enforcement officers* to use pen register and trap and trace devices," which allow "officers to record all outgoing numbers from a *particular telephone line*.") (emphasis added); *id.*, Ex. 4 at 4 (Assem. Comm. on Privacy and Consumer Protection Bill Analysis, AB 929, 4/7/2015) ("This bill is intended to authorize state and local *law enforcement* to seek emergency orders for pen registers/trap and trace devices *used in telephone surveillance* . . . .") (emphasis added). Both AB 929 and Assembly Bill 1924—which amended CIPA's "pen register" provisions in 2016 by adding §§ 638.54 and 638.55—contain numerous legislative materials that reference only "telephonic surveillance" and phone-dialing tracking. *E.g.*, *id.*, Ex. 2 at 12 (Sen. Comm. on Public Safety Bill Analysis, AB 929, 6/16/2015) ("[A] pen register/trap and trace device *only records the numbers* dialed to or from a *particular phone number*.") (emphasis added); *id.*, Ex. 6 at 3 (Assem. Comm. on Privacy and Consumer Protection Bill Analysis, Assembly Bill 1924, 2015-2016 Reg. Sess., 4/15/2016) (a "pen/trap order is *only* for the capture of . . . *phone numbers*") (emphasis added).

order pursuant to Section 638.52," but § 638.52 adopted the "same authorization provision" that courts have relied on under the pre-2001 amendments to the federal Pen Register Act to find that "the Act applied only to mechanical, telephone number-tracing technology, not technology used to collect IP addresses from a desktop computer." *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Super. Ct. Jan. 27, 2025).

Corresponding precisely to the telephone-based requirements present in the original Pen Register Act, the "requirements" for the permitted use of a trap and trace device under § 638.52 show that "[S]ection 638.51 applies to telephone lines, not websites, because websites do not have lines, physical locations, or numbers." *Scharon*, 2025 WL 2996812, at *1 (citing Cal. Penal Code § 638.2(d)); *see supra* § V(A)(2) (explaining § 638.52 corresponds with the pre-2001 amended version of the Pen Register Act's authorization provision); *Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digit. Analyzer*, 885 F. Supp. 197, 199, 200 (C.D. Cal. 1995) (holding pre-amended Pen Register Act only prohibited the use of devices that are attached to a telephone line based on limitation in authorization provision). Because the authorization provision only applies to telephone lines, the corresponding prohibition on such devices must also be limited to devices "attached to a telephone line"; otherwise, no order authorizing a pen register for non–"telephone line"–based surveillance could ever issue. *Cellular Tel.*, 885 F. Supp. at 200.

With the Legislature having knowingly chosen this language, § 638.52 must be interpreted the same way to limit the prohibition on "trap and trace devices" to devices attached to telephone lines. Like Congress's original intent in enacting the Pen Register Act in 1986 to regulate only call-dialing tracing, the California Legislature's narrow word choice in its trap and trace statute—even though a newer version of the Pen Register Act with broader implications was already in place and the 1986 version had already been interpreted to apply only to telephone lines—"cannot be assumed to be inadvertent." *Id.*; *see People v. Williams*, 17 Cal. 5th 99, 128-29 (2024) ("Congress normally can be presumed to have had knowledge of the interpretation given to [an] incorporated law, at least insofar as it affects the new statute.'") (citation omitted). Thus, California's trap and trace statute, which must be read "to fit harmoniously as part of a symmetrical and coherent statutory scheme," shows the prohibition does not apply to the web-based code that forms the basis for Plaintiff's claim here. *Rodriguez v. Holder, Jr.*, 619 F.3d 1077, 1079 (9th Cir. 2010) (citation and quotation marks omitted).

**4.      The Rule of Lenity Precludes Plaintiff's Expansive Interpretation of CIPA.**

To the extent Plaintiff argues that the Court should nonetheless expand liability under § 638.51 to his

allegations, the statute is, at most, ambiguous, and the rule of lenity thus forecloses imposing liability on SeatGeek. *See Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1330 (2009) (If "reasonably susceptible of two interpretations," lenity "supports an interpretation . . . favorable to a party who may be subject to criminal prosecution or penalties."). Judge Chhabria's analysis in *Doe*—addressing CIPA claims against a website operator for using the Meta Pixel to perform data analytics and targeted advertising—is on point. 2025 WL 2971090, at *1. Cutting to the heart of the issue, Judge Chhabria recognized that the statute is, at best, ambiguous and, given that "ambiguity and its imposition of criminal liability," "as courts are called upon to apply CIPA's already-obtuse language to new technologies," the rule of lenity requires courts to "avoid reading . . . any portion of CIPA . . . too broadly"; rather, it is "for the Legislature to bring CIPA into the modern age and to speak clearly about how the kinds of activities at issue in this case should be treated. Until that happens, courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation" that excludes web-based technology. *Id.* at *1, *6.

Indeed, if the California Legislature wanted to apply § 638.51 "to the internet," "it could do so by amending that provision or adding to CIPA's statutory scheme." *Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *3 (9th Cir. July 9, 2025) (Bybee, J., concurring). But it has not done so. Rather, the Legislature regulated the internet-tracking technology at issue here through the CCPA—"California's comprehensive consumer data privacy framework"—*not* CIPA. RJN, Ex. 9 at 18. "The legislative history of [AB 929] makes it clear it was not intended to apply to online activity. . . . Suing under CIPA for behavior explicitly regulated (or permitted) by [the] CCPA short-circuits legislative intent." *Id.* at 7.

It strains credulity to suggest "the Legislature intended for CIPA to apply" to the "conduct implicated by this case," not least because it has "since adopted [the CCPA] that more clearly speak[s] to"—and, in fact, *permits*—the conduct complained of here. *Doe*, 2025 WL 2971090, at *6 (citing Cal. Civil Code § 1798.100 *et seq.*).[11] The "advertising, analytics, and other data processing practices" alleged in the Complaint are "already governed by [the] CCPA," and application of CIPA's muddled trap and trace provisions to those practices, as

---

[11]     Unlike Plaintiff's unmoored reading of § 638.51, SeatGeek's commonsense interpretation of the statute harmonizes CIPA and the CCPA, avoiding any conflict between them, as both the CCPA and California law require. *See* Cal. Civ. Code § 1798.175 ("[L]aw relating to consumers' personal information should be construed to harmonize with the provisions of [the CCPA][.]"); *Pac. Palisades Bowl Mobile Ests., LLC v. City of L.A.*, 55 Cal. 4th 783, 805–806 (2012) (limiting applicability of statute because broader application would "overrid[e]" provisions of other statutes, impermissibly "effect[ing] an implied partial repeal of them"). Additionally, in *Doe*, Judge Chhabria *sua sponte* raised that CIPA may be "unconstitutionally vague," providing another "reason to adopt the narrower of [the parties'] two alternative interpretations of" CIPA. 2025 WL 2971090, at *6 n.9.

Plaintiff demands, imposes a stricter "opt-in" regime that is in direct conflict with the CCPA's "opt-out" requirements and without support in the Legislature's stated purpose for AB 929. RJN, Ex. 9 at 18; *see also Scharon*, 2025 WL 2996812, at *2 (The "collection of website user data is governed by the CCPA, which allows reasonable collection of the data Plaintiffs allege Defendant and the tracking software collected—provided that certain safeguards are provided, such as an option to delete any stored data. This is further indication that [plaintiffs] cannot state a CIPA claim . . . ."); *In re Transcon Lines*, 58 F.3d 1432, 1440 (9th Cir. 1995) ("[W]e must, whenever possible, attempt to reconcile potential conflicts in statutory provisions.").

In sum, the uniform legislative history and the Legislature's chosen framework for CIPA's trap and trace statute establish that § 638.51 does not apply to the web-based tracking technology alleged here. And even assuming Plaintiff's boundless and conflict-ridden interpretation carried some plausibility, the rule of lenity directs the Court to adopt the narrower view in SeatGeek's favor. *Doe*, 2025 WL 2971090, at *6.

### D. Section 638.51 Does Not Bar a Website's Collection of Visitors' Information.

Assuming § 638.51 applied to the website scripts Plaintiff alleges (it does not), he still fails to state a § 638.51 claim because "'the collection of incoming [addressing information] by [a website operator] is exempt' from penalty" since website operators "necessarily capture such data . . . to operate the website." *Trans. Optical*, 2024 WL 4873370, at *5 (quoting *Columbia Pictures Indus. v. Bunnell*, No. 06-cv-1093, 2007 WL 2080419 at *11 (C.D. Cal. May 29, 2007)). This commonsense rule holds true even where the alleged collection is done by a tracking tool such as TikTok's or Meta's scripts. *Id.* at *1. In simpler terms, wherever "devices on a network necessarily receive addressing information," the capture of such information cannot violate the prohibition on trap and trace devices. *In re Innovatio IP Ventures, LLC Patent Litig.*, 886 F. Supp. 2d 888, 895 (N.D. Ill. 2012) ("Because all Wi–Fi devices on a network necessarily receive addressing information to determine if a data packet is addressed to them," "any user of a Wi–Fi network on which a third party was also operating" would be "in violation of the Act.").

California courts have likewise rejected that the use of "tracking software" to acquire a visitor's "outgoing information" transmitted to a website is unlawful under § 638.51. *See, e.g., Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *2, *4 (Super. Ct. Mar. 13, 2024) (dismissing § 638.51 claim because plaintiff's interpretation "render[s] every single [website] entity voluntarily visited by a potential plaintiff . . . as a violator"); *Aviles*, 2025 WL 487196, at *3 (dismissing § 638.51 claim because "[t]he problem

with [plaintiff's] argument" is he "has not alleged anything above and beyond how the internet normally works."). As one California court recently explained, the "law enforcement tool that allows law enforcement to record what numbers have called a specific phone line . . . is a far cry from the situation here, where Plaintiff voluntarily and intentionally chooses to contact [SeatGeek's] website and [SeatGeek] is learning the identity of the person contacting it." *Rodriguez v. Sparc Grp., LLC*, No. 24STCV26946, 2025 Cal. Super. LEXIS 41697, at *8 (Super. Ct. Jul. 9, 2025). If "CIPA broadly prohibits any process by which anyone identifies any 'originating number,' then every cell phone in the world—which identify the phone number of incoming calls— would be a prohibited trap and trace device" and, untenably, so "would every website interaction that identifies electronic information about the user in a manner that allows the website to function." *Id.* at *7-8.

Thus, if collecting basic routing information like Plaintiff's device data gave rise to violations of § 638.51, the very operation of the internet would become illegal—an outcome prohibited by common sense and the rule of lenity. "Amendment will not fix the core problem" that the statute does not apply "so there is no reason for leave to amend." *Scharon*, 2025 WL 2996812, at *3.

## VI. CONCLUSION

SeatGeek respectfully requests that the Court dismiss the Complaint without leave to amend.

Dated: December 17, 2025                    GREENBERG TRAURIG, LLP


                                            By  */s/ Heather J. Silver*
                                                Heather J. Silver
                                                Attorneys for Defendant
                                                SeatGeek, Inc.