Heather J. Silver (SBN 285509)
Blake M. Bailus (SBN 360713)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Heather.Silver@gtlaw.com
Blake.Bailus@gtlaw.com

Attorneys for Defendant
SeatGeek, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE TORRES, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>v.<br><br>SEATGEEK, INC., a Delaware corporation headquartered in New York; and DOES 1 through 25, inclusive,<br><br>         Defendants. | Case No. 3:25-CV-07118-LB<br><br>Assigned to Hon. Laurel Beeler<br><br>**DEFENDANT SEATGEEK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Concurrently filed with Request for Judicial Notice; Declaration of Heather J. Silver; and [Proposed] Orders]<br><br>Action filed: August 22, 2025<br><br>Date:      April 30, 2026<br>Time:     9:30 a.m.<br>Place:    Courtroom B, 15th Floor |

## NOTICE OF MOTION AND MOTION TO DISMISS:

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on April 30, 2026, at 9:30 a.m., or as soon thereafter as the matter may be heard, before the Honorable Laurel Beeler, United States Magistrate Judge for the Northern District of California, located at the Phillip Burton Federal Building and United States Courthouse, 450 Golden Gate Avenue, Courtroom B, 15th Floor, San Francisco, California 94102, Defendant SeatGeek, Inc. ("SeatGeek") will, and hereby does, move the Court for an order dismissing the First Amended Complaint ("FAC") filed by Plaintiff Jose Torres ("Plaintiff") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff has not pled a concrete harm under Article III, and because Plaintiff fails to state a claim upon which relief may be granted. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Heather J. Silver, and Request for Judicial Notice, and all pleadings, arguments, and matters before the Court.

## STATEMENT OF RELIEF SOUGHT

SeatGeek seeks an order dismissing Plaintiff's FAC under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction because Plaintiff fails to allege an Article III injury. The threshold jurisdictional defect requires dismissal of the FAC. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) . . . ."). Should the Court reach the merits of Plaintiff's claim, however, SeatGeek seeks dismissal under Fed. R. Civ. P. 12(b)(6) because Plaintiff fails to allege sufficient facts to state a plausible claim for four reasons:

(1)    The FAC fails in its entirety because Plaintiff fails to satisfy Federal Rule of Civil Procedure 8 and fails to allege facts sufficient to state any claim.

(2)    The claims for invasion of privacy and intrusion upon seclusion in the FAC fail because Plaintiff fails to allege that (a) Plaintiff had a reasonable expectation of privacy in the data purportedly collected from him, or (b) SeatGeek's purported invasion of privacy was offensive.

(3)    The claim for violation of Section 638.51 of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.*, fails because that statute does not prohibit the use of the web-based technology allegedly used by SeatGeek on its website to collect from Plaintiff the information at issue in the FAC.

1          (4)      The claim for violations of the California Comprehensive Computer Data Access and Fraud

2 Act ("CDAFA"), Cal. Penal Code § 502, fail because Plaintiff does not allege (a) cognizable damage or loss

3 under the CDAFA, which is required for statutory standing, and (b) any unlawful "access" under the CDAFA.

4

5 Dated: February 20, 2026             GREENBERG TRAURIG, LLP

6

7                 By  */s/ Heather J. Silver*
                     Heather J. Silver

8                     Attorneys for Defendant
                     SeatGeek, Inc.

DEFENDANT SEATGEEK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................... 1

I.  INTRODUCTION ........................................................................................................................ 1

II.  STATEMENT OF THE ISSUES TO BE DECIDED ................................................................ 4

III.  STATEMENT OF RELEVANT FACTS ................................................................................... 4

IV.  PLAINTIFF LACKS STANDING ............................................................................................. 5

    A.  Standards for Motions to Dismiss Pursuant to Rule 12(b)(1) ......................................... 5
    B.  Constitutional Requirements for Standing ...................................................................... 5
    C.  Plaintiff Cannot Allege a Concrete Harm. ...................................................................... 6

        1.  Plaintiff's Alleged Statutory Violations Cannot Confer a Concrete Harm. ................. 6
        2.  The Routine Tracking of Plaintiff's Nonsensitive Device Metadata Is Not
            "Highly Offensive" and Thus Gives Rise to No Concrete Harm. .............................. 7
        3.  Plaintiff's Renaming of the Same Activity Also Does Not Allege Standing. ............. 9
        4.  No Amendment Can Cure the Lack of Concrete Harm. ............................................ 11

V.  PLAINTIFF FAILS TO PLAUSIBLY STATE A CLAIM FOR RELIEF ........................... 11

    A.  Standards for Motions to Dismiss Pursuant to Rule 12(b)(6) ....................................... 11
    B.  Plaintiff's Bare Allegations Fail to Satisfy Rule 8. ....................................................... 12
    C.  Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion Claims Fail. ................. 14
    D.  Plaintiff's Pen Register Claim Under CIPA § 638.51 Fails. .......................................... 15

        1.  Section 638.51 Applies to Tracking Technology for Telephones, Not
            Websites. ............................................................................................................... 15

            a.  The origin of Section 638.51 is rooted firmly in telephone
                surveillance. ................................................................................................ 16
            b.  The CCPA was enacted to govern the internet, not CIPA. ............................ 17
            c.  The legislative history and framework of Section 638.51 show the
                statute applies  only to telephone tracking. ................................................. 18
            d.  The rule of lenity precludes Plaintiff's expansive interpretation of
                CIPA. ......................................................................................................... 20

        2.  Section 638.51 Does Not Bar a Website's Collection of Visitors' Information. ....... 21

    E.  Plaintiff's Claim Under the CDAFA Fails. .................................................................... 22

        1.  Plaintiff Alleges No "Damage or Loss" Under the CDAFA. ................................... 22
        2.  Plaintiff Does Not Allege That SeatGeek Unlawfully Accessed His
            Computer. ............................................................................................................. 23

    F.  Plaintiff Should be Denied Leave to Amend. ................................................................ 24

VI.    CONCLUSION................................................................................................................24

TABLE OF CONTENTS

**Page(s)**

**Federal Cases**

*In re Apple Data Priv. Litig.*,
No. 22-cv-7069, 2026 WL 146025 (N.D. Cal. Jan. 20, 2026)............................................. 11

*Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digit. Analyzer*,
885 F. Supp. 197 (C.D. Cal. 1995) ............................................................................... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................. 12

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ........................................................................ 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................. 12

*Belluomini v. Citigroup, Inc.*,
No. 13-cv-1743, 2013 WL 3855589 (N.D. Cal. July 24, 2013) ......................................... 14

*Beltran v. Doctor's Med. Ctr. of Modesto*,
No. 2:23-cv-01670-DC-CKD, 2025 WL 1635467 (E.D. Cal. June 9, 2025) ....................... 13

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ............................................................... 3, 13, 14

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........................................................................... 5

*Carolus v. Nexstar Media Inc.*,
No. 24-cv-7790, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025)..................................... 10, 15

*Chaset v. Fleer/Skybox Int'l, LP*,
300 F.3d 1083 (9th Cir. 2002) .................................................................................... 24

*Claridge v. RockYou, Inc.*,
785 F. Supp. 2d 855 (N.D. Cal. 2011) .......................................................................... 23

*Columbia Pictures Indus. v. Bunnell*,
No. 06-cv-1093, 2007 WL 2080419 (C.D. Cal. May 29, 2007)......................................... 21

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. Aug. 28, 2023)................................................................ 11

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) .......................................................................... 23

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023).................................................................. 3, 9, 13

*Daghaly v. Bloomingdales.com, LLC*,
No. 23-4122, 2024 WL 5134350 (9th Cir. Dec. 17 2024)................................................ 12

*Dawidzik v. Tesla, Inc.*,
    No. 25-cv-1982, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025)..........................7, 10

*DellaSala v. Samba TV, Inc.*,
    No. 25-cv-3470, 2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) ..........................9

*Doe v. Amgen, Inc.*,
    No. 23-cv-7448, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024) ..........................13

*Doe v. Cnty. of Santa Clara*,
    No. 23-cv-4411, 2024 WL 3346257 (N.D. Cal. July 8, 2024) ..........................22

*Doe v. Davita Inc.*,
    No. 23-cv-1424, 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) ..........................13

*Doe v. Eating Recovery Ctr. LLC*,
    - F. Supp. 3d -, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ..........................*passim*

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
    895 F.3d 1166 (9th Cir. 2018) ..........................5

*Escobar v. Brewer*,
    461 F. App'x 535 (9th Cir. 2011) ..........................9

*In re Facebook Priv. Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) ..........................24

*Findley v. Am. Home Mortg. Corp.*,
    No. 10-cv-2885, 2010 WL 5169046 (E.D. Cal. Dec. 14, 2010) ..........................13

*In re First T.D. & Inv., Inc.*,
    253 F.3d 520 (9th Cir. 2001) ..........................15

*Gabrielli v. Insider, Inc.*,
    No. 24-cv-1566, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ..........................10

*In re Google, Inc. Priv. Pol'y Litig.*,
    58 F. Supp. 3d 968 (N.D. Cal. 2014) ..........................9

*Gordon v. City of Oakland*,
    627 F.3d 1092 (9th Cir. 2010) ..........................24

*Gutierrez v. Converse Inc.*,
    No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025)..........................20

*Gutierrez v. Converse Inc.*,
    No. 23-cv-06547, 2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) ..........................23, 24

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..........................14

*Harrill v. Emanuel Med. Ctr.*,
    No. 23-cv-1672, 2025 WL 1635428 (E.D. Cal. June 9, 2025) ..........................12, 13

*Heeger v. Facebook, Inc.*,
    509 F. Supp. 3d 1182 (N.D. Cal. 2020) ..........................10

*Heiting v. Taro Pharms. USA, Inc.*,
    709 F. Supp. 3d 1007 (C.D. Cal. 2023) ..........................3, 22, 23

*Hubbard v. Google LLC*,
 No. 19-cv-7016, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ..................... 11

*Hughes v. Vivint, Inc.*,
 No. 24-cv-3081, 2024 WL 5179916 (C.D. Cal. July 12, 2024) ................... 10

*In re Innovatio IP Ventures, LLC Patent Litig.*,
 886 F. Supp. 2d 888 (N.D. Ill. 2012) ........................................... 21

*In re iPhone Application Litig.*,
 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ......................................... 9

*Jones v. Tonal Sys., Inc.*,
 751 F. Supp. 3d 1025 (S.D. Cal. 2024) ......................................... 15

*Khamooshi v. Politico LLC*,
 786 F. Supp. 3d 1174 (N.D. Cal. 2025) ............................ 6, 7, 10, 23

*Khamooshi v. Politico LLC*,
 No. 24-cv-7836, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ........... 8, 9, 11

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
 No. 24-cv-1119, 2025 WL 1635419 (E.D. Cal. June 9, 2025) ................... 13

*Kishnani v. Royal Caribbean Cruises Ltd.*,
 No. 25-cv-1473, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ............... 8, 10

*Lien v. Talkdesk, Inc.*,
 No. 24-cv-6467, 2025 WL 551664 (N.D. Cal. Feb. 19, 2025) ................... 11

*Low v. LinkedIn Corp.*,
 900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................... 3, 14

*Magney v. Cnty. of Humboldt*,
 No. 17-cv-2389, 2018 WL 1156817 (N.D. Cal. Mar. 5, 2018) ................... 14

*Miller v. Yokohama Tire Corp.*,
 358 F.3d 616 (9th Cir. 2004) .................................................... 24

*Mitchener v. CuriosityStream, Inc.*,
 No. 25-cv-1471, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ................... 10

*O'Donnell v. U.S. Bancorp Equip. Fin., Inc.*,
 No. 10-cv-0941, 2010 WL 2198203 (N.D. Cal. May 28, 2010) .................. 14

*Oracle Corp. v. SAP AG*,
 734 F. Supp. 2d 956 (N.D. Cal. 2010) ........................................... 23

*Park v. Thompson*,
 851 F.3d 910 (9th Cir. 2017) .................................................... 12

*Perkins v. LinkedIn Corp.*,
 53 F. Supp. 3d 1190 (N.D. Cal. 2014) ....................................... 3, 23

*Popa v. Microsoft Corp.*,
 153 F.4th 784 (9th Cir. 2025) ............................................. *passim*

*Posadas v. Goodyear Tire & Rubber Co.*,
 No. 23-cv-402, 2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) ................... 15

*Price v. Converse, Inc.*,
 – F. Supp. 3d –, 2025 WL 3295119 (C.D. Cal. Sept. 30, 2025) ............................... 9

*R.C. v. Walgreen Co.*,
 733 F. Supp. 3d 876 (C.D. Cal. 2024) ...................................................................... 9

*Rodriguez v. Brushfire Recs.*,
 No. 25-cv-9797, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ............................... 7

*Rodriguez v. Culligan Int'l Co.*,
 No. 25-cv-225, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ............................... 7, 8

*Rodriguez v. Holder, Jr.*,
 619 F.3d 1077 (9th Cir. 2010) ................................................................................ 19

*Saeedy v. Microsoft Corp.*,
 No. 23-cv-1104, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) .......................... 14

*Saleh v. Nike, Inc.*,
 562 F. Supp. 3d 503 (C.D. Cal. 2021) .................................................................... 15

*Scott v. Breeland*,
 792 F.2d 925 (9th Cir. 1986) .................................................................................... 5

*Selby v. Ocwen Loan Servicing, LLC*,
 No. 17-cv-973, 2017 WL 5495095 (S.D. Cal. Nov. 16, 2017) ................................. 9

*Shah v. Cap. One Fin. Corp.*,
 768 F. Supp. 3d 1033 (N.D. Cal. 2025) .................................................................. 23

*Spokeo, Inc. v. Robins*,
 578 U.S. 330 (2016) .................................................................................................. 5

*Starr v. Baca*,
 652 F.3d 1202 (9th Cir. 2011) ................................................................................ 13

*Sunbelt Rentals, Inc. v. Victor*,
 43 F. Supp. 3d 1026 (N.D. Cal. 2014) .................................................................... 23

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*,
 830 F. App'x 821 (9th Cir. 2020) ............................................................................. 5

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
 313 F. Supp. 3d 1056 (N.D. Cal. 2018) .................................................................. 22

*Thomas v. Papa Johns Int'l, Inc.*,
 No. 22-cv-2012, 2024 WL 2060140 (S.D. Cal. May 8, 2024) ............................ 8, 11

*In re Transcon Lines*,
 58 F.3d 1432 (9th Cir. 1995) .................................................................................. 21

*TransUnion LLC v. Ramirez*,
 594 U.S. 413 (2021) .............................................................................................. 5, 6

*White v. Lee*,
 227 F.3d 1214 (9th Cir. 2000) .................................................................................. 5

*Xu v. Reuters News & Media Inc.*,
 No. 24-cv-2466, 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) ............................... 10

*In re Zynga Priv. Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ............................................................3, 8, 14

**State Cases**

*Aviles v. LiveRamp, Inc.*,
  No. 24STCV19869, 2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025)............................................3, 21

*Casillas v. Trans. Optical, Inc.*,
  No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Ct. Sept. 9, 2024)......................................18, 21

*Folgelstrom v. Lamps Plus, Inc.*,
  195 Cal. App. 4th 986 (2011) .........................................................9, 15

*Harrott v. Cnty. of Kings*,
  25 Cal. 4th 1138 (2001) ....................................................................16

*Hill v. Nat'l Collegiate Athletic Ass'n.*,
  7 Cal. 4th 1 (1994) ...........................................................................14

*Lakin v. Watkins Associated Indus.*,
  6 Cal.4th 644 (1993) .........................................................................19

*Licea v. Hickory Farms LLC*,
  No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) ............................21

*Mendoza v. Fonseca McElroy Grinding Co., Inc.*,
  11 Cal.5th 1118 (2021) .....................................................................15

*Pac. Palisades Bowl Mobile Ests., LLC v. City of L.A.*,
  55 Cal. 4th 783 (2012) ......................................................................20

*People v. Evensen*,
  4 Cal. App. 5th 1020 (2016) ................................................................8

*People v. Reynoza*,
  15 Cal. 5th 982 (2024) ......................................................................16

*People v. Williams*,
  17 Cal.5th 99 (2024) .........................................................................19

*Ramos v. Garcia*,
  248 Cal. App. 4th 778 (2016) .............................................................15

*Rodriguez v. Ink Am. Intern. Grp. LLC*,
  No. 25STCV15350, 2025 WL 4034985 (Cal. Super. Ct. Dec. 10, 2025) ........................18, 19, 20, 21

*Rodriguez v. Sparc Grp., LLC*,
  No. 24STCV26946, 2025 Cal. Super. LEXIS 41697 (Cal. Super. Ct. Jul. 9, 2025) ....................21, 22

*Sanchez v. Cars.com Inc.*,
  No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025)............................................18

*Scharon v. Paramount Glob.*,
  No. 25STCV10585, 2025 WL 2996812 (Cal. Super. Ct. Oct. 3, 2025) ........................18, 19, 21, 22

*Texas Com. Bank v. Garamendi*,
  28 Cal. App. 4th 1234 (1994) .............................................................16

*Troyk v. Farmers Grp., Inc.*,
    171 Cal. App. 4th 1305 (2009) ........................................................................ 19

*Variety Media, LLC v. Super. Ct.*,
    No. B350578 ......................................................................................................... 1

**Federal Statutes**

18 U.S.C. § 3121–3127 ........................................................................................... 16

18 U.S.C. § 3123 ..................................................................................................... 16

**State Statutes**

Cal. Civ. Code § 1798.100 ................................................................................ 2, 20

Cal. Civ. Code § 1798.120 ................................................................................ 2, 17

Cal. Civ. Code § 1798.140 ..................................................................................... 17

Cal. Civ. Code § 1798.149 ..................................................................................... 17

Cal. Civ. Code § 1798.175 ..................................................................................... 20

Cal. Civ. Pro. Code § 335.1 ................................................................................... 14

2018 Cal. Legis. Serv. ch. 55 § 2(i) ...................................................................... 17

Cal. Pen. Code § 502 ................................................................................... 14, 22, 23

Cal. Pen. Code § 638.2 ........................................................................................... 19

Cal. Pen. Code § 638.50 ..................................................................................... 8, 11

Cal. Pen. Code § 638.51 ................................................................................. *passim*

Cal. Pen. Code § 638.52 ..................................................................... 3, 16, 18, 19

Cal. Pen. Code § 638.54 ......................................................................................... 18

Cal. Pen. Code § 638.55 ......................................................................................... 18

Pub. L. 99-508 § 301(a) (Oct. 21, 1986) ............................................................... 16

**Rules**

Fed. R. Civ. P. 8 ................................................................................................ 3, 13

Fed. R. Civ. P. 12(b)(1) ........................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 11

## I.  INTRODUCTION

Plaintiff Jose Torres ("Plaintiff") alleges that his privacy was violated by the collection of purely technical information—like the IP address, "make, model, and operating system" of his computer, and the web browser he used—when he visited www.seatgeek.com (the "Website"), a website that offers tickets to the public for sporting events and concerts. Far from a privacy violation, this case is merely one among thousands of copycat shakedown lawsuits applying an inapplicable criminal statute to the routine use of website technologies to acquire indisputably non-sensitive information—even though those technologies are comprehensively regulated elsewhere by laws permitting the very conduct of which Plaintiff complains. The Legislature has declared that filing such a claim is an "abusive" practice that runs afoul of the California Invasion of Privacy Act's ("CIPA") intent.[1] Nonetheless, Plaintiff seeks a windfall in statutory damages under CIPA Section 638.51 ("§ 638.51") by attempting to graft CIPA—a 1967 criminal statute enacted to address "wiretapping and eavesdropping" on *phone calls*—onto online technologies that the statute was never designed to address. *Doe v. Eating Recovery Ctr. LLC*, — F. Supp. 3d —, 2025 WL 2971090, at *3 (N.D. Cal. Oct. 17, 2025) ("*Doe*") (Chhabria, J.).

While Plaintiff responded to SeatGeek's previous motion to dismiss by repackaging his CIPA claim into three new claims in the First Amended Complaint ("FAC"), his theory for all four claims remains unchanged: Plaintiff's privacy was invaded when he visited the Website at a time when it allegedly employed tracking technologies developed by TikTok, Meta, and Microsoft to collect non-sensitive technical data about his visit that necessarily had to be transmitted to SeatGeek in order for Plaintiff to visit the Website. Despite the prolix FAC and its addition of more than 100 new paragraphs with varying levels of sensationalized hypotheticals

---

[1] Request for Judicial Notice ("RJN"), Ex. 9 at 6 (Assem. Comm. on Public Safety Bill Analysis, Senate Bill 690, 2025-2026 Reg. Sess. ("SB 690"), 7/1/2025). "In the last 18 months, trial lawyers have sued over 1,500 businesses using [CIPA]" to argue that these "typical business activities" necessitate "opt-in" consent from website users. RJN, Ex. 7 at 9 (Sen. Comm. on Public Safety Bill Analysis, SB 690, 4/25/2025). In response to the barrage of lawsuits, the California Senate introduced SB 690 earlier last year to clarify that CIPA, a "50-year-old criminal eavesdropping statute, does not apply to modern, online business activities that are already intentionally, purposefully, and extensively regulated by the CCPA." RJN, Ex. 9 at 6. SB 690—which unanimously passed the Senate and is currently under consideration by the Assembly—and its robust legislative history further shows why Plaintiff's CIPA § 638.51 claim fails as a matter of law.

Apart from this impending legislative direction, in *Variety Media, LLC v. Superior Ct.*, No. B350578 ("*Variety* Appeal"), the California Court of Appeal will soon decide whether CIPA § 638.51—a law passed to regulate the use of telephonic pen registers by law enforcement—applies to routine, ubiquitous tracking technology implemented by virtually all commercial websites. RJN, Exs. 15-18. As shown herein, it does not.

about how people might have their privacy invaded in circumstances not present here, Plaintiff still pleads no facts showing any actual impact on *his* privacy. At most, he alleges that certain benign technical identifiers were collected in order to show him advertisements—specifically disclaiming that he provided any remotely personal information to the Website by registering for an account or making a purchase. Regardless of what label he bestows upon his claims, the routine "tracking" of these innocuous technical parameters and seeing ads in which one might be interested on social media are not concrete Article III injuries as they are not "remotely similar" to the "kind of harm" required to establish standing. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025); *see also id*. at 794. This defect cannot be fixed. Plaintiff cannot genuinely maintain that visiting a ticketing website is so "embarrassing" that its disclosure is "highly offensive." *Id*. at 791.

Beyond standing, Plaintiff is also wrong on the law. He persists in claiming that the third-party trackers allegedly used on the Website are illegal trap and trace or pen register devices under § 638.51 despite the California Legislature's proclamations otherwise. In its words, this action is one of "thousands" that "distorts CIPA's original legislative intent" by alleging "typical online business activities, like web analytics or online advertising," are illegal pen registers under CIPA. RJN, Ex. 9 at 5, 18. But CIPA was "enacted in 1967, long before the internet was even developed." *Id*., Ex. 9 at 8. In contrast, just eight years ago, the California Legislature enacted the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.100 *et seq.*, reflecting its "unanimou[s] deci[sion] that consumers benefit most when these types of online business activities [are] regulated by" an "omnibus privacy law which is the guiding statute for online privacy protections including data protections." *Id*., Ex. 9 at 5, 8. Relevant here, the CCPA *allows* businesses to use the same online tracking technology on which Plaintiff bases his claims *without prior affirmative consent* from website users, so long as they offer users the ability to opt out of (*i.e.*, turn off) such tracking. *See* Cal. Civ. Code § 1798.120. Given the CCPA's comprehensive regulation of these online activities, claims like these where "plaintiff[s] simply visit[] a website" to "see if there are any [trackers]" and no "opt-in consent mechanism" on the website claims "do nothing to help consumer privacy," and exist solely to exploit CIPA's high statutory damages, even where a business is in "compliance with [the] CCPA's opt-out regime." RJN, Ex. 9 at 6.[2]

---

[2]    Remarkably, virtually every law firm backing Plaintiff uses the same technologies that Plaintiff claims both CIPA and the CDAFA criminalize. To start, Don Bivens, PLLC, the firm that solicited Plaintiff to serve as the named plaintiff in this case, currently employs on its client-solicitation website the *same* Meta tracker (and until recently, the same Tik Tok tracker) that, along with Microsoft's Bing tracker, form the basis of Plaintiff's claims. *See* Declaration of Heather Silver ("Silver Decl.") ¶¶ 15 & 16; RJN, Exs. 11 & 12. The same goes for Plaintiff's current counsel of record, Cotchett, Pitre & McCarthy, LLP; its firm website uses Google Analytics

Just as incredulous as his pen register claim is Plaintiff's recasting the same online activity as violations of his common law and Constitutional privacy rights—even though he has no right of privacy in any of the technical information allegedly collected—and a violation of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA")—a criminal *anti-hacking* statute with no application to the activity alleged.

In sum, the FAC fails for <u>four</u> main reasons:

(1)  Plaintiff fails to satisfy Federal Rule of Civil Procedure 8. Despite now stretching 34 pages in length, the Complaint alleges nothing about Plaintiff's interactions with the Website. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123-1124 (S.D. Cal. 2023). Plaintiff also fails to satisfy his obligation under Rule 8 to plead when his visit to the Website occurred and thus fails to plausibly allege his claims are timely. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 135 (N.D. Cal. 2020).

(2)  Plaintiff fails to state claims for invasion of privacy and intrusion upon seclusion. All that was allegedly acquired from Plaintiff was his IP address and other technical identifiers, but Plaintiff has no legally protected privacy interest in such basic "record information," *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1104, 1108-09 (9th Cir. 2014), and the disclosure of these innocuous technical parameters is not "highly offensive," *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).

(3)  Plaintiff cannot allege the unlawful use of a pen register under § 638.51. Pen registers can only be "attached" to "telephone line[s]." Cal. Penal Code § 638.52(b), (d); RJN, Ex. 5 at 1 (Assem. Comm. on Approps. Bill Analysis, Assembly Bill 929, 2015-2016 Reg. Sess. ("AB 929"), 4/29/2015) (reflecting exclusive concern for "telephone surveillance"). Even if there were any doubt, Plaintiff's effort to expand the statute to the online technology at issue here must fail given that CIPA is a criminal statute that must be "narrowly construe[d]." *Doe*, 2025 WL 2971090, at *1. Moreover, Plaintiff's objection to the collection of IP address and device identifiers also makes no sense because such data is *necessarily* transmitted to the website to access it. *Aviles v. LiveRamp, Inc.*, No. 24STCV19869, 2025 WL 487196, at *1-2, *3 (Cal. Super. Ct. Jan. 28, 2025).

(4)  Plaintiff fails to state a claim for violation of the CDAFA because Plaintiff does not allege the "damage or loss" required by the CDAFA, *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020

---

and Google's DoubleClick trackers to acquire the same basic metadata at issue in the FAC. RJN, Exs. 13 & 14. In fact, well before Cotchett got involved, the undersigned counsel sent Plaintiff's first (now, former) counsel of record, Ongaro, PC, a letter informing them of their irreconcilable conflict of interest based on their website's use of tracking technologies (Google Analytics); Ongaro withdrew from the case shortly thereafter. *See* Silver Decl., Ex. A; RJN, Ex. 10.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

(C.D. Cal. 2023), nor does Plaintiff allege an unlawful "access" of his data or computer under the CDAFA, *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1217 (N.D. Cal. 2014).

Courts routinely reject claims based on similarly vague allegations about tracking nonsensitive website activity. Here, Plaintiff has had the chance to amend and still failed to plead a viable claim. His inability to cure these deficiencies confirms further amendment would be futile. The FAC should be dismissed with prejudice.

## II. STATEMENT OF THE ISSUES TO BE DECIDED

1. Does Plaintiff sufficiently plead an injury-in-fact to establish Article III standing?

2. Does Plaintiff plausibly state claims for (1) invasion of privacy; (2) intrusion upon seclusion; (3) the use of a pen register in violation of CIPA § 638.51; or (4) the unlawful access of Plaintiff's data and computer in violation of the CDAFA?

## III. STATEMENT OF RELEVANT FACTS

SeatGeek is a global ticketing leader. Its platform allows users to buy and sell tickets for a range of events, including live sports, concerts, and theater events. FAC ¶¶ 2, 10. Plaintiff's claims arise from the Website's alleged use of tracking scripts supplied by TikTok, Meta, and Microsoft. FAC ¶¶ 2, 61-63. Plaintiff claims he visited the Website "regularly" on undisclosed dates "after" TikTok's and Meta's tracking scripts were installed, though Plaintiff does not state that his visits occurred after installation of Microsoft's script. *Id.* ¶¶ 9, 72, 87, 113. Plaintiff alleges nothing about his visits to the Website, *id.*, except that he "entered" it and "viewed its content," but did not register for an account or purchase tickets. *Id.* ¶¶ 121, 122 .

Plaintiff alleges third-party scripts are used to collect users' IP addresses and technical identifiers, such as "details about the user's device" (*e.g.*, device model) and his Facebook ID. *Id.* ¶¶ 3, 53, 62–65. Plaintiff claims that by allegedly installing "cookies" on a user's browser, TikTok, Meta, and Microsoft may then identify or "fingerprint" users and "track them across the Internet," thereby allowing SeatGeek and other websites using the trackers to "optimize" their advertising campaigns and "measure" the effectiveness of their ads. *Id.* ¶¶ 55-57, 63-65, 84. Each of the third-party scripts, or "[t]rackers," is said to be a "pen register[]"—device that captures "routing, addressing, or signaling" information, "but not the contents of a communication"—and their use allegedly violates CIPA § 638.51, CDAFA, and Plaintiff's common law and Constitutional rights of privacy. *Id.* ¶¶ 152, 153, 155; *see also id.* ¶¶ 142-44, 163-64, 172. Plaintiff claims he received "targeted advertising on his social media" after visiting the Website, though he does not say what ads he allegedly saw or how those ads

were supposedly connected to his prior Website visit, if at all. *Id*. ¶ 117.

Notably, Plaintiff concedes he could not have visited the Website without sending it the same "outgoing information" allegedly collected by the third-party scripts. *Compare id.* ¶¶ 52-53, 81, 84, 86, 90, 101 (alleging SeatGeek shares users' browsing activity sent to the Website, including "IP addresses, Device Metadata, and unique user IDs") *with Brown v. Google LLC*, 685 F. Supp. 3d 909, 919-20 (N.D. Cal. 2023) (when "a user visits a website, the user's browser sends a 'GET' request to the website" that "contains . . . the URL of the specific webpage the user is trying to access," "the user's IP address," and information that "identifies the user's device platform and browser"). Far from nefarious, this collection is simply how web browsing works.

## IV. **PLAINTIFF LACKS STANDING**

### A. Standards for Motions to Dismiss Pursuant to Rule 12(b)(1)

Plaintiff, as "the party seeking to invoke the jurisdiction" of an Article III federal court, bears "the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). As part of meeting that burden, Plaintiff must establish that he suffered a "concrete and particularized" and "actual or imminent" injury-in-fact. *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018) ("a plaintiff seeking damages for the violation of a statutory right must not only plausibly allege the violation but must also plausibly allege a 'concrete' injury causally connected to the violation") (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). A defendant's Rule 12(b)(1) jurisdictional attack can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). On a facial attack, a court accepts as true only the "well-pleaded factual allegations." *Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, 830 F. App'x 821, 822 (9th Cir. 2020).

### B. Constitutional Requirements for Standing

To establish "the irreducible constitutional minimum" of standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id*. at 338 n.6 (quotation marks and citation omitted).

Under Article III, an "injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). "Traditional tangible harms," such as physical and

monetary harms, may qualify as "concrete" injuries. *Id*. at 425. So may certain "intangible harms" as long as they have a "close relationship" to harms "traditionally recognized as providing a basis for lawsuits in American courts." *Id*. Accordingly, in *TransUnion*, the Supreme Court "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 426. For *all* claims, whether statutory or otherwise, "*TransUnion* requires" the asserted injury to have a "close," "common-law analogue," and so courts must "look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort." *Popa*, 153 F.4th at 791 (emphasis in original).

### C. Plaintiff Cannot Allege a Concrete Harm.

Plaintiff's allegations do not even state the bare elements of his claims, much less show that he suffered a concrete injury-in-fact. None of the data allegedly collected about his visit to the Website comes close to the type of "sensitive" information the Ninth Circuit recently declared in *Popa* is necessary for a "concrete injury" that confers standing for any privacy claim. 135 F.4th at 790, 791; *see also, e.g.*, *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1177-80 (N.D. Cal. 2025) ("*Khamooshi I*") (no standing for CIPA § 638.51, CDAFA, and invasion of privacy claims because IP addresses and information "associated with a device" is "not sensitive personal information"). "*TransUnion* precludes standing where plaintiffs fail to allege a concrete injury," and an alleged "violation of CIPA," or *any* statute, "does not automatically give rise to a concrete injury." *Khamooshi I*, 786 F. Supp. 3d at 1181. The data collected from Plaintiff—his IP address and other benign technical identifiers—is not the "sensitive" information *Popa* requires, and its routine disclosure to third parties is not "highly offensive." 153 F.4th at 791, 792.

### 1. Plaintiff's Alleged Statutory Violations Cannot Confer a Concrete Harm.

There is no "per se rule" that "greenlight[s]" standing merely by virtue of alleging the violation of a "privacy" statute. *Popa*, 153 F. 4th at 794. Courts must consider whether the legal violations caused an actual harm to their "substantive privacy right[s]," not whether the statute *itself* is capable of vindicating privacy rights. *Id* at 793. Thus, to have standing, plaintiffs must show that their alleged harm resembles one of the "discrete torts that protected specific kinds of privacy-related harms"—each invariably requiring a "highly offensive" intrusion into a plaintiff's privacy interests—*Id*. at 791, 792. Applying this rationale, the Ninth Circuit in *Popa* rejected standing in a case involving far more invasive allegations than Plaintiff's here.

There, the plaintiff asserted intrusion upon seclusion and a statutory privacy claims based on a pet supply store's alleged use of Microsoft's Clarity software on its website to capture "over 30 different categories" of technical data—including many of the same browser and device identifiers alleged here, as well as all "URLs," "clicks," and "text inputted" by the plaintiff—sufficient to "recreate website visitors' entire visit." *Id*. at 786–87. Examining the "specific pieces of information" collected from the plaintiff, the Ninth Circuit concluded "no embarrassing, invasive, or otherwise private information" was collected. *Id*. at 791. In the absence of allegations that "sensitive" information was captured, the "monitoring of [the plaintiff's] interactions with [the] website" was not "remotely similar" to any common-law privacy "benchmark" that a plaintiff's alleged harm must resemble. *Id*. This remains true even if the "tracking software *could* be offensive in particular circumstances (e.g., involving sensitive medical or financial information)." *Id*. Even if the technology Plaintiff bemoans in the FAC was capable of inflicting harm, Plaintiff does not and cannot allege how disclosing anything about his visit to a ticketing website for public events could ever possibly "be offensive," *id.*—particularly having confirmed he did not ever register for an account or make a purchase, FAC ¶¶ 121, 122.

In accord with *Popa*, courts regularly dismiss privacy claims based on the conclusion that collection of the type of information Plaintiff alleges was collected for lack of standing: acquiring non-sensitive technical data, such as "IP addresses" and "browser and device data," inflicts no "concrete" injury. *E.g.*, *Khamooshi I*, 786 F. Supp. 3d at 1179-83 (no standing for § 638.51 claim); *Rodriguez v. Brushfire Recs.*, No. 2:25-cv-09797-CAS-PDx, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (no standing for collection of "device" or "browser fingerprints," and "session identifiers" connected to cookies); *Rodriguez v. Culligan Int'l Co.*, No. 25-cv-00225-AJB-KSC, 2025 WL 3064113, at *4, *5 (S.D. Cal. Nov. 3, 2025) (no standing for § 638.51 and intrusion claims based on collection of plaintiff's "[IP] address," "browser name… [and] version," "geolocation data, email address," "social media identities, . . . [" and] "cookies" because such data is "metadata" in which "users have no right to privacy").

### 2. The Routine Tracking of Plaintiff's Nonsensitive Metadata Is Not "Highly Offensive" and Thus Gives Rise to No Concrete Harm.

Nor can Plaintiff allege any other basis for standing. To allege a common law privacy intrusion sufficient for standing, Plaintiff must allege both a "reasonable expectation of privacy" in the information collected and conduct that is "highly offensive." *Dawidzik v. Tesla, Inc.*, No. EDCV 25-01982-KK-SPx, 2025 WL 3786963,

at \*4-5 (C.D. Cal. Dec. 29, 2025) (dismissing § 638.51 claim under *Popa* because no privacy interest existed in the "basic identification and address information" allegedly tracked and because "disclosing such information" was not "highly offensive") (citing *Popa*, 153 F.4th at 791); *see infra*, Section V(C). Here, Plaintiff alleges neither.

First, Plaintiff has no reasonable expectation of privacy in any of the "routing and addressing" metadata that underlies his claims, and so its collection cannot possibly be "highly offensive." [3] Indeed, "[g]iven the inherent nature of the internet," courts "have found that consumers do not have a reasonable expectation of privacy over their activity in that space." *Thomas v. Papa Johns Int'l, Inc.*, No. 22-cv-2012, 2024 WL 2060140, at \*2 (S.D. Cal. May 8, 2024) (no privacy expectation in browsing activity, including the "name, address, credit card" and "billing information" that plaintiff entered "in connection with ordering 'take-out'"; collecting cases holding that URLs of web pages visited, user/device IDs, and website browsing activities do not give rise to expectation of privacy), *aff'd*, No. 24-3557, 2025 WL 1704437 (9th Cir. June 18, 2025).

More specifically, "[c]ourts have consistently held that internet users have no expectation of privacy in their IP addresses," or "in the other data that [the Website] allegedly collects," including browser name and version, social media identities, geolocation, email address, ad IDs, and other IDs connected to "cookies." *Culligan*, 2025 WL 3064113, at \*4-5. Even the collection of a user's "contact information," such as an email address or username[4] bestows no standing. *Id.*; *see also Khamooshi v. Politico LLC*, No. 24-cv-7836, 2025 WL 2822879, at \*2-3 (N.D. Cal. Oct. 2, 2025) ("*Khamooshi II*") (no standing for collection of browsing activity, geolocation, IP addresses, and other identifiers, because they were not the "embarrassing" or "invasive" information required by *Popa*).

---

[3]  Plaintiff's claims arise from the alleged use of tracking tools to share his IP address, device details, and cookie IDs, FAC ¶¶ 3, 64, *i.e.*, "routing and addressing information" that is "not the contents of a communication," *id.* ¶¶ 152, 155. As articulated by both the Ninth Circuit and California appellate courts, Plaintiff "does not have a reasonable expectation of privacy" in such data that is not "content." *In re Zynga*, 750 F.3d at 1108-09; *People v. Evensen*, 4 Cal. App. 5th 1020, 1027 n.4 (2016) (no privacy expectation in "electronic data that is not itself content"). "[B]y definition," these tracking tools record data only "*about* [a] communication," *i.e.*, "metadata," "but '*not the content of the communication*'" itself. *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-1473, 2025 WL 1745726, at \*4, \*5 (N.D. Cal. June 24, 2025) (emphasis in original) (quoting Cal. Penal Code § 638.50) (dismissing § 638.51 claim for lack of standing).

[4]  Similar to *Popa*, Plaintiff alleges that the trackers have the *capability* to record users' "email or phone number" and other contact information entered into a "form," FAC ¶¶ 75, 76, but Plaintiff does not claim that he provided this information, and in fact disclaims making a purchase or registering for an account. FAC ¶ 122. He states only that he "viewed [the Website's] content." *Id.* ¶¶ 121, 122; *see also* Compl. ¶ 5 n.1. Plaintiff's speculation about the possible acquisition of such data from other users is irrelevant to *his* standing. *See Popa*, 153 F.4th at 791 n.5 ("To the extent [the] [ ] software could be offensive," Popa did not "link[ ] these potential, generalized harms to the operation of [the software] *vis-à-vis* Popa.").

Second, collecting "browsing history and personal information on a public website is 'routine commercial behavior' and not 'highly offensive.'" *Cousin*, 681 F. Supp. 3d at 1121, 1126 (no standing for collection of website browsing history, including searches, page clicks, and Facebook IDs, for plaintiff's "medical condition, prescriptions, diagnoses, and test results") (citation omitted); *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 973, 988. N.D. Cal. 2014) (disclosure of "personal identifying information, browsing habits, search queries" and other data not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (same for unique device IDs and geolocation information); *DellaSala v. Samba TV, Inc.*, No. 25-cv-3470, 2025 WL 3034069, at *1, *5 (N.D. Cal. Oct. 30, 2025) (same for IP addresses and "video-viewing data").

### 3. Plaintiff's Renaming of the Same Activity Also Does Not Allege Standing.

Plaintiff's efforts to twist the same collection of innocuous technical identifiers into an injury by claiming he "received targeted advertising" changes nothing. FAC ¶ 117. The FAC is silent on what advertisements Plaintiff saw, how seeing them caused him harm, or whether there is even a connection between whatever advertisements he saw and Plaintiff's visit to the Website. Without more, this is just a "conclusory allegation," and "not enough to establish the 'concrete and particularized' injury" required for standing. *Escobar v. Brewer*, 461 F. App'x 535, 535-36 (9th Cir. 2011) (citation omitted).

Regardless, even if he alleged more, seeing an advertisement—even a "targeted" one—does not approach the high bar for "highly offensive" conduct because targeted advertising is just "routine commercial behavior."[5] *See, e.g.*, *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (the "supposed invasion of privacy essentially consisted of [defendant] obtaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements," but such conduct is "routine commercial behavior"); *Price v. Converse, Inc.*, – F. Supp. 3d –, 2025 WL 3295119, at *1, *3 (C.D. Cal. Sept. 30, 2025) (allegations that "device," "browser," and "geographic" information was used to "deanonymize" users and deliver "highly personalized" ads showed no "highly offensive" interference and was thus "insufficient to

---

[5] Allegations that plaintiffs were subjected to "unsolicited targeted advertisements related to the *medical conditions they disclosed*" on a website does not even plausibly state an injury, including when plaintiffs stated that these ads caused them emotional distress. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 897 (C.D. Cal. 2024) (emphasis added); *see also In re Google, Inc.*, 58 F. Supp. 3d at 988 (N.D. Cal. 2014) (disclosure of user's personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, and declared preferences to third party was not highly offensive); *cf. Selby v. Ocwen Loan Servicing, LLC*, No. 17-cv-973, 2017 WL 5495095, at *3 (S.D. Cal. Nov. 16, 2017) ("Calls from debt collectors are undoubtedly unwanted, stressful, and frustrating," but they are "not injuries in fact . . . .").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

establish a 'concrete injury'"); *Khamooshi II*, 2025 WL 2822879, at *1-3 (alleged use of "advertising" trackers to capture IP addresses, browsing activity, geolocation data, and "device fingerprints" "identified 'no embarrassing, invasive, or otherwise private information'") (quoting *Popa*, 153 F.4th at 791).[6]

Finally, Plaintiff attempts to bolster his claims by contending that SeatGeek was "unjustly enriched" by the alleged acquisition of his metadata. FAC ¶ 147. Yet that conclusory allegation does not—and cannot—satisfy Article III's injury-in-fact requirement, particularly where, as here, there is a "scarcity of facts plausibly demonstrating how [SeatGeek's] profits were unjustly earned[.]" *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1191 (N.D. Cal. 2020). To allege unjust enrichment, Plaintiff must plead facts showing "that (1) Defendant's actions were unjust, and (2) as a result, Defendant was enriched"—elements that cannot exist where all that is acquired is basic, non-content data, *i.e.*, technical information "commonly shared across the internet" and in "which [Plaintiff] had no legally protected privacy interest." *Khamooshi I*, 786 F. Supp. 3d at 1182, 1183 (citation and quotation marks omitted). Besides failing to articulate how SeatGeek was allegedly "enriched" by the capture of the non-private metadata that he necessarily had to transmit to SeatGeek to view the Website, Plaintiff alleges nothing to suggest that such enrichment would be "unjust," *i.e.*, conferred through "fraud" or "coercion." *Dawidzik*, 2025 WL 3786963, at *5 (rejecting unjust enrichment as a ground for Article III standing for alleged § 638.51 violations to collect users' IP addresses and device/browser metadata). "Just as a retailer might profit from the use of home addresses without being *unjustly* enriched, Plaintiff[] has not shown why [SeatGeek's] use of [his] [record information] was unjust." *Khamooshi I*, 786 F. Supp. 3d at 1183.

The bottom line is Plaintiff's IP address, URLs to undescribed webpages, and other "fingerprinting details" give rise to no Article III injury. *Dawidzik*, 2025 WL 3786963, at *5. This record information does not even meet "the first element of an intrusion upon seclusion claim," *i.e.*, an "objectively reasonable" expectation of privacy. *Id.* at *4, *5. "At best," the alleged tracking of his metadata is "the functional equivalent" of "monitoring a person's activities" within a "digital space"—routine internet activity that comes nowhere close to the "highly offensive" privacy intrusion required to confer standing. *Id.* at *5.

---

[6]    *See also Carolus v. Nexstar Media Inc.*, No. 24-cv-7790, 2025 WL 1338193, at *1-2 (N.D. Cal. Apr. 9, 2025) (no concrete injury where "tracking cookies" intercepted IP addresses, browser and device data, and other "identifying" metadata); *Gabrielli v. Insider, Inc.*, No. 24-cv-1566, 2025 WL 522515, at *5 (S.D.N.Y. Feb. 18, 2025) (dismissing substantially the same allegations as in *Khamooshi I*); *Xu v. Reuters News & Media Inc.*, No. 24-cv-2466, 2025 WL 488501, at *3-5 (S.D.N.Y. Feb. 13, 2025) (same); *see also Kishnani*, 2025 WL 1745726, at *4 (no standing for TikTok's alleged acquisition of URLs and "geographic," "device[,] and browser" data); *Hughes v. Vivint, Inc.*, No. 24-cv-3081, 2024 WL 5179916, at *3-5 (C.D. Cal. July 12, 2024) (same); *Mitchener v. CuriosityStream, Inc.*, – F. Supp. 3d –, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) (same).

### 4. No Amendment Can Cure the Lack of Concrete Harm.

Amendment to attempt to allege standing a third time would be futile because Plaintiff's routine Website visits are incapable of producing a concrete privacy injury, particularly since they are based on the collection of non-sensitive technical information in which he has no privacy interest.[7] Further, having disclaimed creating an account or making any purchase, Plaintiff cannot allege more. Even if Plaintiff attempted to detail his website interactions, disclosure of a user's ticket interest or purchase for public events offered on the Website would not constitute a concrete harm. *Cf. Thomas*, 2024 WL 2060140, at *1, *4 (no privacy expectation in browsing activity and personal information that plaintiff entered "in connection with ordering 'take-out'" from Papa Johns' stores); *Doe*, 2025 WL 2971090, at *3 n.3 (no standing to sue based on a disclosure to Meta that a plaintiff was "shopping for a football jersey"). A consumer's "shopping behavior" and "product preferences" are "not personal information," and their tracking does not confer standing. *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 66 (W.D. Pa. Aug. 28, 2023), *aff'd*, 148 F.4th 153 (3rd Cir. 2025); *Popa*, 153 F.4th at 791 (no standing where Microsoft acquired plaintiff's browsing interactions for "pet supplies" because the disclosure of shopping "preferences" does not "plausibly allege the infringement of [plaintiff's] privacy interest").[8]

Plaintiff "effectively ask[s] the Court to characterize an entire industry as founded on tortious conduct," but he "do[es] not"—and cannot—"allege that [SeatGeek] did more than engage in . . . routine behavior," that, "as a matter of law. . . does not rise to the level of highly offensive." *Hubbard v. Google LLC*, No. 19-cv-7016, 2024 WL 3302066, at *7-8 (N.D. Cal. July 1, 2024). Accordingly, "further amendment would be futile," and Plaintiff's claim should be dismissed without leave to amend. *See Khamooshi II*, 2025 WL 2822879, at *4.

## V. **PLAINTIFF FAILS TO PLAUSIBLY STATE A CLAIM FOR RELIEF**

### A. Standards for Motions to Dismiss Pursuant to Rule 12(b)(6)

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must allege "enough facts

---

[7] Plaintiff's concession that his supposedly tracked data is non-content "metadata," comes as no surprise, since Plaintiff bases his claims on so-called "pen registers." Any contrary assertion would "contradict[ ]" the very definition of "pen register," which "explicitly excludes" technologies that "record 'the contents of a communication.'" *In re Apple Data Priv. Litig.*, No. 22-cv-7069, 2026 WL 146025, at *4 (N.D. Cal. Jan. 20, 2026) (quoting Cal. Penal Code § 638.50(b)). Put simply, if it records content, it is not a pen register.

[8] Standing based on the disclosure of "browsing activity" depends on whether "the activity is private or personal enough"; for example, there is no standing if "plaintiff was shopping for a football jersey," *Doe*, 2025 WL 2971090, at *3 n.3, or, by the same token, event tickets offered on the Website (which, to be clear, Plaintiff does not actually allege he browsed for). *See, e.g.*, *Lien v. Talkdesk, Inc.*, No. 24-cv-6467, 2025 WL 551664, at *1 (N.D. Cal. Feb. 19, 2025) (plaintiffs' "phone numbers and questions they asked" about retailers' "store hours, events, and products" is "not private or personal enough to confer standing"); *see also infra*, Section V(C).

to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Courts must generally accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *See Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### B. Plaintiff's Bare Allegations Fail to Satisfy Rule 8.

A plaintiff cannot state a claim based on an "overarching theory" of how technology operates, particularly when, as here, the plaintiff fails to allege sufficient facts about his own interactions and communications on the website. *Harrill v. Emanuel Med. Ctr.*, No. 23-cv-1672, 2025 WL 1635428, at *4 (E.D. Cal. June 9, 2025); *see Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024) (affirming dismissal of CIPA claim because plaintiff's "allegations about her own interactions with the [] website [we]re sparse" and did "not allege that she herself actually made any communications that could have been intercepted once she had accessed the website"). It is not enough for a complaint to "identif[y] potential harms that *might* be associated with [the] technology." *Popa*, 153 F. 4th at 791 n.5. The complaint must "include[    ] allegations plausibly linking these potential, generalized harms to the operation of [the technology] on [the] website vis-à-vis" the plaintiff. *Id.*

Plaintiff's overarching theory is that tracking technologies on the Website improperly collected users' information. *See* FAC ¶¶ 1-6. Plaintiff then spends 15 pages describing how these technologies work, but he alleges no *facts* connecting these generalized allegations to his own activities. Plaintiff's portrayal of SeatGeek's alleged use of ubiquitous, online tracking tools as a "systematic violation of California citizens' privacy rights," FAC ¶ 1, does not alter the truth that all Plaintiff alleges is that technical metadata—like whether he used a laptop or desktop, or browsed on Chrome or Firefox—was collected. He does not allege, and in fact disclaims, sharing additional data on the Website; he does not allege searching on the Website; and he does not identify any page he viewed. Instead, Plaintiff alleges he visited the Website to "view[ ] its content" at a time when it used third-party technology to "track" his "IP address" and "device fingerprint" identifiers. FAC ¶¶ 115, 121,

122. In addition to providing no standing, *supra*, Section IV(C), these vague statements also do not state a claim.[9]

For example, in *Harrill*, the court held allegations that plaintiff used defendant's website to search for information related to health conditions and to schedule treatment were insufficient to state CIPA and other privacy claims because plaintiff did not identify "what information she provided to Defendants via her browsing activity on the Website and thus what information was subsequently transmitted" to third parties. 2025 WL 1635428, *4, *12. As the court explained, while the complaint spanned dozens of pages, "only one paragraph is dedicated to detailing Plaintiff's interactions with Defendants' Website," and it did not identify the information provided while browsing. *Id.* at *4. Likewise, in *Cousin*, plaintiffs' allegations that they used defendant's website to "research" doctors, "look for providers," and "search for medical specialists" were insufficient to state CIPA and privacy claims. 681 F. Supp. 3d at 1123-24. The same is true for Plaintiff's allegations about his own Website interactions, which are sparse as to what information was collected and shared (if any). Thus, because "Plaintiff failed to plausibly plead facts to sustain any of h[is] claims, which all rely on the same underlying theory that . . . personal information [was collected] and disclosed [] to unauthorized third parties," each claim should be dismissed. *Amgen*, 2024 WL 575248, at *3. All Plaintiff's claims fail for this reason alone.

Plaintiff also does not allege "approximately when the actionable misconduct occurred," as required to satisfy Rule 8. *Brodsky*, 445 F. Supp. 3d at 135 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). Courts "dismiss claims under Rule 8 when plaintiffs fail to allege approximately when the actionable misconduct occurred." *Id.* at 135 (collecting cases). Plaintiff alleges only that he visited the Website "after" certain technology was placed on the Website, FAC ¶¶ 72, 87, and during the "class period," FAC ¶ 113—an undefined term that does not provide "fair notice" or any information to assess whether his claims are timely. *Brodsky*, 445 F. Supp. 3d at 135. "Because [Plaintiff] do[es] not allege the dates of the alleged illegal conduct, [he] ha[s] failed to establish that [his] claims were brought within the statute of limitations," and his claims must be dismissed. *Findley v. Am. Home Mortg. Corp.*, No. 10-cv-2885, 2010 WL 5169046, at *3 (E.D. Cal. Dec. 14,

---

[9]    *See also Beltran v. Doctor's Med. Ctr. of Modesto*, No. 2:23-cv-01670-DC-CKD, 2025 WL 1635467, at *5 (E.D. Cal. June 9, 2025) (allegations that plaintiffs used website "to search for information related to symptoms or conditions they were experiencing" held "deficient" to state privacy and CIPA claims); *King v. Hard Rock Cafe Int'l (USA), Inc.*, No. 24-cv-1119, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (allegations that plaintiff used defendant's website "to 'browse[ ] and book a Hard Rock hotel' . . . lacked sufficient factual support" to state a CIPA claim); *Doe v. Amgen, Inc.*, No. 23-cv-7448, 2024 WL 575248, at *3 (C.D. Cal. Jan. 29, 2024) (dismissing privacy claims because plaintiff failed to identify what personal information was allegedly collected); *Doe v. Davita Inc.*, No. 23-cv-1424, 2024 WL 1772854, at *2 (S.D. Cal. Apr. 24, 2024) (dismissing complaint because plaintiffs' allegations that they used "Online Platforms" to "research different types of dialysis" did "not explain what specific information they provided").

2010).[10] SeatGeek's first motion advised Plaintiff of this defect, (ECF No. 22), and Plaintiff did nothing to remedy it in the FAC, tacitly conceding he cannot do so, and his claim is time-barred.

### C. Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion Claims Fail.

Claims for invasion of privacy and intrusion upon seclusion have similar elements—both requiring a "reasonable expectation of privacy" intruded upon by the defendant in a "highly offensive" manner. *See, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088-90 (N.D. Cal. 2022) (considering claims together). To determine whether plaintiffs have stated claims for invasion of privacy or intrusion upon seclusion, courts evaluate whether the alleged invasions are "sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill v. Nat'l Collegiate Athletic Ass'n.*, 7 Cal. 4th 1, 37 (1994). This standard sets a "high bar" to exclude *de minimis* intrusions. *Belluomini v. Citigroup, Inc.*, No. 13-cv-1743, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013). "Even disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim." *Id*. When, as here, allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Low*, 900 F. Supp. 2d at 1025.

First, Plaintiff's claims fail because he has no reasonable expectation of privacy in the only data he alleges was captured. As discussed *supra*, Section V(B), Plaintiff does not allege facts about the content of any communication with the Website, and he cannot do so now without contradicting his own pleading. *Supra*, Section IV(C)(2) (technology that collects the contents of a communication is, by definition, not a pen register). Even if Plaintiff alleged what he browsed on the Website, he still cannot establish this fundamental element of his claims, as there is "no recognized reasonable expectation of privacy" in "browsing data" or "shopping behavior," *Saeedy v. Microsoft Corp.*, No. 23-cv-1104, 2023 WL 8828852, at *4-5 (W.D. Wash. Dec. 21, 2023), let alone in the technical information (IP addresses, device type, etc.) that Plaintiff automatically transmitted simply by visiting the Website, *see supra*, Section IV(C) (collecting authorities holding same; citing *e.g.*, *In re*

---

[10]     *See also Magney v. Cnty. of Humboldt*, No. 17-cv-2389, 2018 WL 1156817, at *4 (N.D. Cal. Mar. 5, 2018) (claims held untimely where "Plaintiff's complaint fails to allege that any specific act or conduct occurred within the statute of limitations period"); *O'Donnell v. U.S. Bancorp Equip. Fin., Inc.*, No. 10-cv-0941, 2010 WL 2198203, at *3 (N.D. Cal. May 28, 2010) ("O'Donnell has nonetheless failed to satisfy the pleading requirements of [Rule] 8 because she has not alleged any dates in her complaint."). Indeed, Plaintiff's omission is particularly damning given the short limitations periods for his claims: "the applicable statute of limitations is one year" under CIPA, *Brodsky*, 445 F. Supp. 3d at 134, two years for intrusion upon seclusion and invasion of privacy claims, Cal. Civ. Proc. Code § 335.1, and three years under the CDAFA, Cal. Penal Code § 502(e)(5).

*Zynga*, 750 F.3d at 1108-09 (no "expectation of privacy" in "record information" about a communication that is not content, which includes "basic identification and address information," "name, address, and subscriber name or identity," and "[i]nformation about the address of the [ ] webpage the user was viewing"); *Carolus*, 2025 WL 1338193, at *1 (no privacy interest in intercepted IP addresses, browser and device data, and other metadata)).

Second, the conduct alleged in the FAC—conduct that is ubiquitous on the internet—was not an egregious breach of social norms. *See, supra*, Section IV(C). It is "routine commercial behavior." *Folgelstrom*, 195 Cal. App. 4th 989 (describing retailer's acquisition of plaintiff's ZIP code during credit-card transaction and sharing of the plaintiff's name, credit card number, and ZIP code to identify plaintiff and send him unwanted coupons and ads).[11]

**D.     Plaintiff's Pen Register Claim Under CIPA § 638.51 Fails.**

Plaintiff's CIPA § 638.51 claim fails for <u>two</u> reasons: (i) third-party scripts deployed on a website are not pen registers, as shown by CIPA's legislative history and text; and (ii) § 638.51 does not prohibit a website's use of third-party scripts to collect and share information that is necessarily transmitted to it by its visitors.

**1.     Section 638.51 Applies to Tracking Technology for Telephones, Not Websites.**

When interpreting a California statute, a federal court must apply California's principles of statutory construction. *See In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001). As stated by California's Supreme Court, a court's fundamental task in statutory interpretation "is to determine the legislative intent and effectuate the law's purpose, giving the statutory language its plain and commonsense meaning." *Mendoza v. Fonseca McElroy Grinding Co., Inc.*, 11 Cal.5th 1118, 1125 (2021). A statute's "plain meaning," however, should be rejected if it would "result in absurd consequences the Legislature did not intend." *Id.* (citation omitted). Moreover, a "statute should not be read in isolation." *Ramos v. Garcia*, 248 Cal. App. 4th 778, 785 (2016). Legislation "should be construed to harmonize its various elements without doing violence to its

---

[11]     *See also Posadas v. Goodyear Tire & Rubber Co.*, No. 23-cv-402, 2024 WL 5114133, at *7 (S.D. Cal. Dec. 13, 2024) (dismissing intrusion claim because the "complaint contains no factual allegations that Plaintiff disclosed *intimate or sensitive* personally identifiable information") (emphasis added); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 524–25 (C.D. Cal. 2021) (plaintiff had no "expectation of privacy over his activity on Nike's Website"); *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1043-44 (S.D. Cal. 2024) (no intrusion because there "is no supporting allegation that Plaintiff's engagement with the Drift chat feature" produced "content likely to be embarrassing."); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064, 1067 (C.D. Cal. 2024) (dismissing privacy claims in Meta pixel case for lack of "highly offensive" conduct where plaintiffs "used Defendants' Website for routine medical searches and inquiries").

language or spirit. Potentially conflicting provisions should be reconciled in order to carry out the overriding legislative purpose whenever possible," and a "construction which makes sense of an apparent inconsistency is to be preferred to one which renders statutory language useless or meaningless." *Texas Com. Bank v. Garamendi*, 28 Cal. App. 4th 1234, 1243 (1994).

In addition, "CIPA is a criminal statute." *Doe*, 2025 WL 2971090, at *1. Any "ambiguity in [the] criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation." *People v. Reynoza*, 15 Cal. 5th 982, 1012 (2024) (quotation marks and citations omitted). The rule of lenity applies to CIPA "even when the statute is being invoked in a civil action." *Doe*, 2025 WL 2971090, at *1 (citing *Harrott v. Cnty. of Kings*, 25 Cal. 4th 1138, 1154 (2001)).

a.   The origin of Section 638.51 is rooted firmly in telephone surveillance.

The California Legislature passed CIPA in 1967 "to address the increasing use of wiretapping to eavesdrop on private phone conversations." *Doe*, 2025 WL 2971090, at *3. In 2015, California enacted AB 929 to add to CIPA several provisions pertaining to pen registers and trap and trace devices. The bill's author explained it "authoriz[es] state and local law enforcement officers" to use "pen registers," which "record all outgoing numbers from a particular telephone line." RJN, Ex. 2 at 10. Consistent with legislators' uniform focus on telephones, the Legislative Counsel's Digest at the beginning of AB 929 explained that the "bill would clarify that any location information obtained" by a pen register "is limited to the information that can be determined from *the telephone number*." *Id.*, Ex. 1 at 1 (emphasis added).

The provisions of CIPA enacted by AB 929—patterned on various versions of the federal Pen Register Act, 18 U.S.C. §§ 3121–3127—include § 638.51, the prohibition on pen registers and trap and trace devices "without first obtaining a court order pursuant to [§] 638.52[.]" *Compare* Cal. Penal Code § 638.51(a) *with* 18 U.S.C. § 3121(a). Section 638.52, California's authorization provision, in turn, corresponds nearly *verbatim* with 18 U.S.C. § 3123 as that federal statute was written prior to its amendment in 2001—language that had been held to be limited to telephone lines. *Compare* Cal. Penal Code § 638.52 *with* Pub. L. 99-508 § 301(a) (Oct. 21, 1986); *see infra* Section V(C)(1)(c). When AB 929 was enacted in 2015, the Pen Register Act had already been amended in 2001 to extend beyond telephone lines to any "*other facility*" to which a pen register or trap and trace device may be attached "or *applied*." 18 U.S.C. § 3123(b)(1)(A) (emphasis added). Yet, in AB 929, the California Legislature adopted the already-more-narrowly-interpreted pre-amendment language.

### b. The CCPA was enacted to govern the internet, not CIPA.

A few years *after* the passage of AB 929, in 2018, California's legislature enacted the CCPA to provide consumers with "an effective way to control their personal information." 2018 Cal. Legis. Serv. ch. 55 § 2(i). The CCPA defines "personal information" as that which can identify, relate to, describe, or be linked—directly or indirectly—to a "particular consumer or household." Cal. Civ. Code § 1798.140(v)(1). The definition includes, among other things, IP addresses, "online identifier[s]," and "[i]nternet or other electronic network activity information," including browsing history, search history, and "information regarding a consumer's interaction with an internet website application." *Id.* Because the data alleged in the FAC (IP addresses and other technical information) falls within this definition, SeatGeek's disclosure of that information is regulated by the CCPA.

Key here, the CCPA regulates the conditions under which businesses are authorized to disclose "personal information" to third parties via online tracking technology for the purposes of "cross-context behavioral advertising." Cal. Civ. Code § 1798.149(k). Namely, businesses must provide a mechanism to opt out of the "sale" or "sharing" of "the consumer's personal information," *id.* § 1798.120(a)(1), and the CCPA permits the disclosure of personal information via online tracking technologies for "analytic services" without even providing an opt-out mechanism, *id.* § 1798.140(e). Nowhere does the CCPA prohibit the disclosure of IP addresses and other browser, device, and online session identifiers to third parties without affirmative ***opt-in*** consent, the alleged absence of which underpins Plaintiff's claims.[12]

Last year, spurred by the recent "barrage of CIPA lawsuits" aimed at the use of such "common digital tools," California's Senate unanimously passed SB 690 to "clarify"—not change—what AB 929 and the legislative record have already made clear: AB 929 "was not intended to apply to online activity[.]" RJN, Ex. 8 at 10, Ex. 9 at 7. SB 690 exempts from CIPA activity that is done for a "commercial business purpose," which would include cookie/pixel tracking for analytics or for targeted advertising. *Id.*, Ex. 8 at 1. The goal of this amendment is to make clear that online tracking governed by the CCPA—which does not itself have a private right of action for most violations—is not and has never been actionable under CIPA. *Id.*

---

[12]   Plaintiff thus contends that CCPA's authorization of an opt-out framework is meaningless because § 638.51 imposes a higher standard—even though the CCPA was enacted after § 638.51.

Both the legislative history surrounding CIPA's pen register statute as well as the design and structure of the statute show that § 638.51 applies only to tracking technology on telephone lines, not website scripts that collect the information that visitors' devices send to a website to access it.

*First*, California's legislature enacted AB 929, the origin of § 638.51, to create a framework governing how law enforcement officials may obtain orders "to use pen registers and trap and trace devices *in telephone surveillance* . . . ." RJN, Ex. 5 at 1 (emphasis added). The legislative intent behind AB 929 was "to govern installation of pen registers and trap and trace devices on telephones," *Scharon v. Paramount Glob.*, No. 25STCV10585, 2025 WL 2996812, at *2 (Cal. Super. Ct. Oct. 3, 2025), and the statute was never intended to "address the privacy rights of Internet users." *Casillas v. Trans. Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *2 (Cal. Super. Ct. Sept. 9, 2024). Indeed, the Legislative Counsel's Digest for AB 929 provides that this "bill would clarify that any location information obtained by a pen register or tra[p] and trace device is limited to the information that can be determined from the *telephone number*." RJN, Ex. 1 at 1 (emphasis added).

Before AB 929, California law was silent on law enforcement's use of these routine telephonic tools, and the bill merely closed that narrow gap.[13] Expanding its reach to businesses on the internet thus defies both the stated legislative intent and common sense. *See Rodriguez v. Ink Am. Intern. Grp. LLC*, No. 25STCV15350, 2025 WL 4034985, at *3 (Cal. Super. Ct. Dec. 10, 2025) ("The legislative history indicates that CIPA's provisions do not concern the [online] tools employed here.").

*Second*, and further reinforcing the Legislature's singular focus on telephone surveillance, the statutory scheme of § 638.51 confirms it applies only to technology used on telephone lines, not website code. § 638.51 prohibits the use of a pen register or a trap and trace device "without first obtaining a court order pursuant to

---

[13]    *See* RJN, Ex. 3 at 3 (Assem. Floor Bill Analysis, AB 929, 7/6/2015) ("AB 929 would authorize state and local **law enforcement officers** to use pen register and trap and trace devices," which allow "officers to record all outgoing numbers from a **particular telephone line**.") (emphasis added); *id.*, Ex. 4 at 4 (Assem. Comm. on Privacy and Consumer Protection Bill Analysis, AB 929, 4/7/2015) ("This bill is intended to authorize state and local **law enforcement** to seek emergency orders for pen registers/trap and trace devices **used in telephone surveillance** . . . .") (emphasis added). Both AB 929 and Assembly Bill 1924—which amended CIPA's "pen register" provisions in 2016 by adding §§ 638.54 and 638.55—contain numerous legislative materials that reference only "telephonic surveillance" and phone-dialing tracking. *E.g.*, *id.*, Ex. 2 at 12 (Sen. Comm. on Public Safety Bill Analysis, AB 929, 6/16/2015) ("[A] pen register/trap and trace device **only records the numbers** dialed to or from a **particular phone number**.") (emphasis added); *id.*, Ex. 6 at 3 (Assem. Comm. on Privacy and Consumer Protection Bill Analysis, Assembly Bill 1924, 2015-2016 Reg. Sess., 4/15/2016) (a "pen/trap order is **only** for the capture of . . . **phone numbers**") (emphasis added).

Section 638.52," but § 638.52 adopted the "same authorization provision" that courts have relied on under the pre-2001 amendments to the federal Pen Register Act to find that "the Act applied only to mechanical, telephone number-tracing technology, not technology used to collect IP address[es] from a desktop computer." *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025). The legislative history of the 2001 amendment to the federal Pen Register Act "indicates that the change 'ensures that the pen register and trap and trace provisions apply to facilities other than telephonic lines,'" whereas California's statute "represents [the pre-amended Pen Register Act's] telephonic limitation," as shown "throughout the statutory scheme." *Ink Am.*, 2025 WL 4034985, at *3 (citation omitted).

Corresponding precisely to the telephone-based limitations present in the original version of the Pen Register Act, the "requirements" for the permitted use of a pen register under § 638.52 show that "section 638.51 applies to telephone lines, not websites, because websites do not have lines, physical locations, or numbers." *Scharon*, 2025 WL 2996812, at *1 (citing Cal. Penal Code § 638.2(d)); *see supra*, Section V(D)(1)(a). Because the authorization provision only applies to telephone lines, the corresponding prohibition on such devices must also be limited to devices "attached to a telephone line"; otherwise, no order authorizing a pen register for non–"telephone line"–based surveillance could ever issue. *Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digit. Analyzer*, 885 F. Supp. 197, 199, 200 (C.D. Cal. 1995) (pre-amended Pen Register Act regulated only devices "attached" to a "telephone," as shown by limitation in authorization provision).

Like Congress's original intent in enacting the Pen Register Act in 1986 to regulate only call-dialing tracing, the California Legislature's narrow word choice in its pen register statute—even though a newer version of the Pen Register Act with broader implications was already in place—"cannot be assumed to be inadvertent." *Id*. Accordingly, the California statute must be interpreted as was the original Pen Register Act to limit the prohibition on "pen registers" to devices attached to telephone lines. *See People v. Williams*, 17 Cal.5th 99, 128-29 (2024) ("Congress normally can be presumed to have had knowledge of the interpretation given to [an] incorporated law, at least insofar as it affects the new statute.'") (citation omitted). California's pen register statute, which must be read "to fit harmoniously as part of a symmetrical and coherent statutory scheme," simply does not apply to the web-based code that forms the basis for Plaintiff's claim here. *Rodriguez v. Holder, Jr.*, 619 F.3d 1077, 1079 (9th Cir. 2010) (citation and quotation marks omitted). To conclude otherwise would impermissibly render the telephonic limitations in Section 638.52 "nugatory." *Lakin v. Watkins Associated*

*Indus.*, 6 Cal.4th 644, 659 (1993).

      d.    The rule of lenity precludes Plaintiff's expansive interpretation of CIPA.

To the extent Plaintiff argues the Court should nonetheless expand § 638.51 liability to his allegations, the rule of lenity forecloses imposing liability on SeatGeek. *See Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1330 (2009) (If "reasonably susceptible of two interpretations," lenity "supports an interpretation . . . favorable to a party who may be subject to criminal prosecution or penalties."). Judge Chhabria's analysis in *Doe*—addressing CIPA claims against a website operator for using the Meta Pixel to perform data analytics and targeted advertising—is on point. 2025 WL 2971090, at *1. Cutting to the heart of the issue, Judge Chhabria recognized that the statute is, at best, ambiguous and, given that "ambiguity and its imposition of criminal liability," "as courts are called upon to apply CIPA's already-obtuse language to new technologies," the rule of lenity requires courts to "avoid reading . . . any portion of CIPA . . . too broadly"; rather, it is "for the Legislature to bring CIPA into the modern age and to speak clearly about how the kinds of activities at issue in this case should be treated. Until that happens, courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation" that excludes web-based technology. *Id.* at *1, *6.

The CCPA, enacted three years *after* § 638.51 reinforces this conclusion. If the California Legislature wanted to apply § 638.51 "to the internet," "it could do so by amending that provision or adding to CIPA's statutory scheme." *Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *3 (9th Cir. July 9, 2025) (Bybee, J., concurring). "Specifically, the Legislature has expressly referenced 'internet' or 'online' communications and services when extending protections beyond traditional telephonic technologies." *Ink Am.*, 2025 WL 4034985, at *3. But it did not do so here. Rather, the Legislature regulated the technology at issue here via the CCPA—"California's comprehensive consumer data privacy framework"—*not* CIPA. RJN, Ex. 9 at 18. "Suing under CIPA for behavior explicitly regulated (or permitted) by [the] CCPA short-circuits legislative intent." *Id.* at 7. The California Legislature surely knew of the recently-enacted § 638.51 when enacting the CCPA. It strains credulity to suggest "the Legislature intended for CIPA to apply" to Plaintiff's allegations, not least because it later "adopted [the CCPA] that more clearly speak[s] to"—and, in fact, *permits*—the conduct complained of here. *Doe*, 2025 WL 2971090, at *6 (citing Cal. Civil Code § 1798.100 *et seq.*).[14]

---

[14]    Unlike Plaintiff's unmoored reading of § 638.51, SeatGeek's commonsense interpretation of the statute harmonizes CIPA and the CCPA, avoiding any conflict between them, as both the CCPA and California law require. *See* Cal. Civ. Code § 1798.175 ("[L]aw relating to consumers' personal information should be construed to harmonize with the provisions of [the CCPA][.]"); *Pac. Palisades Bowl Mobile Ests., LLC v. City of L.A.*, 55

The "advertising, analytics, and other data processing practices" alleged in the FAC are "already governed by [the] CCPA," and application of CIPA's muddled pen register provisions to those practices, as Plaintiff demands, imposes a stricter "opt-in" regime that conflicts directly with the CCPA's "opt-out" requirements and the stated purpose of AB 929. RJN, Ex. 9 at 18; *see also In re Transcon Lines*, 58 F.3d 1432, 1440 (9th Cir. 1995) ("[W]e must, whenever possible, attempt to reconcile potential conflicts in statutory provisions."). Section 638.51 "was not intended to apply to website tracking tools"; "such conduct is intended by the Legislature to be covered by the CCPA," *Ink Am.*, 2025 WL 4034985, at *4, "which allows reasonable collection of the data Plaintiff[] allege[s] [SeatGeek] and the tracking software collected[.]" *Scharon*, 2025 WL 2996812, at *2. "This is further indication that [Plaintiff] cannot state a CIPA claim[.]" *Id.*

In sum, the uniform legislative history and the Legislature's chosen framework for CIPA's pen register statute establish that § 638.51 does not apply to the web-based tracking technology alleged here. And even assuming Plaintiff's boundless and conflict-ridden interpretation carried some plausibility, the rule of lenity directs the Court to adopt the narrower view in SeatGeek's favor. *Doe*, 2025 WL 2971090, at *6.

### 2. Section 638.51 Does Not Bar a Website's Collection of Visitors' Information.

Assuming § 638.51 applies to the activity Plaintiff alleges (it does not), he still fails to state a § 638.51 claim because "'the collection of incoming [addressing information] by [a website operator] is exempt' from penalty" since website operators "necessarily capture such data . . . to operate the website." *Trans. Optical*, 2024 WL 4873370, at *5 (quoting *Columbia Pictures Indus. v. Bunnell*, No. 06-cv-1093, 2007 WL 2080419 at *11 (C.D. Cal. May 29, 2007)). This commonsense rule remains even if the alleged collection is by a third-party tracking tool as alleged here. *Id.* at *1. In simpler terms, wherever "devices on a network necessarily receive addressing information," the capture of such information cannot violate the prohibition pen registers. *In re Innovatio IP Ventures, LLC Patent Litig.*, 886 F. Supp. 2d 888, 895 (N.D. Ill. 2012) ("Because all Wi–Fi devices on a network necessarily receive addressing information to determine if a data packet is addressed to them," "any user of a Wi–Fi network on which a third party was also operating" would be "in violation of the Act.").

Courts have thus rejected that the use of "tracking software" to acquire a users' "outgoing information" transmitted to a website is unlawful under § 638.51. *See Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *2, *4 (Cal. Super. Ct. Mar. 13, 2024) (dismissing § 638.51 claim because plaintiff's

Cal. 4th 783, 805–806 (2012) (limiting applicability of statute because broader application would "overrid[e]" provisions of other statutes, impermissibly "effect[ing] an implied partial repeal of them")

interpretation "render[s] every single [website] entity voluntarily visited by a potential plaintiff . . . as a violator"); *Aviles*, 2025 WL 487196, at *3 (similar). This "law enforcement tool" used "to record what numbers have called a specific phone line . . . is a far cry from the situation here, where Plaintiff voluntarily and intentionally chooses to contact [SeatGeek's] website and [SeatGeek] is learning the identity of the person contacting it." *Rodriguez v. Sparc Grp., LLC*, No. 24STCV26946, 2025 Cal. Super. LEXIS 41697, at *8 (Cal. Super. Ct. Jul. 9, 2025).

If "CIPA broadly prohibits any process by which anyone identifies any 'originating number,' then every cell phone in the world—which identify the phone number of incoming calls—would be a prohibited trap and trace device" or pen register, and, untenably, so "would every website interaction that identifies electronic information about the user in a manner that allows the website to function," *id.* at *7-8—an outcome prohibited by common sense and the rule of lenity. "Amendment will not fix the core problem" that the statute does not apply "so there is no reason for leave to amend." *Scharon*, 2025 WL 2996812, at *3.

### E.   Plaintiff's Claim Under the CDAFA Fails.

Plaintiff fails to state a CDAFA claim for <u>two</u> reasons: he alleges (1) no "damage or loss" under the statute; and (2) no hacking, or "access" without permission.

#### 1.   Plaintiff Alleges No "Damage or Loss" Under the CDAFA.

"To bring a private civil cause of action under section 502, which is otherwise a criminal statute, a plaintiff must plead that she 'suffers damage or loss' due to the criminal violation." *Heiting*, 709 F. Supp. 3d at 1020. The "CDAFA's private right of action contemplates some damage to *the computer system, network, program, or data contained on that computer*, as opposed to data generated by a plaintiff while engaging with a defendant's website." *Id.* at 1021 (citing Cal. Penal Code § 502(e)(1)) (emphasis added). A "loss of control" over data, including "IP address information and other identifying information," is not a damage or loss "contemplated by the CDAFA." *Id.* at 1020-21.

Plaintiff does not allege damage to his computer system, network, program, or data contained on his computer. Instead, his CDAFA claim is based on SeatGeek being supposedly "unjustly enriched" by acquiring his "identifying information" and using it to "maximize revenue" from selling advertising space on its Website. FAC ¶ 147. Such claimed "privacy invasions" or "loss in value of misappropriated data" do not qualify as harms under the CDAFA. *Heiting*, 709 F. Supp. 3d at 1021. Courts have expressly rejected the theory that internet

users' "loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data" is "damage or loss" within the meaning of the statute. *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021); *see also, e.g.*, *Doe v. Cnty. of Santa Clara*, No. 23-cv-4411, 2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024) (dismissing CDAFA claim, holding the alleged "lost value in plaintiff's PHI [private health information]" is not cognizable under the statute); *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1071, 1073 (N.D. Cal. 2018) (dismissing claims under the CDAFA and its federal analogue because "accessing the types of information secured by Synopsys—'IP addresses, MAC addresses, user names, host names, user accounts, email addresses, workstation information, system administrators, and IT system logs'—does not constitute as a "damage or loss").

Further, Plaintiff does not state a claim for unjust enrichment, as he fails to articulate how SeatGeek profited off his nonprivate IP addresses and other basic identifiers. *See supra*, Section IV(C)(2) (citing, *e.g.*, *Khamooshi I*, 786 F. Supp. 3d at 1182). Regardless, unjust enrichment is not "sufficient to demonstrate a loss" under the CDAFA either. *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025). Even "if a company made money off of the sharing or use of a plaintiff's information, that company's gain of money does not equal a plaintiff's loss of money or property." *Id.*; *see also Oracle Corp. v. SAP AG*, 734 F. Supp. 2d 956, 969 (N.D. Cal. 2010) (CDAFA permits "only the recovery of compensatory damages" not "unjust enrichment/restitution"); *Cnty. of Santa Clara*, 2024 WL 3346257, at *9 (loss "based on the value of the data that the [defendant] took and derived a benefit from given the multi-billion-dollar industry for the sale and purchase of private [personal] data" insufficient).

Thus, Plaintiff has not alleged cognizable damage or loss. *Heiting*, 709 F. Supp. 3d at 1020.

### 2. Plaintiff Does Not Allege That SeatGeek Unlawfully Accessed His Computer.

The CDAFA "is an anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose." *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1032 (N.D. Cal. 2014). Like CIPA, the CDAFA is also "a penal statute" that must "be strictly construed." *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 863 (N.D. Cal. 2011); *see also supra*, Section V(D)(1).

The CDAFA prohibits "knowingly access[ing]," or causing to be accessed, a computer system or data "without permission." Cal. Penal Code § 502(c). Unlawful "access" under the CDAFA requires bypassing a technical barrier or unauthorized use of login credentials akin to a "hack" of Plaintiff's computer. *Perkins*, 53 F.

Supp. 3d at 1217 ("individuals may only be subjected to liability for acting 'without permission' under Section 502 if they access or use a computer, computer network, or website in a manner that overcomes technical or code-based barriers"). "Thus, the mere fact that a plaintiff does not consent to an action does not create liability under the CDAFA." *Gutierrez v. Converse Inc.*, No. 23-cv-06547, 2023 WL 8939221, at *4 (C.D. Cal. Oct. 27, 2023) (dismissing CDAFA claim because plaintiff "fail[ed] to allege that Defendant overcame any technical or code-based barriers"). The use of browser-based scripts to gather information, as Plaintiff alleges here, is not a "hack" under any reasonable interpretation. *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 716 (N.D. Cal. 2011) (plaintiffs "cannot state a claim under Section 502" because "Plaintiffs do not allege that Defendant circumvented technical barriers to gain access to a computer"), *aff'd*, 572 F. App'x 494 (9th Cir. 2014). Plaintiff has alleged no hack, and thus no CDAFA claim. *Gutierrez*, 2023 WL 8939221, at *4.

### F. Plaintiff Should be Denied Leave to Amend.

This Court has broad discretion to deny leave to amend where, as here, Plaintiff has already amended his allegations. *See Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004) ("Where the plaintiff has previously filed an amended complaint . . . the district court's discretion to deny leave to amend is 'particularly broad.'"). Plaintiff's amendments confirm his claims are premised on nothing more than the routine tracking of his technical information when he supposedly viewed the Website (FAC ¶¶ 53-93, 121, 122, 152, 155)—activity that cannot give rise to a harm or liability. Thus, any amendment would be futile and leave to amend should be denied. *See Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002) ("[T]here is no need to prolong the litigation by permitting further amendment" if the "basic flaw" in the alleged facts cannot be cured by amendment.); *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) ("Although leave to amend a deficient complaint shall be freely given when justice so requires," "leave may be denied if amendment of the complaint would be futile.").

## VI. <u>CONCLUSION</u>

Plaintiff's amendments still fail to allege even the most basic facts about his interaction with the Website, and the few facts alleged about Plaintiff's Website interaction confirm he cannot state a viable claim. Thus, SeatGeek respectfully requests that the Court dismiss the FAC in its entirety and without leave to amend.

Dated: February 20, 2026

GREENBERG TRAURIG, LLP


By  */s/ Heather J. Silver*
Heather J. Silver
Attorneys for Defendant
SeatGeek, Inc.