Adam J. Zapala (SBN 245748)
Kevin J. Boutin (SBN 334965)
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center 840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
kboutin@cpmlegal.com

Katrina Carroll (*pro hac vice*)
**CARROLL SHAMBERG LLC**
200 N. LaSalle, Suite 1650
Chicago, IL 60601
Telephone:(872)-215-6205
katrina@csclassactions.com

***Attorneys for Plaintiff and the Putative Class***

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

JOSE TORRES, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SEATGEEK, INC., a Delaware corporation headquartered in New York; and DOES 1 through 25, inclusive,

Defendant.

CASE NO. 3:25-cv-07118-LB

Hon. Laurel Beeler

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT SEATGEEK, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**Action filed: August 22, 2025**

**Date: April 30, 2026**
**Time: 9:30 a.m.**
**Place: Courtroom B, 15th Floor**

# TABLE OF CONTENTS

Page


I. INTRODUCTION ... 1

II. FACTUAL BACKGROUND ... 2

III. STATEMENT OF THE ISSUES TO BE DECIDED ... 4

IV. ARGUMENT ... 4

A. Plaintiff Has Standing to Bring His Claims ... 4

1. Plaintiff Has Article III Standing; Popa is Factually Distinguishable As This District Consistently Holds ... 4

B. Plaintiff Adequately Pleads His Claims ... 11

1. Relevant 12(b)(6) Standards ... 11

2. Plaintiff's Allegations Are Specific Enough ... 11

3. Plaintiff Is Not Required to Plead Around SeatGeek's Statute of Limitations Defense ... 12

4. Plaintiff Adequately Alleges His Privacy Claims (Invasion of Privacy and Intrusion Upon Seclusion) ... 13

5. Plaintiff Adequately States a CIPA Pen Register Claim ... 16

a. Courts in this District Unanimously Reject SeatGeek's Argument that Section 638.51 is Limited to Telephones ... 16

b. CIPA does not Conflict with the CCPA, As this District Routinely holds ... 18

c. The Rule of Lenity Does not Bar Plaintiff's CIPA Claim ... 21

d. Defendant's Installation And Use Of The Trackers, Which Caused Third Parties To Collect Plaintiff's IP Address, Is Not "Necessary" ... 22

6. Plaintiff States a CDAFA Claim ... 23

C. To The Extent The Court Finds His Pleading Insufficient, Plaintiff Should Be Permitted Leave To Amend ... 25

V. CONCLUSION ... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brooks v. Thomson Reuters Corp.*,
No. 21-CV-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ........................19

*Camplisson v. Adidas Am., Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025)............................................................5, 6

*Carolus v. Nextstar Media Inc.*,
No. 24-CV-07790-VC, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) ..............................8

*Carpenter v. U.S.*,
138 S. Ct. 2206 (2018)....................................................................................15

*Clifton v. Houghton Mifflin Harcourt Publ'g Co.*,
152 F. Supp. 3d 1221 (N.D. Cal. 2015) ..............................................................13

*Conohan v. Rad Power Bikes Inc.*,
No. CV 25-0106 PVC, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025)..............................18

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024)........................................................................................16

*Deivaprakash v. Condé Nast Digital*,
798 F. Supp. 3d 1100 (N.D. Cal. 2025) ...............................................4, 5, 18, 21

*Dellasala v. Samba TV, Inc.*,
No. 3:25-CV-03470-JSC, 2025 WL 3034069 (N.D. Cal. Oct. 30, 2025)..........................5

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ..............................................................22

*F.D.I.C. v. Varrasso*,
No. CIV. 2:11-2628 WBS, 2012 WL 219046 (E.D. Cal. Jan. 23, 2012)..........................12

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F.Supp.3d 767 (N.D. Cal. 2019) .................................................................10

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ..................................................................... *passim*

*Flanagan v. Flanagan*,
27 Cal.4th 766 (2002) ......................................................................................17

*Fregosa v. Mashable, Inc.*, No. 25-CV-01094-CRB, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025), *motion to certify appeal denied*, No. 25-CV-01094-CRB, 2026 WL 183857 (N.D. Cal. Jan. 23, 2026) ....................16, 18, 21

*Gabrielli v. Insider, Inc.*, No. 24-CV-01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025)....................8

*Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025)....................5, 17

*Gaige v. Exer Holding Co., LLC*, No. 2:24-CV-06099-AH-(AJRX), 2025 WL 559719 (C.D. Cal. Jan. 30, 2025) ....................13

*Garon v. Keleops USA, Inc.*, No. 25-CV-2124-DMR, 2025 WL 2522374 (N.D. Cal. Sept. 2, 2025)....................21

*Gilligan v. Experian Data Corp.ca*, No. 25-CV-02873-RFL, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ....................4, 5

*In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935 (N.D. Cal. 2022) ....................14, 16

*Greenley v. Kochava, Inc.* 684 F.Supp.3d 1024 (S.D. Cal. 2023).................... *passim*

*Harris v. iHeartMedia, Inc.*, No. 25-CV-06038-EKL, 2026 WL 247875 (N.D. Cal. Jan. 29, 2026)....................6

*Hayden v. Retail Equation, Inc.*, No. SACV2001203DOCDFM, 2022 WL 2254461 (C.D. Cal. May 4, 2022)....................10

*Heiting v. FKA Distributing Co.*, 2025 WL 1430663 (C.D. Cal. May 15, 2025) ....................6

*Heiting v. FKA Distributing Co.*, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025)....................12

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 211 P.3d 1063 (2009) ....................9, 15

*Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1 (1994) ....................10, 13, 14, 15

*Hubbard v. Google LLC,* No. 19-cv-7016, 2024 WL 3302066 (N.D. Cal. July 1, 2024....................15

*In re Hulu Privacy Litig.*, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ....................23

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ..........2

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ..........11, 16

*Kellman v. Spokeo, Inc.*,
599 F.Supp.3d 877 (N.D. Cal. 2022) ..........20

*Khamooshi v. Politico LLC*,
2025 WL 1408896 (N.D. Cal. May 13, 2025) ..........8, 9

*Krzyzek v. OpenX Techs., Inc.*,
No. 25-CV-05588-SI, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026) ..........4, 5

*Lau v. Gen Digital Inc.*,
No. 22-CV-08981-JST, 2023 WL 10553772 (N.D. Cal. Sept. 13, 2023), *aff'd sub nom. Karwowski v. Gen Digital, Inc.,* No. 24-7213, 2025 WL 3002610 (9th Cir. Oct. 27, 2025) ..........10

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ..........4

*Lesh v. Cable News Network, Inc.*,
767 F.Supp.3d 33 (S.D.N.Y. 2025) ..........2, 12, 18

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ..........25

*M.G. v. Therapymatch, Inc.*,
No. 23-cv-04422-AMO, 2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ..........20

*Matera v. Google Inc.*,
No. 15-CV-04062-LHK, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ..........17

*McClung v. AddShopper, Inc.*,
No. 23-CV-01996-VC, 2024 WL 189006 (N.D. Cal. Jan. 17, 2024) ..........5

*Meta Healthcare Pixel Litig.*,
713 F.Supp.3d 650 (N.D. Cal. 2024) ..........24

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
No. 24-CV-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... *passim*

*Moody v. C2 Educ. Sys. Inc.*
742 F.Supp.3d 1072 (C.D. Cal. 2024) ..........2, 6, 12, 17

*Opperman v. Path, Inc.*,
205 F. Supp.3d 1064 (N.D. Cal. 2016 ..........16

*Pemberton v. Rest. Brands Int'l, Inc.*,
No. 25-CV-03647-JSC, 2025 WL 3268404 (N.D. Cal. Nov. 24, 2025).............................9

*People v. Superior Ct. of Riverside Cnty.*,
81 Cal.App.5th 851 (2022) ..............................................................................21

*Pioneer Electronics (USA), Inc. v. Superior Court*,
40 Cal.4th 360 (2007) ..............................................................................13, 14

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ..............................................................................5, 6

*Prang v. Los Angeles County Assessment Appeals Board*,
15 Cal.5th 1152 (2024) ..............................................................................16

*R.C. v. Sussex Publishers, LLC*,
No. 24-CV-02609-JSC, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025)........................2, 6, 8

*Ribas v. Clark*,
38 Cal. 3d 355, 696 P.2d 637 (1985) ..............................................................................9

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .................................................................. *passim*

*Riley v. California*,
573 U.S. 373 (2014)..............................................................................15

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp.3d 921 (C.D. Cal. 2025) ..............................................................................12, 17

*Rose v. Variety Media, LLC*,
No. 25STCV01865, 2025 WL 2794920 (Cal.Super. Sep. 24, 2025)................................20

*Rowe v. Educ. Credit Mgmt. Corp.*,
559 F.3d 1028 (9th Cir. 2009) ..............................................................................11

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Jan. 27, 2025) .................................18

*Selby v. Sovrn Holdings, Inc.*,
No. 25-CV-03139-RFL, 2025 WL 2950164 (N.D. Cal. Oct. 17, 2025)........................5, 18

*Shah v. Fandom, Inc*,
754 F.Supp.3d 924 (N.D. Cal. 2024) .................................................................. *passim*

*Shah v. MyFitnessPal, Inc.*,
No. 25-CV-04430-PCP, 2026 WL 216334 (N.D. Cal. Jan. 27, 2026)
..............................................................................4, 7, 11, 13

*Shah v. Politico LLC*,
No. 25-CV-05213-NW, 2026 WL 323269 (N.D. Cal. Feb. 6, 2026) ....................................9

*Smith v. LoanMe, Inc.*,
11 Cal.5th 183 (2021) ....................................................................................17, 21

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709-RFL, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ............................12

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709-RFL, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025)............................24

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)................................10

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .......................................................................................11

*Tsering v. Meta Platforms, Inc.*,
No. 25-CV-01611, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026)..........................................4

*United States v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011) .........................................................................................25

*United States v. Hawkins*,
228 F.2d 517 (9th Cir. 1955) .........................................................................................19

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) .......................................................................................25

*In re Vizio, Inc. Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..........................................................................15

*Xu v. Reuters News & Media, Inc.*,
No. 25CV459918, 2025 WL 3035016 (Cal. Super. Oct. 24, 2025)............................20, 21

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ..........................................................................19

**Rules and Statutes**

Cal. Civ. Code § 1798.100(a) ...........................................................................................7, 19

Cal. Pen. Code § 630.........................................................................................................21

Cal. Pen. Code § 638.50...........................................................................................12, 16, 17, 18

Cal. Penal Code § 502(a) ...................................................................................................23

Cal. Penal Code §§ 631(a) ...........................................................................................17, 22

Cal. Penal Code § 638.51(b) .......... 22

Cal. Penal Code §§ 1546(e), 1546(j) .......... 22

California Invasion of Privacy Act "CIPA" § 638 .......... *passim*

**Other Authorities**

*California Democrat Delays Effort To Limit Data Privacy Lawsuits*, POLITICOPRO (July 1, 2025), https://tinyurl.com/7ybpzdd2 (last visited 3/13/26) .......... 20

## I. INTRODUCTION

This case involves systemic privacy violations perpetrated on unsuspecting consumers by Defendant SeatGeek, Inc. ("SeatGeek" or "Defendant"), the operator of an online ticket platform. Plaintiff's First Amended Complaint (ECF No. 25, the "FAC")[1] alleges that when Plaintiff visited Defendant's website, www.seatgeek.com (the "Website"), Defendant caused at least three third party trackers (the "Trackers") operated by TikTok, Microsoft and Meta (the "Third Parties") to be installed on Plaintiff's and Class Members' web browsers. Defendant caused Plaintiff's and Class Members' personal information—their dialing, routing, addressing, and signaling information, including device details (make, model, operating system), browser information, Internet Protocol ("IP") addresses, and other personal information ("Device Metadata") to TikTok, Microsoft and Meta without users' knowledge or authorization. But what is more, the Third Parties also set persistent cookies that include a unique identifier for each user, which the Trackers collect and which Third Parties use to identify and deanonymize that user. The Third Parties are able to use advanced methods like fingerprinting and server-side matching allowing them to create detailed, unique fingerprints on users that allow for cross-site tracking and behavioral profiling of the users all over the internet.

Defendant's installation of these Trackers is not innocuous. Instead, when the Trackers received Plaintiff's and Class Members' IP addresses and Device Metadata, Third Parties used this information to bolster their targeted marketing, advertising, analytics, and revenue-generating efforts. Plaintiff alleges SeatGeek's conduct represents a serious invasion of privacy that the California Legislature expressly sought to prevent through the California Invasion of Privacy Act ("CIPA"). Plaintiff asserts claims under CIPA, the Computer Data Access and Fraud Act ("CDAFA"), and common law intrusion upon seclusion and invasion of privacy under the California Constitution.

SeatGeek focuses its Motion to Dismiss on strained legislative arguments to distract the Court. ***Not once does SeatGeek dispute the underlying surveillance at issue***—that Defendant installed Trackers to *undisclosed* Third Parties who, in turn, used that information to build detailed profiles on

---

[1] Citations to "¶ __" or "¶¶ __" are references to the FAC unless otherwise noted, and abbreviations in the FAC are adopted here unless otherwise noted.

consumers and track their activities across the internet through fingerprinting, advanced matching and persistent identifiers. And SeatGeek conspicuously fails to apprise this Court of multiple rulings of judges in this District and elsewhere who have all sustained similar, if not identical, pen register and privacy claims. *See* ¶ 26 (citing *Shah v. Fandom, Inc*, 754 F.Supp.3d 924, 930 (N.D. Cal. 2024); *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *3-4 (N.D. Cal. Dec. 12, 2024); *Lesh v. Cable News Network, Inc.,* 767 F.Supp.3d 33, 40-42 (S.D.N.Y. 2025); *Moody v. C2 Educ. Sys. Inc.* 742 F.Supp.3d 1072, 1077 (C.D. Cal. 2024); *Greenley v. Kochava, Inc.* 684 F.Supp.3d 1024, 1050 (S.D. Cal. 2023); *Javier v. Assurance IQ, LLC,* 2022 WL 1744107, at *1 (9th Cir. May 31, 2022)). Plaintiff's detailed factual allegations fall squarely within this line of cases and more than suffice at the pleading stage.

With respect to Defendant's facial attack on Plaintiff's standing, this District and others hold that "IP address collection for targeted advertisement, creates a concrete injury-in-fact." *R.C. v. Sussex Publishers, LLC*, No. 24-CV-02609-JSC, 2025 WL 948060, at *3 (N.D. Cal. Mar. 28, 2025) (collecting cases); *Fandom*, 754 F. Supp. 3d at 932 (finding standing where plaintiffs alleged that trackers' collection of IP addresses allowed third parties to obtain personally identifying information enabling them to conduct targeted advertising). This Court should not reach a different result and Defendant's Motion should be denied.

## II. FACTUAL BACKGROUND

The FAC sets forth the detailed background concerning SeatGeek and the Third Parties' data surveillance enterprise, which operates clandestinely and without users' consent. To summarize, Plaintiff Jose Torres, on behalf of himself and a proposed class of California citizens, contends that SeatGeek embedded trackers on its Website that collect personally identifying information, including users' IP addresses, browsing activity and Device Metadata, and transmit it to Third Parties such as TikTok, Microsoft and Meta. ¶¶ 3, 6, 37, 62, 65. Plaintiff asserts that these trackers function as unlawful "pen registers" under Section 638.51(a) of CIPA, which prohibits their use without consent or a court order, in violation of CDAFA and other privacy laws.

The FAC details how Public IP addresses constitute unique identifiers comparable to telephone numbers. ¶¶31-51. They reveal geographic location data and can be combined with other information to

track an individual's online behavior across devices and over time. *Id*. Plaintiff alleges that SeatGeek exploits this by allowing third-party advertising companies to collect and monetize users' IP addresses and browsing patterns, thereby turning private user data into a revenue stream. ¶¶ 6, 59, 68, 78, 84-85, 92, 98, 111.

SeatGeek embedded three specific Trackers into its Website of which Plaintiff is aware: the TikTok Pixel, the Meta Pixel and the Microsoft Bing Tracker. ¶¶ 2, 62, 68-82 (describing TikTok Pixel tracker); 83-91 (describing Meta Pixel Tracker); 92-102 (Microsoft Bing Tracker). Each of these Trackers installs cookies and other unique identifiers on users' browsers, enabling persistent monitoring across sessions and devices. ¶¶ 3, 55. Even if the user deletes their cookies, TikTok, Microsoft and Meta use advanced methods like fingerprinting and server-side matching that still allow them to create detailed, unique fingerprints on users that allow for cross-site tracking and behavioral profiling. ¶¶ 64, 73-77 (TikTok fingerprinting and advanced matching); 84-85 (describing use of Facebook ID and matching); 95-98 (describing persistent nature of Microsoft MUID cookie).

Plaintiff alleges that the Trackers operate invisibly in the background whenever someone visits Defendant's website, www.seatgeek.com, leaving users unaware that their personal information is being collected and shared. ¶¶ 53, 57, 105- 106, 119.

The TikTok Pixel, for example, collects various categories of identifying information for SeatGeek users, ¶75, and SeatGeek *expressly chose to enable* TikTok's "Automatic Advanced Matching" feature, which allows TikTok to match user information with existing TikTok data to deanonymize users. ¶¶ 73-78. Similarly, Meta uses the FID identifier similarly to tie users to corresponding Facebook profiles and deanonymize them. ¶¶ 84-87. And, the Microsoft Bing Tracker uses a unique "MUID" identifier cookie that persists for about 13 months, allowing Microsoft to connect IP addresses across time and locations. ¶¶ 94-98. Plaintiff alleges that SeatGeek knowingly incorporated all of these Trackers to monetize user data through targeted advertising, prioritizing revenue over user privacy. ¶¶6, 44, 46, 65, 68, 92, 105.

Defendant does nothing to obtain users' consent for these practices. ¶¶ 1, 61-62, 66, 86, 103-112. No pop-up banners, checkboxes, or visible disclosures appear before the Trackers install themselves. ¶ 106. While SeatGeek maintains a Privacy Notice, containing some disclosures about how

information is shared, that policy can be viewed only after scrolling through all the website content to the very bottom of the webpage, long after the Trackers have been installed on users' browsers. ¶ 107. SeatGeek users reasonably expect that their data will remain private unless specifically shared with a website for the limited purpose of displaying relevant content; they do not expect that their data will be shared with unknown Third Parties, especially since public IP addresses can reveal detailed information about a user's physical movements, daily routines, and personal activities - especially when collected repeatedly over time and combined with other tracking data, as they are by the Trackers. ¶ 112.

## III. STATEMENT OF THE ISSUES TO BE DECIDED

Whether the FAC plausibly alleges Article III standing (Rule 12(b)(1)) and states claims upon which relief can be granted (Rule 12(b)(6)).

## IV. ARGUMENT

### A. Plaintiff Has Standing to Bring His Claims

#### *1. Plaintiff Has Article III Standing; Popa is Factually Distinguishable As This District Consistently Holds*

SeatGeek's standing challenge to is a "facial attack" under Rule 12(b)(1), and the Ninth Circuit holds that the Court should analyze it "as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). In keeping with this, this District and others recognize that Plaintiff's allegations concerning the alleged collection and identification of user web browsing activity satisfy Article III. *Krzyzek v. OpenX Techs., Inc.*, No. 25-CV-05588-SI, 2026 WL 206855, at *3 (N.D. Cal. Jan. 27, 2026) (standing established where defendant syphoned browsing activity "across the internet" into unique profiles); *Shah v. MyFitnessPal, Inc.,* No. 25-CV-04430-PCP, 2026 WL 216334, at *3 (N.D. Cal. Jan. 27, 2026) (standing met where plaintiffs were promised "that their individual information would not be shared"); *Tsering v. Meta Platforms, Inc.*, No. 25-CV-01611, 2026 WL 89320, at *3 (N.D. Cal. Jan. 12, 2026) (standing established where "Meta was able to monetize [plaintiffs'] data"); *Gilligan v. Experian Data Corp.ca*, No. 25-CV-02873-RFL, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (finding standing where defendant engaged in "unauthorized widespread tracking and data collection"); *Deivaprakash v. Condé Nast Digital*, 798 F. Supp. 3d 1100, 1107, n.4

(N.D. Cal. 2025) (holding that building profiles of personal information and interfering with the plaintiffs' "ability to remain anonymous" satisfies Article III); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025) (standing met where "[t]rackers on [d]efendant's website . . . collected a broad set of [the plaintiffs'] personal identifying and addressing information"); *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) (standing found where the plaintiff alleged that the defendant "deprived him control of personal information regarding his digital activity"); *McClung v. AddShopper, Inc.*, No. 23-CV-01996-VC, 2024 WL 189006, at *1 (N.D. Cal. Jan. 17, 2024) ("Misappropriating a person's browsing activity… and using it to barrage that person's devices with unwanted email communications … is the type of intrusion on privacy and seclusion that can be vindicated in the federal courts.").

Though SeatGeek asserts otherwise, *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) "did not set out a new rule of law for Article III standing, but rather applied the same common law rules to the individual circumstances of that case." *Krzyzek*, 2026 WL 206855, at *3 n.5; *see also*, *Dellasala v. Samba TV, Inc.*, No. 3:25-CV-03470-JSC, 2025 WL 3034069, at *2 (N.D. Cal. Oct. 30, 2025) ("*Popa* did not set forth a new rule of law…"); *Camplisson*, 809 F. Supp. 3d at 1106 ("*Popa* uses the same common law rules discussed above and evaluates the specific facts of that case."). Indeed, *Popa* confirmed that the Ninth Circuit's decision in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ("*Facebook Tracking*") -- where it reasoned that Facebook's continued nonconsensual tracking of users "in order to receive and compile [the plaintiffs'] personally identifiable browsing history . . . no matter how sensitive or personal" was sufficient to establish a concrete injury—"remains good law." *Deivaprakash*, 798 F. Supp. 3d 1100, at 1107 n. 4 (quoting *Facebook Tracking*, 956 F.3d at 598). This is exactly the case here.

Indeed, *Popa* is distinguishable because it involved the use of session-replay technology to track a user's interactions *with a single website*, rather than the compilation of personal or private information across the internet. *Popa*, 153 F.4th at 786; *Gilligan*, 2026 WL 32259, at *2 ("*Popa* was limited to "plaintiff's non-sensitive interactions with a single website."). Contrary to SeatGeek's argument, "[t]he scope of the alleged tracking in this case is materially more invasive." *Selby v. Sovrn Holdings, Inc.*, No. 25-CV-03139-RFL, 2025 WL 2950164, at *3 n.3 (N.D. Cal. Oct. 17, 2025). As one court recently

noted in distinguishing *Popa*:

> *Popa* involved a claim against the defendant's use of session-replay technology, which collected information on what products the plaintiff browsed and where her mouse hovered while on the website. Given that the information concerned how the plaintiff interacted with the site rather than her personal, private information, the *Popa* court found that the nature of the collected information was not embarrassing, invasive, or otherwise private and did not fall within the traditional privacy harms at common law. This is distinguishable from the facts presented in this case, where the collection of Plaintiffs' information concerns their person, is much broader in scope, and has been found to be a privacy harm in a wide variety of cases.

*Camplisson*, 809 F. Supp. 3d at 1106 (cleaned up); *see also Harris v. iHeartMedia, Inc.*, No. 25-CV-06038-EKL, 2026 WL 247875, at *1–2 (N.D. Cal. Jan. 29, 2026) (finding "the extent of tracking in *Popa* was significantly less intrusive" than iHeart's continuous tracking of users to build comprehensive profiles).

The session replay technology in *Popa* was akin to "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Popa*, 153 F.4th at 791. Unlike here, there was no linkage of information to non-anonymous profiles maintained by Third Parties and no loss of control of personal information because personal information was not captured in *Popa*. Plaintiff's allegations that SeatGeek allowed Third Parties to systematically de-anonymize users' browsing activities and build and enrich real-time comprehensive profiles fulfill Article III, as courts have consistently held.

### 2. *Plaintiff Has An Interest In Preventing The Uncontrolled Dissemination Of His Personal Information*

"In determining statutory standing under CIPA, courts have held IP address collection for targeted advertisement, creates a concrete injury-in-fact." *R.C.*, 2025WL 948060, at *3 (collecting cases); *see also*, *e.g.*, *Fandom*, 754 F. Supp. 3d at 932 ("Plaintiffs plausibly allege that the collection of their IP addresses through the Trackers allows the third parties to obtain personally identifying, non-anonymized information") (cleaned up); *Mirmalek*, 2024 WL 5102709, at *4 (same). The same is true of device information and other user identifiers. *See*, *e.g.*, *Moody*, 742 F. Supp. 3d at 1077-1078 (finding statutory standing based on collection of "browser and device data" by third party tracker); *Heiting v. FKA Distributing Co.*, 2025 WL 1430663, at *2 (C.D. Cal. May 15, 2025) (same based on collection of

"device and browser information, geographic information, referral tracking, and URL tracking" by third party tracker) (cleaned up); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1087 (N.D. Cal. 2025) ("[T]he tracking of individuals' activity across thousands of websites … to generate uniquely identifying profiles on those individuals is sufficient to allege intrusion into privacy."); *Facebook Tracking*, 956 F.3d at 604 n.7 ("[I]ndividuals maintain the expectation that entities will not be able to collect such broad swaths of personal information absent consent.").

Against this weight of authority, SeatGeek asserts that users have no reasonable expectation of privacy while browsing the internet. Mot. at 8. This is a red herring. The Ninth Circuit expressly recognizes that CIPA protects individuals against the loss of an "individual's control of information concerning his or her person." *Facebook Tracking*, 956 F.3d at 598 (cleaned up). And "[i]dentifiers such as a … unique personal identifier, online identifier, [and] Internet Protocol address" are "personal information" because they "identif[y] … or could reasonably be linked, directly or indirectly, with a particular consumer or household." Cal. Civ. Code § 1798.140(v)(1)(A); *see also* ¶¶29-51 (explaining privacy implications of IP addresses).

Defendant's cited authorities are distinguishable because they involved situations where the disclosures were made by one party to a communication to the recipient party of the communication. By contrast, Plaintiff here alleges "that the collection of their IP addresses through the Trackers allows the *third parties* to obtain 'personally identifying, non-anonymized information.'" *Fandom*, 754 F. Supp. 3d at 932. The harm here is not just that Plaintiff's information was collected by SeatGeek. Rather, the harm is that SeatGeek allowed unnamed Third Parties to take user information, identify those users and link them to comprehensive, non-anonymous profiles, and to link them persistently, and, in some cases, despite user deletion of cookies. Plaintiff's allegations are sufficiently particularized on these points to withstand SeatGeek's facial standing attack. *See MyFitnessPal,* 2026 WL 216334, at *3 (finding standing and rejecting the defendant's argument that the plaintiff's allegations "only included 'general allegations' about cookies and what third parties 'may be capable of collecting" but not what cookies were "actually collected.").

To the extent some of Defendant's authorities concluded otherwise (*see* e.g. Mot.. at 10, fn6) many of those cases did not contain allegations regarding the ability of third parties to link browsing

information to comprehensive profiles sold to advertisers, unlike here. *See Carolus v. Nextstar Media Inc.*, No. 24-CV-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (distinguishing cases where, like here, "a privacy injury involved disclosure of several types of personal information all linked together, not just IP addresses"); *Gabrielli v. Insider, Inc.*, No. 24-CV-01566 (ER), 2025 WL 522515, at *5 (S.D.N.Y. Feb. 18, 2025) (basing conclusion on the premise that "an IP address [alone] cannot identify an individual user and at most conveys general geographic information," without allegations regarding linkage to profiles similar to those here).[2]

### ***3. SeatGeek Was Unjustly Enriched, Further Supporting Plaintiff's Standing***

As an independent standing ground, Plaintiff alleges that Defendant derived an unlawful economic benefit through its installation and use of the Trackers. Specifically, Plaintiff alleges that his information was collected by the Third Parties without consent; the Trackers de-anonymized Plaintiff, which enabled his information to be sold to advertisers; and that Defendant derived a profit from these unlawful activities. *See, e.g.,* ¶ 4, 58-67, 115-116 119, 147. This also suffices for injury. *See, e.g., Greenley*, 684 F. Supp. 3d at 1038 (Article III standing met where "Plaintiff … conferred a benefit on Defendant through the use and dissemination of Plaintiff's … personal information … which Defendant used and disseminated for its own monetary benefit.") (cleaned up); *Riganian*, 791 F. Supp. 3d at 1095 (finding standing where "the FAC contains detailed factual allegations as to how LiveRamp has violated Plaintiffs' privacy rights to create a 'surveillance ecosystem'").

Defendant claims that "just as a retailer might profit from the use of home addresses without being unjustly enriched," Plaintiff has not shown why the collection of his data by SeatGeek was unjust. Mot. at 10 (citing *Khamooshi v. Politico LLC*, 2025 WL 1408896, at *6 (N.D. Cal. May 13, 2025)). Again, the flaw in SeatGeek's reasoning is that Defendant enabled the *Third Parties* to collect Plaintiff's IP address without consent (not just Defendant itself), and that his IP address was linked to a profile, which is something the Third Parties could not have done without Defendant's conscious decision to

---

[2] And if SeatGeek makes any factual arguments on reply that the collected identifiers cannot identify website users, those are not proper for a facial attack and should be resolved on a full record, after discovery is completed. *See R.C.*, 2025 WL 948060, at *3.

install the Trackers. That is a far different set of circumstances, and one at the heart of the CIPA (the "substantial distinction …between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor," *Ribas v. Clark*, 38 Cal. 3d 355, 360, 696 P.2d 637 (1985)).

In *Khamooshi*, the court found there was no "unjust" disclosure of IP address, but did not consider (i) the disclosure of other information and its linkage to a profile of more comprehensive information, and (ii) that the violation the CIPA made the disclosure "unjust." Further, courts in this District have disagreed with *Khamooshi*'s conclusion that "*Facebook Internet Tracking*'s holding relied on the 'sensitive' and 'personal' nature of the information at issue." *Khamooshi*, 2025 WL 1408896, at *5. Judges Tigar, Wise and Scott Corley have ruled that the harm can be based on either the disclosure of "specific, sensitive information" or that the third party "acquired an enormous amount of individualized data" as a result of Defendant's conduct. *Riganian*, 791 F. Supp. 3d at 1087; *see also Shah v. Politico LLC*, No. 25-CV-05213-NW, 2026 WL 323269, at *4 (N.D. Cal. Feb. 6, 2026) (distinguishing *Khamooshi* based on the collection by third parties of "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behavior, device information, referring URL, session information, user identifiers, and geolocation data"); *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-CV-03647-JSC, 2025 WL 3268404, at *4 (N.D. Cal. Nov. 24, 2025) (distinguishing *Khamooshi* and holding "Plaintiff alleges Defendants deprived him of control of his personal information, which is an injury sufficient to support Article III standing"). Plaintiff's allegations fall in the latter category, and this Court should agree.

#### ***4. SeatGeek's Conduct Is Highly Offensive and Does Not Constitute Routine Commercial Behavior***

As explained herein, this case is not "based on the collection of non-sensitive technical information." Mot. at 11. Regardless, "[d]etermining whether a defendant's actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Facebook Tracking*, 956 F.3d at 606 (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287, 211 P.3d 1063,

1073 (2009)). "While analysis of a reasonable expectation of privacy primarily focuses on the nature of the intrusion, the highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Id.*

As a threshold matter, the Ninth Circuit instructs, and courts repeatedly recognize, that the question of offensiveness is one for the jury, not for the pleadings. "Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *Lau v. Gen Digital Inc.,* No. 22-CV-08981-JST, 2023 WL 10553772, at *6 (N.D. Cal. Sept. 13, 2023), *aff'd sub nom. Karwowski v. Gen Digital, Inc.,* No. 24-7213, 2025 WL 3002610 (9th Cir. Oct. 27, 2025) (quoting *In re Facebook, Inc., Consumer Priv. User Profile Litig*., 402 F.Supp.3d 767, 797 (N.D. Cal. 2019)). "Only if the allegations 'show no reasonable expectation of privacy or an insubstantial impact on privacy interests' can the 'question of [a serious or highly offensive] invasion [] be adjudicated as a matter of law." *St. Aubin v. Carbon Health Techs., Inc.,* No. 24-cv-00667-JST, 2024 WL 4369675, at *12 (N.D. Cal. Oct. 1, 2024) (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 40 (1994). Moreover, where, as here, defendants claim their data gathering practices are "'routine' commercial behavior" (Mot. At 16), dismissal is "particularly inappropriate. . . [because] Defendants are the only party privy to the true extent of the intrusion on Plaintiffs' privacy." *Hayden v. Retail Equation, Inc.*, No. SACV2001203DOCDFM, 2022 WL 2254461, at *8 (C.D. Cal. May 4, 2022) (rejecting "routine commercial behavior" defense).[3]

To the extent the Court engages in a threshold analysis of offensiveness, the weight of authorities cited herein and extensive factual allegations in the FAC demonstrate SeatGeek's conduct involving the surreptitious collection of data by Third Parties and conversion into extensive digital profiles on

---

[3] SeatGeek's attack that "virtually every law firm backing Plaintiff uses the same technologies," (Mot. at 2-3, fn 2) is aggressive, irrelevant and unconvincing. This case is about SeatGeek's conduct, not that of Plaintiff's counsel, and the extraneous documents SeatGeek improperly attaches to its Request for Judicial Notice to attack counsel (*see* RJN at Exs. 10-14) are not proper subjects of judicial notice, as is fully explained in Plaintiff's concurrently filed Opposition to the RJN. If anything, counsels' websites confirm the objective *unreasonableness* of SeatGeek's conduct here: all three websites require the user to consent to the applicable privacy policies, fully disclose in those privacy policies their collection and use of user data, and permit the user to opt-out or terminate consent. SeatGeek does none of this.

unsuspecting users, is highly offensive and egregious. As in *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023), such allegations "go well beyond the 'routine commercial behavior' of collecting contact information for sending advertisements." Plaintiff has met his pleading burden here and this case should proceed in discovery.

**B. Plaintiff Adequately Pleads His Claims**

***1. Relevant 12(b)(6) Standards***

The Court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, [a] plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

***2. Plaintiff's Allegations Are Specific Enough***

This is not a fraud case and thus, Plaintiff need only provide a "short and plain statement" of his claim sufficient to meet Rule 8. *MyFitnessPal,* 2026 WL 216334, at *2. Plaintiff's allegations are detailed enough to fulfill the applicable requirements to lay out the elements of a CIPA § 638.51 claim and other claims asserted. SeatGeek seeks to impose a higher pleading burden on plaintiff and demands that Plaintiff plead further details of his communications with the Website. But SeatGeek ignores that this is not a wiretapping case, and Plaintiff is not required to plead the "contents of a communication" with SeatGeek.

With respect to his specific interactions with SeatGeek, Plaintiff alleges he visited the Website while the Trackers were operating, that the Trackers captured information about who he is, where he was (in California), and the devices he was using (desktop computer and mobile phone) to communicate (*i.e.*, his "routing, addressing, or signaling information." ¶¶ 113-121. He also alleges that SeatGeek, without his knowledge or consent, allowed Third Parties' to deanonymize him by matching him to a pre-existing profile or else to create a new profile. Plaintiff pleads specifically that he "has accounts with Tiktok and Meta (Facebook and Instagram)," and "accessed those accounts on the same mobile browser he typically uses to visit the Website," thereby permitting these Third Parties to access his profile and deanonymize him. And though SeatGeek tries to ignore it, Plaintiff further pleads that as a

result of SeatGeek's installation of the Trackers, Plaintiff "received targeted advertising on his social media and specifically recalls seeing such advertising on Instagram." ¶ 117. Further details can be developed in discovery, especially since they are in possession of Defendant and the Third Parties that took Plaintiff's information and used it to profile him.

SeatGeek's assertion that Plaintiff is required to plead more is inconsistent with the relevant CIPA provision stating that a pen register must record "dialing, routing, addressing, or signaling information… *but not the contents of the communication*." Cal. Pen. Code § 638.50 (emphasis added). *Autotrader*.com, 762 F. Supp. 3d at 930 (sustaining CIPA § 638.51 claim where Plaintiff alleged that defendant captured her IP address along with "operating system information, browser information, geolocation data, and email addresses"). Here, Plaintiff alleges the Trackers recorded or decoded his "routing, addressing, or signaling information"—his IP address, Device Metadata, and unique user identifiers- the exact allegations sustained in other pen register cases. *Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709-RFL, 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025); *Fandom,* 754 F. Supp. 3d at 928 (holding that plaintiffs "sufficiently allege[d] that the Trackers record addressing information, but not the content of the outgoing communication"); *see also Moody*, 742 F. Supp. 3d at 1077 ("Plaintiff's allegations that the TikTok Software gathers device and browser data plausibly fall within the scope of §§ 638.50 and 638.51."); *Heiting v. FKA Distributing Co.*, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025) ("The TikTok software, which identifies users on Defendant's website by gathering their device and browser information and geographic information, among other data, is plausibly a trap and trace device under the meaning of section 638.50(c).") (cleaned up); *Mirmalek*, 2024 WL 5102709, at *4 ("Plaintiff adequately alleges that the Trackers record addressing information in the form of IP addresses."); *Greenley*, 684 F. Supp. 3d at 1050 ("[S]oftware that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting'" is a pen register); *Lesh*, 767 F. Supp. 3d at 40 (same). The Court should find Plaintiff's allegations sufficient here.

### ***3. Plaintiff Is Not Required to Plead Around SeatGeek's Statute of Limitations Defense***

The statute of limitations is an affirmative defense and a plaintiff is not required affirmatively to plead facts demonstrating that a claim is timely. *F.D.I.C. v. Varrasso*, No. CIV. 2:11-2628 WBS, 2012

WL 219046, at *7 (E.D. Cal. Jan. 23, 2012) (stating that a plaintiff need not "plead around" defenses such as the statute of limitations). And there is certainly no heightened pleading standard requiring Plaintiff to plead the timeliness of his claims and set forth exact dates of his interactions with SeatGeek. Where a defendant raises the statute of limitations on the pleadings, the relevant question is whether the allegations raise a complete statute of limitations defense meriting dismissal of the Complaint. *See, e.g., MyFitnessPal* 2026 WL 216334, at *4 ("[h]ere, plaintiffs' complaint does not admit the ingredients of an impenetrable statute of limitations defense"); *Clifton v. Houghton Mifflin Harcourt Publ'g Co.*, 152 F. Supp. 3d 1221, 1226 (N.D. Cal. 2015) (declining to dismiss claims on statute of limitations grounds where the face of the complaint did not demonstrate the claims were untimely). They do not.

Plaintiff's claims are not time-barred. He alleges that he visited the website "regularly … on his desktop and mobile browsers throughout the entirety of the class period in or near his home in California." ¶ 113. SeatGeek quibbles with the use of "class period," but that is generally understood as the relevant time period in a case, defined by the applicable statute of limitations. These allegations are sufficient enough to defeat an affirmative statute of limitations defense on the pleadings. Further, the FAC is replete with allegations concerning the clandestine nature of SeatGeek's conduct showing that Plaintiff could not have reasonably discovered it. These allegations make Plaintiff's claims subject to equitable tolling of the statute of limitations. *Gaige v. Exer Holding Co., LLC,* No. 2:24-CV-06099-AH-(AJRX), 2025 WL 559719, at *4 (C.D. Cal. Jan. 30, 2025) (holding statute of limitations was tolled due to fraudulent concealment by health care provider's surreptitious use of Meta Pixel tracker).

But in any event, even if this Court were to determine that Plaintiff's allegations are insufficiently particularized, Plaintiff should be given leave to amend to cure any deficiency

#### ***4. Plaintiff Adequately Alleges His Privacy Claims (Invasion of Privacy and Intrusion Upon Seclusion)***

Given the overlap in the constitutional and common law privacy claims, "courts consider the claims together when both are invoked and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601. Plaintiff meets his pleading burden as to each. Both branches of this inquiry are mixed questions of law and fact. *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal.4th 360, 370, (2007) (citing *Hill v. Nat'l*

*Collegiate Athletic Assn.*, 7 Cal. 4th 1, 40 (1994)). Only if the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Id*. at 370 (citing *Hill*, 7 Cal.4th at 40).

SeatGeek's challenge to Plaintiff's invasion of privacy claims comes down to its contention that there is no reasonable expectation of privacy in the use and collection of IP address and other data that SeatGeek collected. That is incorrect. The FAC pleads that IP addresses reveal the geographic location of the internet user. ¶ 33. Plaintiff further alleges how IP addresses and other information are compiled into fingerprints used to deanonymize the user and create a comprehensive record of the user's geographic locations and Website activities across devices, which SeatGeek uses to prioritize its commercial interests at the expense of users' privacy rights. *See e.g*. ¶¶ 64-65.

The FAC also supplies technical details as to how each Tracker functioned. Plaintiff alleges the TikTok Pixel collects a bevy of user information along with the user's IP address (¶¶70, 75) and uses fingerprinting and AutoAdvanced Matching technology to identify users, including automatically collecting data that users input to complete online forms, including personal identifiers to identify specific people. ¶¶74-77. The Meta Pixel operates similarly by tracking user IP addresses, matching users to their FacebookID, and then tracking their activities over the internet. ¶85. Microsoft's Bing Tracker installs the MUID cookie which remains constant for 13 months and makes a "comprehensive record of a browser's Website activities over time." ¶97. Under any reading of the Complaint, Plaintiff's allegations compel the conclusion at the pleading stage that there is reasonable expectation of privacy in the *totality* of data that was tracked and disclosed.

Though SeatGeek goes to great lengths to show its compliance with the CCPA, it conveniently ignores that the CCPA *expressly recognizes a reasonable expectation of privacy in IP addresses* and the other information SeatGeek gathered, which can be compiled into unique profiles linking users across geographic locations and devices *See In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal. 2022) ("Google argues that such information is routinely shared and thus cannot support a reasonable expectation of privacy. Not so. First, such information is personal information under California law and parties generally maintain a reasonable expectation in their personal information.").

Tellingly, SeatGeek's analysis also omits the Ninth Circuit's controlling ruling in *Facebook Tracking*. In *Facebook Tracking*, the plaintiffs alleged that Facebook obtained "an enormous amount of individualized data" by collecting URLs of third-party websites that could potentially "divulge a user's personal interests, queries, and habits on third-party websites operating outside of Facebook's platform" without consent. *Id*. at 603, 605. Because Facebook garnered "a comprehensive browsing history of an individual," the court held that Facebook allegedly compiled "highly personalized profiles from sensitive browsing histories and habits," in which plaintiffs had reasonable expectation of privacy. *Id*. at 603, 604 n.7 (*citing Carpenter v. U.S.*, 138 S. Ct. 2206, 2217 (2018); *Riley v. California*, 573 U.S. 373, 397-99 (2014)). Plaintiff pleads a reasonable expectation of privacy here.

Plaintiff also alleges a "highly offensive" intrusion. Courts inform their assessment of offensiveness with "a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Hernandez*, 47 Cal. 4th at 287. This calculus "focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Id*. Here, SeatGeek's conduct in surreptitiously collecting IP addresses and other data from millions of unsuspecting users and then sharing that data with Third Parties for its own gain is "highly offensive." *See, e.g., Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 25 (1994) (holding that an individual has "the right to define one's circle of intimacy").

SeatGeek's authority on this point is outdated, based on inapplicable law and inconsistent with *Facebook Tracking*.[4] "The question is not necessarily whether Plaintiffs maintained a reasonable expectation of privacy in the information in and of itself. Rather, we must examine whether the data itself is sensitive and whether the manner it was collected" violates social norms. *Facebook Tracking*, 956 F. 3d. at 603. *See also In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) ("collection of [...] sensitive personally identifiable information may amount to a highly

---

[4] This case is not remotely like SeatGeek's authority, *Hubbard v. Google LLC*, Mot. at 15, which involved collection by the website operator rather than a third party. 2024 WL 3302066, at *1 (N.D. Cal. July 1, 2024) (plaintiffs accessed YouTube, and "Google operates YouTube" and "collects" "information about YouTube's users").

offensive intrusion."); *Greenley*, 684 F. Supp. 3d at 1047 (sustaining claim for invasion of privacy where defendants "fingerprinted" users and corelated a vast amount of personal information" for advertising purposes). Given this fact-intensive inquiry, the question of "[w]hether the conduct was highly offensive can rarely be resolved at the pleading stage." *In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022) (citing *Facebook Tracking*, 956 F. 3d at 606 (9th Cir. 2020)); *Opperman v. Path, Inc.*, 205 F. Supp. 3d at 1079 (N.D. Cal. 2016) (noting that customs and habits are very much in flux, tracking technology is still changing, and "a judge should be cautious before substituting his or her judgment for that of the community"); *Katz-Lacabe*, 668 F. Supp. 3d at 943 ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is."). Plaintiff has sufficiently alleged his privacy claims here and they should proceed to discovery.

***5. Plaintiff Adequately States a CIPA Pen Register Claim***

**a. Courts in this District Unanimously Reject SeatGeek's Argument that Section 638.51 is Limited to Telephones**

SeatGeek's position that the CIPA only covers telephone communications relies on an improperly narrow reading of CIPA and ignores the majority position of courts in this District, all conveniently omitted from SeatGeek's Motion.

As a preliminary matter, CIPA defines "pen register" and "trap and trace" devices as devices or processes that "dialing, routing, addressing, or signaling information" relating to "a wire *or electronic communication*, but not the contents of a communication." Cal. Pen. Code § 638.50 (emphasis added). SeatGeek erroneously argues CIPA does not apply to tracking activities on the internet but the statute expressly extends protection to internet communications through ***both*** "wire" and "electronic communications." As such, "the text of a law controls over purported legislative intentions unmoored from any statutory text," and "the Court may not replace the actual text with speculation as to Congress' intent." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys*., 603 U.S. 799, 815 (2024); *Prang v. Los Angeles County Assessment Appeals Board*, 15 Cal.5th 1152, 1180 (2024) ("Where statutory text is unambiguous and provides a clear answer, courts need go no further."). Here,"[t]he statutory text is deliberately expansive, designed to encompass new technologies and apply to conduct like that alleged

here." *Fregosa v. Mashable, Inc.*, No. 25-CV-01094-CRB, 2025 WL 2886399, at *9 (N.D. Cal. Oct. 9, 2025), *motion to certify appeal denied*, No. 25-CV-01094-CRB, 2026 WL 183857 (N.D. Cal. Jan. 23, 2026); *Fandom*, 754 F.Supp.3d at 933 ("The pen register statute is broadly written, and under California law, is to be interpreted broadly to protect privacy and to be applied to new techniques and technologies.").

Indeed, "[i]f the drafters of Section 638.50 had intended for 'pen register' to be limited to telephone technologies, they knew how to do so—as evidenced by other sections of CIPA where they imposed such limitations." *Gabrielli*, 2025 WL 1939957, at *11 (citing Cal. Penal Code §§ 631(a) (clause one), 632.7). And, Defendant's recitation of legislative history is wrong. "In enacting the Invasion of Privacy Act, the Legislature declared in broad terms its intent to protect the right of privacy of the people of this state from what it perceived as a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society." *Smith v. LoanMe, Inc.*, 11 Cal.5th 183, 199 (2021) (cleaned up). "In light of this intent, the California Supreme Court has instructed courts to interpret CIPA in the manner that 'fulfills the legislative purpose of CIPA by giving greater protection to privacy interests.'" *Matera v. Google Inc.,* No. 15-CV-04062-LHK, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) (*quoting Flanagan v. Flanagan*, 27 Cal.4th 766, 775 (2002) (cleaned up).

As Judge Lin held in a factually similar case involving IP addressing information:

> Plaintiffs' theory is that the third-party Trackers operate as pen registers under the meaning of the statute because they are processes that record users' IP addressing information, but not the content of the electronic communications being transmitted from users' computers or smartphones to [the defendant's] website.
>
> At the motion to dismiss stage, these allegations are sufficient to plausibly allege that the Trackers operate as a "process" under the meaning of the statute.

*Fandom*, 754 F. Supp. 3d at 929; *see also Greenley*, 684 F. Supp. 3d at 1050 (finding software that allowed fingerprinting constituted a "pen register"). *Mirmalek*, 2024 WL 5102709, at *3 ("[U]nder the inclusive language of CIPA's definition of a pen register, Plaintiff sufficiently alleges that the Trackers are a 'device or process…'"); *Moody*, 742 F. Supp. 3d at 1076 ("Plaintiff's allegations that the TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the

scope of §§ 638.50 and 638.51."); *Gabrielli*, 2025 WL 1939957, at *12 (same); *Autotrader.com*, 762 F. Supp. 3d at 929 (same); *Conohan*, 2025 WL 1111246, at *6 (same); *Lesh*, 767 F. Supp. 3d at 40 (same).

In *Riganian*, 791 F. Supp. 3d at 1093, Judge Tigar found that plaintiffs stated a claim under CIPA, rejecting the defendant's arguments, like SeatGeek's here, relying on "(1) other statutory provisions enacted at the same time as the pen register prohibition, such as Sections 638.52(c) and 638.52(d), which do specifically discuss the use of pen registers in relation to a telephone number or telephone line; (2) the section's legislative history, in which the author of the bill and a committee report described pen registers in relation to the recording of telephone calls; and (3) a California Superior Court case holding that 'pen register' refers to devices or processes that are used to record or decode information only from telephone numbers and not internet communications, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025).In doing so, the *Riganian* court specifically took issue with the *Cars.Com* decision, stating that it wrongly "focused its analysis on the legislative history of the CIPA rather than on the expansive, plain language of Section 638.50." 791 F. Supp. 3d at 1093.

Indeed, judges in this District have ***unanimously*** rejected SeatGeek's argument that a pen register must be a telephone. *Fregosa v. Mashable, Inc.*, No. 25-cv-01094-CRB, 2026 WL 183857, at *2 (N.D. Cal. Jan. 23, 2026) ("<u>every</u> federal court to tackle the CIPA applicability question has rejected [defendant]'s position") (emphasis in original); *see also*, *Fregosa.,* 2025 WL 2886399, at *2 ("Several judges in this district, including Judges Lin, Orrick, Pitts, Ryu, Tigar, and [Breyer], have held that such allegations suffice at the pleading stage."); *Deivaprakash,* 798 F.Supp.3d at 1108; *Selby*, 2025 WL 2950164, at *4; *Mirmalek*, 2024 WL 5102709, at *3 (same). SeatGeek does not attempt to distinguish or even cite *any* of these decisions that are directly on point. The Court should agree with the majority of judges in this District and find that Plaintiff plausibly alleges that the Trackers constitute a "pen register" within the meaning of CIPA.

**b. CIPA does not Conflict with the CCPA, As this District Routinely holds**

SeatGeek's unsupported assertion that the California Consumer Privacy Act ("CCPA"), enacted after CIPA's pen register provisions, somehow immunizes it is refuted by the statute's language and the rulings of numerous courts. *See* Mot. at 17.

*First*, the CCPA does not narrow the application of CIPA because the CCPA was "intended to further the constitutional right of privacy and to supplement existing laws relating to consumers' personal information," and that "in the event of a conflict between other laws and the provisions of this title, the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control." Cal. Civ. Code § 1798.175. CIPA prohibits companies such as Defendant from installing a pen register and sharing users' personal information with third parties, which is the greater protection for the right of privacy and thus "by Defendant's own argument, CIPA should control." *Mirmalek*, 2024 WL 5102709, at *5 (citing Cal. Civ. Code § 1798.175).

*Second*, Defendant offers no authority for the proposition that a later-enacted statute (the CCPA) can somehow preempt an earlier-enacted one (CIPA). The California Legislature "is presumed to know its own laws, and a later general statute does not overrule an earlier specific one unless it does so clearly." *United States v. Hawkins*, 228 F.2d 517, 518 (9th Cir. 1955); *see also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 n.29 (C.D. Cal. 2021) ("Quantum Metric briefly suggests that it should be considered an extension of Lululemon under the California Consumer Privacy Act … but it offers no authority to suggest that the Consumer Privacy Act rewrote CIPA in that way."). There is no indication that the CCPA overrules CIPA in any way.

*Third*, the CCPA and CIPA are not in conflict. The CCPA provides Californians with a right to opt-out of further data collection. But the CCPA does not enable companies to collect and disclose Californians' data to Third Parties without notice and consent in the first place. Quite the contrary, the CCPA states that "[a] business that controls the collection of a consumer's personal information shall, at or before the point of collection, inform consumers of" the types of data collected. Cal. Civ. Code § 1798.100(a) (emphasis added). And the provision Defendant cites for the proposition that its conduct is expressly permitted, Cal. Civ. Code § 1798.100(a), regulates the time at which a business must procure consent from consumers fo*r the business itself* to collect their information. Unlike CIPA, the CCPA does *not* regulate the time at which a business must inform consumers that a *third party i*s collecting their information, which is what Plaintiff claims here. *Fandom*, 754 F. Supp. 3d at 933.

Here, Defendant's violation of the CIPA deprived Plaintiff of the right to control the dissemination of his personal information to Third Parties, and that is not something the CCPA regulates.

*Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418-EMC, 2021 WL 3621837, at *6 (N.D. Cal. Aug. 16, 2021)(rejecting defendants' argument that its conduct was "expressly permitted by" the CCPA); *Mirmalek,* 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024) (rejecting argument that CCPA controls because application of stricter privacy laws would '"supplant. . . the detailed notice and 'opt out' framework of the CCPA'"); *Kellman v. Spokeo, Inc.,* 599 F.Supp.3d 877, 897 (N.D. Cal. 2022) (rejecting argument that CCPA contained an "expressed exemption" for defendant's conduct).

Thus, the "CCPA and CIPA are complementary." *Mirmalek*, 2024 WL 5102709, at *5; *Xu v. Reuters News & Media, Inc.,* No. 25CV459918, 2025 WL 3035016, at *3 (Cal. Super. Oct. 24, 2025) ("[I]t does not appear that CCPA and CIPA are in conflict with one another."); *Rose v. Variety Media, LLC*, No. 25STCV01865, 2025 WL 2794920, at *4 (Cal.Super. Sep. 24, 2025) ("The Court does not see any problem, at this stage, with the overlap, if any, between CCPA and CIPA."); *M.G. v. Therapymatch, Inc.*, No. 23-cv-04422-AMO, 2024 WL 4219992, at*5, 7 (N.D. Cal. Sept. 16, 2024) (denying the defendant's motion to dismiss CIPA *and* CCPA claims).

SeatGeek goes to great lengths (including introducing over 200 pages of exhibits annexed to its Request for Judicial Notice) to craft an unconvincing argument concerning certain efforts by politicians to legislate around CIPA's applicability to the internet. But, again, SeatGeek conveniently fails to advise the Court of critical details surrounding these efforts that eliminate any legislative lifeline for SeatGeek in this case. As originally proposed, SB 690 sought to add a "commercial business purposes" exception to CIPA, including CIPA § 638.51, and the exception would have applied retroactively. Thus, the bill as originally drafted was effectively a concession that the plain text of the CIPA applies to conduct like SeatGeek's here. But SeatGeek does not tell the Court that the bill's retroactive provisions were *removed* from the current version, and thus SB 690 will have no effect on this lawsuit.

Legislative efforts on SB 690 are in fact currently stalled. Though the amended bill passed the California Senate with its retroactivity provision removed, the bill has been frozen in the California Assembly after the sponsor faced "*outstanding concerns around consumer privacy*." *See* Tyler Katzenberger, *California Democrat Delays Effort To Limit Data Privacy Lawsuits*, POLITICOPRO (July 1, 2025), https://tinyurl.com/7ybpzdd2 (last visited 3/13/26). Based on this strong opposition, it seems a foregone conclusion that SB 690 will be amended, yet again, and further reworked during its

legislative pause. If the bill passes, it will not be in the same form as currently drafted.

Thus, SeatGeek's legislative argument has no teeth. The current draft of SB 690 does not apply to this action, SB 690 is not passing any time soon (if ever), and the ultimate form of SB 690 is unknown.

**c. The Rule of Lenity Does not Bar Plaintiff's CIPA Claim**

Courts have recognized that "[t]he Court's task is to interpret the law as the Legislature wrote it" and "the pen register statute is broadly written, and under California law, is to be interpreted broadly to protect privacy and to be applied to new techniques and technologies." *Fandom,* 754 F.Supp.3d at 932-33. SeatGeek's rule of lenity argument fails because the rule applies "only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule." *People v. Superior Ct. of Riverside Cnty*., 81 Cal.App.5th 851, 886 (2022). Indeed, courts in this District and others have overwhelmingly rejected the rule of lenity's application to disputed provisions of the CIPA, including CIPA §§ 638.50-638.51. *Deivaprakash*, 798 F.Supp.3d at 1108; *Riganian*, 791 F.Supp.3d at 1094; *Fregosa*, 2025 WL 2886399, at *9 ("But as courts have recognized, the rule of lenity has little force in this context."); *Garon v. Keleops USA, Inc.*, No. 25-CV-2124-DMR, 2025 WL 2522374, at *6 (N.D. Cal. Sept. 2, 2025) (same); *Xu*, 2025 WL 3035015, at *4 ("The rule of lenity does not apply here because Defendant has not identified any 'egregious ambiguity' in the express language of Section 638.51.").

There is no "grievous ambiguity" here. On the contrary, the "text is clear." *Fandom*, 754 F. Supp. 3d at 929. The statute may be broad, but that does not give the Court leeway to set aside "the California Legislature's chosen definition." *Id.* (quoting *Greenley*, 684 F. Supp. 3d at 1050). That definition should be accorded the most "significance" and end the debate. *LoanMe*, 11 Cal. 5th at 202. Further, the statute was drafted broadly because the CIPA was intended to protect Californians from "the invasion of privacy resulting from" "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping … [that] has created a serious threat … and cannot be tolerated in a free and civilized society." Cal. Pen. Code § 630. Based on "the California Supreme Court's pronouncements regarding the broad legislative intent underlying CIPA to protect privacy, and the California courts' approach to updating obsolete statutes in light of emerging technologies," "courts have repeatedly held that [] provisions of CIPA are not limited to the traditional versions of the tools at

issue." *Fandom*, 754 F. Supp. 3d at 930-31 (cleaned up); *see also id.* (noting "the California Supreme Court has instructed courts to interpret CIPA in the manner that fulfills the legislative purpose of CIPA by giving greater protection to privacy interests"). And as demonstrated *supra*, CIPA is not in conflict with the CCPA, which judges in this District have recognized.

SeatGeek's reliance on Judge Chhabria's ruling in *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109 (N.D. Cal. 2025). is unconvincing. Not only was it decided on summary judgment and a full record, but that case asserted a claim for *wiretapping* under Section 631 (a) of CIPA, not at issue here, where liability "turns on whether the third party 'read' or 'attempt[ed] to read' or attempted 'to learn' the contents of an internet communication between the plaintiff and the website operator while that communication was 'in transit..'' *Doe*, 806 F. Supp. 3d at 1112. Judge Chhabria determined this statutory language "ambiguous." *Id*. The relevant provision here is not. Contrary to SeatGeek's flawed position, the CCPA does not expressly authorize its conduct and is not in conflict with CIPA.

**d. Defendant's Installation And Use Of The Trackers, Which Caused Third Parties To Collect Plaintiff's IP Address, Is Not "Necessary"**

SeatGeek argues that it is exempt from CIPA liability pursuant to Cal. Penal Code § 638.51(b)(1) since website operators "necessarily" capture incoming address information from users. Mot. at 21. SeatGeek is wrong for several reasons.

*First*, Cal. Penal Code § 638.51(b) only applies to the use of a pen register by "[a] provider of electronic or wire communication service." While CIPA does not define "electronic communications service provider," California's Electronic Communications Privacy Act does define both "electronic communications service" and "service provider":

> "Electronic communication service" means a service that provides to its subscribers or users the ability to send or receive electronic communications, including any service that acts as an intermediary in the transmission of electronic communications, or stores electronic communication information.
>
> "Service provider" means a person or entity offering an electronic communication service.

Cal. Penal Code §§ 1546(e), 1546(j). This term plainly refers to telecom companies that provide access to the Internet, and *only* such companies can use pen registers with the consent of their users.

Meanwhile, SeatGeek is a ticket marketplace, and the Trackers installed on its Website are operated by Third Parties (TikTok, Microsoft and Meta) that provide digital marketing, advertising, and data analytics. None of these Third Parties is in the business of "provid[ing] … the ability to send or receive electronic communications" or "act[ing] as an intermediary in the transmission of electronic communications." Accordingly, neither Defendant nor the Third Parties are providers of an "electronic communication service," and the exemption does not apply. *Mirmalek*, 2024 WL 5102709, at *5.

*Second*, even if the exemption applied to Defendant as an "electronic communication service," installing the Trackers so that third parties can collect IP addresses for marketing, advertising, and data analytics purposes is *not* necessary to "operate, maintain, and test a wire or electronic communication service." *In re Hulu Privacy Litig.*, 2012 WL 3282960, at *6-7 (N.D. Cal. Aug. 10, 2012) (finding disclosures to third-party "online market research, ad network and web analytics companies" fell outside of "ordinary course of business" exception to the VPPA). The narrow exception was obviously meant to apply to a situation where a telecommunications company needs to install a pen register to ensure its customers can access the internet or make phone calls. That is not remotely the case here since SeatGeek's ticket marketplace can function without the use of pen registers that track user behavior, which is then sold for financial gain.

*Third*, SeatGeek argues that because Plaintiff voluntarily interacted with the Website, the collection of incoming IP addresses was necessary because SeatGeek already and necessarily captures such data when the Website is accessed. Mot. at 21. But Defendant's cases "involve situations where users were directly communicating with the party alleged to be operating the pen register and voluntarily sent that party their IP address." *Fandom*, 754 F. Supp. 3d 924, 932 n.3 Here, Plaintiff's claim is that his IP address, Device Metadata and identifiers were disclosed to Third Parties As Judge Lin pointed out, "[a] user who consents to disclose their IP address to [a website operator] as part of accessing its website does not necessarily consent to disclose their IP address to the third parties operating the Trackers." *Id.*, 754 F. Supp. 3d at 932 (emphasis added). Defendant's installation and use of the Trackers, which caused Plaintiff's IP address, Device Metadata and identifiers to be disclosed to Third Parties, was not necessary for the operation of SeatGeek's business.

### 6. *Plaintiff States a CDAFA Claim*

The California Legislature enacted CDAFA with the intent to "expand the degree of protection afforded to individuals […] from […] unauthorized access to […] computer data and computer systems,

and declared that "protection of the integrity of all types and forms of [...] computers, computer systems, and computer data is vital to the protection of the privacy of individuals." Cal. Penal Code § 502(a) (emphasis added). SeatGeek ignores Plaintiff's allegations that its installation of trackers on users' computers was unauthorized and without consent. *See, e.g.* ¶¶ 61-62, 66, 103-112.

Consistent with Plaintiff's allegations of "no permission," which this Court must take as true, courts routinely find that unauthorized installation of tracking technologies give rise to CDAFA claims. *Greenley*, 684 F.Supp.3d at 1047-49 (sustaining CDAFA claim where the defendant embedded its tracking code into third-party apps, which secretly collected app users' data, finding that such tracking was done "without permission"); *Meta Healthcare Pixel Litig.*, 713 F.Supp.3d 650, 656 (N.D. Cal. 2024) (sustaining CDAFA claim when defendant surreptitiously placed a cookie on the plaintiffs' computers, which caused the computers to redirect the plaintiffs' data to the defendant).

Second, Plaintiff adequately alleges compensatory damages, including by explaining how SeatGeek was unjustly enriched and profited from the data taken by using Plaintiff's and Class Members' personally identifying information obtained in violation of CDAFA to maximize advertising revenue, which damages courts have repeatedly upheld. ¶¶6, 78, 85, 92, 98, 105, 111-112, 117, 147. As the court in *Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709-RFL, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025) explained with respect to online trackers, "Plaintiffs have a 'stake in the profits garnered' unjustly from their data [... that] 'exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable.'" (finding unjust profit from the use of the plaintiffs' private personal information constitutes "damage or loss" within the meaning of CDAFA).

Lastly, because Plaintiff's CDAFA claims arise from SeatGeek's unauthorized tracking, ***not from fraud***, a heightened pleading standard for fraud is inapplicable, and Plaintiff is not required "to articulate how SeatGeek profited" off of his taken data. Mot. at 23. As set forth above, Plaintiff describes SeatGeek's installation of Trackers which operate through software installed on users' computers, the creation of digital profiles and the ability to identify users through fingerprinting and other processes. With respect to Plaintiff specifically, he alleges he accessed the SeatGeek website routinely, that his personal information was collected without his consent and that he was deanonymized by virtue of the

operation of the Trackers. ***SeatGeek does not dispute the Trackers were actually installed on its Website during this time***. Allegations similar to Plaintiff's are routinely upheld in pen register and other pixel tracking cases, and they should be sustained here too.

### C. To The Extent The Court Finds His Pleading Insufficient, Plaintiff Should Be Permitted Leave To Amend

SeatGeek's Motion should be denied for the reasons stated herein. Should the Court grant the Motion, however, Plaintiff respectfully requests leave to amend. The Ninth Circuit has consistently granted plaintiffs leave to amend regardless of multiple previously amended pleadings. *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1183 (9th Cir. 2016) (reversing denial of leave to amend even though the plaintiff had previously amended his pleading three times). Furthermore, the Ninth Circuit emphasizes that "[u]nder futility analysis, dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (cleaned up); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (noting that a court should permit amendment "unless it determines that the pleading could not possibly be cured by the allegation of other facts").

In this case, the Court has not yet ruled on the merits of Plaintiff's allegations and it is far from certain that Plaintiff's claim is futile. As noted herein, numerous courts have sustained claims similar to those here. However, if the Court deems any of the claims inadequately pleaded, Plaintiff requests leave to amend.

## V. CONCLUSION

For the foregoing reasons, Plaintiff requests that Defendant's Motion be denied in its entirety.

Respectfully submitted,

Dated: March 19, 2026

*<u>/s/ Adam J. Zapala</u>*
Adam J. Zapala (SBN 245748)
Kevin J. Boutin (SBN 334965)
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com

kboutin@cpmlegal.com

Katrina Carroll (*pro hac vice*)
**CARROLL SHAMBERG LLC**
200 N. LaSalle, Suite 1650
Chicago, IL 60601
Telephone:(872)-215-6205
katrina@csclassactions.com

*Counsel for Plaintiff and the Proposed Class*