Heather J. Silver (SBN 285509)
Blake M. Bailus (SBN 360713)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Heather.Silver@gtlaw.com
Blake.Bailus@gtlaw.com

Attorneys for Defendant
SeatGeek, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSE TORRES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SEATGEEK, INC., a Delaware corporation headquartered in New York; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 3:25-CV-07118-LB<br><br>Assigned to Hon. Laurel Beeler<br><br>**DEFENDANT SEATGEEK, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**<br><br>[Concurrently filed with Reply in support of Request for Judicial Notice]<br><br>Action filed: August 22, 2025<br><br>Date: April 30, 2026<br>Time: 9:30 a.m.<br>Place: Courtroom B, 15th Floor |

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. PLAINTIFF'S OPPOSITION CONFIRMS HE LACKS STANDING ..... 2

A. The Routine Tracking of Plaintiff's Record Information Gives Rise to No Concrete Harm. ..... 3

1. Statutory Standing is Irrelevant to Plaintiff's Article III Standing ..... 4

2. Plaintiff Alleges No Harm Akin to a Common Law Privacy Intrusion ..... 5

B. Vague Allegations of Unjust Enrichment Do Not Confer Standing. ..... 7

III. THE OPPOSITION CONFIRMS THAT PLAINTIFF FAILS TO STATE A CLAIM ..... 9

A. Plaintiff's Bare Allegations Fail to Satisfy Rule 8. ..... 9

1. Plaintiff's Sparse Allegations About His Visit to the Website Fail Under Rule 8. ..... 9

2. Rule 8 Requires Plaintiff to Plead the Relevant Dates of Alleged Conduct. ..... 9

B. Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion Claims Fail. ..... 10

C. Plaintiff's Pen Register Claim Under CIPA § 638.51 Fails. ..... 11

1. Section 638.51 Applies to Tracking Technology for Telephones, Not Websites. ..... 11

2. Section 638.51 Does Not Bar a Website's Collection of Visitors' Information. ..... 15

D. Plaintiff's Claim Under the CDAFA Fails. ..... 16

1. Plaintiff Alleges No "Damage or Loss" Under the CDAFA. ..... 16

2. Plaintiff Does Not Allege That SeatGeek Unlawfully Accessed His Computer. ..... 17

E. Plaintiff Should be Denied Leave to Amend. ..... 17

IV. CONCLUSION ..... 17

# TABLE OF AUTHORITIES


**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 16

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) .......... 8

*B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 10

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 2, 9, 10

*Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095 (S.D. Cal. 2025) .......... 4

*Carolus v. Nextstar Media Inc.*, No. 24-cv-7790, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) .......... 3

*Cody v. E. Gluck Corp.*, No. 23-cv-2286, 2024 WL 4314187 (N.D. Cal. Sept. 26, 2024) .......... 9

*Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 5

*CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801 (9th Cir. 2022) .......... 12

*Dawidzik v. Tesla, Inc.*, No. 25-cv-1982, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .......... *passim*

*Deivaprakash v. Conde Nast Digital*, 798 F. Supp. 3d 1100 (N.D. Cal. 2025) .......... 4, 8

*Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 11

*Doe v. Amgen, Inc.*, No. 23-cv-7448, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024) .......... 9

*Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 2, 14, 15

*Drummer v. Costar Grp., Inc.*, No. 25-cv-1047, 2025 WL 3190656 (C.D. Cal. Oct. 22, 2025) .......... 4

*Echeverria-Corzan v. Fox Corp.*, No. 25-cv-4253, 2025 WL 3128194 (N.D. Cal. Nov. 7, 2025) .......... 12

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .......... 5, 6, 10

*Gabrielli v. Insider, Inc.*,
No. 24-cv-1566, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) .......... 3

*Garcia v. Blackhawk Network, Inc.*,
No. 25-cv-7550, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026) .......... 6

*Gershzon v. Meta Platforms, Inc.*,
No. 23-cv-083, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) .......... 15

*Gilbert v. 7-Eleven, Inc.*,
157 F.4th 1057 (9th Cir. 2025) .......... 4

*Gilligan v. Experian Data Corp.*,
No. 25-cv-2873, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026) .......... 6

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 10

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 11

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 1, 3

*Greenley v. Kochava*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 11, 17

*Gutierrez v. Converse Inc.*,
No. 23-cv-06547, 2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) .......... 17

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 8

*Hayden v. Retail Equation, Inc.*,
No. 20-cv-1203, 2022 WL 2254461 (C.D. Cal. May 4, 2022) .......... 7

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 8

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 16

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......... 4

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 10

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) .......... 2, 9

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 1, 7

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... *passim*

*Khamooshi v. Politico LLC*,
No. 24-cv-7836, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .......... 8

*Killgore v. SpecPro Pro. Servs., LLC*,
51 F.4th 973 (9th Cir. 2022) .......... 12

*Krzyzek v. OpenX Techs., Inc.*,
No. 25-cv-5588, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026) .......... 5

*Magliocca v. United Healthcare Services, Inc.*,
No. 25-cv-3388, 2026 WL 878694 (E.D. Cal. Mar. 31, 2026) .......... 5, 6, 9

*McClung v. AddShopper, Inc.*,
No. 23-cv-1996, 2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .......... 6

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) .......... 16, 17

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
No. 24-cv-1797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 4, 12, 14

*Oracle Corp. v. SAP AG*,
734 F. Supp. 2d 956 (N.D. Cal. 2010) .......... 16

*Pemberton v. Rest. Brands Int'l, Inc.*,
No. 25-cv-3647, 2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) .......... 7, 8

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... *passim*

*R.C. v. Sussex Publishers, LLC*,
No. 24-cv-2609, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025) .......... 4

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 6, 8, 12

*Rodriguez v. Brushfire Recs.*,
No. 25-cv-9797, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) .......... 7

*Rodriguez v. Culligan Int'l Co.*,
No. 25-cv-225, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) .......... 3

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 5, 7

*Selby v. Sovrn Holdings, Inc.*,
No. 25-cv-3139, 2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) .......... 6

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 16

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 4, 12, 13

*Shah v. MyFitnessPal, Inc.*,
No. 25-cv-4430, 2026 WL 216334 (N.D. Cal. Jan. 27, 2026) .......... 6, 10

*Shah v. Politico LLC*,
No. 25-cv-5213, 2026 WL 323269 (N.D. Cal. Feb. 6, 2026) .......... 8

*Smith v. Rack Room Shoes, Inc.*,
No. 24-cv-6709, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .......... 16

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-667, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 7

*Tash v. Vision Serv. Plan*,
No. 25-cv-762, 2026 WL 1012680 (E.D. Cal. Apr. 14, 2026) .......... 3, 5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 3, 5

*Tsering v. Meta Platforms, Inc.*,
No. 25-cv-1611, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026) .......... 6

*In re USA Today Co., Inc. Internet Tracking Litig.*,
No. 24-cv-5150, 2026 WL 932655 (N.D. Cal. Apr. 6, 2026) .......... 3, 8

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 11

*Wilcox v. Comm'r*,
848 F.2d 1007 (9th Cir. 1988) .......... 15

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F. Supp. 3d 1139 (E.D. Cal. 2025) .......... 1, 3

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 3, 10, 16

**State Cases**

*Apple Inc. v. Super. Ct.*,
56 Cal. 4th 126 (2013) .......... 13

*Casillas v. BOP LLC*,
No. 24STCV15581, 2025 WL 2161288 (Super. Ct. June 18, 2025) .......... 15

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) .......... 10

*Goldstein v. Super. Ct.*,
93 Cal. App. 5th 736 (2023) .......... 14

*Larkin v. Workers' Comp. Appeals Bd.*,
62 Cal. 4th 152 (2015) .......... 12

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022) .......... 16

*People v. Super. Ct. (Lara)*,
4 Cal. 5th 299 (2018) .......... 14

*Rodriguez v. IMDB.com, Inc.*,
No. 24STCV14922, 2026 WL 886927 (Super. Ct. Mar. 24, 2026) .......... 9

*Rodriguez v. Sparc Grp., LLC*,
No. 24STCV26946, 2025 WL 2993671 (Super. Ct. Jul. 9, 2025) .......... 15

*Schallert v. Orkin LLC*,
No. 24STCV31244, 2025 WL 4332757 (Super. Ct. Dec. 15, 2025) .......... 2, 12, 13

*Schallert v. Palo Alto Networks, Inc.*,
No. 25STCV17109, 2026 WL 754028 (Super. Ct. Mar. 6, 2026) ............ 12, 13

*Scharon v. Paramount Global*,
No. 25STCV10585, 2025 WL 2996812 (Super. Ct. Oct. 3, 2025)............ 11, 12, 13

**State Statutes**

Cal. Civ. Code § 1798.100 ............ 14

Cal. Civ. Code § 1798.120 ............ 14

Cal. Civ. Code § 1798.140 ............ 4, 14

Cal. Civ. Code § 1798.175 ............ 14

Cal. Civ. Code § 3531 ............ 13

Cal. Pen. Code § 502 ............ 16, 17

Cal. Pen. Code § 637.2 ............ 9, 14

Cal. Pen. Code § 638.50 ............ 1, 12, 13

Cal. Pen. Code § 638.51 ............ *passim*

Cal. Pen. Code § 638.52 ............ 11, 12, 13

Cal. Pen. Code § 638.53 ............ 1

**Rules**

Fed. R. Civ. P. 8 ............ 2, 9, 10

Fed. R. Civ. P. 9 ............ 16

Fed. R. Civ. P. 12(b)(1) ............ 4

Fed. R. Civ. P. 12(b)(6) ............ 11

## I. INTRODUCTION

SeatGeek's Motion to Dismiss the FAC ("Motion") established, and Plaintiff does not dispute, that this case concerns only technical identifiers allegedly collected by third parties when Plaintiff visited and viewed SeatGeek's Website.[1] Indeed, Plaintiff's Opposition concedes that the technology on the Website did not acquire "content"—*i.e.*, the "intended message" of a communication—and instead collected only "record information," such as "IP addresses, locations, browser types, and operating systems," that unequivocally "is not content." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (Beeler, J.). Thus, the information at issue is uncontested, and the central remaining issue is whether the disclosure of this innocuous data gives rise to an Article III injury and alleges viable privacy intrusions and claims under CIPA and the CDAFA. As SeatGeek's Motion and binding Ninth Circuit precedent establish, it does not.

Plaintiff seeks to avoid dismissal by relying on inapposite cases where defendants either misled users about what data they would (or would not) track or orchestrated mass-surveillance schemes to acquire and exploit swaths of sensitive information about plaintiffs across the internet. But Plaintiff's allegations against SeatGeek bear no resemblance to the deceptive conduct in those cases, and "without more," a website's use of third-party trackers to acquire and share "quotidian" record information—even for targeted advertising purposes—does "not bear similarity to the 'highly offensive' interferences" Plaintiff must show for both Article III standing and to state his privacy claims. *E.g.*, *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1144 (E.D. Cal. 2025) (quoting *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025)). Plaintiff's cited authority further confirms that absent fraud or other unique circumstances that Plaintiff cannot allege here, "collecting contact information for sending advertisements" is, as a matter of law, "routine commercial behavior" that states no concrete harm or actionable privacy intrusion. *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023). Because only legally unprotected "record information" was tracked for this "routine" purpose, no amendment can remedy these defects to Plaintiff's standing or his claims for privacy intrusions. *Id.* at 942, 945.

Beyond the lack of injury or privacy intrusion, Plaintiff's claim under CIPA Section 638.51 fails because that statute does not prohibit technology used to track website users. It is rare that a statute's purpose is stated in such clear terms as it is here with AB 929—the 2015 bill that enacted CIPA Sections 638.50 through 638.53—which states it was enacted solely to govern law enforcement's use of pen registers for "telephone surveillance."

[1] Capitalized terms have the same meaning given to them in SeatGeek's Motion.

RJN, Ex. 5 at 1. Neither the text of the statute nor its legislative history suggest that the law was intended to criminalize a website's use of tracking technologies that were commonplace well before 2015. There is also no reason to believe "the Legislature intended for CIPA to apply to the type of conduct implicated by this case," especially since California "adopted other statutes" like the CCPA that "clearly speak to" the data sharing at issue. *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1119 (N.D. Cal. 2025). Plaintiff urges this Court to put on blinders, review the definition of a "pen register" in a vacuum—isolated from the statutory sections surrounding it and its legislative origin—and accept that Plaintiff alleged a Section 638.51 claim because a few other district courts concluded as much. Those decisions relied *solely* on CIPA's broad definition of pen registers without following California's rules for statutory interpretation, which require consideration of the other sections of CIPA "cross-referenced" within Section 638.51 that apply only to devices attached to a telephone line—context that "sharply narrows" the definition, as does the exclusive focus on telephonic surveillance within the statute's legislative history. *Schallert v. Orkin LLC*, No. 24STCV31244, 2025 WL 4332757, at *3-4 (Super. Ct. Dec. 15, 2025). Plaintiff also challenges arguments never made by SeatGeek that the CCPA preempts CIPA or that SeatGeek is exempt from liability under Section 638.51(b)(1).

Apart from these fundamental defects, the Opposition fails to remedy the additional deficiencies SeatGeek identified in the Motion as to each claim. Plaintiff still alleges nothing about what he did on the Website and when he visited it, and so his allegations "lack the requisite specificity" required even under Rule 8 to plausibly state his claims. *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1043 (S.D. Cal. 2024). And Plaintiff's "failure to plead the approximate date of alleged misconduct" is "not a statute of limitations problem," but "a Rule 8 problem" that the FAC fails to remedy. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 135 (N.D. Cal. 2020). Equally unavailing is Plaintiff's attempt at implicating the CDAFA, as he cannot rebut that it is a criminal statute that protects those who suffer compensatory damages caused by a hack into their computers—not individuals alleging that a website profited by tracking and sharing users' legally unprotected record information.

In sum, the Opposition does not address the core deficiencies requiring dismissal of the FAC nor suggest there is any possible way for Plaintiff to amend to do so. The FAC should be dismissed without leave to amend.

## II. PLAINTIFF'S OPPOSITION CONFIRMS HE LACKS STANDING

Plaintiff does not refute that, to have Article III standing, he must allege more than a bare violation of a statute; there must be a "'close,'" "'common-law analogue'" for his asserted injury. *Popa*, 153 F.4th at 791

(quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021)). Plaintiff argues that he suffered an Article III injury by alleging harms akin to: (1) an invasion of privacy, and (2) unjust enrichment. Both theories fail.

Among other things, Plaintiff cannot overcome that both require the tracking of information in which he has a "legally protected privacy interest," *i.e.*, "information the disclosure of which 'would be highly offensive to a reasonable [person].'" *In re USA Today Co., Inc. Internet Tracking Litig.*, No. 24-cv-5150, 2026 WL 932655, at *2 (N.D. Cal. Apr. 6, 2026) (quoting *Popa*, 153 F.4th at 791). No such interest exists for Plaintiff's "unprotected" IP address and the other "persistent identifiers" at issue here (*e.g.*, device and browser type). *Id.* *3. Plaintiff agrees that his claims arise from the alleged use of technology—"pen registers," as he labels them—to track technical metadata, FAC ¶¶ 3, 64, 152, 155, all of which he also agrees is "not the contents of a communication," Opp. at 12. In other words, Plaintiff admits his theory of harm is based on the disclosure of "record information," *i.e.*, the "characteristics" of his online interactions. *Graham*, 533 F. Supp. 3d at 833 (quotation marks and citation omitted). But internet users have no privacy interest in their record information. Mot. at 8 n.3 (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014)). That is why federal courts routinely hold that plaintiffs lack standing for claims based on "pen registers" or "trap and trace devices"—even when used to send targeted ads—because there is no expectation of privacy in the data collected.[2]

**A. The Routine Tracking of Plaintiff's Record Information Gives Rise to No Concrete Harm.**

Plaintiff sidesteps SeatGeek's argument that the data allegedly collected was not sensitive enough—or, rather, not sensitive *at all*—to give rise to an Article III injury by misrepresenting both his and SeatGeek's cited

---

[2] *See* Mot. at 7–9 (citing, *e.g.*, *Rodriguez v. Culligan Int'l Co.*, No. 25-cv-225, 2025 WL 3064113, at *5 (S.D. Cal. Nov. 3, 2025) (plaintiff lacked standing for website's alleged use of "tracking beacons," as "users have no right to privacy" in their IP address, browser details, and social media IDs)); *Tash v. Vision Serv. Plan*, No. 25-cv-762, 2026 WL 1012680, at *4 (E.D. Cal. Apr. 14, 2026) (same for IP address, Facebook ID, and other "device identifiers"). Plaintiff's meager attempt at distinguishing SeatGeek's authorities "because they involved situations where disclosures were made . . . to the recipient of the communication," not third parties, falls flat. Opp. at 7. Nearly *every* case SeatGeek relied on involved the sharing of users' interactions, including the same identifiers alleged here, with third parties to "track" them. Many of SeatGeek's Article III authorities dealt with the same basic fact pattern alleged in the FAC—a website used "pen registers" or "trap and trace devices" to track users' technical parameters and share them with third parties for targeted advertising. Mot. § IV(C) (citing, *e.g.*, *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1181 (N.D. Cal. 2025) ("*Khamooshi I*"); *Wooten*, 807 F. Supp. 3d at 1143; *Dawidzik v. Tesla, Inc.*, No. 25-cv-1982, 2025 WL 3786963, at *5 (C.D. Cal. Dec. 29, 2025)). Plaintiff cherry-picks two of these cases to claim they did not contain allegations regarding linking users' "information to comprehensive profiles" sold to advertisers. Opp. at 7-8 (citing *Gabrielli v. Insider, Inc.*, No. 24-cv-1566, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025); *Carolus v. Nextstar Media Inc.*, No. 24-cv-7790, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025)). Besides ignoring the SeatGeek's numerous on-point authorities, Plaintiff is wrong about *Gabrielli*, involving the tracking of IP addresses "to target customers" for "more effective advertising," 2025 WL 522515, at *1, and *Carolus*, which "assume[d] the reader's familiarity with the facts" and dismissed for lack of standing because plaintiff lacked a privacy interest in his IP address and "browser and device data." 2025 WL 1338193, at *1; *cf.* *Carolus* First Amended Complaint ¶ 44 (third-party trackers used to "build user profiles" for "targeted advertising"), No. 24-cv-7790 (N.D. Cal. Jan. 30, 2024) (ECF No. 15).

authority. A faithful reading of the law makes clear that Plaintiff lacks standing and the FAC must be dismissed.

**1. Statutory Standing is Irrelevant to Plaintiff's Article III Standing.**

Plaintiff does not dispute the Supreme Court's holding in *TransUnion*—as deftly applied in the privacy context by the Ninth Circuit in *Popa*—rejects that a plaintiff "*necessarily* enjoys Article III standing when suing under a statute that protects a substantive right to privacy." *Popa*, 153 F.4th at 792 (emphasis in original). Nonetheless, Plaintiff omits *TransUnion* from his Opposition, disregards its direction, and urges this Court to conclude he has Article III standing based on cases assessing statutory standing. But statutory standing has "nothing to do with . . . Article III," *Dawidzik*, 2025 WL 3786963, at *3, and "should not be confused with constitutional standing under Article III," *Gilbert v. 7-Eleven, Inc.*, 157 F.4th 1057, 1064 n.4 (9th Cir. 2025).[3]

Bizarrely, Plaintiff also points to the CCPA to claim it establishes a privacy interest in his record information. Opp. at 14. But Plaintiff does not (and cannot) allege a violation of the CCPA, which *allows* businesses to use the technology on which Plaintiff bases his claims—even for "targeting" users with ads, Cal. Civ. Code § 1798.140—*without prior consent*. *See* Mot. at 17.[4] If anything, that the CCPA allows the very conduct Plaintiff complains of supports the *absence* of a privacy invasion here. *See Khamooshi I*, 786 F. Supp. 3d at 1180 n.4 (rejecting standing based on contention that the acquired data is "personal information" under the CCPA). In any event, to have *Article III* standing, Plaintiff must show a "concrete injury" *apart* from a violation of CIPA, CDAFA, CCPA, or any other statute. *Popa*, 135 F.4th at 791-92. The inquiry is whether Plaintiff's

---

[3] Although some decisions relied on by Plaintiff, such as *Camplisson v. Adidas Am., Inc.*, held that alleging a CIPA violation is "itself" enough for "statutory standing," 809 F. Supp. 3d 1095, 1104 (S.D. Cal. 2025), whether Plaintiff has alleged statutory standing is immaterial to his standing under Article III, *see* Opp. at 6-7 (citing, *e.g.*, *Deivaprakash v. Conde Nast Digital*, 798 F. Supp. 3d 1100, 1107 (N.D. Cal. 2025); *Camplisson*, 809 F. Supp. 3d at 1104; *R.C. v. Sussex Publishers, LLC*, No. 24-cv-2609, 2025 WL 948060, at *3 (N.D. Cal. Mar. 28, 2025); *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-cv-1797, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 932 (N.D. Cal. 2024) ("*Fandom*")). While *Drummer v. Costar Grp., Inc.* incorrectly relied on *Mirmalek* and *Fandom* to find Article III standing, No. 25-cv-1047, 2025 WL 3190656, at *3 (C.D. Cal. Oct. 22, 2025), the defendant's motion to certify the question of whether the "transmission to third parties of IP addresses and similar information voluntarily shared with websites" constitutes an Article III injury was granted, 2026 WL 712922 (C.D. Cal. Feb. 13, 2026), and the Ninth Circuit has agreed to take up the question on interlocutory appeal, *see* Dkt. No. 7.1, No. 26-1160 (9th Cir. Mar. 18, 2026) ("*Drummer* Appeal"). If the Court is inclined to deny SeatGeek's Rule 12(b)(1) motion, it should stay its decision pending the outcome of the *Drummer* Appeal.

[4] Similarly, the CCPA undermines that receiving "targeted" ads constitutes a concrete injury, FAC ¶ 117, an allegation that Plaintiff does not even mention in his Opposition in attempting to show an Article III harm, Opp. § IV(A). As the 2020 amendments to the CCPA, the California Privacy Rights Act, make clear: "One of the most successful business models for the internet," and "a great model for consumers and businesses alike," are "services that rely on advertising," including by sharing users' information and "using it to target them with ads" on the internet. *Proposition 24, California Privacy Rights Act of 2020,* §§ 2(c), (I) (eff. Jan. 1, 2023), https://cppa.ca.gov/regulations/pdf/prop24_text.pdf. Far from causing a concrete injury, targeted ads are a legislatively acknowledged function of how the modern internet operates. *See* Mot. at 9-10 & n.5; *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1051 (N.D. Cal. 2022) ("receiving spam or mass mail does not constitute an injury in fact").

alleged injury has a "close," "common-law analogue." *TransUnion*, 594 U.S. at 424. Here, it does not.

**2. Plaintiff Alleges No Harm Akin to a Common Law Privacy Intrusion.**

Plaintiff barely engages with the requirement that, in order to establish a privacy injury sufficient for Article III standing, he must allege *both* a reasonable expectation of privacy in the information collected *and* conduct that is highly offensive. Mot. at 14. Instead, Plaintiff string cites inapt authorities and contends they stand for the proposition the "alleged collection and identification" of users' online data satisfies Article III standing. Opp. at 4. But the common thread in nearly all the decisions Plaintiff relies on are allegations that go beyond "the routine collection" of online browsing data and "amount to a highly offensive intrusion," such as where a "defendant disregards consumers' privacy choices" while "holding itself out as respecting them," or where "intimate or sensitive" information is collected. *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021). *This case*, however, is about the "routine collection of interaction metadata from a visit to [SeatGeek's] website," in which Plaintiff "did not purchase any products, submit any forms, or provide any personal information." *Magliocca v. United Healthcare Services, Inc.*, No. 25-cv-3388, 2026 WL 878694, at *4 (E.D. Cal. Mar. 31, 2026). Such allegations simply do "not establish an injury in fact." *Dawidzik*, 2025 WL 3786963, at *5.[5]

Take *Krzyzek v. OpenX Techs., Inc.*, where plaintiffs sued data broker OpenX that operated tracking technology used by numerous websites visited by the plaintiffs, including one used to apply for health insurance. No. 25-cv-5588, 2026 WL 206855, at *1 (N.D. Cal. Jan. 27, 2026). The plaintiffs alleged OpenX tracked their browsing histories—including not just the basic identifiers pled here, but also "detailed, full-string URLS" of every page they visited—to create comprehensive profiles on plaintiffs, which OpenX sold to its advertising partners. *Id*. at *1, *6. These alleged facts more closely resembled *In re Facebook, Inc. Internet Tracking Litig.*—where Facebook "allegedly 'gained a cradle-to-grave profile'" on plaintiffs across an array of websites, *id*. at *4 (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020))—than *Popa*—where Microsoft captured the plaintiff's "non-sensitive browsing activity" on a single website that sold pet supplies, *id*. at *3 (citing *Popa*, 153 F.4th at 786-87, 791).

[5] Plaintiff also asserts that the "question of offensiveness is one for the jury," Opp. at 10, but it is well-settled that the "disclosure of a user's browsing history and personal information on a public website" is not "highly offensive" as a matter of law. *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126 (S.D. Cal. 2023). And apart from the issue of whether SeatGeek's conduct was highly offensive, to "survive a motion to dismiss" that challenges Article III standing, Plaintiff must identify "specific personal information" that "implicates a protectable privacy interest," *Khamooshi I*, 786 F.Supp.3d at 1179, which Plaintiff does not and cannot do, *see Tash*, 2026 WL 1012680, at *4 ("Without describing the type of information contained in Hahn's search parameters or how it was 'embarrassing, invasive, or otherwise private,' this allegation does not confer standing.") (quoting *Popa*, 153 F.4th at 791).

*Krzyzek* or *In re Facebook* might be relevant if Plaintiff had sued a technology provider like OpenX or Facebook who captured users' browsing histories across the web, including sensitive personal information. However, this suit, much like *Popa*, concerns the conduct of *one* website operator, SeatGeek, and involves only "non-sensitive" record information that Plaintiff generated when he viewed a "single" website, SeatGeek's Website. *Id.* at *3. As the court in *Dawidzik v. Tesla, Inc.* aptly put it, "Plaintiff argues his allegations are 'more analogous' to those in *In re Facebook*," but "that is simply not so." No. 25-cv-1982, 2025 WL 3786963, at *4 (C.D. Cal. Dec. 29, 2025). Here, in contrast to *In re Facebook*, SeatGeek allegedly embedded "three tracking pixels that caused the user's browser to transmit certain data to third-party servers," and SeatGeek caused this data transmission "only when the user visited [SeatGeek's] website." *Id.* Thus, many of Plaintiff's authorities are inapposite because "like *In re Facebook*," they involved claims where the "consumer profiles at issue" were "created by the [d]efendant" technology company, not by the website operators who were non-parties to the suit. *Garcia v. Blackhawk Network, Inc.*, No. 25-cv-7550, 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026).[6]

Other of Plaintiff's cited authorities are inapposite because they involve much more offensive conduct: allegations that plaintiffs were defrauded, and their private information shared, despite representations that it would not be. In *In re Facebook*, Facebook tracked users "after they logged off" the social media platform "no matter how sensitive" users' browsing histories were, even though Facebook "affirmatively stated that logged-out user data would not be collected." 956 F.3d at 599-603. Similarly, in *Shah v. MyFitnessPal, Inc.*, plaintiffs alleged that the defendant "outright lie[d]" to them when it represented that it would not use advertising technology from third parties to track them after plaintiffs expressly "opted out" of such tracking. No. 25-cv-4430, 2026 WL 216334, at *1 (N.D. Cal. Jan. 27, 2026). Because the defendant's website "told them that their individual information would not be shared" yet shared it anyway (including information "related to personal topics" about health), this "misrepresentation" sufficed as an Article III injury. *Id.* at *1, *3; *see Dawidzik*, 2025

---

[6] *See* Opp. at 4-7 (citing, *e.g.*, *McClung v. AddShopper, Inc.*, No. 23-cv-1996, 2024 WL 189006, at *2 (N.D. Cal. Jan. 17, 2024) (AddShopper "orchestrated [a] scheme" of "[m]isappropriating [plaintiff's] browsing activity" across "thousands of online retailers" to "barrage" plaintiffs with unwanted emails); *Gilligan v. Experian Data Corp.*, No. 25-cv-2873, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (defendant tracked browsing activity "across the internet" for "profile-building practices."); *Tsering v. Meta Platforms, Inc.*, No. 25-cv-1611, 2026 WL 89320, at *2-3 (N.D. Cal. Jan. 12, 2026) (Meta's software was used by "tens of thousands" of apps to create "user profiles" on "hundreds of millions" of users, and so the "scope of the alleged data collection" was "materially more invasive" than in *Popa*.); *Selby v. Sovrn Holdings, Inc.*, No. 25-cv-3139, 2025 WL 2950164, at *3 & n.3 (N.D. Cal. Oct. 17, 2025) (similar, and not addressing Article III standing)). In addressing statutory—*not* Article III—standing, *Riganian v. LiveRamp Holdings, Inc.* held the technology-provider defendant injured plaintiffs through its "comprehensive aggregation" of their "internet activity," including their "personal interests, searches, and habits on third-party websites." 791 F. Supp. 3d 1075, 1087 (N.D. Cal. 2025).

WL 3786963, at *3 n.2, *5 (distinguishing several of Plaintiff's cited cases, *e.g.*, *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-3647, 2025 WL 3268404, at *4-5 (N.D. Cal. Nov. 24, 2025), because they involved websites that shared far more than users' record identifiers and misled users about the data they tracked).[7]

By comparison, all Plaintiff alleges here is routine commercial behavior that gives rise to none of the "increased privacy implications" present in the cases he relies on. *E.g.*, *Rodriguez v. Brushfire Recs.*, No. 25-cv-9797, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (distinguishing cases involving deceit or where a defendant shared users' sensitive online data). Such allegations do not rise anywhere near "to the same level of intrusion the Ninth Circuit faced in *In re Facebook*," and because this case implicates only nonsensitive categories of information "similar to those rejected in *Popa*," Plaintiff's allegations "do not meet the mark." *Dawidzik*, 2025 WL 3786963, at *4, *5. Plaintiff tries to discount *Popa* because it involved "a user's interactions *with a single website*," and because "personal information was not captured," Opp. at 5-6 (emphasis in original), but this precisely describes SeatGeek's alleged conduct in the FAC.[8] "At best," SeatGeek's alleged conduct is the "functional equivalent" of monitoring Plaintiff's activity within a "digital space." *Dawidzik*, 2025 WL 3786963, at *5. "Without more," the use of "tracking pixels" to track "record information" does "not . . . establish an expectation of privacy," nor is the disclosure of this "basic" information "highly offensive." *Id.*

**B. Vague Allegations of Unjust Enrichment Do Not Confer Standing.**

Separately, Plaintiff argues he has standing because SeatGeek was unjustly enriched through conduct that may have allowed Plaintiff to be served with targeted advertisements. As the Motion explained, even if Plaintiff could plausibly allege that SeatGeek was enriched (he cannot), such "enrichment" was not "unjust." *Khamooshi I*, 786 F. Supp. 3d at 1183. Plaintiff's "unjust enrichment" theory thus fails for at least three reasons:

---

[7] The Opposition also cites cases involving arguably "intimate or sensitive" information. *Saleh*, 562 F. Supp. 3d at 525. In *Katz-Lacabe*, a technology company aggregated and sold plaintiffs' browsing histories on numerous websites, including their "sensitive health" data. 668 F. Supp. 3d at 935-36, 939-41. *St. Aubin v. Carbon Health Techs., Inc.* was a non-Article III case involving the disclosure of "personal health information" to Facebook, despite defendant's "representations that sensitive information would not be disclosed" to third parties. No. 24-cv-667, 2024 WL 4369675, at *12 (N.D. Cal. Oct. 1, 2024). *Hayden v. Retail Equation, Inc.* involved a "massive data mining effort" that yielded consumers' "transaction information," including their "purchase, return, and exchange history" along with any "identification information" contained in the consumer's "driver's license, government-issued ID card, or passport." No. 20-cv-1203, 2022 WL 2254461, at *6 (C.D. Cal. May 4, 2022).

[8] SeatGeek does not assert that *Popa* "set out a new rule of law" for Article III standing. Opp. at 5. *Popa* clarified and applied existing standing law, correctly applying *TransUnion*'s principles to the privacy context and, in doing so, overruled *In re Facebook* to the extent it could be read as suggesting Article III is met whenever a privacy statute is violated. Plaintiff's attempt to construe *Popa* as a ringing endorsement of *In re Facebook* is simply wrong. Indeed, *Popa* explained that *In re Facebook* predated *TransUnion*, and "the question of concreteness under *TransUnion* was not clearly presented in that case." *Popa*, 153 F.4th at 792. In deciding *Popa*, the Ninth Circuit distinguished *In re Facebook* on the specific facts of that case, *id.* at 794, which are markedly distinct from the facts alleged here.

First, Plaintiff cannot dispute he alleges only bare conclusions that SeatGeek was "unjustly enriched." Mot. at 10; FAC ¶¶ 65, 116, 119, 147. In response, Plaintiff claims SeatGeek "derived a profit" by enabling third parties to sell his information to advertisers. Opp. at 8. This is no less conclusory than the FAC. And the "scarcity of facts" purporting to allege how SeatGeek's "profits were unjustly earned," *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1191 (N.D. Cal. 2020), is only further undermined by the unexplained assertion that *SeatGeek* somehow "derived a profit" from *third parties* allegedly collecting and selling Plaintiff's information, Opp. at 8.

Second, Plaintiff cannot show any supposed enrichment was "unjust" because he "fail[s] to adequately allege [the] collection" of information "in which [he] had a legally protected privacy interest and, consequently, fail[s] to allege any profit earned therefrom was unjust." *In re USA Today*, 2026 WL 932655, at *3. Plaintiff responds by focusing on just one of SeatGeek's cited cases, *Khamooshi v. Politico LLC*, No. 24-cv-7836, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ("*Khamooshi II*"), and faulting its reasoning for purportedly failing to consider two things that Plaintiff believes to be "unjust": that the defendant (1) allegedly violated CIPA; and (2) disclosed other data besides IP addresses that third parties allegedly used to build a "profile" on Plaintiff. Opp. at 9. *TransUnion* disposes of the first claim, *supra*, Section II(A)(1), and, Plaintiff misreads *Khamooshi II*. *Khamooshi I* explained that, to be "unjust," plaintiff must allege information in which he has a "legally protected privacy interest," 786 F. Supp. 3d at 1183, and *Khamooshi II* acknowledged Plaintiff had not so alleged, even after adding that his IP addresses "as well as browsing activity, geolocation information, device type, browser type, and 'device fingerprints'" were shared. 2025 WL 1408896, at *2, *4. Plaintiff simply has "no legally protected privacy interest" in any of the collected information, even if it is used to "profile" users and "facilitate targeted advertising," and so he alleges no unjust enrichment. *E.g.*, *Dawidzik*, 2025 WL 3786963, at *1, *5.

Third, Plaintiff ignores that there can be no unjust enrichment unless SeatGeek gained a "benefit" conferred "through mistake, fraud, coercion or request."[9] *Id.* (citing, *e.g.*, *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (enrichment was "unjust" because it was obtained through "false" labeling)). Here, Plaintiff identifies no "actionable misrepresentation or omission," as he must. *Hammerling v. Google LLC*,

[9] Plaintiff's reliance on cases involving deceit or other inapposite facts to show unjust enrichment do not help him. *See* Opp. at 8-9. In *Pemberton*, defendants "misrepresent[ed] that users could opt out" of tracking but still collected users' interactions as they "browsed the site in reliance on that misrepresentation . . . ." 2025 WL 3268404, at *8. *Shah v. Politico LLC* denied plaintiff's unjust enrichment claim, No. 25-cv-5213, 2026 WL 323269, at *9 (N.D. Cal. Feb. 6, 2026), and the allegations in that case were nearly "identical" to the *Pemberton* allegations examined above, *id.* at *1 n.1. Finally, though the court in *Riganian* found unjust enrichment plausibly pled, it did so because, unlike here, the defendant there was the technology provider who "create[d] [the] 'surveillance ecosystem' at the heart of its revenue generation . . . ." 791 F. Supp. 3d at 1095.

615 F. Supp. 3d 1069, 1096 (N.D. Cal. 2022).

## III. THE OPPOSITION CONFIRMS THAT PLAINTIFF FAILS TO STATE A CLAIM

### A. Plaintiff's Bare Allegations Fail to Satisfy Rule 8.

#### 1. Plaintiff's Sparse Allegations About His Visit to the Website Fail Under Rule 8.

SeatGeek showed that Plaintiff did not "plead facts to sustain any of h[is] claims," *Doe v. Amgen, Inc.*, No. 23-cv-7448, 2024 WL 575248, at *3 (C.D. Cal. Jan. 29, 2024), which all rely on conclusory allegations that SeatGeek shared his "personal information" when he "viewed" the Website during the "class period," FAC ¶¶ 3, 107, 113. Plaintiff contends these allegations are sufficient because they "lay out the elements" of his claims, and requiring more "details" of his Website visit runs afoul of the definition of a pen register as a device that records "routing, addressing, or signaling information" but "not the contents" of any communication. Opp. at 12. But Plaintiff's argument ignores that his claims for privacy intrusions and CDAFA violations require "highly offensive" conduct or "damage or loss," *infra*, Sections III(B), (D), and, thus, require more than alleging that Plaintiff "viewed" the Website, Mot. § V(B). On top of this, Plaintiff must allege a "concrete injury for purposes of Article III," which demands "factual detail" to "allege an actual privacy injury." *Cody v. E. Gluck Corp.*, No. 23-cv-2286, 2024 WL 4314187, at *2 n.2 (N.D. Cal. Sept. 26, 2024). The FAC should thus be dismissed under Rule 8 because Plaintiff's "sparing references to the nature of his communications" with the Website "lack the requisite specificity" to show a viable claim against SeatGeek. *Jones*, 751 F. Supp. 3d at 1043.[10]

#### 2. Rule 8 Requires Plaintiff to Plead the Relevant Dates of Alleged Conduct.

Although the Motion explained that Rule 8 requires Plaintiff to "allege approximately when the actionable misconduct occurred," *Brodsky*, 445 F. Supp. 3d at 135 (collecting cases), he contends his allegation that he visited the Website within the "class period" suffices. Opp. at 13. Not so. SeatGeek is not asking the Court to decide that Plaintiff's claims are untimely and agrees that the "statute of limitations is an affirmative defense," that he is not required to plead around. Opp. at 12. However, "the issue" with the FAC "is not a statute of limitations problem, but a Rule 8 problem," and Plaintiff's "repeated failure to plead the approximate date of alleged misconduct" fails to satisfy Rule 8. *Brodsky*, 445 F. Supp. 3d at 135. Thus, Plaintiff's reliance on cases

[10] *See, e.g.*, *Magliocca*, 2026 WL 878694, at *4 (dismissing CIPA, CDAFA, and other privacy claims and holding Plaintiff alleged no injury because, *inter alia*, the "factual allegations as to plaintiff herself are notably scant, with only two sentences devoted to . . . [her] visit to [defendant's] website, in which she did not purchase any products, submit any forms, or provide any personal information"). Even Plaintiff's statutory standing under CIPA is in question in the absence of further facts because that claim "relies on Penal Code § 637.2, which confers a right of action only on persons 'injured by' a CIPA violation." *Rodriguez v. IMDB.com, Inc.*, No. 24STCV14922, 2026 WL 886927, at *3 (Super. Ct. Mar. 24, 2026) (quoting Cal. Penal Code § 637.2(a)).

denying motions to dismiss time-barred claims is misplaced. Opp. at 13 (citing, *e.g.*, *MyFitnessPal*, 2026 WL 216334, at *4).[11] Equally unpersuasive is the argument that Plaintiff's reference to "class period" suffices under Rule 8 because the term is understood to mean the period defined by the "statute of limitations." *Id*. Plaintiff cites no authority to support this suspect assertion. *Cf. Brodsky*, 445 F. Supp. 3d at 118 ("class period" defined by when defendant began its allegedly unlawful practices). Regardless, Plaintiff's definition is tautological and inconsistent with Rule 8. *Id.* at 134-137.

**B. Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion Claims Fail.**

Plaintiff agrees that he cannot allege a privacy claim under the California Constitution or the common law unless "there exists a reasonable expectation of privacy" in the data collected, and "the intrusion was highly offensive." Opp. at 13. The FAC fails on both fronts: (1) the only data captured was Plaintiff's "record information" in which he has no "expectation of privacy," *In re Zynga*, 750 F.3d at 1108-09; and (2) the alleged disclosure of this information is "routine commercial behavior" which, as a matter of law," does not show a "highly offensive" privacy intrusion, *e.g.*, *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011).

Plaintiff defends his privacy claims with the same tactic used in his Article III arguments: he ignores SeatGeek's controlling authorities and relies on cases involving far more nefarious conduct. *See* Opp. at 13-16 (citing, *e.g.*, *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal. 2022) (Google sold plaintiffs' "web-browsing information," including information "relating to race, religion, sexual orientation, and health," and "'represented to the plaintiffs that their information would not be [sold] but then proceeded to [sell] it'") (quoting *In re Facebook*, 956 F.3d at 603)). *In re Facebook* does not help Plaintiff for the same reason. It involved misrepresentations to plaintiffs and the collection of sensitive data across a broad range of websites. 956 F.3d at 600-03. This case involves neither. *See supra*, Section III(A)(1).[12]

At any rate, SeatGeek's alleged conduct was not "highly offensive." *E.g.*, *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1061-64, 1067 (C.D. Cal. 2024) (dismissing privacy claims where defendant disclosed to

[11] Plaintiff claims it does not matter whether he alleged when he visited the Website because the statute of limitations for his claims are equitably tolled, Opp. at 13, but equitable tolling is not germane to the Rule 8 analysis. *Brodsky*, 445 F. Supp. 3d at 135-137 (considering equitable tolling for plaintiffs with facially time-barred claims, but not for plaintiffs with claims defective under Rule 8). And Plaintiff alleges none of the elements of equitable tolling, including "the time and manner of discovery" and "the inability to have made earlier discovery despite reasonable diligence." *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023).

[12] Plaintiff also contends the CCPA "recognizes a reasonable expectation of privacy in IP addresses and the other information SeatGeek gathered," but the CCPA says no such thing. Opp. at 14. The CCPA "lists identifiers that may be considered 'personal information'" within the meaning of the statute, including "identifiers that are not inherently private like names and IP addresses," but it does not transform those identifiers into "sensitive" information giving rise to an expectation of privacy. *Khamooshi I*, 786 F. Supp. 3d at 1180 n.4 (citation omitted).

Meta the plaintiffs' browsing interactions, including their "medical searches and inquiries," to target them with ads). Attempting to sidestep this requirement, Plaintiff argues that this issue cannot be resolved on the pleadings, but that is patently false. As shown in the Motion, courts consistently dismiss these claims under Rule 12(b)(6).[13]

### C. Plaintiff's Pen Register Claim Under CIPA § 638.51 Fails.

#### 1. Section 638.51 Applies to Tracking Technology for Telephones, Not Websites.

CIPA's pen register statute applies only to technology used on a "telephone," as shown by its text and structure. Mot. at 18-19 (explaining Section 638.51 prohibits using a pen register "without first obtaining a court order pursuant to Section 638.52," and Section 638.52 "adopted the same authorization provision" in its federal counterpart previously interpreted as applying only to "telephone number-tracing technology"). This interpretation is reinforced by the statute's legislative history in AB 929, which unequivocally states that the "intent behind [AB 929] was to govern installation of pen registers . . . on telephones," not the internet. *Scharon v. Paramount Global*, No. 25STCV10585, 2025 WL 2996812, at *2 (Super. Ct. Oct. 3, 2025). Plaintiff tries to undermine SeatGeek's commonsense interpretation by, *inter alia*, invoking the supposed "majority position" of this District and fixating on the definition of a pen register at the expense of the statute's structure and stated legislative intent. These arguments fail.

First, Plaintiff urges this Court to endorse his reading of Section 638.51 because a few other courts have done so, starting with *Greenley*, 684 F. Supp. 3d 1024—the first decision on Section 638.51 and one that has become foundational to virtually all the decisions Plaintiff relies on. But *Greenley* dealt with "software installed in a <u>telephone</u>," and thus provides no support for applying the technology more broadly. *Scharon*, 2025 WL 2996812, at *2 (emphasis added). *Greenley* also focused on the "expansive" definition of a pen register under Section 638.50, 684 F. Supp. 3d at 1050, but it was not apprised of the overall framework of CIPA's pen register statute or its origin in AB 929, which concern only telephone surveillance.[14] Plaintiff replicates the same flaw

[13] The "California Constitution and the common law set a high bar," *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024). Thus, barring allegations that the defendant deceived users or tracked users' sensitive data *en masse*, courts have routinely dismissed privacy claims on motions to dismiss. *Compare* Mot. at 14-15 (collecting cases dismissing privacy claims on a motion to dismiss) *and In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 973, 988 (N.D. Cal. 2014) (privacy claims dismissed because disclosure of personal identifying browsing habits, search queries, demographic data, and more was not highly offensive, even when "contrary to Google's own policies")) *with* Opp. at 15-16 (citing, *e.g.*, *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) (defendant's conduct held "highly offensive" because "even if consumers believed they had opted out of Vizio's data tracking, Vizio was still collecting their data"); *Greenley v. Kochava*, 684 F. Supp. 3d 1024, 1047 (S.D. Cal. 2023) (same where technology-provider defendant harvested users' data revealing "religious affiliation, sexual orientation, and medical condition" on numerous apps)).

[14] Numerous decisions Plaintiff relies on have reproduced *Greenley*'s flaws, yielding precisely the sort of snowball-effect reasoning—where multiple "non-binding district court decisions" interpret a statute identically

in *Greenley* and the cases that follow it by focusing solely on CIPA's definition of a "pen register"—a device that records "'information' relating to 'a wire or electronic communication'"—which SeatGeek agrees does not explicitly state any limitation to telephones. Opp. at 16 (quoting Cal. Penal Code § 638.50(b)). But as did *Greenley*, Plaintiff errs in treating Section 638.50 as the only factor in deciding whether Section 638.51 applies, even going so far as to claim that Section 638.50 *precludes* this Court from considering the "legislative intentions" behind the enactment of the statute. *Id*. He is wrong. "In interpreting a state statute," federal courts "must follow the state's rules" of statutory interpretation. *Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 983 (9th Cir. 2022). California courts "consider the ordinary meaning of the language in question ***as well as*** the text of related provisions, terms used in other parts of the statute, and the structure of the statutory scheme." *Larkin v. Workers' Comp. Appeals Bd.*, 62 Cal. 4th 152, 160 (2015) (emphasis added). In other words, California rejects the very approach Plaintiff advances—considering Section 638.50 in a vacuum.

Courts applying the proper framework show why Section 638.51 does not apply to web-based scripts, regardless of Section 638.50's supposedly broad definitions. For instance, *Orkin* observed that "even at the first stage of statutory interpretation," courts "must consider 'cross-referenced' provisions and the overall 'structure of the statutory scheme.'" 2025 WL 4332757, at *3 (*Larkin*, 62 Cal.4th at 160). There, plaintiff advanced "the theory that the[ ] broad definitions" in Section 638.50 "encompass the software" on a website. Although the court "might agree" with plaintiff "were section 638.50 the only statutory language," it recognized that Section 638.51 prohibits using pen registers "except as enumerated [under] section[ ] 638.52"; and under *that* provision, authorization to use a pen register requires the device to be "attached" to a "telephone line," a requirement that is impossible to satisfy in the internet context. *Id*. at *4. "The use of 'telephone line' in this cross-referenced provision sharply narrows the scope of the definition of 'pen register'" under Section 638.50 to "devices attached to a telephone[.]" *Id*.; *see also, e.g.*, *Scharon*, 2025 WL 2996812, at *1 (Section 638.52 "strongly suggests that section 638.51 applies to telephone lines, not websites, because websites do not have lines, physical locations, or numbers."); *Schallert v. Palo Alto Networks, Inc.*, No. 25STCV17109, 2026 WL 754028, at *2 (Super. Ct.

---

by "citing each other for support"—the Ninth Circuit has cautioned against. *CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 809 n.8 (9th Cir. 2022). Oftentimes, courts deny motions to dismiss by simply citing to *Greenley* and its progeny in one-paragraph orders. *See, e.g.*, *Echeverria-Corzan v. Fox Corp.*, No. 25-cv-4253, 2025 WL 3128194, at *1 (N.D. Cal. Nov. 7, 2025) (summarily denying motion to dismiss: "Given the similarities between this case and . . . *Mirmalek*[ ], [ ] *Fandom*[ ], [ ] and *Greenley*[ ]," plaintiff "plausibly states a claim" under CIPA § 638.51). *Mirmalek*, *Fandom*, and numerous other cases rely on *Greenley* and have compounded that case's analytical error. *See, e.g.*, *Mirmalek*, 2024 WL 5102709, *4 (emphasizing the "expansive language" in Section 638.50); *Fandom*, 754 F. Supp. 3d at 933 (same); *Riganian*, 2025 WL 2021802, at *11 (same).

Mar. 6, 2026) (because an order to use a pen register under "section 638.52 requires the "'number [and] physical location of the telephone line'" to which the "'device is to be attached,'" this provision "limit[s] the scope" of a pen register "to telephone lines") (quoting Cal. Penal Code § 638.52(d)).[15]

At a minimum, this cross-referenced provision renders CIPA Section 638.51 ambiguous, and so, contrary to Plaintiff's insistence otherwise, Opp. at 16, this Court "must consider legislative history" when deciding this issue. *Orkin*, 2025 WL 4332757, at *4. "Critically, the legislative history makes clear" that the purpose of AB 929 was "to allow law enforcement officers to use" pen registers and trap and trace devices to monitor "telephonic" communications. *Id.*; *see, e.g.*, *Scharon*, 2025 WL 2996812, at *2 ("The legislative history further supports the conclusion that section 638.51 only applies to telephone communications."); *see also* Mot. at 18 & n.13. Plaintiff addresses <u>none</u> of these legislative materials, which all "limit the scope" of Section 638.51 "to telephone lines." *Palo Alto*, 2026 WL 754028, at *2.

As a fallback measure, Plaintiff urges the Court to extend Section 638.51 to "new technologies" because of the California Legislature's intent to protect Californians' privacy interests when it enacted other sections of CIPA in 1967. Opp. at 16 (citation omitted). But that principle applies only for "technologies that did not exist" when the statute was enacted, *Apple Inc. v. Super. Ct.*, 56 Cal. 4th 126, 137 (2013), and Section 638.51 was enacted in 2015, "well after websites, and the tracking of information on websites, were common," *Orkin*, 2025 WL 4332757, at *4. Further, even Plaintiff's own authorities observe that the California Supreme Court "reads statutes to apply to new technologies," but only "*where such a reading would not conflict with the statutory scheme*." *Fandom*, 754 F. Supp. 3d at 930 (emphasis added). But applying Section 638.51 to online conduct is irreconcilable with the "telephone" requirements of Section 638.52, and, if CIPA applied as Plaintiff proposes, it would mean "the Legislature *sub silentio* intended to establish a regulatory regime over web tracking through . . . sections 638.50 and 638.51." *Orkin*, 2025 WL 4332757, at *6. "When the Legislature wants to address privacy concerns in connection with web usage, it can do so and has done so expressly," such as through "California's Consumer Privacy Act" *id.*, which comprehensively regulates and permits SeatGeek's alleged tracking of its users *without* prior consent, *see* Mot. at 17.

15 The cases Plaintiff cites fail to address how his unmoored expansion of pen registers can be harmonized with other sections of CIPA that *must* apply only to telephones to make sense. *See* Mot. at 17-18. Although *Fandom* reasoned that Section 638.52 "merely lists requirements relating to a particular type of pen register . . . installed on a telephone line," 754 F. Supp. 3d at 930, its conclusion makes no sense. By its terms, Section 638.52 applies categorically to all orders authorizing pen registers, and *Fandom* failed to consider that construing pen registers to encompass non-telephonic devices renders compliance with that statute impossible, but the "law never requires impossibilities." Cal. Civ. Code § 3531.

Second, Plaintiff argues that the CCPA "does not enable companies to collect and disclose Californians' data" to third parties "without notice and consent," Opp. at 19, and he contends the CCPA is irrelevant since it does not "preempt" CIPA, *id*. Plaintiff is wrong that the CCPA requires users' prior consent here, and SeatGeek never argued that the CCPA preempts anything; rather, it showed that CIPA must be construed to avoid any conflict with the CCPA, which Plaintiff's reading of CIPA fails to do. *See* Mot. at 20 & n.14. The CCPA permits websites to "share"—including, as was allegedly done here through the trackers, by "disclosing" or "making available"—users' online personal information to third parties for "cross-context behavioral advertising" (*i.e.*, "targeting" users with ads), Cal. Civ. Code § 1798.140, so long as websites give "notice" of the website's tracking practices and provide users the ability to opt out of such tracking, *id*. §§ 1798.100(a), 1798.120. The statute does not distinguish between the collection of data directly by "the business itself" versus by "a third party," as Plaintiff concludes without support. Opp. at 19. If Plaintiff were correct, CIPA would *displace* the CCPA's opt-out notice regime with a sweeping opt-in consent regime that imposes criminal fines and substantial civil damages for non-compliance. Cal. Penal Code §§ 637.2, 638.51(c).[16]

Should any doubt remain, the rule of lenity forecloses Plaintiff's expansion of Section 638.51, which requires courts to avoid reading CIPA "too broadly" where, as here, its provisions do not "speak clearly" about whether "a defendant's online conduct fits within the language of the statute." *Doe*, 806 F. Supp. 3d at 1112, 118-19. Though Judge Chhabria's analysis in *Doe* is on point, Plaintiff seeks to distinguish the case because it ruled on a different CIPA provision and was decided on summary judgment. The distinctions are irrelevant. *Doe* makes clear that its reasoning applies whenever a court is called upon to interpret "any portion" of CIPA, no matter the posture of the case. *Id*. at 1118. Plaintiff's additional argument that the rule should not apply because Section 638.51 is not ambiguous relies on the same flawed decisions addressed above that misinterpret Section

[16] Unlike SeatGeek's interpretation, Plaintiff's conflict-ridden expansion of CIPA does precisely the opposite of what the CCPA demands courts to do: construe privacy laws like CIPA "to harmonize with" the CCPA, not nullify it. Cal. Civ. Code § 1798.175. Plaintiff relies on *Mirmalek*, which held that applying Section 638.51 online is consistent with the CCPA. 2024 WL 5102709, at *5. But *Mirmalek* relied on the CCPA's tiebreaker section, which says the law most protective of privacy controls in the event of a conflict between the CCPA and another statute. Cal. Civ. Code § 1798.175. *Mirmalek* ignores the first step under that section, which is that "law relating to consumers' personal information should be construed to harmonize with" the CCPA. *Id*. Moreover, contrary to Plaintiff's suggestion otherwise, Opp. at 20-21, SB 690 does not seek to *change* Section 638.51 so that it no longer applies to the internet; rather, the bill would simply "specify"—*i.e.*, *clarify*—what is already true: that AB 929 "was not intended to apply to online activity[.]" RJN, Ex. 8 at 10, Ex. 9 at 7. It thus matters not whether SB 690 ultimately becomes law or not. If SB 690 does pass, however, it will apply retroactively because it (1) "merely clarifies, rather than changes, existing law," *Goldstein v. Super. Ct.*, 93 Cal. App. 5th 736, 748 (2023), or, (2) alternatively, if the amendment is construed as a change instead of a clarification, it would be an ameliorative change to a criminal law, so an "inference of retroactivity should apply." *People v. Super. Ct. (Lara)*, 4 Cal. 5th 299, 308 (2018). The removal of the previous "retroactivity" language is irrelevant.

638.51 in a vacuum. Moreover, there is no consensus amongst trial courts, as Plaintiff claims, which is why the California Court of Appeal has decided to take up the issue in the *Variety* Appeal, which will soon decide the applicability of Section 638.51 to online conduct. RJN, Exs. 16, 17. As the petitioner in the *Variety* Appeal observed, "courts in California have fractured" on this issue, "leaving an intractable split" that the California Court of Appeal will resolve. RJN, Ex. 16 at 14. "Courts are issuing conflicting rulings" on Section 638.51, and it is difficult to imagine a clearer candidate for application of the rule of lenity. *Doe*, 806 F. Supp. 3d at 1118.

At bottom, the framework for CIPA's pen register statute and its uniform legislative history establish that § 638.51 does not apply to web-based technology. And even assuming Plaintiff's boundless interpretation carried some plausibility, lenity requires the Court to adopt the narrower view in SeatGeek's favor. *Id.* Should the Court have any doubt about whether to dismiss the FAC, it should hold the Motion in abeyance until the California Court of Appeal issues a decision in the *Variety* Appeal and rules on whether CIPA § 638.51 applies to tracking technology implemented by virtually all commercial websites. RJN, Exs. 15-18.

**2. Section 638.51 Does Not Bar a Website's Collection of Visitors' Information.**

Plaintiff has no real response to SeatGeek's argument that it is exempt from liability because the data that the Website allegedly collects is "not . . . anything above and beyond how the internet normally works." *Casillas v. BOP LLC*, No. 24STCV15581, 2025 WL 2161288, at *2 (Super. Ct. June 18, 2025). Plaintiff refutes at great length a statutory exemption to liability for "service providers" in Section 638.51(b)(4), Opp. at 22, which SeatGeek never raised, *see Wilcox v. Comm'r*, 848 F.2d 1007, 1008 (9th Cir. 1988) ("Arguments not addressed in a brief are deemed abandoned."). Rather, SeatGeek argued for the commonsense exemption that derives from the very nature of how the internet works. Under Plaintiff's impermissible reading of Section 638.51, "every website interaction that identifies electronic information about the user" would be prohibited. *Rodriguez v. Sparc Grp., LLC*, No. 24STCV26946, 2025 WL 2993671, at *3 (Super. Ct. Jul. 9, 2025).[17]

[17] Plaintiff maintains that this action is different from SeatGeek's cited authorities because, here, the alleged tracking occurred through third-party technology that shared Plaintiff's data with third parties. Opp. at 23. But SeatGeek's authorities dealt with third-party trackers that "subsequently shared" the tracked data with third parties. *See, e.g.*, *Casillas*, 2025 WL 2161288, at *1. The more fundamental point, though, is that there is nothing in the text of Section 638.51 that requires the user of a pen register to share the information it records with third parties in order for the statute to be violated, nor does the text of the statute limit only third-party tracking technology and not, for instance, a "first-party cookie" developed by the website a user is visiting. *Gershzon v. Meta Platforms, Inc.*, No. 23-cv-083, 2023 WL 5420234, at *2 (N.D. Cal. Aug. 22, 2023).

### D. Plaintiff's Claim Under the CDAFA Fails.

#### 1. Plaintiff Alleges No "Damage or Loss" Under the CDAFA.

SeatGeek demonstrated—and Plaintiff agrees—that he must allege "compensatory damages" to show statutory standing under the CDAFA. Mot. at 23; Opp. at 24. Specifically, the CDAFA "contemplates some damage to the computer system, network, program, or data contained on that computer"; it does *not* extend to an "economic injury" because the defendant allegedly "misappropriated data." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023) (citing Cal. Penal Code § 502(e)(1)). But this is exactly the supposed "damage or loss" Plaintiff proposes here: that SeatGeek was "unjustly enriched" and somehow "profited" by unlawfully taking and exploiting Plaintiff's data. Opp. at 24. Further, the CDAFA permits "only the recovery of compensatory damages," not the "unjust enrichment" Plaintiff tries to shoehorn into the statute. *Oracle Corp. v. SAP AG*, 734 F. Supp. 2d 956, 969 (N.D. Cal. 2010). Put another way, a "damage or loss" under the CDAFA must be "[c]ompensatory," Cal. Penal Code § 502(e)(1); *accord* Opp. at 24, and "disgorgement" of the alleged "profit Defendant made"—relief that is *equitable* in nature, not compensatory—is not a "damage or loss" suffered by a plaintiff. *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025).[18]

Finally, Plaintiff claims that he is not required to "articulate how SeatGeek profited" off his data, and SeatGeek's argument to the contrary is an attempt to unfairly impose the heightened pleadings requirements of Rule 9 on the FAC. Opp. at 24. But asking Plaintiff to plead the *facts* that support his conclusion that "SeatGeek profited" is a basic precept under the federal plausibility standard, which requires "factual allegations," not "legal conclusions" masquerading as facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even *In re Meta Healthcare Pixel Litig.*, cited by Plaintiff to support his CDAFA claim, observed that to show statutory standing under the CDAFA, a plaintiff must "plead *facts*" articulating the "damage or loss" the plaintiff suffered. 713 F. Supp. 3d 650, 655 (N.D. Cal. 2024) (emphasis added). And critically, that case actually *rejected* allegations that "Meta

[18] Plaintiff relies only on *Smith v. Rack Room Shoes, Inc.* to argue that a "disgorgement" of SeatGeek's "profits" that it allegedly earned suffices for statutory standing under the CDAFA. No. 24-cv-6709, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025). *Smith* goes against the weight of authority, which expressly rejects "unjust enrichment" as a qualifying loss under the CDAFA. *E.g.*, *Cap. One*, 768 F. Supp. 3d at 1048. *Smith* also dealt with "search queries" and purchase and browsing histories, 2025 WL 2210002, at *1, while all that was tracked here is "record information" in which Plaintiff has no reasonable expectation of privacy, *Zynga*, 750 F.3d at 1108-09, separately precluding his theory of unjust enrichment, *see Khamooshi I*, 786 F. Supp. 3d at 1182-83; *see* Mot. at 8; *supra*, Section II(B). Further, *Smith* improperly found that *In re Facebook*'s discussion of Article III standing applied to statutory standing under the CDAFA, *Smith*, 2025 WL 2210002, at *3 but California's appellate courts have observed that, in holding plaintiffs had Article III standing based on an unjust enrichment theory, the Ninth Circuit in *In re Facebook* "did not suggest the plaintiffs suffered any corresponding loss," *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 540-41 (2022), as the CDAFA requires.

unjustly profited from the data taken" as a cognizable damage or loss under the statute. *Id.*

**2. Plaintiff Does Not Allege That SeatGeek Unlawfully Accessed His Computer.**

Plaintiff does not allege that SeatGeek circumvented technical barriers—as Plaintiff must to show an "access" of his device or data "without permission" under the CDAFA—when he voluntarily navigated to the Website on which the trackers were placed. Mot. § V(E)(2) (citing, *e.g.*, *Gutierrez v. Converse Inc.*, No. 23-cv-06547, 2023 WL 8939221, at *4 (C.D. Cal. Oct. 27, 2023) (dismissing CDAFA claim because plaintiff "fail[ed] to allege that Defendant overcame any technical or code-based barriers")). This case is simply nothing like those cited by Plaintiff where courts held that plaintiffs plausibly alleged an access "without permission" by using an "end-run" to bypass Apple's "privacy framework" used to "disable[]" tracking. *Greenley*, 684 F. Supp. 3d at 1048-49. *In re Meta Healthcare* did not even address this requirement. *See* 713 F. Supp. 3d at 656.

**E. Plaintiff Should be Denied Leave to Amend.**

Plaintiff already amended his complaint after reviewing SeatGeek's original motion to dismiss, and Plaintiff proposes no new facts that could cure the many defects in his claims. The defects in Plaintiff's FAC, including lack of standing, are incurable where, as here, it is not contested that only Plaintiff's unprotected, nonsensitive record information was tracked, and Plaintiff cannot allege otherwise without contradicting his earlier allegations. Leave to amend again should accordingly be denied. *See* Mot. § V(F).

## IV. <u>CONCLUSION</u>

SeatGeek respectfully requests the Court dismiss the FAC in its entirety and without leave to amend. Should the Court have any doubt about whether to dismiss the FAC, it should hold this Motion in abeyance until either or both the Ninth Circuit and California Court of Appeal resolve the *Drummer* Appeal and *Variety* Appeal.

Dated: April 16, 2026

GREENBERG TRAURIG, LLP

By *<u>/s/ Heather J. Silver</u>*
Heather J. Silver
Attorneys for Defendant
SeatGeek, Inc.