Heather J. Silver (SBN 285509)
Blake M. Bailus (SBN 360713)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Heather.Silver@gtlaw.com
Blake.Bailus@gtlaw.com

Attorneys for Defendant
SeatGeek, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JOSE TORRES, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SEATGEEK, INC., a Delaware corporation headquartered in New York; and DOES 1 through 25, inclusive,

Defendant.

CASE NO. 3:25-CV-07118-LB

Assigned to Hon. Laurel Beeler

**DEFENDANT SEATGEEK, INC.'S REPLY IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

[Filed concurrently with Reply in Support of Motion to Dismiss]

| | |
|---|---|
| Action Filed: | Aug. 22, 2025 |
| Date: | April 30, 2026 |
| Time: | 9:30 a.m. |
| Place: | Courtroom B, 15th Floor |

## I. INTRODUCTION

Plaintiff would have the Court bury its head in the sand and not consider Exhibits 10-14—exhibits from his own counsel's websites showing that, much like SeatGeek's conduct alleged in the FAC, three of the law firms representing Plaintiff use technology from third parties Google, TikTok, and Facebook to track users the moment they access those law firms' websites—when ruling on SeatGeek's motion to dismiss ("Motion" or "Motion to Dismiss").[1] Unable to address the glaring hypocrisy that underlies his case, Plaintiff tries to prevent the Court from considering Exhibits 10-14 altogether by advancing a twofold attack on them, arguing the exhibits (1) are irrelevant, and (2) reveal facts about his "counsel's use of web analytics" that Plaintiff disputes. Opposition to RJN ("RJN Opp.") at 3. Both arguments fail.

*First*, by showing website trackers are so prevalent on the internet that even *Plaintiff's attorneys* integrate them on their websites in the same way that SeatGeek is alleged to have done here, Exhibits 10-14 speak directly to the baselessness of Plaintiff's theory of liability under CIPA, the CDAFA, and the California Constitution and common law, under which theory *Plaintiff's own counsel* are in violation and, consequently, subject to criminal penalties and hefty civil damages.

*Second*, Plaintiff purports to dispute the facts conveyed by Exhibits 10-14—*i.e.*, the presence of technology on his counsel's websites to share users' interactions with third parties, which his counsel used *without* obtaining prior consent from users. But nowhere in his objection does Plaintiff articulate why such facts "are subject to varying interpretations," as Federal Rule of Evidence 201 requires him to show. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1000 (9th Cir. 2018).

Consideration of Exhibits 10-14 is appropriate and should be granted when ruling on the Motion.

## II. EXHIBITS 10-14 ARE SUBJECT TO JUDICIAL NOTICE.

### A. Exhibits 10-14 are Neither Irrelevant nor an Attack on Plaintiff's Counsel.

While Plaintiff contends that Exhibits 10-14 are irrelevant, it is hardly a "sideshow," as Plaintiff phrases it (RJN Opp. at 2), that <u>three</u> of the firms backing his case—Plaintiff's current and former counsel of record, Ongaro, PC ("Ongaro") and Cotchett, Pitre & McCarthy, LLP ("Cotchett") and the firm that

[1] Capitalized terms have the same meaning given to them in SeatGeek's Request for Judicial Notice ("RJN") in support of the Motion. Plaintiff does not dispute and, thus, concedes that the Court should take judicial notice of SeatGeek's other exhibits, Exhibits 1-9 and 15-18, when deciding the Motion. *See, e.g.*, *Caballero v. Doan*, No. 13-cv-5756, 2014 WL 3950899, at *2 (N.D. Cal. Aug. 11, 2014) (granting request for judicial notice because plaintiff did not oppose it).

referred his case, Don Bivens, PLLC ("Bivens")—partake in the same supposed "systematic violation of California citizens' privacy rights" that SeatGeek allegedly engaged in, FAC ¶ 1. By revealing just how ubiquitous these tracking technologies are on the internet that even the counsel representing Plaintiff use them, Exhibits 10-14 undermine the plausibility of Plaintiff's claims against SeatGeek.

Attempting to maneuver around this fact, Plaintiff identifies false or immaterial differences between the user interfaces of SeatGeek's Website and the websites of his counsel that serve only to prove SeatGeek's point. In opposing the Motion, Plaintiff incorrectly claims that, unlike SeatGeek's Website, the "three websites" shown in Exhibits 10-14 "require the user to consent to the applicable privacy policies, fully disclose in those privacy policies their collection and use of user data, and permit the user to opt-out or terminate consent." Opposition to Motion to Dismiss ("MTD Opp.") at 10 n.3. Yet the FAC admits that SeatGeek's Website discloses in its Privacy Notice the collection, use, and disclosure of users' data, FAC ¶ 107, and Plaintiff does not allege that SeatGeek's Website fails to provide users a mechanism to opt out of such practices. The fundamental point demonstrated by Exhibits 10-14, however, is that the technology on Plaintiff's counsel's websites—including the *same* TikTok and Facebook technology that SeatGeek purportedly used—track users "the moment a user lands" on those websites, and "regardless of whether the user eventually encounters" a "pop-up" banner informing users that the websites "will be installing the [t]rackers" to share their data. *Compare id*. ¶¶ 74, 106-109 *with* RJN, Exs. 10-14 (showing use of tracking technology the moment a user accesses the law firms' websites and before the user interacts with a pop-up banner, if any). Thus, if Plaintiff's legal assertions had any merit, Ongaro, Cotchett, and Bivens (and countless other online businesses) would be no less liable than SeatGeek.

Plaintiff also claims that judicial notice of Exhibits 10-14 is inappropriate because the FAC does not "incorporate or even mention" the websites of the firms representing Plaintiff. RJN Opp. at 2. But on a motion to dismiss, a court may consider not only the allegations in the complaint and incorporated materials, *but also* "matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *see also Abante Rooter & Plumbing, Inc. v. Ingenious Bus. Sols., Inc.*, No. 18-cv-6591, 2019 WL 1201621, at *2 (N.D. Cal. Mar. 14, 2019) (considering documents "not referenced in the operative complaint" because they were "appropriate for judicial notice"). And, again, Plaintiff misses the relevancy of these exhibits, which show that "Plaintiff's potential interpretation of privacy laws" is

specious because, among other reasons, it would "disrupt a large swath of internet commerce" and render not just SeatGeek, but his own counsel, violators of California's Penal Code. *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Super. Ct. Mar. 13, 2024). Indeed, the petitioner in the *Variety* Appeal—in which the California Court of Appeal is set to decide whether the online tracking technologies used by Plaintiff's counsel and (allegedly) SeatGeek are "pen registers" prohibited by CIPA—made this same observation. RJN, Ex. 16 at 22-23. These "online data collection practices are so ubiquitous that even th[e] [California] Court [of Appeals], the Respondent Superior Court, and the California State Assembly, to name just a few, engage in them," and the "website for California's current Attorney General uses one of the exact data collection protocols—the 'ADNXS Tracker'—that is the basis of Plaintiff's CIPA claim" in the *Variety* Action. *Id*.

Finally, Plaintiff portrays Exhibits 10-14 as an "attack" on his counsel, but SeatGeek has never accused these firms of wrongdoing. RJN Opp. at 1. If anything, SeatGeek does the opposite by demonstrating that the use of third-party tracking technologies on a website to collect and share users' technical identifiers does *not* violate California law. This Court should consider Exhibits 10-14 because the fact that the same technologies are used in the same manner by Plaintiff's own counsel means that the "judicially noticeable documents indicate that Plaintiff's [legal] theory . . . is implausible." *Nguyen v. Bank of Am. Nat. Ass'n*, No. 11-cv-3318, 2011 WL 5574917, at *9 (N.D. Cal. Nov. 15, 2011), *aff'd*, 563 F. App'x 558 (9th Cir. 2014); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009) (In "determining whether a complaint states a plausible claim," a court may "draw on its experience and common sense").

**B. The Facts Shown by Exhibits 10-14 are Verifiable and Not Reasonably Disputed**.

Although Plaintiff insists that he disputes the "truthfulness" of the facts contained within Exhibits 10-14, he does not actually provide reasons for disputing the truth about his counsel's online tracking practices that those exhibits reveal. RJN Opp. at 2. To be clear, SeatGeek does not seek to notice *the content* of the referenced websites; only the network calls that occur on page load and can be viewed by anyone with a web browser. These are facts that cannot be reasonably disputed and are "readily determined from sources whose accuracy cannot reasonably be questioned"—*i.e.*, his counsel's own websites. Fed. R. Evid. 201(b).

Because a website's accuracy is readily verifiable, courts regularly take judicial notice of "publicly

accessible websites" and their contents, *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 189 (N.D. Cal. 2019), including facts about a website's technical design and "source code," *BYD Co. Ltd. v. All. for Am. Mfg.*, 554 F. Supp. 3d 1, 13 (D.D.C. 2021), *aff'd*, 2022 WL 1463866 (D.C. Cir. May 10, 2022); *see also Love v. Lanai Garden Corp.*, No. 20-cv-8918, 2021 WL 3633834, at *3, *6 & n.5 (N.D. Cal. Aug. 17, 2021) (taking judicial notice of "detailed information" on "the landing page" of a website because courts "may take judicial notice of websites and their contents," and relying on such information when deciding motion to dismiss) (citing *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) ("websites and their contents may be judicially noticed")).

For example, in *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, the court took judicial notice of not just the fact that a given website existed, but of the underlying properties of a webpage not immediately visible when viewing the page, which were "facts" that the court "'accurately and readily determined'" by "right-clicking" on the webpage and 'viewing [the] "properties'" option presented on the court's web browser. No. 13-cv-4664, 2014 WL 3368893, at *2 & n.1 (N.D. Ill. July 8, 2014) (quoting Fed. R. Evid. 201(b)(2)). Similarly, the court in *BYD Co.* held, over the plaintiff's objection, that the "publicly available source code" of a webpage was "the proper subject of judicial notice." 554 F. Supp. 3d at 13. "Anyone with a web browser can view a webpage's source code," so it is "verifiable with certainty." *Id*. Plaintiff does not, and cannot, contest that "any person using a computer can view a website's HTML code because a function is built into a web browser which permits access by a choice on the menu bar," *ACTONet, Ltd. v. Allou Health & Beauty Care*, 219 F.3d 836, 847 (8th Cir. 2000), as further explained in the Silver Declaration supporting SeatGeek's RJN, *see* Silver Decl. ¶¶ 14-18.

Objecting to the Court considering the "truth of statements" shown on his counsel's websites, Plaintiff misconstrues the limited purpose for which Exhibits 10-14 were offered. RJN Opp. at 2:26; *id*. at 1-3 (citing, *e.g.*, *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, No. 17-cv-2824, 2019 WL 281370 (N.D. Cal. Jan. 22, 2019); *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025 (N.D. Cal. 2018); *Cascades Computer Innovation LLC v. RPX Corp.*, No. 12-cv-1143, 2013 WL 316023 (N.D. Cal. Jan. 24, 2013); *J.W. ex rel. J.F.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431 (9th Cir. 2010); *Patel v. Parnes*, 253 F.R.D. 531 (C.D. Cal. 2008)). SeatGeek does not maintain that a statement is true merely because it "appears on a publicly available website," *Rollins*, 338 F. Supp. 3d at 1032, such as "a definition from the Investopedia

website," *id*. at 1032 n.1, or the "content of the SEC Forms" a company filed, *Parnes*, 253 F.R.D. at 546. Nor has SeatGeek asked the Court to consider the truth of a statement or publication that Ongaro, Cotchett, and Bivens posted on their websites. *Cf. Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications," but "not whether the contents of those articles were in fact true."). Rather, SeatGeek requests judicial notice of "how [a] website functions," which "can be accurately and readily determined." *Snow v. Eventbrite, Inc.*, No. 20-cv-03698, 2020 WL 6135990, at *7 (N.D. Cal. Oct. 19, 2020); *see also Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1084 n.2 (C.D. Cal. 2001) (taking judicial notice of how "eBay's website . . . operates").

Plaintiff's grievance with Exhibits 10-14 is therefore not a genuine dispute, as he does not object on the basis of accuracy or authenticity. *See Kinnee v. TEI Biosciences Inc.*, No. 22-cv-604, 2023 WL 8191097, at *3 (S.D. Cal. Nov. 27, 2023) (granting request for judicial notice "[a]s Plaintiff does not contest the accuracy or authenticity of the reports contained within Exhibits B or C"); *Beckner v. ReconTrust Co., N.A.*, No. 12-cv-3379, 2012 WL 13013048, at *1 (C.D. Cal. Oct. 15, 2012) (taking judicial notice of exhibits in part because the plaintiff did "not otherwise dispute their authenticity").

## III. CONCLUSION

For the foregoing reasons, SeatGeek respectfully submits that Exhibits 10-14, like Exhibits 1-9 and 15-18 which Plaintiff does not oppose, are properly subject to judicial notice and, accordingly, should be considered by the Court when ruling on SeatGeek's Motion to Dismiss.

Dated: April 16, 2026

GREENBERG TRAURIG, LLP

By <u>*/s/ Heather J. Silver*</u>
Heather J. Silver
Attorneys for Defendant
SeatGeek, Inc.