UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JOSE TORRES,<br><br>   Plaintiff,<br><br>  v.<br><br>SEATGEEK, INC.,<br><br>   Defendant. | Case No. 25-cv-07118-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 30 |

**INTRODUCTION AND STATEMENT**

The plaintiff in this putative class action is suing SeatGeek, Inc. — which sells event tickets on its website — for collecting and sharing his information without his consent.[1] SeatGeek embedded trackers (TikTok Pixel, Meta Pixel, and Microsoft Bing Tracker) on its website that can collect and transmit personally identifying information, including users' IP addresses, approximate location, browsing activity, and device metadata.[2] SeatGeek monetizes user data by allowing third-party advertising companies to collect users' IP addresses and browsing patterns to use in

---

[1] First Am. Compl. (FAC) – ECF No. 25 at 3 (¶ 10). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 2–3 (¶¶ 3, 6), 8–9 (¶ 37), 14–15 (¶¶ 62, 65).

ORDER – No. 25-cv-07118-LB

targeted advertisements.[3] The third-party trackers also set a cookie that includes a unique user identifier that the trackers collect on return visits and use to identify and deanonymize the user.[4]

The plaintiff regularly visited SeatGeek's website, which installed the third-party trackers on his browser.[5] The third parties collected the plaintiff's IP address and other device-fingerprint information that allowed them to track the plaintiff across multiple visits to SeatGeek's website (and other websites) and deanonymize the plaintiff's data by synchronizing his third-party user profiles.[6] The plaintiff received "targeted advertising on his social media" after visiting SeatGeek's website.[7] SeatGeek allegedly did not present a pop-up blocker, consent checkbox, or other conspicuous notification before the trackers loaded.[8]

The plaintiff brings claims for violation of the California Computer Data Access and Fraud Act (CDAFA), Cal. Penal Code § 502 (claim one), violation of the California Invasion of Privacy Act (CIPA), *id.* § 638.51(a) (claim two), invasion of privacy in violation of Cal. Const. art. 1, § 1 (claim three), and common law invasion of privacy (claim four).[9] SeatGeek moves to dismiss, with the parties disputing whether the plaintiff has plausibly pleaded a concrete injury establishing standing or any of his claims.[10] The court dismisses the plaintiff's claims for lack of standing.

### STANDARD OF REVIEW

**1. Rule 12(b)(1)**

A complaint must contain a short and plain statement of the ground for the court's jurisdiction. Fed. R. Civ. P. 8(a)(1). The plaintiff has the burden of establishing jurisdiction. *Kokkonen v.*

---

[3] *Id.* at 3 (¶ 6).

[4] *Id.* at 2 (¶ 3), 13 (¶ 55).

[5] *Id.* at 24 (¶¶ 113–14).

[6] *Id.* (¶ 115).

[7] *Id.* at 25 (¶ 117).

[8] *Id.* at 22–23 (¶¶ 103–06).

[9] *Id.* at 27–33. The parties consented to magistrate jurisdiction. Consents – ECF Nos. 8, 11; 28 U.S.C. § 636(c)(1). The court held a hearing on May 21, 2026.

[10] The court can decide the motion without addressing SeatGeek's request for judicial notice. *See* Req. Judicial Notice – ECF No. 31.

*Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins.*, 907 F.2d 911, 912 (9th Cir. 1990).

A defendant's Rule 12(b)(1) jurisdictional attack can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014).

Under a facial attack, the court "accept[s] all allegations of fact in the complaint as true and construe[s] them in the light most favorable to the plaintiffs." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). In a factual attack, the court "need not presume the truthfulness of the plaintiff's allegations" and "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

SeatGeek asserts a facial attack on the plaintiff's standing. Standing pertains to the court's subject-matter jurisdiction and thus is properly raised in a Rule 12(b)(1) motion to dismiss. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010).

Dismissal of a complaint without leave to amend should be granted only if the jurisdictional defect cannot be cured by amendment. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

2. **Rule 12(b)(6)**

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It may fail by lacking a cognizable legal theory or sufficient facts under one. *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). The court accepts factual allegations as true and construes them in the light most favorable to plaintiffs. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir.

2018). But allegations must state a plausible claim. *Twombly*, 550 U.S. at 570. Threadbare recital of the elements of a claim, supported by mere conclusory statements, does not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**ANALYSIS**

### 1. Standing

Article III standing requires (1) a concrete and particularized injury-in-fact, (2) fairly traceable to the defendant's conduct, and (3) likely redressable by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). For an injury to be concrete, it "must be 'de facto'; that is, it must actually exist" and be "'real,' and not 'abstract.'" *Id.* at 340 (citing dictionaries). "'Concrete' is not . . . necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, . . . intangible injuries can nevertheless be concrete." *Id.* (cleaned up).

Courts must "assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). In the privacy context, the plaintiff must allege a reasonable expectation of privacy in the information collected and harm that is "similar to the highly offensive interferences or disclosures that were actionable at common law." *Id.* (cleaned up). "An exact duplicate is not required" but rather "a match only in the kind of harm and not the degree." *Id.* (cleaned up). Courts distinguish between a "routine collection of personally identifiable information" and that which involves "a highly offensive intrusion," such as when a "defendant disregards consumers' privacy choices" while "holding itself out as respecting them" or collects "intimate or sensitive information." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (cleaned up).

*Popa* involved Microsoft's collection of non-sensitive information (including IP address, browser type, and device identifiers) from a single website selling pet supplies. That data

collection did not resemble a common-law privacy tort absent allegations that the data was "embarrassing, invasive, or otherwise private." 153 F.4th at 791. *Popa* distinguished its facts from those in *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 599 (9th Cir. 2020), which involved cradle-to-grave profiles (without users' consent) assembled across numerous websites. 153 F.4th at 793–94.

Invoking *Popa*, SeatGeek contends that the plaintiff alleges only routine collection of interaction data from visiting SeatGeek's website, where he did not purchase a product or service, not harm akin to a common-law privacy intrusion that conveys Article III standing.[11] The plaintiff distinguishes *Popa* as involving tracking on one website, rather than "across the internet," contends that his statutory standing under CIPA satisfies Article III standing, advances SeatGeek's unjust enrichment as an independent ground for standing, and argues that the offensiveness of SeatGeek's conduct is not resolvable at the pleading stage.[12] On this record, there is no standing.

First, the plaintiff lacks Article III standing.

The allegations here are similar to the capture of the non-sensitive browsing activity in *Popa*. 153 F.4th at 786–87, 791. SeatGeek and the third parties allegedly collected the plaintiff's IP address and other information, which allowed them to track him across website sessions, other websites, and "across the internet," all while de-anonymizing him by synchronizing his user profiles.[13] This is browsing information that does not suggest interception of embarrassing or sensitive data or a highly offensive disclosure and thus is not harm that establishes Article III standing. *See id.* at 791; *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) (no concrete injury for disclosure of IP addresses, "browser and device data," and "other identifying information").

That said, the allegations here are more robust than those in *Popa*, which involved interactions only with a single website: the claim is that SeatGeek caused the plaintiff's identifying

---

[11] Mot. – ECF No. 30 at 17–21.

[12] Opp'n – ECF No. 32 at 12–19.

[13] FAC – ECF No. 25 at 13 (¶¶ 54, 56), 24 (¶ 115).

information to be transmitted to three separate parties (TikTok, Meta, and Microsoft), each with preexisting plaintiff profiles and each allegedly linking the transmitted data (without the plaintiff's consent or any notification) to those profiles through fingerprinting, advanced matching, and identifiers (including a Facebook ID and a constant thirteen-month Microsoft user ID cookie). The plaintiff has active TikTok and Meta accounts.[14] SeatGeek relies on the non-sensitive character of each data element, but that reliance does not account for the plaintiff's argument that his privacy is invaded by the aggregation of data matched to his existing profiles.

On balance, though, the information that was collected — IP addresses, device make/model/OS, browser type, and cookie identifiers — is record information where there is no reasonable expectation of privacy. *Popa*, 153 F.4th at 791. The plaintiff contends that he provided no private information to the website: no account, no purchase, no form submitted, no search terms.[15] What remains is the tracking of metadata generated by a visit to a public ticket-resale site. Under *Popa*, this does not resemble any traditional common-law privacy tort. The case is different than *In re Facebook*. There, Facebook acquired an "enormous amount of individualized data" through its cookies on "countless websites" that incorporate Facebook plug-ins, all without user consent. 956 F.3d at 602–03.

A review of the cases involving privacy claims and standing supports the conclusion that the record information here does not resemble a common-law privacy tort.

Some cases involve the defendants' gathering sensitive information (such as medical and health information). *See, e.g.*, *Shah v. MyFitnessPal, Inc.*, __ F. Supp. 3d __, 2026 WL 216334, at *3 (N.D. Cal. 2026) (standing where the defendant collected information "related to personal topics like nutrition and fitness tracking"); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 936 (N.D. Cal. 2023) (the disclosure of "sensitive personal information including race, location, politics, and medical information"); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 862–63 (N.D. Cal.

---

[14] *Id.* at 15 (¶¶ 64–66), 17–20 (¶¶ 71–87), 20–22 (¶¶ 92–98), 24–25 (¶¶ 113–119).

[15] *Id.* at 25 (¶ 121).

United States District Court
Northern District of California

2026) (the plaintiff alleged that the defendant captured "sensitive data"). The plaintiff does not allege that SeatGeek captured similar information.

Others involve a defendant's more egregious conduct that exceeds the alleged conduct here. *See, e.g.*, *McClung v. AddShopper, Inc.*, No. 23-cv-01996-VC, 2024 WL 189006, at *1 (N.D. Cal. Jan. 17, 2024) (standing where the defendant "[m]isappropriat[ed] a person's browsing activity across a network of thousands of online retailers and us[ed] it to barrage that person's devices with unwanted email communications (particularly without giving the person a way to put a stop to the communications)"); *Shah*, 2026 WL 216334, at *3 (the defendant lied about collecting the plaintiffs' information).

Still others involve a broader capture of information beyond the record information (IP address and other device-fingerprint information) that SeatGeek and the third parties captured. *See, e.g.*, *In re Facebook*, 956 F.3d at 598–99 ("As alleged, Facebook's tracking practices allow it to amass a great degree of personalized information. Facebook's user profiles would allegedly reveal an individual's likes, dislikes, interests, and habits over a significant amount of time . . . ."); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025) (standing where "trackers on Defendant's website collected a broad set of [the plaintiffs'] personal identifying and addressing information" (cleaned up)); *Gilligan v. Experian Data Corp.*, No. 25-cv-02873-RFL, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (standing where defendant intercepted "information regarding users' activity on websites and communications with websites in the form of full-string URLs and button click events"); *Tsering v. Meta Platforms, Inc.*, No. 25-cv-01611-RFL, 2026 WL 89320, at *2–3 (N.D. Cal. Jan. 12, 2026) (Meta's software was used by "tens of thousands" of apps to create user profiles on "hundreds of millions of unique devices"); *Deivaprakash v. Conde Nast Digit.*, 798 F. Supp. 3d 1100, 1106–07 (N.D. Cal. 2025) (third parties generated "profiles that reflect users' geographic locations, incomes, and preferences, among other characteristics"); *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) (third parties compiled the plaintiff's "Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information,

interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data").

The plaintiff has not alleged facts establishing concrete injury for Article III standing.

Second, the plaintiff contends that his statutory standing under CIPA means that he necessarily has Article III standing, citing *R.C. v. Sussex Publishers, LLC*, No. 24-cv-02609-JSC, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025).[16] "In determining statutory standing under CIPA, courts have held IP address collection for targeted advertisement creates a concrete injury-in-fact." *Id.* at \*3 (cleaned up) (collecting cases). But case law does not support the conclusion that receiving a targeted ad is a concrete injury establishing standing based only on the receipt of non-confidential information.[17] *See Khamooshi v. Politico LLC*, No. 24-cv-07836-SK, 2025 WL 2822879, at \*1–3 (N.D. Cal. Oct. 2, 2025) (alleged use of advertising trackers to capture IP addresses, browsing activity, geolocation data, and "device fingerprints" "identifies 'no embarrassing, invasive, or otherwise private information" (quoting *Popa*, 153 F.4th at 791)); *Price v. Converse, Inc.*, 805 F. Supp. 3d 1102, 1104–05 (C.D. Cal. 2025) (allegations that device, browser, and geographic information were used to deanonymize users and deliver "highly personalized" ads showed no "highly offensive" interference and was thus "insufficient to establish a concrete injury" (cleaned up)).

Third, the plaintiff alleges that SeatGeek's unjust enrichment from the use of his data is an independent ground for standing.[18] SeatGeek contends that there is no standing on an unjust-enrichment theory because (1) the plaintiff's allegations about unjust enrichment are conclusory, (2) any enrichment was not unjust because the plaintiff lacked a privacy interest in any of the information, and (3) the plaintiff has pleaded no actionable misrepresentation or omission.[19] The

---

[16] Opp'n – ECF No. 32 at 14.

[17] The Ninth Circuit has granted interlocutory appeal about whether transmission of IP addresses and similar information voluntarily shared with websites is an Article III injury. *Drummer v. Costar Grp., Inc.*, No. EDCV 25-1047 JGB (SPx), 2026 WL 712922 (C.D. Cal. Feb. 13, 2023), *interlocutory appeal certified*, Dkt. 7.1, No. 26-1160 (9th Cir. Mar. 18, 2026).

[18] Opp'n – ECF No. 32 at 12.

[19] Reply – ECF No. 38 at 14–15.

plaintiff counters that other courts have found harm based on the disclosure of sensitive information or when a third party "acquires an enormous amount of individualized data."[20] The alleged unjust enrichment is too conclusory to convey standing.

To establish standing through unjust enrichment, plaintiffs "must allege they retain a stake in the profits garnered from their personal browsing histories because 'the circumstances are such that, as between the two parties, it is unjust for [the defendant] to retain it.'" *In re Facebook*, 956 F.3d at 600 (cleaned up). There is no standing where a plaintiff has not plausibly alleged that (1) the defendant's actions were unjust and (2) the defendant was enriched as a result. *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1044 (N.D. Cal. 2021).

The plaintiff has not plausibly pleaded a privacy interest in the information (IP addresses, approximate location, browsing activity, and device metadata) that might render any enrichment unjust.[21] The allegations about unjust enrichment are conclusory, amounting only to SeatGeek and the third parties "unjustly enriched" themselves. This is insufficient. *See Khamooshi*, 786 F. Supp. 3d at 1183 (allegations that the defendant disclosed the plaintiffs' IP addresses "did not establish an economic injury based on unjust enrichment" (cleaned up)).

Fourth, the plaintiff contends that the offensiveness of SeatGeek's conduct is not resolvable at the pleading stage and that their allegations of surreptitious collection of data to convert to digital profiles is enough to allow the case to proceed to discovery.[22] The relevant cases establish that the defendants generally must gather sensitive information or disclose it offensively (for example, inconsistently with promises to their users). *See Shah*, 2026 WL 216334, at *3 (the defendant lied to the plaintiffs and collected information related to nutrition and fitness tracking); *McClung*, 2024 WL 189006, at *1 (defendants barraged the plaintiff with unwanted email communications); *Katz-Lacabe*, 668 F. Supp. 3d at 936 (disclosure of "sensitive personal information including race, location, politics, and medical information"). The plaintiff must allege his harm concretely to

---

[20] Opp'n – ECF No. 32 at 16–17.

[21] Reply – ECF No. 38 at 14–15; *see* FAC – ECF No. 25 at 2 (¶ 4), 14–15 (¶¶ 58–67), 24–25 (¶¶ 115–16, 119), 29 (¶ 147).

[22] Opp'n – ECF No. 32 at 17–19.

establish Article III standing, a matter addressable on a motion to dismiss through allegations that plausibly plead harm. This argument fails.

**2. Sufficiency of Factual Allegations to State a Claim**

SeatGeek contends that the plaintiff fails to plead plausible claims because he has not alleged sufficient facts about his own interactions on the website or the dates he accessed it.[23] The plaintiff responds that he satisfies Rule 8 by pleading that he regularly visited SeatGeek's website while trackers were operating; the trackers captured information about who he is, his location, and the devices he was using; and third parties deanonymized him and matched his information to a profile.[24]

The court does not dismiss all of the plaintiff's claims outright for insufficiency of his allegations. SeatGeek is on notice of the alleged conduct: the installing of trackers on his device, the interception of the plaintiff's information, and the deanonymizing and use of that information to send him targeted advertisements.[25] Where SeatGeek has not raised a statute-of-limitations defense, the court does not dismiss the plaintiff's claims under Rule 8 for failing to identify the specific dates that he accessed the website. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 135 (N.D. Cal. 2020) ("The Court notes that a failure to plead when any alleged misconduct occurred will not necessarily be fatal under Rule 8. However, where, as here, an applicable statute of limitations defense has been raised and is non-frivolous, Plaintiffs' repeated failure to plead the approximate date of alleged misconduct fails to satisfy Rule 8." (cleaned up)).

**3. Invasion of Privacy and Intrusion on Seclusion**

The elements of a claim for invasion of privacy under the California Constitution are "(1) [the plaintiffs] possess a legally protected privacy interest, (2) they maintain a reasonable expectation

---

[23] Reply – ECF No. 38 at 16–17.

[24] Opp'n – ECF No. 32 at 19–21.

[25] FAC – ECF No. 25 at 24–25 (¶¶ 113–21).

of privacy, and (3) the intrusion is 'so serious . . . as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" *In re Facebook*, 956 F.3d at 601 (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)); *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–37 (1994). The first prong — "[w]hether a legally recognized privacy interest is present in a given case [—] is a question of law to be decided by the court." *Hill*, 7 Cal. 4th at 40. The second and third prongs are "mixed questions of law and fact." *Id.*

A claim for intrusion upon seclusion under California common law requires that (1) a defendant "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy," and (2) the intrusion "occur[red] in a manner highly offensive to a reasonable person." *Hernandez*, 47 Cal. 4th at 286.

As discussed above, the plaintiff has not pleaded that his browsing information was embarrassing or sensitive data or that its disclosure would be highly offensive.[26] Thus, he has not pleaded plausible claims for invasion of privacy (claims three and four).

## 4. California Computer Data Access and Fraud Act

SeatGeek contends that the plaintiff's CDAFA claim fails because (1) any alleged unjust enrichment by SeatGeek is not damage or loss to a computer system, network, program, or data, and (2) the plaintiff cannot show a lack of permission under the CDAFA without alleging that SeatGeek hacked or overcame a technical barrier in accessing his information.[27] The plaintiff responds that his theory of unjust enrichment is a loss under the CDAFA and that his alleging that SeatGeek accessed his information without permission is sufficient.[28]

The plaintiff has not plausibly pleaded a CDAFA claim. The CDAFA "prohibits certain computer-based conduct such as '[k]nowingly and without permission access[ing] or caus[ing] to

---

[26] *See supra*, Standing § 1.

[27] Mot. – ECF No. 30 at 33–35.

[28] Opp'n – ECF No. 32 at 31–33.

be accessed any computer, computer system, or computer network.'" *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1217 (N.D. Cal. 2014) (quoting Cal. Penal Code § 502(c)(7)).

While the plaintiff has plausibly pleaded SeatGeek's accessing his data without permission, *see Tsering*, 2026 WL 89320, at *6 (bypassing a technical barrier is only one way of establishing lack of permission), he has not established damage or a loss. SeatGeek's benefiting from the plaintiff's data does not mean that he suffered a loss. *See Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (rejecting that "the loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data, [constitute] 'damage or loss' within the meaning of the CDAFA"); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025) ("Facebook may have gained money through its sharing or use of the plaintiffs' information, but that's different from saying the plaintiffs lost money." (quoting *In re Facebook, Inc. v. Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019))).

The plaintiff cites *Smith v. Rack Room Shoes, Inc.*, as support for damage or a loss through unjust enrichment.[29] No. 24-cv-06709-RFL, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025). But *Smith* does not support the plaintiff's theory because it relied on language from *In re Facebook* about Article III standing to bring a CDAFA claim, which is different from statutory standing, and did not address the loss requirement.[30] *Smith*, 2025 WL 2210002, at *3.

The plaintiff has not plausibly pleaded a CDAFA claim (claim one).

## 5. California Invasion of Privacy Act § 638.51

SeatGeek contends that the plaintiff's CIPA claim fails because third-party trackers deployed on a website are not pen registers (pointing to the legislative history, CIPA's framework, and the rule of lenity) and § 638.51 does not prohibit a website's using third-party trackers to collect and share information that is necessarily transmitted to it by its visitors.[31] The plaintiff counters that

---

[29] *Id.* at 32.

[30] Reply – ECF No. 38 at 23 n.18 (making this point).

[31] Mot. – ECF No. 30 at 26–33.

United States District Court
Northern District of California

CIPA is meant to be interpreted broadly and applies to electronic communications on the internet and installing third-party trackers is not necessary for the internet to function.[32]

Many defendants have taken SeatGeek's position that CIPA applies only to tracking technology for phones and not the internet. None have succeeded in this district. *See Mirmalek v. L.A. Times Commc'ns LLC*, No. 24-cv-01797-CRB, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (third-party trackers are a "device or process" under CIPA); *Fregosa v. Mashable, Inc.*, No. 25-cv-01094-CRB, 2025 WL 2886399, at *2 (N.D. Cal. Oct. 9, 2025) (allegations that third-party trackers collected users' IP addresses, device identifiers, and browsing data qualify as "pen registers" under CIPA are sufficient at the pleading stage); *Harris v. iHeartMedia, Inc.*, No. 25-cv-06038-EKL, 2026 WL 247875, at *3 (N.D. Cal. Jan. 29, 2026) ("The overwhelming majority of courts that have considered this question have similarly concluded that third-party internet trackers meet the technical requirements of a pen register under CIPA."); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 871–72 (N.D. Cal. 2025) (same). SeatGeek cites no controlling case stating otherwise. The court does not depart from these decisions.

At this stage, the plaintiff has plausibly pleaded that the third-party trackers collected information from him that was unnecessary for operating the website.[33]

## CONCLUSION

The court dismisses the plaintiff's claims for lack of standing. The plaintiff must file an amended complaint by June 29, 2026, with a blackline of the changes (in color) attached.

**IT IS SO ORDERED.**

Dated: May 21, 2026

LAUREL BEELER
United States Magistrate Judge

---

[32] Opp'n – ECF No. 32 at 24–31.

[33] *Id.* at 31.