Heather J. Silver (SBN 285509)
Blake M. Bailus (SBN 360713)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Heather.Silver@gtlaw.com
Blake.Bailus@gtlaw.com

Attorneys for Defendant
SEATGEEK, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JOSE TORRES, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SEATGEEK, INC., a Delaware corporation headquartered in New York; and DOES 1 through 25, inclusive,

Defendants.

Case No. 3:25-CV-07118-LB

Assigned to Hon. Laurel Beeler

**DEFENDANT SEATGEEK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**

[Concurrently filed with Request for Judicial Notice; Declaration of Heather J. Silver; and [Proposed] Orders]

Action filed: August 22, 2025

Date: November 12, 2026
Time: 9:30 a.m.
Place: Courtroom B, 15th Floor

**<u>NOTICE OF MOTION AND MOTION TO DISMISS</u>:**

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on November 12, 2026, at 9:30 a.m., or as soon thereafter as the matter may be heard, before the Honorable Laurel Beeler, United States Magistrate Judge for the Northern District of California, located at the Phillip Burton Federal Building and United States Courthouse, 450 Golden Gate Avenue, Courtroom B, 15th Floor, San Francisco, California 94102, Defendant SeatGeek, Inc. ("SeatGeek") will, and hereby does, move the Court for an order dismissing the Second Amended Complaint ("SAC") filed by Plaintiff Jose Torres ("Plaintiff") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff has not pled a concrete harm under Article III, and because Plaintiff fails to state a claim upon which relief may be granted. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Heather J. Silver and Request for Judicial Notice, and all pleadings, arguments, and matters before the Court.

**<u>STATEMENT OF RELIEF SOUGHT</u>**

SeatGeek seeks an order dismissing Plaintiff's SAC with prejudice under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction because Plaintiff still fails to allege an Article III injury, notwithstanding this Court's guidance in *Torres v. SeatGeek, Inc.*, No. 25-cv-7118, 2026 WL 1495202 (N.D. Cal. May 28, 2026). The threshold jurisdictional defect requires dismissal of the SAC. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) . . . ."). Should the Court reach the merits of Plaintiff's claim, however, SeatGeek seeks dismissal under Fed. R. Civ. P. 12(b)(6) because Plaintiff does not, and cannot, allege sufficient facts to state a plausible claim for at least four reasons:

(1) The claims for invasion of privacy and intrusion upon seclusion still fail because Plaintiff fails to allege that (a) Plaintiff had a reasonable expectation of privacy in the data purportedly collected from him, or (b) SeatGeek's purported invasion of privacy was offensive.

(2) The claim under Section 631 of the California Invasion of Privacy Act ("CIPA") fails because (a) the collection of "contents" is a required element under Section 631, but alleging that the third-party

trackers collect such "contents" contradicts Plaintiff's allegations in the First Amended Complaint ("FAC"), which stated that the trackers do not collect a communication's "contents"; (b) even if the Court credits the contradictory allegations in the SAC, Plaintiff nonetheless does not allege any third party intercepted the "contents" of his communications, or that a third party "read" his communications while "in transit"; and (c) Plaintiff does not allege that SeatGeek knew that any third-party's alleged interception was unlawful or that SeatGeek intended to aid and abet such conduct.

(3) The claim for violation of Section 638.51 of CIPA based on the allegedly unlawful use of a "pen register" fails because Plaintiff alleges that the technology used by SeatGeek on its website was used to collect the "contents" of website users' communications but, by definition, a "pen register" cannot capture "contents." Should the Court disagree, any ruling on the Section 638.51 claim should be stayed pending the California Court of Appeal's imminent decision in *Variety Media, LLC v. Superior Court*, No. B350578 ("*Variety* Appeal"), which is set to resolve whether Section 638.51 applies to online tracking technology.

(4) The claim for violation of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA") fails because Plaintiff still does not allege any cognizable damage or loss under the CDAFA, which is required for statutory standing.

Dated: August 10, 2026 GREENBERG TRAURIG, LLP

By */s/ Heather J. Silver*
Heather J. Silver
Attorneys for Defendant
SeatGeek, Inc.

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. STATEMENT OF THE ISSUES TO BE DECIDED ..... 2

III. STATEMENT OF RELEVANT FACTS ..... 3

IV. PLAINTIFF CONFIRMS THAT HE LACKS STANDING ..... 4

- A. Standards for Motions to Dismiss Pursuant to Rule 12(b)(1) ..... 4
- B. Constitutional Requirements for Standing ..... 4
- C. Plaintiff's Allegations Confirm That No Amendment Can Cure the Lack of Concrete Harm. ..... 5
  - 1. Plaintiff Cannot Allege "Sensitive" Information Required for Standing. ..... 6
  - 2. Plaintiff Cannot Allege "Highly Offensive" Conduct Giving Rise to Standing. ..... 10
  - 3. Plaintiff's Unjust Enrichment Theory of Harm Fails to Allege a Concrete Injury. ..... 12

V. PLAINTIFF CONFIRMS HE CANNOT PLAUSIBLY STATE A CLAIM FOR RELIEF ..... 13

- A. Standards for Motions to Dismiss Pursuant to Rule 12(b)(6) ..... 13
- B. Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion Claims Fail Again. ..... 14
- C. Plaintiff Fails to State a Wiretapping Claim Under CIPA § 631 ..... 15
  - 1. Plaintiff Fails To Allege Violation of Section 631(a)'s Second Clause by Any Third Party. ..... 16
    - a. Plaintiff does not and cannot allege the interception of "contents." ..... 16
    - b. Plaintiff fails to allege any third party "read" his communications while "in transit." ..... 17
  - 2. Plaintiff Also Does Not Allege a Violation of Section 631(a)'s Third Clause. ..... 18
  - 3. Plaintiff Does Not Allege SeatGeek Aided and Abetted a CIPA Violation. ..... 18
- D. Plaintiff's Claim Under CIPA § 638.51 Should be Dismissed or, Alternatively, Stayed. ..... 19
  - 1. Plaintiff's CIPA § 638.51 Claim Fails Because the SAC Alleges the Third-Party Trackers are Capable of Acquiring "Contents." ..... 19
  - 2. Alternatively, if Not Dismissed, the Court Should Stay Plaintiff's CIPA § 638.51 Claim Pending the *Variety* Appeal. ..... 20
    - a. The *Variety* Appeal will decide whether CIPA § 638.51 applies online. ..... 21
    - b. Any prejudice to Plaintiff caused by a stay is minimal. ..... 22
    - c. SeatGeek will face significant hardship if the Court permits this claim to proceed. ..... 22
    - d. A stay will simplify the issues and promote judicial economy. ..... 23

E. Plaintiff's CDAFA Claim Fails Because Plaintiff Still Alleges No "Damage or Loss." ........ 24
F. Plaintiff Should be Denied Leave to Amend for a Third Time. ............................................ 25

VI. CONCLUSION ........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abagninin v. AMVAC Chem. Corp.*,
545 F.3d 733 (9th Cir. 2008) .......... 25

*In re Apple Data Priv. Litig.*,
824 F. Supp. 3d 888 (N.D. Cal. 2026) .......... 2, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 13, 14

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 11, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 13, 14, 17, 19

*Beltran v. Doctor's Med. Ctr. of Modesto*,
No. 23-cv-1670, 2025 WL 1635467 (E.D. Cal. June 9, 2025) .......... 17

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 16

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 7

*Campbell v. Select Med. Corp.*,
No. 25-cv-11408, 2026 WL 2056651 (C.D. Cal. July 14, 2026) .......... 9

*Chaset v. Fleer/Skybox Int'l, LP*,
300 F.3d 1083 (9th Cir. 2002) .......... 25

*Columbia Pictures, Inc. v. Bunnell*,
245 F.R.D. 443 (C.D. Cal. 2007) .......... 20

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) .......... 24

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 11, 15, 17

*Crano v. Sojern, Inc.*,
No. 25-cv-2600, 2025 WL 2689267 (N.D. Cal. Sept. 19, 2025) .......... 17, 18

*Dawidzik v. Tesla, Inc.*,
No. 25-cv-1982, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .......... 8, 12, 13

*Doe v. Cnty. of Santa Clara*,
No. 23-cv-4411, 2024 WL 3346257 (N.D. Cal. July 8, 2024) .......... 24

*Doe v. Eating Recovery Ctr., LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 7, 18

*Dominguez v. Sonesta Int'l Hotels Corp.*,
648 F. Supp. 3d 1162 (N.D. Cal. 2023) .......... 22

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
895 F.3d 1166 (9th Cir. 2018) .......... 4

*Erceg v. LendingClub Corp.*,
475 F. Supp. 3d 1071 (N.D. Cal. 2020) .......... 21, 22, 23

*Esparza v. UAG Escondido A1 Inc.*,
No. 23-cv-0102, 2024 WL 3761293 (S.D. Cal. Aug. 5, 2024) .......... 19

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 6

*Gabriella v. Wells Fargo Fin., Inc.*,
No. 06–4347, 2009 WL 188856 (N.D. Cal. Jan 26, 2009) .......... 22

*Garcia v. Blackhawk Network, Inc.*,
No. 25-cv-7550, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026) .......... 8, 10, 11, 12

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 13

*In re Google, Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 11

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 15

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 10, 13, 14

*Harrill v. Emanuel Med. Ctr.*,
No. 23-cv-1672, 2025 WL 1635428 (E.D. Cal. June 9, 2025) .......... 17

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... *passim*

*Hubbard v. Google LLC*,
No. 19-cv-7016, 2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 7

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 15

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) .......... 15

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... 7, 8, 13, 25

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
No. 24-cv-1119, 2025 WL 1635419 (E.D. Cal. June 9, 2025) .......... 17

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-1473, 2025 WL 1745726 (N.D. Cal. June 24, 2025) .......... 20

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .......... 21

*Lew v. Countrywide Fin. Corp.*,
No. 08-cv-1993, 2009 WL 1384975 (N.D. Cal. Feb. 24, 2009) ........ 22

*Leyva v. Certified Grocers of Cal., Ltd.*,
593 F.2d 857 (9th Cir. 1979) ........ 21

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ........ 17

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) ........ 21, 22

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 14, 15

*Maghoney v. Dotdash Meredith, Inc.*,
No. 24-cv-2394, 2026 WL 497402 (S.D. Cal. Feb. 23, 2026) ........ 9

*Magliocca v. United Healthcare Servs., Inc.*,
No. 25-cv-3388, 2026 WL 878694 (E.D. Cal. Mar. 31, 2026) ........ 9, 10, 12

*Malko v. GNC Holdings, LLC*,
No. 26-cv-1833, 2026 WL 2218133 (C.D. Cal. July 29, 2026) ........ 9, 12

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ........ 15

*Merical v. The Joint Corp.*,
No. 26-cv-974, 2026 WL 2225531 (E.D. Cal. Aug. 3, 2026) ........ 10, 14

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ........ 9

*Miller v. Yokohama Tire Corp.*,
358 F.3d 616 (9th Cir. 2004) ........ 25

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025) ........ 20

*Myers v. Dick's Sporting Goods, Inc.*,
No. 25-cv-3241, 2026 WL 1045528 (E.D. Cal. Apr. 17, 2026) ........ 11

*Oracle Corp. v. SAP AG*,
734 F. Supp. 2d 956 (N.D. Cal. 2010) ........ 24

*Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) ........ 13

*Perez v. Romantix Online, Inc.*,
No. 25-cv-2465, 2026 WL 1802589 (N.D. Cal. June 23, 2026) ........ 7

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ *passim*

*Posadas v. Goodyear Tire & Rubber Co.*,
No. 23-cv-402, 2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) ........ 15

*Price v. Converse, Inc.*,
805 F. Supp. 3d 1102 (C.D. Cal. 2025) ........ 8

*Ramirez v. Trans Union, LLC*,
No. 12-cv-632, 2015 WL 6159942 (N.D. Cal. June 22, 2015) ........ 22

*Ramos v. Amazon.com, Inc.*,
No. 24-cv-089, 2026 WL 1045665 (C.D. Cal. Apr. 17, 2026) ........ 23

*Reddy v. Litton Indus., Inc.*,
912 F.2d 291 (9th Cir. 1990) ........ 16

*Rodriguez v. Brushfire Recs.*,
No. 25-cv-9797, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ........ 11

*Rodriguez v. Culligan Int'l Co.*,
No. 25-cv-225, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ........ 8

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ........ 19

*Rodriguez v. Sony Computer Ent. Am., LLC*,
801 F.3d 1045 (9th Cir. 2015) ........ 16

*Ryman v. Sears, Roebuck and Co.*,
505 F.3d 993 (9th Cir. 2007) ........ 23

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ........ 11, 15

*Schallert v. Laird Superfood, Inc.*,
No. 25-cv-12407, 2026 WL 1707585 (C.D. Cal. June 5, 2026) ........ 9, 10

*Scott v. Breeland*,
792 F.2d 925 (9th Cir. 1986) ........ 4

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........ 24

*Shah v. Talentbridge, Inc.*,
No. 26-cv-222, 2026 WL 1507888 (C.D. Cal. May 28, 2026) ........ 9

*Skulevold v. SD&A Teleservices, Inc.*,
No. 20-cv-2771, 2020 WL 7711834 (C.D. Cal. Nov. 18, 2020) ........ 22

*Smith v. YETI Coolers, LLC*,
No. 24-cv-1703, 2025 WL 877127 (N.D. Cal. Mar. 14, 2025) ........ 19

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 4

*Sunbelt Rentals, Inc. v. Victor*,
43 F. Supp. 3d 1026 (N.D. Cal. 2014) ........ 7

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*,
830 F. App'x 821 (9th Cir. 2020) ........ 4

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
313 F. Supp. 3d 1056 (N.D. Cal. 2018) ........ 24

*In re Taco Bell Wage & Hour Actions*,
No. 07-cv-1314, 2011 WL 3846727 (E.D. Cal. Aug. 30, 2011) ........ 23

*Timothee v. Meta Platforms, Inc.*,
No. 25-cv-5106, 2026 WL 1130363 (N.D. Cal. Apr. 27, 2026) .......... 11, 12

*Torres v. Prudential Fin., Inc.*,
No. 22-cv-7465, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 18

*Torres v. SeatGeek, Inc.*,
No. 25-cv-7118, 2026 WL 1495202 (N.D. Cal. May 28, 2026) .......... *passim*

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 5

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 17, 18

*Valenzuela v. The Kroger Co.*,
No. 22-cv-6382, 2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) .......... 17, 19

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) .......... 4

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024) .......... 18

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 7

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 8, 16

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 8, 14, 16

**State Cases**

*Balabbo v. Wildflower Brands, LLC*,
No. 25STCV20971, 2026 WL 1122773 (Super. Apr. 6, 2026) .......... 20

*Casillas v. Anytime Fitness Franchisor LLC*,
No. 24STCV28431, 2026 WL 1365282 (Super. Ct. May 12, 2026) .......... 22, 24

*Hill v. Nat'l Collegiate Athletic Ass'n.*,
7 Cal. 4th 1 (1994) .......... 14

*Price v. Headspace, Inc.*,
No. 24STCV19921, 2025 WL 1237977 (Super. Ct. Apr. 1, 2025) .......... 20

*Rodriguez v. Dish Network L.L.C.*,
No. 25STCV06310, 2026 WL 1468210 (Super. Ct. Apr. 28, 2026) .......... 23

*Tavernetti v. Super. Ct.*,
22 Cal. 3d 187 (1978) .......... 15

**Federal Statutes**

18 U.S.C. § 3121 .......... 20

**State Statutes**

Cal. Penal Code § 502 .......... 24
Cal. Penal Code § 631 .......... *passim*
Cal. Penal Code § 638.50 .......... 2, 3, 16, 20
Cal. Penal Code § 638.51 .......... *passim*

**Rules**

Fed. R. Civ. Proc. 12(b)(1) .......... 4
Fed. R. Civ. Proc. 12(b)(6) .......... 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In *Torres v. SeatGeek, Inc.*, this Court dismissed Plaintiff Jose Torres's First Amended Complaint ("FAC") for lack of Article III standing and held that Plaintiff's claims for violations of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), invasion of privacy, and intrusion upon seclusion were implausibly alleged. No. 25-cv-7118, 2026 WL 1495202 (N.D. Cal. May 28, 2026) ("May 28 Order"). As the Court acknowledged, Plaintiff lacked standing because he "provided no private information to the website: no account, no purchase, no form submitted, no search terms. What remains is the tracking of metadata generated by a visit to a public ticket-resale site," which "[u]nder *Popa*," does "not resemble any traditional common-law privacy tort." *Id.* at 6 (citing *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025)). Beyond standing, the Court held that Plaintiff's invasion-of-privacy, intrusion-upon-seclusion, and CDAFA claims were not plausibly alleged for substantially the same reason: Plaintiff had not alleged sensitive information, highly offensive conduct, or any cognizable damage or loss. *Id.* at 10-12. Plaintiff's Second Amended Complaint ("SAC") does not meaningfully respond to those rulings. In fact, Plaintiff did not revise the allegations supporting his previously alleged CIPA Section 638.51, CDAFA, or privacy claims, despite this Court's identification of fatal defects in how they were alleged in the FAC. *Id.* at 5-12; *see* SAC Ex. A (comparing SAC ¶¶ 138(i)-164(i)[1], 165-186 with FAC ¶¶ 138-186). Plaintiff's decision to leave those allegations materially unchanged confirms that he cannot amend to fix the defects and further amendment would thus be futile.

Indeed, instead of addressing the FAC's deficiencies, Plaintiff's principal amendment is to assert that the same tracking technologies at issue in the FAC also collected other types of nonsensitive browsing activity about his "user interactions with the website"—including the URLs visited, buttons clicked on, and text entered. SAC ¶¶ 5, 68, 123. But *Popa* itself involved the alleged collection of "over 30 different categories" of information, including the "URLs of the web pages visited," "a user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how far down a webpage a user scrolls," and the Ninth Circuit nonetheless held such allegations did not establish a concrete privacy injury. 153 F.4th at 786-87, 791. Nor do Plaintiff's new allegations about what he viewed on the Website change the outcome. That Plaintiff may have

[1] In the SAC, Plaintiff numbered the allegations supporting his new claim under CIPA Section 631 as paragraphs "150" through "164," even though the SAC already contained paragraphs bearing those numbers in support of his CDAFA and CIPA § 638.51 claims. To avoid confusion, the first set of paragraphs 150 through 164 will be denoted herein with a parenthetical "(i)" and the second set will be denoted with a parenthetical "(ii)."

browsed for tickets to public sporting events, including Padres and NFL games, is not private or sensitive; it merely concerns his "preferences" for "certain products" he never purchased. *Id*. at 786, 791. Thus, Plaintiff's primary response to the May 28 Order is to add allegations about information that was already declared insufficient by the same Ninth Circuit case that compelled dismissal of the FAC. *See* SAC ¶¶ 1, 5-8, 66-71, 123, 124. Put simply, the SAC does not address the central defect the Court identified in the FAC: Plaintiff still does not allege the collection or disclosure of information sufficiently private or sensitive to establish a concrete privacy injury, a reasonable expectation of privacy, or a highly offensive intrusion.

Unable to cure the defects identified by the Court, Plaintiff instead adds a new CIPA section 631 claim, asserting that the disclosure of this additional information about his website interactions also constitutes the sharing of the "contents" of his communications. Even if such data were the "contents" of a communication (and they are not), Plaintiff still does not plausibly allege the interception of any communication's contents while in transit, much less facts showing that SeatGeek knowingly and intentionally aided any unlawful interception. And the new theory creates a separate problem: Plaintiff simultaneously alleges that the same technologies are capable of collecting "contents" for purposes of section 631 while also functioning as "pen registers" under section 638.51. But this is an impossibility—as courts in this District have observed in dismissing CIPA § 638.51 claims: by definition, a device that can collect the "contents" of a communication is not a pen register. *In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888, 897 (N.D. Cal. 2026) (quoting Cal. Penal Code § 638.50(b)).[2]

In sum, the SAC's amendments underscore the futility of further amendment. Plaintiff's response to dismissal of the FAC was not to allege the type of private, sensitive, or otherwise actionable information the Court found lacking, but to add allegations concerning URLs and other routine browsing activity already addressed in *Popa*. Plaintiff's failure to remedy these pleading defects after receiving this Court's guidance confirms that he cannot state a claim. The SAC should be dismissed with prejudice.

## II. STATEMENT OF THE ISSUES TO BE DECIDED

1. Does Plaintiff sufficiently plead an injury-in-fact to establish Article III standing?

2. Does Plaintiff plausibly state claims for (1) invasion of privacy; (2) intrusion upon seclusion; (3) wiretapping in violation of CIPA § 631; (4) the use of a pen register in violation of CIPA § 638.51; or (5) the

[2] To the extent that the CIPA § 638.51 claim is not dismissed on this basis and the Court is still inclined to find that CIPA's definition of "pen registers" may apply to "trackers deployed on a website," May 28 Order at 12-13, this claim should be stayed pending decision from the California Court of Appeal on this very issue in in *Variety Media, LLC v. Superior Ct.*, No. B350578 ("*Variety* Appeal"). *See infra*, Section V(D)(2).

unlawful access of Plaintiff's data and computer in violation of the CDAFA?

## III. STATEMENT OF RELEVANT FACTS

The SAC is based on the same core allegations found deficient by this Court in its May 28 Order: SeatGeek's Website is a "ticket platform" that enables users to "buy and sell tickets for live sports, concerts, and theater events." SAC ¶ 2. SeatGeek allegedly embedded three third-party trackers—the TikTok Pixel, Meta Pixel, and Microsoft Bing Tracker—on its Website. *Id.* ¶¶ 2, 62. As in the FAC, Plaintiff alleges that when users visit the Website, the trackers collect IP addresses, device metadata, and unique identifiers, but he now adds that they also collect users' "activities" on the Website "concerning the exact webpages [users] visited," including "URLs of pages visited" and information about the "pages [the user] requested," such as "buttons" a user clicks on, "search results," and "text" entered into form fields upon "navigating" between pages. *Id.* ¶¶ 3, 57, 62-70, 124. Plaintiff alleges that the trackers are capable of collecting browsing activity that, in his view, qualifies as the "content" of users' communications, *id.* ¶¶ 69, 156(ii), notwithstanding that he also alleges that the trackers are "pen registers" which, by definition, do not record a communication's "contents," *id.* ¶¶ 161(i), 162(i); *see* Cal. Penal Code § 638.50(b); *infra*, Section V(D)(1). The trackers allegedly allow the third parties to identify or "deanonymize" users, "create a detailed dossier of their likes and interests," and target them with ads. SAC ¶¶ 4-6. Based on these allegations, Plaintiff asserts a new claim under CIPA Section 631: that SeatGeek purportedly "aided" TikTok, Meta, and Microsoft in the "interception, reading, and analyzing" of users' Website communications "while the communications were in transit to the Website's servers." *Id.* ¶¶ 157(ii)-160(ii).

While Plaintiff previously did not describe what he did on the Website, Plaintiff now alleges that he "regularly" visited the Website on undisclosed dates, at which time he browsed for "NFL and MLB sporting events," including for the San Diego Padres. SAC ¶ 123. Though Plaintiff alleges that he "searched for" events, *id.*, he does not allege typing text into the Website's search bar, much less that the text he typed, if any, was disclosed to third parties via the URLs he visited. This omission is unsurprising since, unlike some other websites, the Website's search function displays a drop-down list of the "Top Result" and potentially relevant "Performers," "Events," and "Venues" that the user can click on. Request for Judicial Notice ("RJN"), Ex. 1. For instance, typing "padres" or "chargers" into the search bar and clicking the top result would *not* generate URLs containing Plaintiff's unique search terms; the user would instead be directed to preexisting pages on the Website offering users tickets for the San Diego Padres and Los Angeles Chargers, respectively. *Id.*, Exs. 1-4.

Plaintiff alleges that he did not register for an account or purchase tickets on the Website. SAC ¶ 131. He does allege, however, that he saw an ad on Instagram "relating to NFL searches he performed on the Website," but he does not explain how seeing an ad for NFL-related matters caused him harm. *Id.* ¶ 126.

In sum, beyond asserting a new claim concerning Plaintiff's visits to webpages for tickets to baseball and football games, the SAC retreads the same core theory of liability addressed in SeatGeek's motion to dismiss the FAC. Plaintiff does not allege a different kind of injury or a different kind of supposedly private information; he simply adds more examples of browsing data collected. Accordingly, Plaintiff still alleges only the "routine collection of interaction data from visiting SeatGeek's website, where he did not purchase a product or service," sign up for an account, or submit any forms. May 28 Order at 5. "Under *Popa*, this does not resemble any traditional common-law privacy tort." *Id.* at 6.

## IV. PLAINTIFF CONFIRMS THAT HE LACKS STANDING

### A. Standards for Motions to Dismiss Pursuant to Rule 12(b)(1)

Plaintiff, as "the party seeking to invoke the court's jurisdiction," bears "the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). As part of meeting that burden, Plaintiff must establish that he suffered a "concrete and particularized" and "actual or imminent" injury-in-fact. *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018) ("a plaintiff seeking damages for the violation of a statutory right must not only plausibly allege the violation but must also plausibly allege a 'concrete' injury causally connected to the violation") (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). A defendant's Rule 12(b)(1) jurisdictional attack can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). On a facial attack, a court accepts as true only the "well-pleaded factual allegations." *Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, 830 F. App'x 821, 822 (9th Cir. 2020).

### B. Constitutional Requirements for Standing

To establish "the irreducible constitutional minimum" of standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id.* at 338 n.6 (quotation marks and citation omitted).

Under Article III, an "injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). "Traditional tangible harms," like physical harms, may qualify as "concrete" injuries. *Id*. at 425. As may certain "intangible harms," if they have a "close relationship" to harms "traditionally recognized as providing a basis for lawsuits in American courts." *Id*. In other words, the Supreme Court has "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 426. For all claims, statutory or otherwise, "*TransUnion* requires" the asserted injury have a "close," "common-law analogue," and so courts must "look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort." *Popa*, 153 F.4th at 791 (emphases in original).

**C. Plaintiff's Allegations Confirm That No Amendment Can Cure the Lack of Concrete Harm.**

The central amendment to the SAC is to allege that the same third-party trackers that Plaintiff previously alleged in the FAC collected his IP address, device and browser type, and cookie identifiers, also collected URLs and other technical information about pages he visited while browsing sporting events on SeatGeek's website. That amendment does not cure the defect under *Popa* identified in the May 28 Order—it confirms it.

In *Popa*, the Ninth Circuit considered allegations that Microsoft's tracking technology collected "over 30 different categories" of information sufficient to "recreate website visitors' entire visit"—including users' "mouse movements, clicks, keystrokes," "URLs of the web pages visited," as well as other browsing activity and technical identifiers (*e.g.*, "device," "browser," and "operating system" characteristics). 153 F.4th at 786-87. Despite those allegations, the Ninth Circuit held that the plaintiff failed to allege the collection of "embarrassing, invasive, or otherwise private information" sufficient to establish a concrete privacy injury in connection with plaintiff's browsing of a pet supply website. *Id*. at 791.

This Court relied heavily on *Popa* in holding in its May 28 Order that Plaintiff lacked standing: "The allegations here are similar to the capture of the non-sensitive browsing activity in *Popa*" because the information allegedly collected from Plaintiff was also "record information where there is no reasonable expectation of privacy." May 28 Order at 6 (citing *Popa*, 153 F.4th at 786-87, 791). The Court also held that the alleged "offensiveness of SeatGeek's conduct"—placing trackers on its ticketing Website for the purported "surreptitious collection of [Plaintiff's] data to convert to digital profiles" and "send him targeted

advertisements"—did not establish standing either, since Article III requires that "the defendants generally must gather sensitive information or disclose it offensively (for example, inconsistently with promises to their users)," which Plaintiff had not alleged. *Id.* at 9. Finally, the Court rejected Plaintiff's "unjust-enrichment theory" of standing for not "plead[ing] a privacy interest in the information (IP addresses, approximate location, browsing activity, and device metadata) that might render any enrichment unjust," and because the unjust enrichment allegations were conclusory. *Id.*

The SAC makes no meaningful effort to address those deficiencies. Plaintiff does not allege the collection of sensitive information, conduct that could be considered highly offensive, or facts showing any alleged enrichment was unjust. Indeed, he leaves the theories this Court previously rejected materially unchanged.[3] Although the SAC identifies more examples of record information allegedly captured about his Website visits on a public ticketing website than he did in the FAC, *Popa* itself involved collection of the same types of data—and held they were insufficient to establish standing because such information is not "embarrassing, invasive, or otherwise private." May 28 Order at 5 (quoting *Popa*, 153 F.4th at 791); *see Popa*, 153 F.4th at 786-87, 791 ("the tracking of [plaintiff's] interactions" to browse for products, including her "URLs," button "clicks," and other metadata ("browser" and "device" identifiers, etc.), did not cause her "any kind of harm that is remotely similar" to those "actionable at common law"). Far from distinguishing *Popa*, Plaintiff's new allegations only confirm that *Popa* governs the SAC. *See* 153 F.4th at 791.[4]

Because Plaintiff's principal amendment falls squarely within conduct already addressed by *Popa* and the May 28 Order, the SAC still fails to allege a concrete injury.

**1. Plaintiff Cannot Allege "Sensitive" Information Required for Standing.**

The SAC does not allege anything sufficiently sensitive to support Plaintiff's standing. In deciding standing, courts must "look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort." *Popa*, 153 F.4th at 791 (emphasis in original). There must exist a "close,"

---

[3] *Compare* FAC ¶¶ 29-51 *with* SAC ¶¶ 33-55 (no changes to allegations re IP address collection); *compare* FAC ¶¶ 52-102 *with* SAC ¶¶ 56-110 (same allegations re tracking technologies except addition that URLs and other browsing data is collected); *compare* FAC ¶¶ 113-121 *with* SAC ¶¶ 121-130 (adding that Plaintiff browsed the Website for "NFL and MLB sporting events"); *see* SAC Ex. A at 9-15 (IP address allegations), 15-29 (tracking technology allegations), 29-31 (allegations about Plaintiff's experience on Website).

[4] "*Popa* distinguished its facts from those in *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 599 (9th Cir. 2020)," which, involved claims against a technology-company defendant that allegedly acquired "enormous amount of individualized data" across "countless" websites to create "cradle-to-grave profiles" on users. May 28 Order at 5. Plaintiff alleges no such scheme by SeatGeek here.

"common-law analogue" for the plaintiff's asserted injuries, *Popa*, 153 F.4th at 791, 792, and the Plaintiff must both (1) "identify the 'specific personal information [he] disclosed that implicates a protectable privacy interest,'" and (2) show that the "disclosure of [the information] would be 'highly offensive to a reasonable person.'" *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1178, 1179-80, 1183 (N.D. Cal. 2025) (citations omitted; rejecting standing based on asserted "invasion of privacy" and "unjust enrichment" theories of harm); *accord* May 28 Order at 5-9 (same). Under that framework, Plaintiff's allegations still fail because the information at issue remains routine browsing activity. And Plaintiff cannot even allege he provided anything else; he concedes that he is not a SeatGeek customer, SAC ¶ 131, and thus none of the pages he accessed implicate his personal information, much less his sensitive personal information. He alleges ***no*** account activity, ***no*** purchases, ***no*** capture of his contact information, and ***no*** interaction with SeatGeek beyond visiting its Website and viewing sports events.

Indeed, all the SAC alleges is that Plaintiff visited the Website and "searched for and browsed . . . NFL and MLB sporting events." SAC ¶ 123. But "standing in privacy cases based on browsing activity depends on whether the activity is private or personal enough"; for example, "shopping for eating disorder services" may create standing, whereas "shopping for a football jersey" and other garden-variety shopping behavior does not. *Doe v. Eating Recovery Ctr., LLC*, 806 F. Supp. 3d 1109,1113 n.3 (N.D. Cal. 2025). "As many courts have found, '[g]enerally, the internet is not a place where users have a reasonable expectation of privacy,'" such that "the mere act of shopping online, even for intimate products," does not itself create "a reasonable expectation of privacy." *Perez v. Romantix Online, Inc.*, No. 25-cv-2465, 2026 WL 1802589, at *2 (N.D. Cal. June 23, 2026) (citation omitted).[5] Visiting SeatGeek's public ticketing website to browse baseball and football tickets is no more private than the pet-supply browsing held insufficient in *Popa*. 153 F.4th at 791. Put simply, "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much." *Hubbard v. Google LLC*, No. 19-cv-7016, 2024 WL

[5] Put another way, "[t]here is no 'legally protected privacy interest'" in "electronic messages, 'in general.'" *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1035 (N.D. Cal. 2014) (citation omitted). A "privacy interest can exist, if at all," with respect to the "specific content" of [plaintiff's] messages," *id.*, and only to the extent it qualifies "under California law as 'confidential' or 'sensitive.'" *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) (citation omitted). But Plaintiff has not alleged a communication bearing *any* "content," *see infra*, Section V(C)(1), let alone content that courts have found confidential or sensitive. *See also, e.g.*, *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) ("Internet-based communications are not 'confidential'" because "such communications can easily be shared by, for instance, the recipient(s) of the communications.").

3302066, at *7 (N.D. Cal. July 1, 2024). Moreover, courts are even "less willing to find that users have a cognizable privacy interest in browsing data" when, as here, the defendant allegedly "collected [it] only while users interact with the website of the defendant company." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021); *cf.* May 28, 2026 Order at 4 (observing *Popa* involved the collection of plaintiff's "non-sensitive information" from "a single website").

Against this backdrop, federal courts recognize a protectable privacy interest arises only when a defendant "created an expectation of privacy" by a "misrepresentation" to users that tracking technology would not be used on the defendant's website, *Garcia v. Blackhawk Network, Inc.*, No. 25-cv-7550, 2026 WL 925028, at *4 (C.D. Cal. Apr. 1, 2026), or when the data collected is itself "sensitive," *e.g.*, "sensitive medical or financial information," *Popa*, 153 F.4th at 791. Without allegations implicating these narrow circumstances—none of which are alleged in any version of Plaintiff's complaints, *see* Dkt. 1, 25, 48—claims premised on the disclosure of users' ordinary interactions with the defendant's website confer no "concrete" injuries because "no reasonable expectation of privacy attaches" to such benign online data. *E.g.*, *Khamooshi*, 786 F. Supp. 3d at 1177-83.

The only data elements that Plaintiff plausibly alleges were acquired from him are not sensitive as a matter of law and, consequently, are insufficient to confer standing. Just like the technical information identified in the FAC, the URLs and other browsing activity about Plaintiff's visit to the Website to browse NFL and MLB events are "basic identification and address information" or, as the Ninth Circuit refers to it, "record information" that gives rise to no protected privacy interests. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106-09 (9th Cir. 2014) (no reasonable expectation of privacy in a "user's Facebook ID," URL of the "webpage the user was viewing," "name, address," or "subscriber number or identity"); *cf. Popa*, 153 F.4th at 791.[6] And as this Court ruled in its May 28 Order, Plaintiff's repetition of its allegations from the FAC that the data collected was allegedly "matched" to "user profiles" to send Plaintiff targeted ads does not transform unprotected "record information"—*i.e.*, "browsing activity" and "device-fingerprint" information—into a concrete privacy harm. May 28 Order at 6-7 (citing, *e.g.*, *Price v. Converse, Inc.*, 805 F. Supp. 3d 1102, 1105 (C.D. Cal. 2025) (no standing for disclosing

[6] Plaintiff speculates that the trackers are capable of collecting Website users' "email addresses" and "data entered into form fields," (SAC ¶ 71), but such conjecture is irrelevant absent factual allegations that Plaintiff *himself* submitted such information—which he expressly denies doing. *Id.* ¶ 131; *see Popa*, 153 F.4th at 791 n.5 ("To the extent [the] [ ] software could be offensive," plaintiff had not "link[ed] these potential, generalized harms to the operation of [the software] vis-à-vis Popa.").

online metadata used to "deanonymize" users and deliver "highly personalized" ads)).[7] "In line with *Popa*," "no concrete privacy injury arises" when "tracking software monitors IP addresses and other rudimentary browsing activity." *Magliocca v. United Healthcare Servs., Inc.*, No. 25-cv-3388, 2026 WL 878694, at *3 (E.D. Cal. Mar. 31, 2026). The "button clicks, page visits," and "URLs" to "browse . . . products" that form the core of the SAC's amendments are "exactly the kind of 'non-sensitive browsing activity on a single website that courts have repeatedly found insufficient to establish a concrete injury." *Id.* at *1, *4 (citation omitted).

Nor does Plaintiff's attempt to manufacture an injury in the SAC by adding that his "event searches" were captured change the outcome. SAC ¶ 123. The disclosure of search terms for basic consumer products or generic information does not create standing, "as an internet search does not inherently reveal private or sensitive information about that user." *Malko v. GNC Holdings, LLC*, No. 26-cv-1833, 2026 WL 2218133, at *4 (C.D. Cal. July 29, 2026) (plaintiff lacked standing where third-party trackers acquired his browsing activities, including his search for a "pre-workout product," since "[m]erely looking for a health-related product does not necessarily reveal anything about Plaintiff's own health information"). Indeed, even allegations that a defendant disclosed a plaintiff's searches for the "treatment of chlamydia" on an "informational health" website, in combination with other "metadata associated with his site visit," does not create the "legally protected privacy interest" required "for Article III standing," since "nothing about [those] searches indicate [they] were tied to" anything deemed "sensitive," such his "personal medical history." *Maghoney v. Dotdash Meredith, Inc.*, No. 24-cv-2394, 2026 WL 497402, at *2, *5 (S.D. Cal. Feb. 23, 2026).[8] If that alleged browsing for STD treatment

---

[7] Disclosing mundane browsing information, such as those Plaintiff complains of here about his "personal interests" in sports events that he never purchased tickets for, SAC ¶¶ 123, 131, are "similar to those rejected in *Popa*," *Dawidzik v. Tesla, Inc.*, No. 25-cv-1982, 2025 WL 3786963, at *5 (C.D. Cal. Dec. 29, 2025); *see also Rodriguez v. Culligan Int'l Co.*, No. 25-cv-225, 2025 WL 3064113, at *5 (S.D. Cal. Nov. 3, 2025) (no standing based on the alleged use of "tracking beacons" to collect IP address, browser name, cookies, geolocation, email address, "ad IDs," and "social media identities" because "users have no right to privacy" in such "metadata").

[8] Instructive here, decisions involving website users' "health" information draw a distinction between "sensitive" health-related searches giving rise to standing (*e.g.*, "Plaintiff made a specific kind of appointment related to a specific type of medical condition") *versus* "simply searching for and viewing health related internet content," which does not rise to an "actionable injury" under Article III. *Campbell v. Select Med. Corp.*, No. 25-cv-11408, 2026 WL 2056651, at *3 (C.D. Cal. July 14, 2026). This distinction compels dismissal all the more here, where Plaintiff alleges that he merely browsed for nondescript MLB and NFL events, revealing only a "generic" interest in certain teams—classically nonsensitive information. *Cf. Shah v. Talentbridge, Inc.*, No. 26-cv-222, 2026 WL 1507888, at *3 (C.D. Cal. May 28, 2026) (disclosure of browsing information that included the search "jobs no background check" held insufficient to confer standing, as the search revealed only a "generic" interest in "seeking a job without background checks"); *see Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 860-64 (S.D. Cal. 2023) (no standing based on tracking "brows[ing] for different products" on "health and wellness" and "personal information" entered into text fields); *see also Schallert*, 2026 WL 1707585, at *5 (dismissing for lack of standing; observing "it is not clear that Defendant's website—a site where users . . . learn about and purchase products designed to support their health—is capable of capturing the type . . . information

did not implicate a legally protected privacy interest, Plaintiff's searches on a public ticketing website for baseball and football tickets certainly do not. Plaintiff's nonsensitive shopping "preferences" are not "remotely similar" to the "embarrassing, invasive, or otherwise private information" held "actionable at common law" and thus sufficient to support standing. *Popa*, 153 F.4th at 786, 791; *see also, e.g.*, *Merical v. The Joint Corp.*, No. 26-cv-974, 2026 WL 2225531, at *12-13 (E.D. Cal. Aug. 3, 2026) (dismissing for lack of standing since the alleged disclosure of plaintiff's "generic information entered into a chiropractic website," including "her name, email address, phone number, and choice of clinic," did not "transform such information into PHI [private health information]" giving rise to a "cognizable privacy interest").[9]

At bottom, Plaintiff cannot establish harm by alleging the "collection of interaction metadata from a visit to a public website," at which time he "did not purchase any products, submit any forms, or provide any personal information." *Magliocca*, 2026 WL 878694, at *3; *cf.* May 28 Order at 6 ("[u]nder *Popa*," tracking "metadata generated by a visit to a public ticket-resale site" does "not resemble any traditional common-law privacy tort"). Plaintiff has no "expectation of solitude while browsing [SeatGeek's] online shopping platform," as he "would certainly not have such an expectation within the four walls of a real-world store," or, in this case, a box office line. *Garcia*, 2026 WL 925028, at *4. Because Plaintiff has tried and again failed to meet "*Popa*'s threshold" requirement to allege "sensitive" information, *id.*, the SAC should be dismissed without leave to amend.

**2. Plaintiff Cannot Allege "Highly Offensive" Conduct Giving Rise to Standing.**

Pleading no facts to satisfy the "first element" of a concrete privacy injury, *Garcia*, 2026 WL 925028, at *4, Plaintiff also fails to show the second element—that SeatGeek's alleged disclosure of his routine browsing information was "highly offensive," *Popa*, 153 F.4th at 791. Such disclosure to third parties is "'routine commercial behavior'" and "not a 'highly offensive' intrusion" into Plaintiff's privacy. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (citation omitted).

In assessing whether a defendant's conduct "meet[s] the highly offensive bar" for standing, courts observe that "tracking technologies may result in highly offensive conduct" when, for instance, the data collected

---

necessary to show a concrete injury").

[9] Plaintiff speculates that the trackers can capture users' "search results," but he does not allege plausible facts showing how users' searches are captured or what searches he entered on the Website, if any. SAC ¶¶ 69, 123; *compare with* RJN, Exs. 1-4. Standing cannot rest on such speculation about what technology is capable of doing: "Allegations about what the [W]ebsite *could* capture, as opposed to what it *did* capture from Plaintiff, are insufficient to confer standing." *Schallert v. Laird Superfood, Inc.*, No. 25-cv-12407, 2026 WL 1707585, at *5 (C.D. Cal. June 5, 2026) (emphasis in original).

is "especially sensitive" or when the "scope" of the defendant's data collection is "so broad" as to render it "highly offensive." *Garcia*, 2026 WL 925028, at *4-5.[10] This Court concluded similarly in its May 28 Order: to show "offensiveness" under Article III, "defendants generally must gather sensitive information or disclose it offensively (for example, inconsistently with promises to their users)." May 28 Order at 9. The FAC alleged *no* circumstances suggesting "highly offensive" conduct: *no* "sensitive information," and *no* "egregious conduct," such as where a defendant "lied" to users about its data-sharing practices. *Id*. at 7. The same is true of the SAC: the trivial addition that other types of browsing information were also collected, like the URLs Plaintiff visited while looking for tickets to public sporting events, does not cure the absence of concrete harm.

This is still not a case where a defendant "ignored" a user's "affirmative rejection of cookies" and continued to track the user anyway. *Rodriguez v. Brushfire Recs.*, No. 25-cv-9797, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025). Nor does the collection of additional, equally nonsensitive browsing information on a public ticketing website create any "increased privacy implications," like when a website is a "healthcare" platform, *id.*, or a defendant "gather[ed] [plaintiffs'] sensitive information (such as medical and health information)," May 28 Order at 6. "The disclosure of information about what products [p]laintiffs view on a sporting goods website"—or, in this case, what baseball or football game tickets Plaintiff may have viewed on a ticketing website, SAC ¶ 123—"does not qualify as 'highly offensive,'" *Myers v. Dick's Sporting Goods, Inc.*, No. 25-cv-3241, 2026 WL 1045528, at *3 (E.D. Cal. Apr. 17, 2026); *cf. Timothee v. Meta Platforms, Inc.*, No. 25-cv-5106, 2026 WL 1130363, at *5 (N.D. Cal. Apr. 27, 2026) (Beeler, J.) ("disclosing that [plaintiffs] accessed food-resource information on a public website," including their addresses and answers to "multiple questions" to determine their "mobility status" and "financial hardship," does "not establish an injury-in-fact"); *Malko*, 2026 WL 2218133, at *3-4 (no concrete injury because the alleged disclosure of plaintiff's browsing interactions and search for a "pre-workout product" did not implicate his "sensitive health information").

---

[10] The "routine collection of personally identifiable information" may become a "highly offensive" privacy invasion where "*sensitive* personally identifiable information" is tracked, or where the defendant "disregard[ed] Plaintiff's privacy choices while simultaneously holding themselves out as respecting them." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (emphasis added). Absent such circumstances, case law is well-established that disclosing "browsing history and personal information on a public website is 'routine commercial behavior' and not 'highly offensive.'" *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126 (S.D. Cal. 2023) (citation omitted) (no privacy intrusion based on disclosure of browsing history, including searches, page clicks, and Facebook IDs, for plaintiff's "medical condition, prescriptions, diagnoses, and test results"); *see, e.g.*, *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064, 1067 (C.D. Cal. 2024) (same where plaintiffs "used Defendant's Website for routine medical searches and inquiries"); *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 973, 988 (N.D. Cal. 2014) (same where defendant allegedly disclosed users' "personal identifying information, browsing habits, search queries" and other data in a manner "contrary to [its] own policies.").

Plaintiff also has not alleged that the "scope" of the alleged tracking was "so broad" that it is "highly offensive." *Garcia*, 2026 WL 925028, at *4. Cases where the alleged tracking is held "highly offensive" involve "consumer profiles" containing users' "activity across browsing sessions and websites" that "were created by *the Defendant*," not by "non-parties" like Meta, TikTok, and Microsoft here. *Id*. (emphasis added). The defendant in *this* suit is and always has been SeatGeek, and all Plaintiff alleges is that SeatGeek embedded "three tracking pixels that caused the user's browser to transmit certain data to third-party servers *only when* the user visited [SeatGeek's]'s website." *Dawidzik*, 2025 WL 3786963, at *4 (emphasis added); *cf.* SAC ¶¶ 71, 124 (alleging the third parties acquired "information concerning the *exact webpages*" Plaintiff visited on the Website) (emphasis added). This is not enough.

Equally as specious is Plaintiff's recycled allegation previously rejected by the Court that he "received targeted advertising" after visiting the Website. SAC ¶ 126. Although the SAC clarifies that the targeted advertising he allegedly saw "relat[ed] to NFL searches he performed on the Website," *id.*, this embellishment does not respond in any way to this Court's "conclusion that receiving a targeted ad" is not a "concrete injury" when, as here, it is based "on the receipt of non-confidential information," May 28 Order at 8. Even when plaintiffs allege that they were "repeatedly targeted with ads directed at their financial hardships," which "reminded them of their hardships and stigmatized them," such allegations are not "highly offensive." *Timothee*, 2026 WL 1130363, at *4-5. By comparison, certainly seeing an ad for something as benign as a pro sports team does not state "highly offensive" conduct either. *Id*.

The bottom line is the collection of "routine website interaction data" from a "visit to a public website"—including "button clicks, page visits," and "URLs" to browse "products"—alleges no harm. *Magliocca*, 2026 WL 878694, at *3-4 (citing *Popa*, 153 F.4th at 792). Accordingly, Plaintiff has not alleged *any* intrusion into his privacy, let alone one that is "highly offensive." May 28 Order at 11.

**3. Plaintiff's Unjust Enrichment Theory of Harm Fails to Allege a Concrete Injury.**

Plaintiff's unjust-enrichment theory is materially unchanged from the theory this Court rejected in its May 28 Order. This Court held that the FAC did "not plausibly plead[] a privacy interest in the information . . . that might render any enrichment unjust," and that its "allegations about unjust enrichment [were] conclusory, amounting only to SeatGeek and the third parties 'unjustly enriched' themselves." May 28 Order at 9. The SAC makes no meaningful effort to address either deficiency. *See* SAC Ex. A (reflecting no revisions between SAC

¶¶ 128, 156(i) and FAC ¶¶ 119, 147). As it was before, Plaintiff still has not plausibly alleged that "(1) [SeatGeek's] actions were unjust and (2) [SeatGeek] was enriched as a result." *Khamooshi*, 786 F. Supp. 3d at 1182-83. Plaintiff does not allege a new privacy interest in the information at issue or identify any new category of sensitive information. Nor does he allege new facts showing how SeatGeek was enriched, why any enrichment was unjust, or why Plaintiff retains a stake in any alleged profits. He still alleges no "fraud" or "coercion," *Dawidzik*, 2025 WL 3786963, at *5, and no "actionable misrepresentation or omission," *Hammerling*, 615 F. Supp. 3d at 1096. Instead, Plaintiff repeats the same theory this Court already rejected, regurgitating that SeatGeek was "unjustly enriched" by acquiring his information and using it to "maximize revenue." *Compare, e.g.*, FAC ¶ 147 *with* SAC ¶ 156(i). Thus, it remains that "[j]ust as a retailer might profit from the use of home addresses without being unjustly enriched," Plaintiff still has "not shown why [SeatGeek's] use" of his information "was unjust." *Khamooshi*, 786 F. Supp. 3d at 1183.

Because Plaintiff has not meaningfully amended the theory, the Court's prior analysis holds, and Plaintiff's unjust enrichment theory of standing should be rejected again. May 28 Order at 9; *see also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 835 (N.D. Cal. 2020) ("assertion that Defendants garnered 'substantial profits' from the information is purely conclusory").

## V. PLAINTIFF CONFIRMS HE CANNOT PLAUSIBLY STATE A CLAIM FOR RELIEF

### A. Standards for Motions to Dismiss Pursuant to Rule 12(b)(6)

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Courts must generally accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *See Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

**B. Plaintiff's Invasion of Privacy and Intrusion Upon Seclusion Claims Fail Again.**

Claims for invasion of privacy and intrusion upon seclusion have similar elements, both requiring a "reasonable expectation of privacy" intruded upon in a "highly offensive" manner. *Hammerling*, 615 F. Supp. 3d at 1088.[11] Courts must evaluate whether the alleged invasions are "sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill v. Nat'l Collegiate Athletic Ass'n.*, 7 Cal. 4th 1, 37 (1994). When, as here, "allegations 'show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law.'" *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).

The allegations supporting Plaintiff's invasion-of-privacy and intrusion-upon-seclusion claims are materially unchanged from those rejected in the FAC. The SAC makes no substantive revisions to the allegations pled within those causes of action. *See* SAC Ex. A at 37-40 (comparing FAC ¶¶ 159-177 with SAC ¶¶ 168-186). The only difference is that Plaintiff now incorporates his new allegations that the same tracking technologies collected more examples of the same nonsensitive browsing activity—like URLs, page visits, and button clicks—about his looking for NFL and MLB tickets on the Website. *E.g.*, SAC ¶¶ 1, 5, 123. But just as that did not change the standing analysis, *supra*, Section IV(C), it does not change the merits analysis, either. As this Court already explained, there is "no reasonable expectation of privacy" in such information, May 28 Order at 6 (citing *Popa*, 153 F.4th at 791), so Plaintiff still "has not pleaded [i] that his browsing information was embarrassing or sensitive data or [ii] that its disclosure would be highly offensive." *Id.* at 11.

First, Plaintiff has no reasonable expectation of privacy in the data he alleges was captured. The "new" data Plaintiff alleges—including URLs, page visits, and button clicks—is, as the Ninth Circuit has held, also "record information" where there is no reasonable expectation of privacy. *In re Zynga*, 750 F.3d at 1108 (no "expectation of privacy" in "record information" that is not "content," like "the address of the Facebook webpage the user was viewing"); *see also supra*, Section IV(C)(1); *Merical*, 2026 WL 2225531, at *13 n.7, *18 ("[t]he Court here has no hesitation in finding that this claim [for invasion of privacy] fails" for "substantially similar reasons discussed in the standing analysis"; because plaintiff's interactions with defendant's website, which included "the inputting of her name, phone, email, and clinic of choice in seeking a chiropractic service,"

[11] In addition to requiring a "legally protected privacy interest," intrusion upon seclusion requires "a reasonable expectation of privacy" which is intruded in a manner highly offensive to a reasonable person," while invasion of privacy requires "a reasonable expectation [of] privacy" and an "intrusion is so serious as to amount to an egregious breach of the social norms." *Hammerling*, 615 F. Supp. 3d at 1088.

was "generic in nature (*e.g.*, not her social security number, bank account information, etc.)," so she "ha[d] not alleged that any of her PII was of a nature to establish a cognizable privacy interest").

Second, that Plaintiff now alleges *more* nonsensitive record information was also collected does not alter the conclusion that compelled dismissal of the FAC—that the "disclosure of a user's browsing history and personal information on a public website" is "not 'highly offensive.'" *Cousin*, 681 F. Supp. 3d at 1126 (citation omitted); *see supra*, Section IV(C)(2) (collecting cases); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (same for unique device IDs and geolocation information); *Low*, 900 F. Supp. 2d at 1025 (same for browsing history); May 28 Order at 9-11 (dismissing Plaintiff's privacy and intrusion claims because SeatGeek did not allegedly "gather sensitive information or disclose it offensively (for example, inconsistently with promises to their users)").[12]

Thus, Plaintiff has not stated an invasion of privacy or intrusion upon seclusion claim.

**C. Plaintiff Fails to State a Wiretapping Claim Under CIPA § 631.**

Section 631(a) of CIPA prohibits "[1] intentional wiretapping, [2] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978). A "fourth basis for liability" exists for anyone who "aids, agrees with, employs, or conspires with" any person that has directly violated the statute under any of the three bases for liability. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021). The first clause does not apply to "communications over the internet," *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1014 (C.D. Cal. 2023), and because SeatGeek is a "party" to Plaintiff's communications, it is exempt from direct liability under the first, second, and third clauses, *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021) (Beeler, J.). Plaintiff asserts only that SeatGeek violated the fourth basis, purportedly aiding and abetting third parties to violate the second and third clauses. SAC ¶ 160(ii). Each aspect of this claim fails.

---

[12] *See also Posadas v. Goodyear Tire & Rubber Co.*, No. 23-cv-402, 2024 WL 5114133, at *7 (S.D. Cal. Dec. 13, 2024) (dismissing intrusion claim because the "complaint contains no factual allegations that Plaintiff disclosed *intimate or sensitive* personally identifiable information") (emphasis added); *Saleh*, 562 F. Supp. 3d at 524–25 (plaintiff had no "expectation of privacy over his activity on Nike's Website"); *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1043-44 (S.D. Cal. 2024) (no intrusion because there "is no supporting allegation that Plaintiff's engagement with the Drift chat feature" produced "content likely to be embarrassing."); *B.K.*, 721 F. Supp. 3d at 1064, 1067 (dismissing privacy claims in Meta pixel case for lack of "highly offensive" conduct where plaintiffs "used Defendants' Website for routine medical searches and inquiries").

**1. Plaintiff Fails To Allege Violation of Section 631(a)'s Second Clause by Any Third Party.**

Plaintiff's claim under the second clause fails because he alleges no facts showing a third party: (i) intercepted the "contents" of a communication, or (ii) "read" such communication while it was "in transit."

a. <u>Plaintiff does not and cannot allege the interception of "contents."</u>

Section 631(a) only prohibits the unlawful interception of the *contents* of a communication. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). A communication's "contents" are the "intended message conveyed by the communication," which is distinct from "record information" that conveys the "characteristics" of a communication. *In re Zynga*, 750 F.3d at 1106. Non-actionable "record information" includes the "address of [a] webpage the user was viewing," the user's "name" and "address," "subscriber number and identity," and other "basic identification and address information," *id.* at 1106-09, such as keystrokes, mouse clicks, IP addresses, location, browser and operating-system details, and other "routine identifiers," regardless of whether they were "automatically generated or not," *Yoon*, 549 F. Supp. 3d at 1082.

At the outset, this claim fails because it rests on amended allegations wholly inconsistent with Plaintiff's prior pleading (and Count 3 of the SAC alleging a violation of Section 638.51, which is expressly incorporated into the Section 631 claim). Although none of the data allegedly collected from Plaintiff is the "contents" of a communication, by alleging that the trackers are capable of collecting "contents," SAC ¶ 154(i), the SAC expressly contradicts the FAC and is internally inconsistent because both the FAC and SAC allege that the trackers were also "pen registers" under CIPA § 638.51. By definition, though, pen registers collect only "dialing, routing, addressing, or signaling information . . . but *not the contents* of a communication," FAC ¶¶ 152, 153 (emphasis added; quoting Cal. Penal Code § 638.50(b)); SAC ¶¶ 161, 162 (same); *see also Rodriguez v. Sony Computer Ent. Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015) (amended complaint must be "consistent with the [prior] pleading"); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 297 (9th Cir. 1990) (when leave to amend is granted, the "amended complaint may only allege 'other facts consistent with the [prior] challenged pleading'") (citation omitted). Thus, by alleging that the tracking technologies can collect contents, Plaintiff contradicts the allegations that they are pen registers as stated in the FAC (and maintained in the SAC).

At any rate, Plaintiff has not alleged communicating any "contents" to the Website and thus cannot allege such "contents" were collected as necessary to state a claim under CIPA § 631. Plaintiff's "button clicks" to view webpages about sporting events are "record information that the Ninth Circuit has held not to be contents

of a communication." *King v. Hard Rock Cafe Int'l (USA), Inc.*, No. 24-cv-1119, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025). Similarly, while Plaintiff alleges that he "searched for and browsed . . . NFL and MLB sporting events," SAC ¶ 123, allegations that plaintiffs typed "search terms" into a website's search bar for vague categories of information (*e.g.*, that plaintiff "searched" for information related to "health conditions") does "not specify" a plaintiff's online browsing activity in sufficient detail to plausibly state a CIPA claim, *Harrill v. Emanuel Med. Ctr.*, No. 23-cv-1672, 2025 WL 1635428, at *4, *10 (E.D. Cal. June 9, 2025). Courts "will not assume out of whole cloth what the contents of any communications were." *Heiting*, 709 F. Supp. 3d at 1018.[13] On this basis alone, Plaintiff's Section 631(a) claim should be dismissed.

b. <u>Plaintiff fails to allege any third party "read" his communications while "in transit."</u>

Plaintiff's Section 631(a) claim also fails because there are no facts showing that a third party "read" the contents of any communication "while the same [was] in transit." Cal. Penal Code § 631(a). "To be liable, the [third-party] eavesdropper must listen to a communication 'while the [communication] is in transit' . . . . 'While' is the key word here." *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023). The "crucial question" is whether the plaintiff plausibly alleged that a third party "read" her communication "*before* it reached its intended recipient." *Crano v. Sojern, Inc.*, No. 25-cv-2600, 2025 WL 2689267, at *7 (N.D. Cal. Sept. 19, 2025) (emphasis added; internal quotations and citation omitted).

Bare assertions that third parties intercepted and read users' communications in "real time," *e.g.* SAC ¶¶ 5, 68, 157(ii), do not satisfy this requirement, *see Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1084 (C.D. Cal. 2023) (allegation of interception "during transmission and in real time" is "conclusory and does not allege specific facts as to how or when the interception takes place"); *Twombly*, 550 U.S. at 555. Beyond this boilerplate assertion, Plaintiff alleges *nothing* about whether his communications were read "*before* [SeatGeek] received" them. *Valenzuela v. The Kroger Co.*, No. 22-cv-6382, 2024 WL 1336959, at *2 (C.D. Cal. Mar. 28, 2024) (emphasis in original); *see also Keurig*, 674 F. Supp. 3d at 758 (allegation that a third party's

---

[13] Bare allegations that a plaintiff "searched" for information on a website does not qualify as "contents." *Beltran v. Doctor's Med. Ctr. of Modesto*, No. 23-cv-1670, 2025 WL 1635467, at *5 (E.D. Cal. June 9, 2025) (allegations that plaintiffs used website "to search for information related to symptoms or conditions they were experiencing" held "deficient" to state CIPA claim); *see also Cousin*, 681 F. Supp. 3d at 1123, 1130 (same where plaintiffs "search[ed] for medical specialists"); *King*, 2025 WL 1635419, at *4 (same where complaint did not allege specific "searches" plaintiff typed that were supposedly transmitted via "full-string URLs"). And, if anything, the Website's search functionality—providing a drop-down list of links that, when clicked on, do not pass along the user's search terms via the URL that is generated (*see* RJN, Exs. 1-4)—indicates that Plaintiff cannot plausibly allege that his URLs contained search terms that he typed (if any), *see also supra*, Section II.

technology allowed it to "eavesdrop upon" communications "in real time" was "entirely speculative"). Plaintiff is required to plead facts, not legal conclusions masquerading as facts.

Moreover, even if Plaintiff had plausibly alleged facts to show that the trackers "intercept[] the contents of [his] communications in real time," he fails to allege facts "indicat[ing] that [a third party] *reads or attempts to read* the contents of the communication *while they are in transit*." *Torres v. Prudential Fin., Inc.*, No. 22-cv-7465, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (emphasis added); *see also Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024) ("the phrase 'reads, or attempts to read, or to learn . . .' in CIPA requires some effort at understanding the substantive meaning of the message, report or communication"); *compare with* SAC ¶ 158 (conclusorily alleging the "reading" of communications happened while "in transit"). "[M]erely intercepting the communication while it's being made" is not enough; "you also have to 'read' the communication while it's in transit—that is, you have to do something more than just intercept the contents of the communication or redirect them to yourself during the virtually infinitesimal amount of time it takes for the communication to travel from the website visitor to the website operator." *Doe*, 806 F. Supp. 3d at 1117.[14] Plaintiff makes no attempt to plead facts to support this element.

In sum, Plaintiff alleges no facts that would support an inference that TikTok, Meta, or Microsoft intercepted—much less read—his browsing interactions in transit, *i.e.*, *before* SeatGeek received them, requiring dismissal of his Section 631(a) claim. *E.g.*, *Heiting*, 709 F. Supp. 3d at 1019.

**2. Plaintiff Also Does Not Allege a Violation of Section 631(a)'s Third Clause.**

Plaintiff has not alleged a violation of the third clause of Section 631(a) because he does not allege a "violation of clauses one or two." *Crano*, 2025 WL 2689267, at *7; *see supra*, Section V(C)(1).

**3. Plaintiff Does Not Allege SeatGeek Aided and Abetted a CIPA Violation.**

Because Plaintiff fails to allege a third party's direct violation of Section 631(a), he cannot show SeatGeek is liable for aiding and abetting under the statute. *See Keurig*, 674 F. Supp. 3d at 759.

Even if Plaintiff had alleged another party's direct violation of Section 631(a), this claim would still fail because the SAC lacks "sufficient facts" that SeatGeek "*knew* the perpetrator intended" to violate the statute

[14] Plaintiff alleges "TikTok, Meta, and Microsoft intercepted, read, and analyzed users' communications and then selected which part of the communication data to use for their advertising and analytics purposes," but does not allege *when* this process takes place (*i.e.*, before or after the communications were received by SeatGeek). SAC ¶ 158(ii). Such "filtering process" is not actionable if it "takes place after the communication has already traveled from the website visitor to the website operator." *Doe*, 806 F. Supp. 3d at 1117.

and, bearing this knowledge, that SeatGeek "*intended* to aid and abet the perpetrator in committing the crime." *Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-0102, 2024 WL 3761293, at *2-3 (S.D. Cal. Aug. 5, 2024) (emphasis in original). It is not enough to have simply "allowed" a third party to "captur[e]" users' data. *Kroger*, 2024 WL 1336959, at *4. Rather, to plausibly allege that SeatGeek aided and abetted, Plaintiff must allege facts showing that SeatGeek "knew" the third party's interception "constituted a breach" of the statute. *Id*. Without "facts demonstrating [d]efendant acted with the requisite knowledge or intent," a defendant is not liable for aiding and abetting under Section 631(a). *Heiting*, 709 F. Supp. 3d at 1019. Here, Plaintiff alleges no facts suggesting SeatGeek had the "requisite knowledge or intent" to aid a third party's violation of CIPA, *id.*; he merely concludes that SeatGeek "acted intentionally or, alternatively, with knowledge that TikTok's, Meta's, and Microsoft's unauthorized interception" of his communications "would be a violation of CIPA." SAC ¶ 161(ii). These threadbare allegations are not *facts* that SeatGeek "knew" that the alleged use of third-party technology was a purported "breach of some duty." *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (S.D. Cal. 2024); *see also Twombly*, 550 U.S. at 555 (Rule 8 "requires more than labels and conclusions").

With no "factual allegations, no plausible inference can be drawn that [SeatGeek] knowingly aided or assisted [third parties], in violation of § 631(a)." *Smith v. YETI Coolers, LLC*, No. 24-cv-1703, 2025 WL 877127, at *2 (N.D. Cal. Mar. 14, 2025).

### D. Plaintiff's Claim Under CIPA § 638.51 Should be Dismissed or, Alternatively, Stayed.

Plaintiff's Section 638.51 claim fails because he now alleges that the third-party trackers can collect the "contents" of users' communications. SAC ¶ 156(ii). Because pen registers are, by definition, incapable of collecting contents, having so alleged, Plaintiff concedes that the technologies are not "pen registers" under CIPA and thus cannot be the basis for a claim under Section 638.51. To the extent this Court does not dismiss Plaintiff's Section 638.51 claim, the Court should await the Court of Appeal's forthcoming decision in the *Variety* Appeal to determine the merit of the claim, as that case is set to decide whether Section 638.51 applies to web-based conduct at all.

#### 1. Plaintiff's CIPA § 638.51 Claim Fails Because the SAC Alleges the Third-Party Trackers are Capable of Acquiring "Contents."

Contradicting his allegations that the third-party trackers can acquire a communication's "contents" under CIPA § 631, SAC ¶ 156(ii), Plaintiff inexplicably continues to insist that these trackers are also "pen

registers" prohibited by CIPA § 638.51 that do *not* collect "the contents of a communication," *id.* ¶ 161(i), 162(i). He cannot do so because the claims are mutually exclusive. The "definition of 'pen register' for Section 638.51. . . *explicitly excludes* those that record 'the contents of a communication.'" *In re Apple*, 824 F. Supp. 3d at 897 (emphasis added) (quoting Cal. Penal Code § 638.50(b)). To be clear, none of Plaintiff's alleged Website interactions constitute "contents" under CIPA, *see supra*, Section V(C)(1)(a), but the point here is that, because Plaintiff now admits that the trackers are allegedly *capable* of collecting "contents" *and* non-content data, this claim cannot survive because "the definition of a 'pen register' . . . include[s] the phrase 'but not the contents of a communication.'" *Balabbo v. Wildflower Brands, LLC*, No. 25STCV20971, 2026 WL 1122773, at *5 (Super. Apr. 6, 2026). Put simply, if a tracker can collect contents, it is not a pen register.

Plaintiff can offer no reason to depart from this clear statutory direction that excludes devices that can record "contents" from the definition of a pen register. *Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *3 (Super. Ct. Apr. 1, 2025) ("For purposes of Section 638.51," "neither a pen register nor a trap and trace device can decode 'the contents of a communication.'") (quoting Cal. Penal Code § 638.50(b), (c)). As another court in this District explained, the "crucial distinction" here is that pen registers "capture 'information *about* a communication '*but not the contents*'" of a communication"; if not just "metadata" but also "content information" is tracked, then "§ 638.50 does not apply." *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 851-52 (N.D. Cal. 2025) (citation omitted; emphasis in original).[15]

Nor can Plaintiff "salvage these contradictory claims by arguing" that he is "permitted to plead [his] pen register claim in the alternative under [Rule] 8(d)(3)," as he plainly has "not done so" in the SAC. *In re Apple*, 824 F. Supp. 3d at 897-98; *cf.* SAC ¶¶ 159(i)-164(i), 165-167, 150(ii)-164(ii). Plaintiff's "contradictory claims" are "ground[s] for dismissal of [his] pen register claim." *In re Apple*, 824 F. Supp. 3d at 897.

### 2. Alternatively, if Not Dismissed, the Court Should Stay Plaintiff's CIPA § 638.51 Claim Pending the *Variety* Appeal.

If the Court does not dismiss Plaintiff's CIPA § 638.51 claim, that claim should instead be stayed, because the California Court of Appeal is set to decide whether Section 638.51 applies to the online tracking

---

[15] *See also Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-1473, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) (same). Similarly, under Section 638.51's federal analogue, the Pen Register Act, 18 U.S.C. § 3121 *et seq.*, courts recognize that "pen registers . . . , by definition, do not record 'the contents of any communication.'" *E.g.*, *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 450 (C.D. Cal. 2007).

technologies alleged in the SAC, and the parties should not expend resources litigating a claim that may soon be mooted by that decision.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Erceg v. LendingClub Corp.*, 475 F. Supp. 3d 1071, 1074 (N.D. Cal. 2020) (citing *Landis v. N. Am. Co.*, 299 U.S. 248 (1936)). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). In deciding whether to issue a stay "under *Landis*," courts consider three factors: "the possible damage which may result from the granting of a stay," the "hardship or inequity which a party may suffer in being required to go forward," and the "orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). All three factors require a stay of Plaintiff's Section 638.51 claim pending decision in the *Variety* Appeal.

a. <u>The *Variety* Appeal will decide whether CIPA § 638.51 applies online.</u>

On January 23, 2025, plaintiff Sean Rose ("Rose"), on behalf of a putative class of California residents who visited defendant Variety Media, LLC's ("Variety") website, www.variety.com, filed a complaint against Variety that asserts a Section 638.51 claim based on allegations that Variety used third-party tracking technology on its website to collect Rose's IP address and his device and browser type in violation of CIPA § 638.51. RJN, Ex. 5 (Variety's petition for a writ of mandate in the *Variety* Appeal) ("Writ Petition"), at 17. As SeatGeek argued in seeking dismissal on Plaintiff's Section 638.51 claim in the FAC, Variety demurred on grounds "that Section 638.51's text, structure, and history, among other considerations, precluded its application to online, non-telephonic data collection," *id.* at 20, but the superior court concluded that Section 638.51's language was sufficiently expansive to apply to web-based activities. *Id.* at 21.

Variety filed the Writ Petition on November 21, 2025, seeking appellate review of the order overruling its demurrer. *Id.* at 28. In its petition, Variety asked the California Court of Appeal to decide whether Section 638.51 was intended "to regulate online tracking technologies [and] routine website operations." *Id.* at 24. On January 8, 2026, the Court of Appeal issued an Order to Show Cause why Variety's petition should not be granted. RJN, Ex. 6. Briefing in the *Variety* Appeal ended on July 24, 2026, and oral argument is scheduled for

August 25, 2026. RJN, Ex. 7. While it is not known when precisely a decision will issue, courts issuing stays pending the *Variety* Appeal have held that "a ruling sometime this year is a reasonable estimate." *Casillas v. Anytime Fitness Franchisor LLC*, No. 24STCV28431, 2026 WL 1365282, at *3 (Super. Ct. May 12, 2026).

The Court of Appeal is thus set to decide in the near term a threshold issue raised by Plaintiff's claim under Section 638.51: whether the statute even applies to web-based technologies. All three *Landis* factors support a stay until this crucial question of law is answered in the *Variety* Appeal. *Lockyer*, 398 F.3d at 1110.

b. Any prejudice to Plaintiff caused by a stay is minimal.

Plaintiff cannot identify prejudice that may result from a *brief* stay pending the *Variety* Appeal, which is set to last only while the California Court of Appeal resolves whether Plaintiff's CIPA § 638.51 claim even applies to web-based technologies. *See Dominguez v. Sonesta Int'l Hotels Corp.*, 648 F. Supp. 3d 1162, 1174, n.2 (N.D. Cal. 2023) (granting stay pending decision of an appeal that "will provide important guidance" where the length of time to resolve the appeal was unknown but not "indefinite").[16] Further, a short stay "will result in minimal harm to the parties and will eliminate a potential hardship by not requiring the parties to go forward with premature discovery." *Erceg*, 475 F. Supp. 3d at 1077. Because the Court continued the Case Management Conference and the parties' Rule 26(f) conference until after this motion to dismiss is resolved (*see* June 17, 2026 Order (Dkt. No. 47)), discovery is already stayed. "Courts are more likely to grant a stay when," as here, "the case is still in the early stages, and when there are no immediately pressing deadlines or trial dates." *Skulevold v. SD&A Teleservices, Inc.*, No. 20-cv-2771, 2020 WL 7711834, at *4 (C.D. Cal. Nov. 18, 2020). Thus, Plaintiff will not suffer any prejudice that comes close to outweighing the clear benefits from a brief stay.

c. SeatGeek will face significant hardship if the Court permits this claim to proceed.

The benefits to the parties and the Court from a temporary stay pending the *Variety* Appeal clearly outweigh any marginal hardship that Plaintiff may experience in the brief interim. "[T]he benefits of proceeding with a definite legal standard will more than make up for the costs of delay." *Lew v. Countrywide Fin. Corp.*, No. 08-cv-1993, 2009 WL 1384975, at *2 (N.D. Cal. Feb. 24, 2009). "[R]egardless of the outcome in [the *Variety* Appeal], it is true that the parties will seek, and be willing to provide, different discovery depending on the [appellate] guidance." *Gabriella v. Wells Fargo Fin., Inc.*, No. 06–4347, 2009 WL 188856, at *1 (N.D. Cal.

---

[16] Courts routinely hold that even a stay lasting a year, which is longer than the *Variety* Appeal is expected to be pending (*see Casillas*, 2026 WL 1365282, at *3), is not prejudicial to a plaintiff where, as here, the pending appellate decision "may directly impact" a threshold issue in the case. *See, e.g.*, *Ramirez v. Trans Union, LLC*, No. 12-cv-632, 2015 WL 6159942, at *2 (N.D. Cal. June 22, 2015).

Jan 26, 2009). Further, engaging in litigation only to have the Court's ruling undone would work substantial prejudice on both parties. *See, e.g.*, *In re Taco Bell Wage & Hour Actions*, No. 07-cv-1314, 2011 WL 3846727, at *3 (E.D. Cal. Aug. 30, 2011) ("Plaintiff's . . . claims are governed by state law. The law is in a state of flux. It is irrational to proceed to resolve certification before state law has been clarified.").

d. A stay will simplify the issues and promote judicial economy.

A stay is in the interests of justice because the forthcoming appellate decision will simplify the issues in this case and control how this Court should apply Section 638.51 to the online technologies at issue. When "there is relevant precedent from the state's intermediate appellate court," this Court "must follow the state intermediate appellate court decision," absent "convincing evidence that the state's supreme court likely would not follow it." *Ryman v. Sears, Roebuck and Co.*, 505 F.3d 993, 994 (9th Cir. 2007).

A "stay preserves the status quo while the Court of Appeal clarifies the statutory foundation on which [Plaintiff's CIPA § 638.51] claim rests." *Ramos v. Amazon.com, Inc.*, No. 24-cv-089, 2026 WL 1045665, at *11 (C.D. Cal. Apr. 17, 2026). "Before the parties and the Court expend further resources litigating and adjudicating the claim . . . under a statute whose contours the Court of Appeal is expected to define imminently, the orderly course of justice favors a brief pause." *Id*. at *1. "It would be a waste of judicial resources to try to guess" how the Court of Appeal "will decide [the *Variety* Appeal]," which "easily could be determinative of Plaintiff's claims" under CIPA § 638.51. *Erceg*, 475 F. Supp. 3d at 1076-77.[17] "The applicability of [CIPA's] Trap and Trace Law to internet devices is a recurring issue," and "judges have had to consider conflicting federal decisions without the benefit of a published opinion from the California Court of Appeal." *Rodriguez v. Dish Network L.L.C.*, No. 25STCV06310, 2026 WL 1468210, at *3 (Super. Ct. Apr. 28, 2026). Because "[a]ll will benefit from a published appellate opinion that brings clarity to this issue" in "*Variety*," a "stay will advance the interests of justice and judicial economy while avoiding duplication, inconsistencies, piecemeal litigation, and unnecessary costs." *Casillas*, 2026 WL 1365282, at *2-3.

---

[17] As an added benefit to issuing a stay, the California Legislature is expected to enact legislation this year that retroactively eliminates Section 638.51's private right of action, thereby mooting this claim potentially before the *Variety* Appeal is resolved. In 2025, in response to the "barrage of CIPA lawsuits" aimed at the use of "common digital tools," California's Senate passed Senate Bill ("SB 690") to clarify that the conduct alleged here is not covered by CIPA. RJN, Ex. 8 at 10. Now before the California Assembly, SB 690 was recently amended and, in its current form, will remove the private right of action under CIPA 638.51, and retroactively apply to all claims brought in any action commenced within two years before the law goes into effect on January 1, 2027 (*i.e.*, any action brought from January 1, 2025, onward, which would include *this* action). *Id.*, Ex. 9 at 23-24. On July 1, 2026, the amended SB 690 passed the Assembly's committee on privacy and consumer protection, and it will be considered next by the Assembly's appropriations committee. *Id.*, Ex. 10.

**E. Plaintiff's CDAFA Claim Fails Because Plaintiff Still Alleges No "Damage or Loss."**

"To bring a private civil cause of action under section 502, which is otherwise a criminal statute, a plaintiff must plead that she 'suffers damage or loss' due to the criminal violation." *Heiting*, 709 F. Supp. 3d at 1020. The "CDAFA's private right of action contemplates some damage to *the computer system, network, program, or data contained on that computer*, as opposed to data generated by a plaintiff while engaging with a defendant's website." *Id.* at 1021 (citing Cal. Penal Code § 502(e)(1)) (emphasis added). A "loss of control" over data, including "IP address information and other identifying information," is not a damage or loss "contemplated by the CDAFA." *Id.* at 1020-21. Such claimed "privacy invasions" or "loss in value of misappropriated data" do not qualify as harms under the CDAFA. *Id.* at 1021.[18]

The SAC bases Plaintiff's CDAFA claim on the ***exact same*** allegations that this Court deemed inadequate the May 28 Order. Indeed, Plaintiff did not amend the operative loss allegations at all, maintaining that SeatGeek was supposedly "unjustly enriched" by acquiring his "identifying information" and using it to "maximize revenue" from "selling advertising space" on its Website. *Compare* FAC ¶ 147 *with* SAC ¶ 156; SAC Ex. A at 35. As this Court already ruled, "SeatGeek's benefiting from [Plaintiff's] data does not mean that he suffered a loss." May 28 Order at 12 (citing *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (rejecting that internet users' "loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data" is "damage or loss" within the meaning of the statute"); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025) ("Even "if a company made money off of the sharing or use of a plaintiff's information, that company's gain of money does not equal a plaintiff's loss of money or property."); *see also Oracle Corp. v. SAP AG*, 734 F. Supp. 2d 956, 969 (N.D. Cal. 2010) (CDAFA permits "only the recovery of compensatory damages" not "unjust enrichment/restitution"); *Doe v. Cnty. of Santa Clara*, No. 23-cv-4411, 2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024) (loss "based on the value of the data that the [defendant] took and derived a benefit from given the multi-billion-dollar industry for the sale and purchase of private [personal] data" insufficient). And Plaintiff still fails to articulate how SeatGeek profited off his nonprivate IP addresses and other basic identifiers, such that it was enriched, let alone unjustly. *See supra*,

---

[18] *See also Cnty. of Santa Clara*, 2024 WL 3346257, at *9 (the alleged "lost value in plaintiff's PHI [private health information]" is not cognizable under the CDAFA); *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1071, 1073 (N.D. Cal. 2018) (dismissing claims under the CDAFA and its federal analogue because "accessing the types of information secured by Synopsys—'IP addresses, MAC addresses, user names, host names, user accounts, email addresses, workstation information, system administrators, and IT system logs'—does not constitute as a "damage or loss").

Section IV(C)(2) (citing, *e.g.*, *Khamooshi*, 786 F. Supp. 3d at 1182). Having offered no new facts beyond those already considered and rejected in the May 28 Order—no new loss, no new damage, and no new theory of economic injury—Plaintiff concedes he can allege no cognizable loss or damage, *Heiting*, 709 F. Supp. 3d at 1020, and the CDAFA claim should be dismissed with prejudice.

**F. Plaintiff Should be Denied Leave to Amend for a Third Time.**

This Court should deny leave to amend. Plaintiff has already amended twice, including after this Court identified the defects in his standing and liability theories. Yet the SAC still alleges no private or sensitive information, concrete harm, or cognizable loss. Where, as here, a plaintiff repeatedly fails to cure pleading defects, the Court has "particularly broad" discretion to deny further leave. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004).

Further amendment would be futile. Plaintiff admits he did not create an account, make a purchase, or submit personal information on SeatGeek's Website. SAC ¶ 131. His theory therefore remains limited to routine browsing activity on a public ticketing website—the same factual premise this Court already held was insufficient in the FAC under *Popa*. Plaintiff's principal amendment was merely to add allegations about URLs, clicks, and other basic browsing data of the same type already addressed in *Popa*. Because the "basic flaw" in Plaintiff's claims cannot be cured by amendment as there is nothing private that can be alleged about Plaintiff's browsing of a public ticketing website, "there is no need to prolong the litigation by permitting further amendment." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002).

## VI. CONCLUSION

Despite the Court's guidance, Plaintiff's amendments still do not allege facts showing that his interaction with the Website resulted in harm or a plausible claim for relief. The few new facts Plaintiff added to the SAC are of the same type previously rejected and confirm that he cannot fix the defects identified in the May 28 Order. SeatGeek thus respectfully requests that the Court dismiss the SAC in its entirety without leave to amend.

Dated: August 10, 2026 GREENBERG TRAURIG, LLP

By */s/ Heather J. Silver*
Heather J. Silver
Attorneys for Defendant
SeatGeek, Inc.