Adam J. Zapala (SBN 245748)
Kevin J. Boutin (SBN 334965)
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center 840
Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
kboutin@cpmlegal.com

Katrina Carroll (*pro hac vice*)
**CARROLL SHAMBERG LLC**
200 N. LaSalle, Suite 1650
Chicago, IL 60601
Telephone:(872)-215-6205
katrina@csclassactions.com

***Attorneys for Plaintiff and the Putative Class***

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

JOSE TORRES, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SEATGEEK, INC., a Delaware corporation headquartered in New York; and DOES 1 through 25, inclusive,

Defendant.

CASE NO. 3:25-cv-07118-LB

Hon. Laurel Beeler

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT SEATGEEK, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**Action filed: August 22, 2025**

**Date: November 12, 2026**
**Time: 9:30 a.m.**
**Place: Courtroom B, 15th Floor**

# TABLE OF CONTENTS


Page No.

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 3

III. STATEMENT OF THE ISSUES TO BE DECIDED ..... 4

IV. ARGUMENT ..... 4

A. Plaintiff Has Standing to Bring His Claims ..... 4

1. Plaintiff Has Article III Standing; Popa is Factually Distinguishable As this District Consistently Holds ..... 4

2. Seatgeek's Use of Plaintiff's Website Interactions is Highly Offensive ..... 7

3. SeatGeek Was Unjustly Enriched, Further Supporting Plaintiff's Standing ..... 9

B. Plaintiff Adequately Pleads His Claims ..... 10

1. Relevant 12(b)(6) Standards ..... 10

2. Plaintiff Adequately Alleges His Privacy Claims (Invasion of Privacy and Intrusion Upon Seclusion) ..... 10

3. Plaintiff Adequately States a Claim Under CIPA § 631 ..... 12

a. Seatgeek Acquired the Contents of Plaintiff's Communications ..... 12

b. Plaintiff's Communications Were Intercepted While in Transit ..... 12

c. Seatgeek Knowingly Aided and Abetted the Third Parties' CIPA Violations by Making the Affirmative Choice to Use and Install the Trackers on the Website ..... 14

4. Plaintiff Agrees to a Stay of his CIPA § 638.51 Claim ..... 15

5. Plaintiff Adequately Pleads Damage or Loss for his CDAFA Claim ..... 16

C. To the Extent the Court Finds His Pleading Insufficient, Plaintiff Should Be Permitted Leave to Amend ..... 17

V. CONCLUSION ..... 18

## TABLE OF AUTHORITIES

**Page Nos.**

**Cases**

*Adair v. Aylo USA Inc.*,
No. 2:25-cv-06351-WLH-KS, 2026 U.S. Dist. LEXIS 111114 (C.D. Cal. May 19, 2026) ....13

*Brooks v. Thomson Reuters Corp.*,
No. 21-CV-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ....11

*Brown v. Google LLC*,
685 F.Supp.3d 909 (N.D .Cal. 2023) ....12

*Campbell v. Facebook Inc.*,
77 F.Supp.3d 836 (N.D. Cal. 2014) ....13

*Camplisson v. Adidas Am., Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025) ....2

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ....16

*D'Angelo v. Penny Opco, LLC*,
No. 23-cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054 (S.D. Cal. Oct. 24, 2023) ....13

*Deivaprakash v. Condé Nast Digit.*,
798 F. Supp. 3d 1100 (N.D. Cal. 2025) .... *passim*

*Dellasala v. Samba TV, Inc.*,
No. 3:25-CV-03470-JSC, 2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) ....4

*Doe v. Call-On Doc, Inc.*,
No. 24cv2095-GPC(KSC), 2025 U.S. Dist. LEXIS 113269 (S.D. Cal. June 13, 2025) ....12

*Doe v. GoodRx Holdings, Inc.*,
No. 23-cv-00501-AMO, 2025 U.S. Dist. LEXIS 140287 (N.D. Cal. July 22, 2025) ....14

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023), *motion to certify appeal denied*, No. 22-CV-03580-WHO, 2024 U.S. Dist. LEXIS 179885 (N.D. Cal. Oct. 2, 2024) ....15

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F.Supp.3d 767 (N.D. Cal. 2019) ....7

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) .... *passim*

*Facebook, Inc. v. Power Ventures, Inc.*,
No. 08-cv-05780-JW, 2010 U.S. Dist. LEXIS 93517, 2010 WL 3291750 (N.D. Cal. July 20, 2010) ........ 16

*Flanagan v. Flanagan*,
27 Cal. 4th 766, 775 117 Cal. Rptr. 2d 574, 41 P.3d 575 (2002) ........ 16

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) ........ 16

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, 2025 WL 1939957 (N.D. Cal. July 14, 2025) ........ 2

*Gilligan v. Experian Data Corp.*,
No. 25-cv-02873-RFL, 2026 U.S. Dist. LEXIS 1907, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ........ *passim*

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) ........ 15

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 14

*Greenley v. Kochava, Inc.*
684 F.Supp.3d 1024 (S.D. Cal. 2023) ........ 9

*Harris v. iHeartMedia, Inc.*,
No. 25-CV-06038-EKL, 2026 WL 247875 (N.D. Cal. Jan. 29, 2026) ........ 5

*Hayden v. Retail Equation, Inc.*,
No. SACV2001203DOCDFM, 2022 WL 2254461 (C.D. Cal. May 4, 2022) ........ 8

*Hernandez v. Hillsides, Inc.*,
47 Cal.4th 272 (2009) ........ 11

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal.4th 1 (1994) ........ 8, 10

*Johnston v. Capital One Fin. Corp.*,
No. CV 26-457-MWF, 2026 U.S. Dist. LEXIS 172460 (C.D. Cal. July 31, 2026) ........ 16

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 8, 11

*Khamooshi v. Politico LLC*,
2025 WL 1408896 (N.D. Cal. May 13, 2025) ........ 9, 10

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) ........ *passim*

*L.B. v. LinkedIn Corp.*,
No. 5:24-cv-06832-EJD, 2025 U.S. Dist. LEXIS 193980 (N.D. Cal. Sep. 30, 2025)............14

*Lau v. Gen Digital Inc.*,
No. 22-CV-08981-JST, 2023 WL 10553772 (N.D. Cal. Sept. 13, 2023), *aff'd sub nom. Karwowski v. Gen Digital, Inc.,* No. 24-7213, 2025 WL 3002610 (9th Cir. Oct. 27, 2025).....7

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ..........................................................................................4

*Limas v. Wayfair LLC*,
No. CV 25-11185-DMG (Ex), 2026 U.S. Dist. LEXIS 183027 (C.D. Cal. Aug. 13, 2026) ...16

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) ..............................................................................14

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ..........................................................................................17

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........................................................................14, 16

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) ............................................................................16

*Pemberton v. Rest. Brands Int'l, Inc.*,
No. 25-CV-03647-JSC, 2025 WL 3268404 (N.D. Cal. Nov. 24, 2025)................................10

*Pioneer Electronics (USA), Inc. v. Superior Court*,
40 Cal.4th 360 (2007) .......................................................................................................10

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ......................................................................................1, 4, 5

*R.C. v. Walgreen Co.*,
733 F.Supp.3d 876 (C.D. Cal. 2024) ................................................................................12

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .........................................................................9, 11

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) ........................................................................16, 17

*Rowe v. Educ. Credit Mgmt. Corp.*,
559 F.3d 1028 (9th Cir. 2009) ..........................................................................................10

*Selby v. Sovrn Holdings, Inc.*,
No. 25-cv-03139-RFL, 2025 U.S. Dist. LEXIS 205538 (N.D. Cal. Oct. 16, 2025)..1, 7, 11, 12

*Selby v. Sovrn Holdings, Inc.*,
No. 25-CV-03139-RFL, 2025 WL 2950164 (N.D. Cal. Oct. 17, 2025)....................................5

*Semien v. Pubmatic Inc.*,
No. 25-cv-03164-SI, 2026 U.S. Dist. LEXIS 15196 (N.D. Cal. Jan. 27, 2026).............1, 8, 12

*Shah v. Politico LLC*,
No. 25-CV-05213-NW, 2026 WL 323269 (N.D. Cal. Feb. 6, 2026) .......................................9

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024).......................................8

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ..........................................................................................10

*Torres v. SeatGeek, Inc.*,
No. 25-cv-07118-LB, 2026 U.S. Dist. LEXIS 118457 (N.D. Cal. May 21, 2026) ......... *passim*

*Tsering v. Meta Platforms, Inc.*,
No. 25-cv-01611-RFL, 2026 U.S. Dist. LEXIS 5762, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ...................................................................................................................2, 4

*U.S Dep't of Just. v. Reps. Comm. For Freedom of Press*,
489 U.S. 749 (1989)...........................................................................................................11

*United States v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011) ............................................................................................17

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ..........................................................................................17

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F.Supp.3d 969 (C.D. Cal. 2023) ................................................................................12

*Variety Media, LLC v. Superior Ct.*,
No. B350578 ....................................................................................................................15

**Other Authorities**

Fed. R. Civ. P. 8(a)(2)......................................................................................................14

Fed. R. Civ. P. 12(b)(1)........................................................................................................4

Fed. R. Civ. P. 12(b)(6)...................................................................................................4, 10

California Invastion of Privacy Act "CIPA" § 631, 638 ......................................................... *passim*

## I. INTRODUCTION

This case involves systemic privacy violations perpetrated on unsuspecting consumers by Defendant SeatGeek, Inc. ("SeatGeek" or "Defendant"), the operator of an online ticket platform. Plaintiff's Second Amended Complaint (ECF No. 48, the "SAC")[1] alleges that when Plaintiff visited Defendant's website, www.seatgeek.com (the "Website"), Defendant caused at least three third party trackers (the "Trackers") operated by TikTok, Microsoft and Meta (the "Third Parties") to be installed on Plaintiff's and Class Members' web browsers.

SeatGeek's Website did not merely load a single, isolated analytics tool the way the defendant in *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) did. SeatGeek embedded three of the most ubiquitous cross-site advertising trackers on the internet – the TikTok Pixel, the Meta Pixel, and the Microsoft Bing Tracker – each of which is deployed across enormous swaths of the web precisely so that the operators of those pixels can stitch together a single, cross-site "identity graph" of a user's activity. SAC ¶¶ 2, 4-6, 62. Plaintiff alleges that these trackers did not simply record that he visited SeatGeek's Website; they captured the full-string URLs, search activity, and page-level content of his visit, transmitted that information in real time while it was in transit to SeatGeek's servers, and used it to deanonymize him and build a persistent behavioral dossier used to target him with ads. ¶¶ 3-6, 62-71, 123-126. Courts in this District confronting materially identical allegations against materially identical ad-tech trackers have uniformly held, after and applying *Popa*, that such allegations state a concrete, particularized privacy injury and adequately plead claims under CIPA §§ 631(a) and 638.51(a) and for intrusion upon seclusion and invasion of privacy. *See, e.g., Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857 (N.D. Cal. 2026), *Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL, 2025 U.S. Dist. LEXIS 205538 (N.D. Cal. Oct. 16, 2025), *Gilligan v. Experian Data Corp.*, No. 25-cv-02873-RFL, 2026 U.S. Dist. LEXIS 1907 (N.D. Cal. Jan. 6, 2026), and *Semien v. Pubmatic Inc.*, No. 25-cv-03164-SI, 2026 U.S. Dist. LEXIS 15196 (N.D. Cal. Jan. 27, 2026).

In its Order granting Seatgeek's motion to dismiss Plaintiff's First Amended Complaint on

[1] Citations to "¶ __" or "¶¶ __" are references to the SAC unless otherwise noted, and abbreviations in the SAC are adopted here unless otherwise noted.

Article III standing grounds, the Court noted that standing had been established in numerous cases that "involve[d] a broader capture of information beyond the record information (IP address and other device-fingerprint information) that SeatGeek and the third parties captured." *Torres v. SeatGeek, Inc.*, No. 25-cv-07118-LB, 2026 U.S. Dist. LEXIS 118457, at *9 (N.D. Cal. May 21, 2026) (citing *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 598-99 (9th Cir. 2020) ("As alleged, Facebook's tracking practices allow it to amass a great degree of personalized information. Facebook's user profiles would allegedly reveal an individual's likes, dislikes, interests, and habits over a significant amount of time ...."); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025) (standing where "trackers on Defendant's website collected a broad set of [the plaintiffs'] personal identifying and addressing information" (cleaned up)); *Gilligan v. Experian Data Corp.*, No. 25-cv-02873-RFL, 2026 U.S. Dist. LEXIS 1907, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026) (standing where defendant intercepted "information regarding users' activity on websites and communications with websites in the form of full-string URLs and button click events"); *Tsering v. Meta Platforms, Inc.*, No. 25-cv-01611-RFL, 2026 U.S. Dist. LEXIS 5762, 2026 WL 89320, at *2-3 (N.D. Cal. Jan. 12, 2026) (Meta's software was used by "tens of thousands" of apps to create user profiles on "hundreds of millions of unique devices"); *Deivaprakash v. Condé Nast Digit.*, 798 F. Supp. 3d 1100, 1106-07 (N.D. Cal. 2025) (third parties generated "profiles that reflect users' geographic locations, incomes, and preferences, among other characteristics"); *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) (third parties compiled the plaintiff's "Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data")).

In the SAC, Plaintiff asserts that the trackers deployed on the Website, in addition to capturing the "record information" above, also "intercept the contents of users' communications with the Website, including data that reveals users' specific activities on the Website, revealing the users' preferences." ¶ 5. Specifically, "[w]hen users communicate with the Website by viewing event listings, clicking on tickets, searching for events, browsing content, or completing purchase and conversion events, the

Trackers intercept data containing the content and meaning of these user interactions. This includes full string page URLs visited, event pages accessed, ticket searches, event category browsing, ticket purchase activity, conversion events, and user interactions with the Website." *Id.*

In doing so, Seatgeek aids and abets the third parties whose trackers intercept these communications to compile comprehensive profiles of users, including Plaintiff, demonstrating their likes, dislikes and interests across websites and over a substantial period of time. ¶¶ 58, 60 (operation of trackers generally), 124-25 (allegations specific to Plaintiff). This surreptitious compiling of the contents of user activity, above and beyond mere IP addresses and device or browser information, constitutes harm akin to common law invasion of privacy and establishes injury sufficient to establish standing, as numerous courts (including those cited in the Court's prior Order) have found.

## II. FACTUAL BACKGROUND

Plaintiff Jose Torres brings this putative class action against SeatGeek for its systematic deployment of undisclosed tracking technologies – the TikTok Pixel, Meta Pixel, and Bing Tracker (collectively, the "Trackers") – on its ticketing website. ¶¶ 1-2. The Complaint alleges that SeatGeek's data collection extends well beyond mere device identifiers. ¶ 1.

Critically, the Trackers intercept the contents of users' communications with the Website, not merely metadata. ¶ 5. When users view event listings, click on tickets, search for events, browse content, or complete purchases, the Trackers capture full string page URLs visited, event pages accessed, ticket searches, event category browsing, ticket purchase activity, conversion events, and user interactions with the Website. ¶¶ 5, 68. These actions "constitute electronic communications" transmitted in real time, and the Trackers' code "listens" to user interactions, sending HTTP requests to third parties' servers simultaneously with requests sent to SeatGeek's own servers. ¶¶ 70-71. This includes "button clicks" and "any data entered into form fields," Compl. ¶ 71.

Plaintiff personally alleges he searched for and browsed NFL and MLB events, including San Diego Padres tickets, and that his specific event searches, reflecting his personal interests, were intercepted and transmitted to TikTok, Meta, and Microsoft without his knowledge or consent. ¶ 123. SeatGeek installed these Trackers without any notice, consent mechanism, or court order authorizing their use. ¶¶ 74, 114.

## III. STATEMENT OF THE ISSUES TO BE DECIDED

Whether the FAC plausibly alleges Article III standing (Rule 12(b)(1)) and states claims upon which relief can be granted (Rule 12(b)(6)).

## IV. ARGUMENT

### A. Plaintiff Has Standing to Bring His Claims

#### *1. Plaintiff Has Article III Standing; Popa is Factually Distinguishable As this District Consistently Holds*

SeatGeek's standing challenge is a "facial attack" under Rule 12(b)(1), and the Ninth Circuit holds that the Court should analyze it "as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). In keeping with this, this District and others recognize that Plaintiff's allegations concerning the alleged collection and identification of user web browsing activity satisfy Article III. *Krzyzek.*, No. 25-CV-05588-SI, 2026 WL 206855, at *3 (standing established where defendant syphoned browsing activity "across the internet" into unique profiles); *Tsering v. Meta Platforms, Inc.*, No. 25-CV-01611, 2026 WL 89320, at *3 (N.D. Cal. Jan. 12, 2026) (standing established where "Meta was able to monetize [plaintiffs'] data"); *Gilligan v. Experian Data Corp.ca*, No. 25-CV-02873-RFL, 2026 WL 32259, at *2 (finding standing where defendant engaged in "unauthorized widespread tracking and data collection"); *Deivaprakash v. Condé Nast Digital*, 798 F. Supp. 3d 1100, 1107, n.4 (N.D. Cal. 2025) (holding that building profiles of personal information and interfering with the plaintiffs' "ability to remain anonymous" satisfies Article III).

Though SeatGeek asserts otherwise, *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) "did not set out a new rule of law for Article III standing, but rather applied the same common law rules to the individual circumstances of that case." *Krzyzek*, 2026 WL 206855, at *3 n.5; *see also*, *Dellasala v. Samba TV, Inc*., No. 3:25-CV-03470-JSC, 2025 WL 3034069, at *2 (N.D. Cal. Oct. 30, 2025) ("*Popa* did not set forth a new rule of law…"). Indeed, *Popa* confirmed that the Ninth Circuit's decision in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 ("*Facebook Tracking*") – where it reasoned that Facebook's continued nonconsensual tracking of users "in order to receive and compile [the plaintiffs'] personally identifiable browsing history . . . no matter how sensitive or personal" was

sufficient to establish a concrete injury "remains good law." *Deivaprakash*, 798 F. Supp. 3d 1100, at 1107 n. 4 (quoting *Facebook Tracking*, 956 F.3d at 598). This is exactly the case here.

Indeed, *Popa* is distinguishable because it involved the use of session-replay technology to track a user's interactions *with a single website*, rather than the compilation of personal or private information across the internet. *Popa*, 153 F.4th at 786; *Gilligan*, 2026 WL 32259, at *2 ("*Popa* was limited to "plaintiff's non-sensitive interactions with a single website."). Contrary to SeatGeek's argument, "[t]he scope of the alleged tracking in this case is materially more invasive." *Selby v. Sovrn Holdings, Inc.,* No. 25-CV-03139-RFL, 2025 WL 2950164, at *3 n.3 (N.D. Cal. Oct. 17, 2025); *see also Harris v. iHeartMedia, Inc.*, No. 25-CV-06038-EKL, 2026 WL 247875, at *1–2 (N.D. Cal. Jan. 29, 2026) (finding "the extent of tracking in *Popa* was significantly less intrusive" than iHeart's continuous tracking of users to build comprehensive profiles).

The session replay technology in *Popa* was akin to "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Popa*, 153 F.4th at 791. Unlike here, there was no linkage of information to non-anonymous profiles maintained by Third Parties and no loss of control of personal information because personal information was not captured in *Popa*. Plaintiff's allegations that SeatGeek allowed Third Parties to systematically de-anonymize users' browsing activities and build and enrich real-time comprehensive profiles fulfill Article III, as courts have consistently held.

Previously the Court noted that "the allegations [in the FAC] [we]re more robust than those in *Popa*":

> [T]he claim is that SeatGeek caused the plaintiff's identifying information to be transmitted to three separate parties (TikTok, Meta, and Microsoft), each with preexisting plaintiff profiles and each allegedly linking the transmitted data (without the plaintiff's consent or any notification) to those profiles through fingerprinting, advanced matching, and identifiers (including a Facebook ID and a constant thirteen-month Microsoft user ID cookie). The plaintiff has active TikTok and Meta accounts. SeatGeek relies on the non-sensitive character of each data element, but that reliance does not account for the plaintiff's argument that his privacy is invaded by the aggregation of data matched to his existing profiles.

*Torres*, 2026 U.S. Dist. LEXIS 118457, at *7-8. Nevertheless, the Court concluded that "On balance . . . the information that was collected — IP addresses, device make/model/OS, browser type, and cookie

identifiers — is record information where there is no reasonable expectation of privacy." *Id.* at *8.

The allegations in the SAC go further, alleging that Seatgeek captured the contents of Plaintiff's interactions with the Website, including URL visits, ticket searches, and button clicks, which revealed Plaintiff's interests (tickets to San Diego Padres and NFL games). And while such information may not be inherently personal or sensitive the way, for example, medical or financial information would be, the fact that Seatgeek used this personal information to feed into curated profiles of Plaintiff's personal interests and habits constitutes an invasion of privacy sufficient to establish standing. *Krzyzek*, 817 F. Supp. 3d at 861 (standing established based on plaintiff's visits to bonapetit.com, foxnews.com, and businessinsider.com); *Deivaprakash,* 798 F.Supp.3d at 1103 (standing established based on plaintiff's visits to newyorker.com and wired.com); 1107 ("Accordingly, it does not matter whether Deivaprakash had a "reasonable expectation of privacy" in the information collected because the privacy violation extends beyond the collection of just his IP address and metadata; it encompasses how that collection allegedly allowed the third parties to: (1) build a profile reflecting his personal information; and (2) interfere with his ability to remain anonymous").

The same is true here. By collecting, capturing, and disclosing the contents of Plaintiff's interactions with the Website, Seatgeek and the Third Parties were able to: (i) identity Plaintiff and either create a new profile of him or match Plaintiff to a pre-existing profile (either in the Third Parties' own databases or with another entity's profile); (ii) sell Plaintiff's information to advertisers for hyper-targeted advertising based on the information collected by the Third Parties on the Website and the information contained on any profiles of Plaintiff (which are linked to Plaintiff via the information collected by the Third Parties on the Website); (iii) actually target Plaintiff with advertisements and serve advertisements on Plaintiff based on the information collected by the Third Parties on the Website and the information contained on any profiles of Plaintiff (which are linked to Plaintiff via the information collected by the Third Parties on the Website); and (iv) de-anonymize Plaintiff and generate revenue from the sale of Plaintiff's information, both what is collected on the Website by the Third Parties and the profiles this information is linked to, to advertisers, thus boosting Defendant's, advertisers', and the Third Parties' revenue and the value of the Third Parties' services. ¶ 125.

Seatgeek's argument that Plaintiff cannot have standing absent a showing that the information

he input into the Website and pages he visited were, taken in isolation, highly sensitive or personal does not comport with the authority cited above nor the Court's prior dismissal Order, which recognized that such a showing may be sufficient, but is not necessary, to demonstrate standing. *Torres*, 2026 U.S. Dist. LEXIS 118457, at *7-8; *see also Gilligan*, 2026 U.S. Dist. LEXIS 1907, at *5 ("The collected data allegedly includes information regarding users' activity on websites and communications with websites in the form of full-string URLs and button click events. At the pleading stage, such allegations satisfy the requirement for a 'highly offensive' intrusion that invades reasonable internet users' expectations of privacy"); *Selby*, 2025 U.S. Dist. LEXIS 205538, at *8 ("Plaintiffs have alleged that Sovrn engages in unauthorized widespread tracking and data collection, allowing it to compile detailed profiles of each Plaintiff's online web browsing activity—including highly sensitive browsing—tied to their email address and other personal identifiers. The collected data allegedly includes 'full-string URLs' that reflect Plaintiffs' specific interactions with the websites at issue. In such circumstances, this Court and many others have found that the tort of intrusion upon seclusion, and an injury for purposes of CIPA, is adequately alleged at the pleadings stage").[2] The Court should reach the same conclusion here.

### 2. *Seatgeek's Use of Plaintiff's Website Interactions is Highly Offensive*

As a threshold matter, the Ninth Circuit instructs, and courts repeatedly recognize, that the question of offensiveness is one for the jury, not for the pleadings. "Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *Lau v. Gen Digital Inc.,* No. 22-CV-08981-JST, 2023 WL 10553772, at *6 (N.D. Cal. Sept. 13, 2023), *aff'd sub nom. Karwowski v. Gen Digital, Inc.,* No. 24-7213, 2025 WL 3002610 (9th Cir. Oct. 27, 2025) (quoting *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F.Supp.3d 767, 797 (N.D. Cal. 2019)). "Only if the allegations 'show no reasonable expectation of privacy or an

[2] While Plaintiff does not allege that he personally entered his email address on the Website, he has accounts with Tiktok and Meta (Facebook and Instagram) and accessed those accounts on the same mobile browser he typically uses to visit the Website. ¶ 126. Seatgeek thus enabled the Third Parties to tie his interactions with the Website to those social media accounts and other personal identifiers and affirmatively target Plaintiff with related ads: "[a]fter accessing Defendant's Website, Plaintiff received targeted advertising on his social media and specifically recalls seeing such advertising on Instagram relating to NFL searches he performed on the Website." *Id.*

insubstantial impact on privacy interests' can the 'question of [a serious or highly offensive] invasion [] be adjudicated as a matter of law." *St. Aubin v. Carbon Health Techs., Inc.,* No. 24-cv-00667-JST, 2024 WL 4369675, at *12 (N.D. Cal. Oct. 1, 2024) (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 40 (1994). Moreover, where, as here, defendants claim their data gathering practices are routine commercial behavior, dismissal is "particularly inappropriate. . . [because] Defendants are the only party privy to the true extent of the intrusion on Plaintiffs' privacy." *Hayden v. Retail Equation, Inc.*, No. SACV2001203DOCDFM, 2022 WL 2254461, at *8 (C.D. Cal. May 4, 2022) (rejecting "routine commercial behavior" defense). It is for a jury, not the Court on the pleadings, to determine whether the privacy invasion alleged here is of a broad enough scope to be highly offensive intrusion, and Plaintiff has alleged enough for a jury to reasonably infer that it was.

To the extent the Court engages in a threshold analysis of offensiveness, however, the weight of authorities cited herein and extensive factual allegations in the SAC demonstrate SeatGeek's conduct involving the surreptitious collection of data by Third Parties and conversion into extensive digital profiles on unsuspecting users, is highly offensive and egregious. As in *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023), such allegations "go well beyond the 'routine commercial behavior' of collecting contact information for sending advertisements."; *see also Krzyzek*, 817 F. Supp. 3d at 861 (allegations pled highly offensive conduct); *Gilligan*, 2026 U.S. Dist. LEXIS 1907, at *5 ("At the pleading stage, such allegations satisfy the requirement for a 'highly offensive' intrusion that invades reasonable internet users' expectations of privacy"); *Semien*, 2026 U.S. Dist. LEXIS 15196, at *15 (same).[3]

---

[3] Seatgeek cannot escape liability by claiming that it was the Third Parties, not Seatgeek, that compiled the comprehensive digital profiles of Plaintiff and the class, Defendant's Memorandum of Law at 12. *See, e.g., Deivaprakash,* 798 F.Supp.3d at 1107 ("Condé also argues that it did not cause any privacy injury allegedly suffered by Deivaprakash because the injury was caused by information [the third parties] had amassed on him separate and apart from anything Condé did. Condé ignores, however, that, as alleged by Deivaprakash, it enabled the third parties to amass information about Deivaprakash by embedding the code in its websites that surreptitiously installed the trackers on Deivaprakash's browser in the first place. And contrary to Condé's assertion otherwise, under Deivaprakash's allegations, his injury would not have occurred without Condé's installation of the trackers that provided the addressing information used in building the third parties' profiles") (internal citations and quotations omitted).

***3. SeatGeek Was Unjustly Enriched, Further Supporting Plaintiff's Standing***

As an independent standing ground, Plaintiff alleges that Defendant derived an unlawful economic benefit through its installation and use of the Trackers. Specifically, Plaintiff alleges that his information was collected by the Third Parties without consent; the Trackers de-anonymized Plaintiff, which enabled his information to be sold to advertisers; and that Defendant derived a profit from these unlawful activities. *See, e.g.,* ¶ 4, 58-67, 115-116 119, 147. This also suffices for injury. *See, e.g., Greenley v. Kochava, Inc.* 684 F.Supp.3d 1024, 1038 (S.D. Cal. 2023) (Article III standing met where "Plaintiff … conferred a benefit on Defendant through the use and dissemination of Plaintiff's … personal information … which Defendant used and disseminated for its own monetary benefit.") (cleaned up).

Seatgeek's actions violated Plaintiff's privacy interests for the reasons discussed in the preceding sections. And Plaintiff's allegations regarding how it was unjustly enriched are not conclusory: it did so "by accessing, acquiring, taking, and using Plaintiff's and Class members' data and computer systems without their permission or consent, and using all of that identifying information to maximize revenue from selling advertising space on the Website and for Defendant's own financial benefit," which, because it derived from such privacy violations, was inherently unjust. ¶ 156.

In *Khamooshi v. Politico LLC*, 2025 WL 1408896, at *6 (N.D. Cal. May 13, 2025), for example, the court found there was no "unjust" disclosure of an IP address, but did not consider (i) the disclosure of other information and its linkage to a profile of more comprehensive information, and (ii) that the violation of the CIPA made the disclosure "unjust." Further, courts in this District have disagreed with *Khamooshi*'s conclusion that "*Facebook Internet Tracking*'s holding relied on the 'sensitive' and 'personal' nature of the information at issue." *Khamooshi*, 2025 WL 1408896, at *5. Judges Tigar, Wise and Scott Corley have ruled that the harm can be based on either the disclosure of "specific, sensitive information" or that the third party "acquired an enormous amount of individualized data" as a result of Defendant's conduct. *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1087 (N.D. Cal. 2025); *see also Shah v. Politico LLC*, No. 25-CV-05213-NW, 2026 WL 323269, at *4 (N.D. Cal. Feb. 6, 2026) (distinguishing *Khamooshi* based on the collection by third parties of "browsing history, visit

history, website interactions, user input data, demographic information, interests and preferences, shopping behavior, device information, referring URL, session information, user identifiers, and geolocation data"); *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-CV-03647-JSC, 2025 WL 3268404, at *4 (N.D. Cal. Nov. 24, 2025) (distinguishing *Khamooshi* and holding "Plaintiff alleges Defendants deprived him of control of his personal information, which is an injury sufficient to support Article III standing"). Plaintiff's allegations fall in the latter category, and this Court should agree.

**B. Plaintiff Adequately Pleads His Claims**

***1. Relevant 12(b)(6) Standards***

The Court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, [a] plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

***2. Plaintiff Adequately Alleges His Privacy Claims (Invasion of Privacy and Intrusion Upon Seclusion)***

Given the overlap in the constitutional and common law privacy claims, "courts consider the claims together when both are invoked and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601. Plaintiff meets his pleading burden as to each. Both branches of this inquiry are mixed questions of law and fact. *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal.4th 360, 370, (2007) (citing *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 40 (1994)). Only if the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Id.* at 370 (citing *Hill*, 7 Cal.4th at 40).

SeatGeek's challenge to Plaintiff's invasion of privacy claims comes down, as do its standing arguments, to its contention that there is no reasonable expectation of privacy in the information SeatGeek collected. That is incorrect because, as discussed above, "[t]he aggregation of large quantities of data can constitute a privacy violation where a defendant gains "unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Facebook Tracking*, 956 F.3d at 601-02

(quoting *Hernandez v. Hillsides, Inc.,* 47 Cal.4th 272, 286 (2009)). "The question is not necessarily whether Plaintiffs maintained a reasonable expectation of privacy in the information in and of itself. Rather, we must examine whether the data itself is sensitive and whether the manner it was collected" violates social norms. *Id*. at 603.

District courts consistently apply *Facebook Tracking* and find reasonable expectations of privacy in aggregated data. In *Katz-Lacabe v. Oracle*, the court confronted allegations that data broker Oracle invaded the plaintiffs' privacy through its data marketplace. In rejecting the same argument TripleLift makes here, that plaintiffs had no expectation of privacy in their internet activity, the court stated: "Plaintiffs' strongest argument lies in its allegation that Oracle's accumulation of a vast repository of personal data'—from compiling Plaintiffs' browsing activity, online communications, and offline activity—is what contravenes the reasonable expectation of privacy." *Katz-Lacabe*, 668 F.Supp.3d at 942.

*Selby* and *Riganian* are also instructive. Like here, both cases involved a third party "engage[d] in unauthorized widespread tracking and data collection, allowing it to compile detailed profiles of each Plaintiff's online web browsing activity—including highly sensitive browsing activity—tied to their email address and other personal identifiers." *Selby*, 2025 U.S. Dist. LEXIS 205538, at *8 (cleaned up). Both courts held such conduct constitutes "a 'highly offensive' privacy intrusion" that suffices for "the tort of intrusion upon seclusion." *Id.*; *Riganian*, 791 F.Supp.3d at 1088 ("[T]he Court cannot at this stage conclude as a matter of law that the alleged aggregation, synthesis, and sale of comprehensive online and offline data of individuals without their knowledge is not highly offensive.").

Similarly, in *Brooks v. Thomson Reuters Corp*., the court held that "compiling bits of Plaintiffs' personal information scattered throughout the internet (and allegedly in non-public sources) into a dossier is a significant invasion of privacy," noting "[t]he Supreme Court has held that compiling disparate pieces of information about a person into a single dossier, even if the individual pieces of information are publicly available, constitutes a significant invasion of privacy." *Brooks,* No. 21-CV-01418-EMC, 2021 WL 3621837, at *28 (N.D. Cal. Aug. 16, 2021) (*citing U.S Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989)).

Plaintiff has stated a claim for invasion of privacy for the same reasons, based on Seatgeek's role

in aiding and abetting the Third Parties' engagement in this precise conduct.

### *3. Plaintiff Adequately States a Claim Under CIPA § 631*

#### a. Seatgeek Acquired the Contents of Plaintiff's Communications

The SAC details how Seatgeek and the Third Parties intercepted the contents of Plaintiff's and Class Members' communications, sufficiently stating a CIPA claim. "Content is defined to 'include[] any information concerning the substance, purport, or meaning of [the] communication.'" *Brown v. Google LLC*, 685 F.Supp.3d 909, 935 (N.D .Cal. 2023). This includes "the links, pages, and tabs users click and view and the search terms they employ," including those contained in URLs. *R.C. v. Walgreen Co.*, 733 F.Supp.3d 876, 902 (C.D. Cal. 2024) ("URLs which disclose search terms that reveal website users' 'personal interests, queries, and habits' are 'contents' of communications under CIPA"); *Krzyzek*, 817 F. Supp. 3d at 867 (URLs can "reveal website users' personal interests, queries, and habits, particularly when aggregated into comprehensive user profiles," as TripleLift does); *Semien*. 2026 U.S. Dist. LEXIS 15196, at *25 ("Plaintiffs have adequately alleged that PubMatic intercepts not only the broader websites visited, but also URLS including specific articles or specific pages the plaintiffs viewed"). Here, Plaintiff alleges that Defendant collected the specific web pages he and the Class visited and read, which therefore disclose personal interests, queries, and habits. ¶¶ 124, 156.

Plaintiff thus plausibly alleges that Defendant intercepted the "contents" of users' communications. *Selby*, 2025 U.S. Dist. LEXIS 205538, at *9 (finding "contents" intercepted where "Plaintiffs have alleged that, among other things, [defendant] collects 'full-string URLs' that reflect not only the website visited, but also, for example, search queries and specific items Plaintiffs viewed").

#### b. Plaintiff's Communications Were Intercepted While in Transit

Contrary to Seatgeek's contentions, Plaintiff alleges that the tracking technologies ***do*** intercept communications contemporaneously while they are in transit since the trackers cause users' browsers to simultaneously transmit the contents of their communications to the Third Parties' servers. ¶¶ 71, 82, 84. Courts routinely find that online trackers like those at issue here intercept communications in transit. *See, e.g.*, *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F.Supp.3d 969, 978 (C.D. Cal. 2023); *Doe v.*

*Call-On Doc, Inc.,* No. 24cv2095-GPC(KSC), 2025 U.S. Dist. LEXIS 113269, at *34-35 (S.D. Cal. June 13, 2025) (finding interceptions occurred in transit where plaintiff alleged that Google Analytics' tracking code and TikTok Pixel sent simultaneous transmissions of her information and intercepted plaintiff's information in real time); *Adair v. Aylo USA Inc*., No. 2:25-cv-06351-WLH-KS, 2026 U.S. Dist. LEXIS 111114, at *17-23 (C.D. Cal. May 19, 2026) (discussing and collecting cases regarding the 'in-transit' element and sustaining similar allegations to those here, distinguishing cases with conclusory or unsupported claims of in-transit interception).

Regardless, on a motion to dismiss, a plaintiff is not required to allege how and when their communications are captured, and "a pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *D'Angelo v. Penny Opco, LLC,* No. 23-cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054, at *20 (S.D. Cal. Oct. 24, 2023)*; see also*, *Campbell v. Facebook Inc.*, 77 F.Supp.3d 836, 841 (N.D. Cal. 2014) ("While Facebook may ultimately produce evidence showing that the messages were actually accessed while in storage, not during transmission, that issue [] would be better addressed as part of a motion for summary judgment with a more developed factual record.").

Here, Plaintiff has provided factual allegations supporting the claim that user data is intercepted in transit, rather than simply parroting statutory language. *E.g.* ¶¶ 71 ("This interception occurs because the Trackers' code 'listens' to user interactions and automatically sends HTTP requests to Third Parties' servers simultaneously with the requests sent to the SeatGeek's website's own servers. This includes information such as the user's IP address, the exact webpage URL visited, button clicks, page views, and any data entered into form fields"); 82 ("The TikTok Software begins to collect information the moment a user lands on the Website"); 102 ("The Bing Tracker, in turn, instructs the user's browser to automatically transmit to Microsoft various information including: (1) The user's public IP address; (2) Timestamp data showing when the user accessed the Website; (3) "User Agent" details about the user's device (make, model, operating system) and the browser the user is accessing the Website with; (4) URLs of pages visited; and (5) Cookies"). Nothing more is required at this stage.

To the extent Seatgeek argues that Plaintiff has not properly set forth the details of how and when

the Third Parties "read" these intercepted contents, MTD at 18, that information is solely within the possession of Seatgeek and/or the Third Parties and can only be fully fleshed out through discovery. Nevertheless, Plaintiff has provided extensive allegations as to how the Trackers function, suggesting that these communications are intercepted and interpreted by the Third Parties in real time. *See* ¶¶ 56-110. And there can be no dispute that the Third Parties did *in fact* read and analyze these communications, as the entire purpose of this surveillance ecosystem is to compile information on individuals to target them with specific, personalized ads, as happened to Plaintiff here. ¶ 126.

These allegations sufficiently set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), which is all that is required at this stage, without the benefit of any discovery.

**c. Seatgeek Knowingly Aided and Abetted the Third Parties' CIPA Violations by Making the Affirmative Choice to Use and Install the Trackers on the Website**

At the pleading stage "interception may be considered intentional 'where a defendant is aware of the defect causing the interception but takes no remedial action.'" *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 684 (N.D. Cal. 2021) (quoting *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020)). There is no doubt Seatgeek was "aware" the Trackers were collecting Website visitors' personal information – again, that is the whole reason Seatgeek chose to employ them in the first place.

Indeed, the "majority rule" is that "the question of intent should be considered on a more developed record." *L.B. v. LinkedIn Corp*., No. 5:24-cv-06832-EJD, 2025 U.S. Dist. LEXIS 193980, at *38 (N.D. Cal. Sep. 30, 2025); *see also In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1003 (N.D. Cal. 2024) (rejecting Meta's argument that "it could not have intended to receive the information at issue because its Business Tools Terms forbid developers from sending sensitive information to Meta and require that developers have all necessary rights and permissions to lawfully share whatever information they send," holding that it "cannot conclude from their mere existence that Meta and developers intended to or did comply with the terms rather than deviating from them to their mutual benefit"); *Doe v. GoodRx Holdings, Inc.*, No. 23-cv-00501-AMO, 2025 U.S. Dist. LEXIS 140287, at *23-24 (N.D. Cal. July 22, 2025) ("while Meta and Google may instruct developers not to send protected

health information, if, once received, Meta and Google make no effort to prevent the uploading of that information into their data repositories, take no steps to filter it out once the data is uploaded to their servers, or simply proceed to monetize that information knowing developers were sending sensitive health information in violation of instructions against it, a jury may find such acts indicative of intent"); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023), *motion to certify appeal denied*, No. 22-CV-03580-WHO, 2024 U.S. Dist. LEXIS 179885 (N.D. Cal. Oct. 2, 2024) ("What Meta's true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record."); *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 859–60 (W.D. Wash. 2024) (finding intent adequately pled where the defendant's technology was "designed for the purpose of recording and analyzing communications" and holding that a contractual catch-all provision requiring customers to comply with the law was insufficient to negate intent).

Here, the Trackers are designed and utilized with the specific purpose of recording and analyzing user activity, communications, inputs, and other information on Seatgeek's Website and Seatgeek knew at all times that the Trackers were functioning on the site and sharing the identified categories of information with the Third Parties but continued to use them without informing or seeking the consent of any Website users. Plaintiff has adequately pleaded the requisite state of mind for a CIPA violation.

#### ***4. Plaintiff Agrees to a Stay of his CIPA § 638.51 Claim***

In light of the pending appeal in *Variety Media, LLC v. Superior Ct.*, No. B350578 – particularly the tentative ruling from the Second District which would, if it becomes the final ruling of that Court, require Plaintiff to amend his complaint in certain respects to provide further detail on how each of the Trackers functions as a device or process that records or decodes metadata likely to identify the destination of an outgoing communication – as well as the pendency of California Senate Bill 690, which would, separately, remove the private right of action for such claims if signed by Governor Newsome by the September 30, 2026 deadline, Plaintiff agrees that it would be most economical for the Court to observe how these two related issues resolve themselves before considering the merits of Plaintiff's §

638.51 claim and, therefore, does not oppose Seatgeek's request for a stay.

However, Plaintiff disputes that his § 638.51 claim, or his claim under CIPA § 631, are precluded or otherwise affected by the fact that Plaintiff now, in his SAC, alleges that the Trackers do in fact capture and disclose the contents of users' communications with the Website. Such claims may be and are properly pled in the alternative. *See Johnston v. Capital One Fin. Corp.*, No. CV 26-457-MWF (JPCx), 2026 U.S. Dist. LEXIS 172460, at *12 (C.D. Cal. July 31, 2026) (refusing to dismiss § 631 claims pled in the alternative to § 638.51). This makes sense because, as one court recently explained:

> Even if the claims are not pled in the alternative, the Court is not convinced that the pleading of a section 631(a) claim *automatically* necessitates dismissal of a section 638.51 claim. Such an approach would not give greater protection to privacy interests. *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 117 Cal. Rptr. 2d 574, 41 P.3d 575 (2002)]. Given the legislative purpose of CIPA, it is "highly unlikely that the Legislature intended to permit the installation and use of [trap and trace devices] so long as those devices also record the contents of a third party's communications." *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025); *accord Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 872 (N.D. Cal. 2025). Such a loophole would allow any website operator to escape liability for trap and trace devices, or pen registers, by employing a more intrusive form of technology. *In re Meta Pixel Tax Filing* Cases, 793 F. Supp. 3d at 1154. Moreover, Plaintiff alleges the Tracking Tools identify Website users through several different processes. It is plausible that these processes could function separately, allowing Plaintiff to move forward with both CIPA claims.

*Limas v. Wayfair LLC*, No. CV 25-11185-DMG (Ex), 2026 U.S. Dist. LEXIS 183027, at *19-20 (C.D. Cal. Aug. 13, 2026) (emphasis in original) (internal record citations omitted). For the same reasons, the Court should find that Plaintiff's CIPA § 638.51 is not inadequately pled simply because he alleges that the Trackers also have the capability of capturing the contents of Website visitors' communications.

### 5. *Plaintiff Adequately Pleads Damage or Loss for his CDAFA Claim*

The CDAFA neither defines nor sets a monetary threshold for "damage or loss." *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 487 (N.D. Cal. 2021). Rather, "under the plain language of the statute, any amount of damage or loss may be sufficient." *Facebook, Inc. v. Power Ventures, Inc.*, No. 08-cv-05780-JW, 2010 U.S. Dist. LEXIS 93517, 2010 WL 3291750, at *4 (N.D. Cal. July 20, 2010).

In *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093 (N.D. Cal. 2025), for example, Judge Seeborg concluded that the plaintiffs had alleged cognizable damage or loss under the CDAFA under a disgorgement theory because plaintiffs that Google illegally profited from the use of their data. *Id.* at

1109. Separately, the court found damage or loss adequately pled because Google failed to pay for the data it surreptitiously captured, *id.* at 1110 ("Plaintiffs argue that they suffered damage or loss because Google took something of economic value from them without their permission. Google insists that this theory fails because Plaintiffs did not wish to sell their data and, even if they did, their data did not diminish in value because of its conduct. However, 'under California law, [a] stake in unjustly earned profits exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable.' *Facebook Tracking*, 956 F.3d at 600. It remains disputed whether Plaintiffs suffered damage or loss because Google failed to pay for their data despite the existence of a market").

Here, Plaintiff likewise alleges that Seatgeek's unjust profits should be disgorged as it took and utilized his personal information without his knowledge, consent, or any compensation. SAC ¶¶ 9, 113, 125, 156. The Court should therefore, like the *Rodriguez* court, conclude that Plaintiff has alleged a cognizable damage or loss.

### C. To the Extent the Court Finds His Pleading Insufficient, Plaintiff Should Be Permitted Leave to Amend

Should the Court grant Seageek's Motion in any respect, Plaintiff respectfully requests leave to amend. The Ninth Circuit has consistently granted plaintiffs leave to amend regardless of multiple previously amended pleadings. *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1183 (9th Cir. 2016) (reversing denial of leave to amend even though the plaintiff had previously amended his pleading three times). Furthermore, the Ninth Circuit emphasizes that "[u]nder futility analysis, dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (cleaned up); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (noting that a court should permit amendment "unless it determines that the pleading could not possibly be cured by the allegation of other facts").

As noted herein, numerous courts have sustained claims essentially identical to those here. However, if the Court deems any of the claims inadequately pleaded, Plaintiff requests leave to amend.

## V. CONCLUSION

For the foregoing reasons, this Court should deny Defendant's motion to dismiss.

Dated: September 14, 2026

Respectfully submitted,

*/s/ Adam J. Zapala*
Adam J. Zapala (SBN 245748)
Kevin J. Boutin (SBN 334965)
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
kboutin@cpmlegal.com

Katrina Carroll (*pro hac vice*)
**CARROLL SHAMBERG LLC**
200 N. LaSalle, Suite 1650
Chicago, IL 60601
Telephone:(872)-215-6205
katrina@csclassactions.com

*Counsel for Plaintiff and the Proposed Class*