United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JOSE TORRES, Plaintiff, v. SEATGEEK, INC., Defendant. | Case No. 25-cv-07118-LB<br>**ORDER GRANTING MOTION TO DISMISS**<br>Re: ECF No. 49 |

## INTRODUCTION

Jose Torres sued SeatGeek, Inc., which sells event tickets on its website, in this putative class action for embedding three third-party advertising trackers (the TikTok Pixel, the Meta Pixel, and the Microsoft Bing tracker) that collected his browsing information and sent it to TikTok, Meta, and Microsoft without his consent.[1] The court dismissed the first amended complaint (FAC) for lack of Article III standing because there was no concrete privacy injury from the trackers' capture of non-sensitive record information (IP addresses, device metadata, browser type, and cookie identifiers) from his visits to a public ticket-resale site.[2] *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025).

[1] Second Am. Compl. (SAC) – ECF No. 48 at 2–3 (¶¶ 1–6). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Order – ECF No. 44 at 4–10.

The SAC adds that the trackers also captured the pages Torres viewed, the URLs he visited, the buttons he clicked, and his searches for tickets to NFL games and San Diego Padres games, and that he later saw Instagram ads related to those searches.[3] He reasserts his earlier claims (violation of the California Comprehensive Computer Data Access and Fraud Act (CDAFA), Cal. Penal Code § 502, use of a pen register in violation of the California Invasion of Privacy Act (CIPA), *id.* § 638.51(a), and invasion of privacy under the California Constitution and the common law) and adds a wiretapping claim under CIPA, *id.* § 631(a).[4]

SeatGeek moves to dismiss under Rules 12(b)(1) and 12(b)(6), contending that Torres still has not pleaded a concrete injury and, in any event, has not stated a claim.[5] The court grants the motion. The new allegations do not change the standing analysis. Browsing for sports tickets on a public website (even when trackers capture the exact pages and searches) does not reveal the kind of embarrassing, invasive, or otherwise private information whose disclosure resembles a common-law privacy tort, and Torres acknowledges that the information "may not be inherently personal or sensitive." Because Torres has amended twice, the second time after an order identifying the deficiencies, and identifies no new facts that could cure them, the court denies leave to amend. The dismissal is without prejudice because it is for lack of jurisdiction.

## STATEMENT

SeatGeek operates seatgeek.com, a platform for buying and selling tickets to sports, concert, and theater events.[6] When a user visits the website, SeatGeek's code installs three trackers on the user's browser: the TikTok Pixel, the Meta (Facebook) Pixel, and the Microsoft Bing tracker.[7] The trackers cause the browser to send information to TikTok, Meta, and Microsoft: the user's IP address, device details (make, model, and operating system), browser information, the URLs of

---

[3] SAC – ECF No. 48 at 3 (¶ 5), 15–17 (¶¶ 66, 68–71), 27–28 (¶¶ 123–26).

[4] *Id.* at 30–40 (¶¶ 138–86).

[5] Mot. – ECF No. 49.

[6] SAC – ECF No. 48 at 2 (¶ 2).

[7] *Id.* at 2 (¶ 2), 15 (¶ 65).

the pages visited, and cookie identifiers.[8] The third parties use the information (through fingerprinting, "advanced matching," and persistent identifiers such as a Facebook ID and a Microsoft cookie that lasts about thirteen months) to identify otherwise anonymous visitors, link them to existing profiles, build profiles of their interests, and target them with ads.[9] SeatGeek does not present a consent banner or pop-up before the trackers load. Its privacy notice is at the bottom of the page.[10]

The SAC adds that the trackers "intercept the contents of users' communications with the Website": "full string page URLs visited, event pages accessed, ticket searches, event category browsing, ticket purchase activity, conversion events, and user interactions with the Website," including the events a user views (name, description, and price), the buttons the user clicks, and the text the user enters in forms.[11] The trackers' code "listens" to the user's interactions and sends them to the third parties' servers at the same time that the browser sends them to SeatGeek's servers.[12]

Torres, a California resident, regularly visited the website on his desktop and mobile browsers "throughout the entirety of the class period."[13] He "searched for and browsed" NFL and MLB events and searched for San Diego Padres tickets "on multiple occasions."[14] He did not register for an account or buy tickets. The putative class is limited to visitors who did neither.[15] The third parties (1) collected "the exact webpages" he visited, his IP address, and his device-fingerprint information, (2) tracked him across sessions and other websites, (3) matched him to existing profiles, and (4) sold his information to advertisers.[16] He has TikTok and Meta accounts that he accessed on the same mobile browser, and after visiting the website, he saw ads on Instagram

---

[8] *Id.* at 2 (¶¶ 3–4), 14 (¶ 57), 18 (¶ 78), 23–24 (¶ 102).

[9] *Id.* at 3 (¶ 6), 17 (¶¶ 72–73), 20–21 (¶¶ 81–85), 22–23 (¶¶ 91–94), 24 (¶¶ 103–05).

[10] *Id.* at 25–26 (¶¶ 114–17).

[11] *Id.* at 3 (¶ 5), 15–16 (¶¶ 66, 68–69).

[12] *Id.* at 16–17 (¶ 71).

[13] *Id.* at 4 (¶ 12), 27 (¶ 121).

[14] *Id.* at 27 (¶ 123).

[15] *Id.* at 29 (¶ 131).

[16] *Id.* at 27–28 (¶¶ 124–25).

"relating to NFL searches he performed on the Website."[17] He did not consent to the trackers.[18]

The SAC has five claims: (1) violation of the CDAFA, Cal. Penal Code § 502; (2) use of a pen register in violation of CIPA, *id.* § 638.51(a); (3) wiretapping in violation of CIPA, *id.* § 631(a); (4) invasion of privacy in violation of article I, section 1 of the California Constitution; and (5) intrusion upon seclusion.[19] The court dismissed the FAC on May 28, 2026, for lack of standing, holding that the capture of non-sensitive browsing data was not a concrete injury, receiving a targeted ad based on non-confidential information was not either, and the unjust-enrichment allegations were conclusory.[20] The court also held that the privacy and CDAFA claims were not plausibly pleaded and that the § 638.51 claim was.[21] Torres filed the SAC on June 29, 2026, and SeatGeek moved to dismiss.[22] SeatGeek also asks the court to consider twelve exhibits.[23]

## STANDARD OF REVIEW

A complaint must contain a short and plain statement of the ground for the court's jurisdiction. Fed. R. Civ. P. 8(a)(1). The plaintiff has the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Farmers Ins. Exch. v. Portage La Prairie Mut.*

---

[17] *Id.* at 28 (¶ 126).

[18] *Id.* (¶¶ 127, 130).

[19] *Id.* at 30–40 (¶¶ 138–86). The SAC numbers the paragraphs of claim three 150 through 164, repeating numbers used in claim one. Citations to those paragraphs are to claim three.

[20] Order – ECF No. 44 at 4–10.

[21] *Id.* at 10–13.

[22] SAC – ECF No. 48; Mot. – ECF No. 49; Opp'n – ECF No. 52; Reply – ECF No. 54. The parties consented to magistrate-judge jurisdiction. Consents – ECF Nos. 8, 11; 28 U.S.C. § 636(c)(1). The court can decide the motion without oral argument. Civil L.R. 7-1(b).

[23] Req. for Judicial Notice – ECF No. 50; Suppl. Req. for Judicial Notice – ECF No. 56. Exhibits 1 through 4 are screenshots of SeatGeek's website taken on July 16, 2026, offered to show that a term typed into the site's search bar does not appear in the URL of the page that the search returns. Exhibits 5 through 7 are the writ petition, order to show cause, and docket in *Variety Media, LLC v. Superior Court*, No. B350578 (Cal. Ct. App.), and Exhibits 8 through 12 are legislative materials for Senate Bill 690, including the chaptered bill and the Governor's signing statement. Torres objects only to Exhibits 1 through 4. Opp'n to Req. for Judicial Notice – ECF No. 53 at 2–4. The court does not need those exhibits to decide the motion and denies the request as moot as to them. It takes judicial notice of the court records and legislative materials, which are not subject to reasonable dispute, for their existence and contents. Fed. R. Evid. 201(b).

*Ins.*, 907 F.2d 911, 912 (9th Cir. 1990).

A defendant's Rule 12(b)(1) jurisdictional attack can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014). Under a facial attack, the court "accept[s] all allegations of fact in the complaint as true and construe[s] them in the light most favorable to the plaintiffs." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). SeatGeek asserts a facial attack on Torres's standing. Standing pertains to the court's subject-matter jurisdiction and thus is properly raised in a Rule 12(b)(1) motion to dismiss. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010).

## ANALYSIS

### 1. Standing

Article III standing requires (1) a concrete and particularized injury in fact, (2) fairly traceable to the defendant's conduct, and (3) likely redressable by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). An intangible harm is concrete if it has a "close relationship" to a harm "traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). A statutory violation is not enough by itself: "an injury in law is not an injury in fact." *Id.* at 427. In the privacy context, the plaintiff must allege a reasonable expectation of privacy in the information collected and a harm "similar to the highly offensive interferences or disclosures that were actionable at common law." *Popa*, 153 F.4th at 791 (cleaned up). The match must be in "the kind of harm and not the degree." *Id.* (cleaned up). Courts distinguish between a "routine collection of personally identifiable information" and "a highly offensive intrusion," such as when a "defendant disregards consumers' privacy choices" while "holding itself out as respecting them" or collects "intimate or sensitive information." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (cleaned up).

United States District Court
Northern District of California

*Popa* involved session-replay software that recorded a visitor's "mouse movements, clicks, keystrokes," the "URLs of web pages visited," and device and browser information on a pet-supply website. 153 F.4th at 786–87. The Ninth Circuit held that the plaintiff had not alleged a concrete injury because she identified no "embarrassing, invasive, or otherwise private information." The monitoring was "most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular." *Id.* at 791. The court distinguished *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), where Facebook compiled profiles of users from their activity on countless websites after they had logged out, contrary to its representations. *Popa*, 153 F.4th at 793–94; *In re Facebook*, 956 F.3d at 599–603.

Applying *Popa*, the court held that Torres had no reasonable expectation of privacy in the record information that the trackers collected: IP addresses, device make, model, and operating system, browser type, and cookie identifiers. The allegations that the third parties matched that information to his existing profiles did not change its character, and the case was unlike *In re Facebook* because SeatGeek embedded trackers on one website and made no misrepresentations.[24] The question now is whether the SAC's new allegations change the result. The parties' dispute tracks the earlier one: whether the information is private or sensitive, whether its collection and disclosure were highly offensive, and whether SeatGeek's unjust enrichment independently supports standing. The new allegations do not change the result on any of the three issues.

**1.1 The Information Collected Is Not Private or Sensitive**

SeatGeek contends that the SAC's new allegations describe the same non-sensitive browsing activity that *Popa* held insufficient and that browsing for sports tickets on a public website reveals nothing private.[25] Torres responds that (1) *Popa* announced no new rule, (2) it involved a single website's session-replay tool rather than the deanonymization of visitors and the linking of their browsing to profiles maintained across the internet, and (3) district courts have found standing on

[24] Order – ECF No. 44 at 5–8.

[25] Mot. – ECF No. 49 at 16–21; Reply – ECF No. 54 at 10–13.

similar allegations.[26] He acknowledges that the information at issue "may not be inherently personal or sensitive the way, for example, medical or financial information would be," but contends that SeatGeek's feeding it "into curated profiles of [his] personal interests and habits" is an invasion of privacy.[27]

The new allegations describe the information that *Popa* addressed. The plaintiff there alleged the capture of her clicks, keystrokes, and the URLs of the pages she visited on a retail website. The Ninth Circuit held that the capture was not a concrete injury absent an indication that the information was "embarrassing, invasive, or otherwise private." 153 F.4th at 786–87, 791. The SAC alleges the same categories (the "exact webpages" Torres visited, his "button clicks," and his "ticket searches") and what they reveal is that he was interested in tickets to NFL and Padres games.[28] That is not private information. Courts applying *Popa* have held that browsing on a single commercial website that reveals only ordinary consumer interests does not support standing, even when the website operator shares the browsing data with the same advertising platforms involved here. *Magliocca v. United Healthcare Servs., Inc.*, No. 25-cv-3388, 2026 WL 878694, at *1, *3–4 (E.D. Cal. Mar. 31, 2026) ("button clicks, page visits," and "URLs" from browsing health-insurance products, combined with Google, Microsoft, and Meta cookies to serve targeted ads, were "exactly the kind of non-sensitive browsing activity on a single website that courts have repeatedly found insufficient to establish a concrete injury" (cleaned up)); *Malko v. GNC Holdings, LLC*, No. 26-cv-1833, 2026 WL 2218133, at *3–4 (C.D. Cal. July 29, 2026) (search for a "pre-workout product"); *Rodriguez v. Accident Fund Holdings, Inc.*, No. 25-cv-3920, 2026 WL 2365062, at *1–2, *7 (C.D. Cal. Aug. 13, 2026) (plaintiff who "browsed a few pages" of the defendant's website without entering personal information could not plausibly allege a reasonable expectation of privacy). This court held in *Timothee v. Meta Platforms, Inc.* that disclosing to Meta that the plaintiffs had sought food-resource information on public websites

---

[26] Opp'n – ECF No. 52 at 10–13.

[27] *Id.* at 12.

[28] SAC – ECF No. 48 at 3 (¶ 5), 16–17 (¶¶ 68, 71), 27 (¶¶ 123–24).

(including their answers to questions about their mobility and financial hardship) did not plead an injury in fact. No. 25-cv-5106, 2026 WL 1130363, at *4–5 (N.D. Cal. Apr. 27, 2026). An interest in sports tickets reveals less.

Torres labels the captured URLs and searches the "contents" of his communications for purposes of CIPA § 631.[29] The label does not change the analysis. The standing inquiry asks whether the information is private, not whether it is "content" within the meaning of a statute, and the Ninth Circuit found no concrete harm in *Popa* even though the software there captured URLs and keystrokes. 153 F.4th at 786–87, 791.

Nor does the aggregation theory change the result. Torres's principal argument is that the third parties linked his browsing to their existing profiles of him, which he says distinguishes *Popa* and brings the case within *In re Facebook*.[30] The court considered that argument on the FAC, which made the same allegations about fingerprinting, matching, and profiles, and rejected it: the information disclosed was record information in which Torres had no reasonable expectation of privacy, and matching it to profiles elsewhere did not make it private.[31] The SAC adds to the categories of data collected on SeatGeek's website, but it adds nothing to the aggregation allegations. And under *Popa*, the question is whether the information the defendant disclosed implicates a protectable privacy interest. 153 F.4th at 791. Non-sensitive browsing data does not merely because a third party can match it to a profile. *In re Facebook* is different: Facebook itself compiled an "enormous amount of individualized data" from users' activity on "countless websites," after they had logged out and contrary to its promises. 956 F.3d at 599–603.[32] SeatGeek embedded trackers on its own website only, and the SAC alleges no misrepresentation.

---

[29] *Id.* at 3 (¶ 5), 34 (¶ 156).

[30] Opp'n – ECF No. 52 at 10–13.

[31] Order – ECF No. 44 at 5–6. Torres reads the prior order as recognizing that sensitive information is sufficient but not necessary for standing. Opp'n – ECF No. 52 at 13. It did not. It recognized that the FAC's aggregation allegations were more robust than *Popa*'s and held that they did not change the record character of the information. Order – ECF No. 44 at 5–6. The SAC's allegations about the trackers and the third parties' use of the data are materially the same as the FAC's. *Compare* FAC – ECF No. 25 at 13–25 (¶¶ 52–121), *with* SAC – ECF No. 48 at 13–28 (¶¶ 56–130); *see* Reply – ECF No. 54 at 8–9, 11.

[32] Order – ECF No. 44 at 6.

The decisions Torres cites that found standing on profile allegations involved sensitive information, deception, or defendants (data brokers and technology providers that tracked users across the internet). *See, e.g.*, *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 860–63 (N.D. Cal. 2026) (capture of "sensitive browsing activity" of hundreds of millions of people); *Selby v. Sovrn Holdings, Inc.*, No. 25-cv-3139, 2025 WL 2950164, at *3 & n.3 (N.D. Cal. Oct. 17, 2025) (data broker compiled profiles of "highly sensitive browsing" tied to email addresses); *Semien v. PubMatic, Inc.*, No. 25-cv-3164, 2026 WL 216333, at *3–5 (N.D. Cal. Jan. 27, 2026) (data broker's profiles included "health status," "political affiliation, sexual orientation, and more"); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1087 (N.D. Cal. 2025) (data compiled "across hundreds to thousands of disparate online and offline sources"); *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-3647, 2025 WL 3268404, at *3, *8 (N.D. Cal. Nov. 24, 2025) (tracking continued after the plaintiff rejected it, and the defendants misrepresented that users could opt out). The court distinguished most of these decisions before.[33] Courts draw the same line between technology providers that aggregate browsing activity across the internet and website operators that use the providers' tools on their own sites. *See Lutge v. Timex.com, Inc.*, No. 26-cv-960, 2026 WL 2691100, at *3 (N.D. Cal. Sep. 14, 2026) (where "a company tracks limited information on its own website and discloses it to third parties, courts in this district have found that the intrusion does not meet the high bar to be highly offensive"); *Ortiz v. Foris Dax, Inc.*, No. 25-cv-8950, 2026 WL 1430720, at *4 (N.D. Cal. May 21, 2026) (once the plaintiff left the defendant's website, the defendant did not continue to track him, whatever the third parties' "data-tracking ecosystem" did).

Finally, to the extent Torres's authorities reason that a CIPA violation is itself a concrete injury because CIPA codifies a substantive privacy right, or that any loss of control over one's information is an injury regardless of the information's sensitivity, that reasoning is inconsistent

[33] *Id.* at 6–8. Torres also relies on *Gilligan v. Experian Data Corp.*, No. 25-cv-2873-RFL, 2026 WL 32259, at *2 (N.D. Cal. Jan. 6, 2026), which found standing based on the interception of "full-string URLs and button click events" (categories the SAC now alleges). But the defendant there tracked browsing "across the internet" for its "profile-building practices," *id.*, which is the *In re Facebook* model, not this one.

with *TransUnion* and *Popa*, which reject a per se rule that a statutory privacy violation confers standing. 594 U.S. at 426–27; 153 F.4th at 791, 794.[34]

**1.2 The Collection and Disclosure Were Not Highly Offensive**

SeatGeek contends that embedding advertising trackers on its own website and sharing non-sensitive browsing data with advertising platforms is routine commercial behavior, not a highly offensive intrusion, and that the SAC alleges none of the circumstances (deception, disregard of users' privacy choices, or the collection of sensitive data) that courts have found offensive.[35] Torres responds that offensiveness is a jury question, the surreptitious collection of data and its conversion into profiles is egregious, and SeatGeek cannot avoid responsibility by pointing to the third parties.[36]

The court addressed this issue in the prior order. Offensiveness can be decided on the pleadings when the allegations show no reasonable expectation of privacy or an insubstantial impact on privacy interests. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 40 (1994). The decisions finding a highly offensive intrusion involve the gathering of sensitive information or its disclosure in a manner inconsistent with the defendant's promises or the user's choices.[37] The SAC alleges neither. SeatGeek did not promise not to track visitors, did not override a privacy choice, and did not collect intimate information. Instead, it used three common advertising tools to share non-sensitive data about sports-ticket browsing. That the privacy notice appears only at the bottom of the page does not make the collection deceptive.[38] And seeing an Instagram ad for NFL tickets is not a highly offensive intrusion, any more than were the ads targeting the plaintiffs'

---

[34] Opp'n – ECF No. 52 at 11 (loss of control); Reply – ECF No. 54 at 12–13 & n.4 (discussing *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025), and *Harris v. iHeartMedia, Inc.*, No. 25-cv-6038, 2026 WL 247875, at *2 (N.D. Cal. Jan. 29, 2026)); *see* Order – ECF No. 44 at 8 (rejecting the argument that statutory standing under CIPA establishes Article III standing).

[35] Mot. – ECF No. 49 at 21–23; Reply – ECF No. 54 at 13–15.

[36] Opp'n – ECF No. 52 at 13–14 & n.3.

[37] Order – ECF No. 44 at 9–10.

[38] SAC – ECF No. 48 at 25–26 (¶¶ 114–17).

financial hardship in *Timothee*. 2026 WL 1130363, at *4–5.[39] Torres's point that SeatGeek enabled the third parties' profiling by installing the trackers goes to causation, not to the character of the intrusion. The disclosure of non-sensitive browsing data to advertising platforms does not resemble a harm actionable at common law, whoever caused it.

**1.3 Unjust Enrichment Does Not Independently Confer Standing**

The court rejected Torres's unjust-enrichment theory of standing before because he had not plausibly pleaded a privacy interest in the information that might make SeatGeek's enrichment unjust and because the allegations were conclusory.[40] SeatGeek contends that the SAC does not change the allegations.[41] Torres responds that (1) his allegations are not conclusory, (2) *Khamooshi v. Politico LLC* (relied on by the court) did not consider the linkage of browsing data to profiles or the possibility that a CIPA violation makes the resulting enrichment unjust, and (3) other courts in this district have found harm where a third party acquires an enormous amount of individualized data.[42]

To establish standing through unjust enrichment, plaintiffs "must allege they retain a stake in the profits garnered from their personal browsing histories because the circumstances are such that, as between the two parties, it is unjust for [the defendant] to retain it." *In re Facebook*, 956 F.3d at 600 (cleaned up). The SAC's unjust-enrichment allegations mirror the FAC's: SeatGeek and the third parties "unjustly enrich[ed] themselves" with the collected data and used it "to maximize revenue from selling advertising space."[43] They remain conclusory. Also, Torres has no privacy interest in the information, so there is nothing unjust about SeatGeek's use of it. *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1182–83 (N.D. Cal. 2025). The argument that the CIPA violation itself makes the enrichment unjust is the per se theory of standing that

---

[39] *See* Order – ECF No. 44 at 8 (receiving a targeted ad based on non-confidential information is not a concrete injury).

[40] *Id.* at 8–9.

[41] Mot. – ECF No. 49 at 23–24; Reply – ECF No. 54 at 15–16.

[42] Opp'n – ECF No. 52 at 15–16.

[43] *Compare* SAC – ECF No. 48 at 17 (¶ 73), 28 (¶ 128), 33 (¶ 156), *with* FAC – ECF No. 25 at 24–25 (¶ 119), 29 (¶ 147).

*TransUnion* forecloses. And the decisions Torres cites for the enormous-amount-of-data theory involved data brokers or misrepresentations. *Riganian*, 791 F. Supp. 3d at 1087, 1095; *Pemberton*, 2025 WL 3268404, at *3, *8; *Shah v. Politico LLC*, No. 25-cv-5213, 2026 WL 323269, at *4, *9 (N.D. Cal. Feb. 6, 2026).[44]

Torres has not pleaded an injury in fact. Because the court lacks jurisdiction, it does not reach SeatGeek's Rule 12(b)(6) arguments or its alternative request to stay claim two.[45] The court notes, as it did before, that the two deficiencies in Torres's standing theory (no reasonable expectation of privacy in the information collected and no highly offensive intrusion) are also elements of his privacy claims (claims four and five).[46]

**2. Leave to Amend**

Rule 15(a)(2) directs courts to "freely give leave when justice so requires," a policy applied "with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (cleaned up). But a court may deny leave when amendment would be futile or when the plaintiff has repeatedly failed to cure deficiencies by amendments previously allowed. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The court's discretion to deny leave is "particularly broad" when the plaintiff has amended before. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004); *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008). When the "basic flaw" in a pleading cannot be cured, "there is no need to prolong the litigation by permitting further amendment." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002). A

---

[44] *See* Reply – ECF No. 54 at 16 n.8.

[45] SeatGeek asked the court, if it did not dismiss claim two, to stay it pending the California Court of Appeal's decision in *Variety Media*, which will decide whether § 638.51 applies to website trackers, and Torres agreed to a stay pending that decision and the fate of Senate Bill 690. Mot. – ECF No. 49 at 31–34; Opp'n – ECF No. 52 at 21–22. After the opposition was filed, the Governor signed Senate Bill 690. According to SeatGeek (and Torres has not disputed the point), the bill eliminates the private right of action for § 638.51 claims against private actors based on conduct on an internet website, takes effect on January 1, 2027, and applies retroactively to pending claims in actions commenced within two years before that date. Reply – ECF No. 54 at 9, 21; Suppl. Req. for Judicial Notice – ECF No. 56 at 3; S.B. 690, Ex. 11 to Suppl. Silver Decl. – ECF No. 56-2.

[46] Order – ECF No. 44 at 10–11; *see In re Facebook*, 956 F.3d at 601; *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286–87 (2009).

jurisdictional defect warrants dismissal without leave to amend only if the defect cannot be cured. *Eminence Cap.*, 316 F.3d at 1052; *see United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (dismissal without leave is improper "unless it is clear, upon de novo review, that the complaint could not be saved by any amendment" (cleaned up)).

SeatGeek asks the court to deny leave to amend. Torres asks for leave but identifies no facts that he would add.[47] The court denies leave. Torres has amended twice. The second amendment followed an order that identified what was missing: sensitive information, a disclosure that was offensive because it was deceptive or contrary to users' choices, or non-conclusory allegations of unjust enrichment.[48] The SAC responded by adding categories of browsing data that *Popa* itself held insufficient, and Torres acknowledges that the data "may not be inherently personal or sensitive." His request for leave is a single paragraph that identifies no additional facts.[49] And the facts are what they are: he visited a public ticketing website, browsed for sports tickets, did not register, buy anything, or submit personal information, and does not allege that SeatGeek said anything to him about its tracking practices.[50] The flaw is in the theory, not in the drafting, and further amendment would be futile.[51]

Because the dismissal is for lack of subject-matter jurisdiction, it is without prejudice. *Hampton v. Pac. Inv. Mgmt. Co.*, 869 F.3d 844, 846 (9th Cir. 2017). The dismissal does not bar Torres from pursuing his claims in state court.

---

[47] Mot. – ECF No. 49 at 36; Reply – ECF No. 54 at 22; Opp'n – ECF No. 52 at 23.

[48] Order – ECF No. 44 at 5–10.

[49] Opp'n – ECF No. 52 at 23.

[50] SAC – ECF No. 48 at 27 (¶ 123), 29 (¶ 131).

[51] Amendment of claim two would be futile for a second reason. Torres does not dispute SeatGeek's showing that Senate Bill 690 will eliminate the private right of action for website-based § 638.51 claims against private actors when it takes effect on January 1, 2027, and will apply retroactively to this action. Reply – ECF No. 54 at 9, 21.

United States District Court
Northern District of California

**CONCLUSION**

The court grants the motion and dismisses the second amended complaint for lack of Article III standing, without leave to amend and without prejudice. The court will enter a separate judgment and close the case.

This resolves ECF Nos. 49, 50, and 56.

**IT IS SO ORDERED.**

Dated: October 28, 2026

LAUREL BEELER
United States Magistrate Judge